### B. Foreclosure at International

56. Eaton entered into a long-term *de facto* exclusive contract with International, effective in or around early 2001. The contract is still in operation in 2006.

57. Under the contract, International would receive maximum incentives only after Eaton's combined linehaul and vocational sales penetration at International reached 87%, and possibly as high as 95% by the last year of the agreement. To obtain rebates on vocational transmissions for which Eaton faced no meaningful competition, International would have to purchase Eaton transmissions (mainly 9 and 10 speed manual transmissions), which competed directly with ZF Meritor's transmissions. The agreement also required International to exclude ZF Meritor on new truck models from International's data book, and prohibit International's Diamond Spec warranty from covering new truck models equipped with ZF Meritor, rather than Eaton, transmissions. Further, Eaton received standard position on International's Class 8 linehaul and vocational transmissions. There was no procompetitive justification for excluding ZF Meritor; Eaton acted solely to bar and foreclose ZF Meritor from markets for Class 8 Transmissions.

58. Eaton's exclusionary practices at International expanded in 2002. According to International, Eaton offered International "a compelling incentive to increase their sales at your [ZF Meritor's] expense." If International accepted the Eaton proposal, it would undertake "every effort to cease ordering your [ZF Meritor] product

… switching current and future orders" to Eaton.  Further, in 2006, Eaton executed another contract with International, contractually obligating International to remove the FreedomLine from its data book and exclusively market Eaton's automated manual transmissions.

59. Eaton's exclusionary conduct at International impaired consumer access to ZF Meritor transmissions and penalized downstream truck fleets and other customers who preferred ZF Meritor's transmissions.

60. As a direct and foreseeable result of the Eaton/International anticompetitive agreement and Eaton's other exclusionary acts, ZF Meritor's penetration at International declined.  Around the consummation of the Eaton/International contract, for the fiscal fourth quarter of 2000, ZF Meritor's penetration at International stood around 13%.  By the end of fiscal year 2005, Meritor's share of transmission sales to International had faded to 2%.  As a result, for new International truck models, Meritor transmissions will not be engineered into the vehicle platform – the transmissions will not be available on those vehicles, even as an unpublished option.

C. **Foreclosure at Paccar**

61. While ZF Meritor, and Meritor before it, had enjoyed limited success in selling to Paccar because of a pre-existing, and seemingly exclusive, supply relationship between Paccar and Eaton, ZF Meritor expected its share at Paccar to grow with the

formation of the venture and introduction of the FreedomLine. Eaton, however, modified and extended its supply agreement with Paccar to prevent ZF Meritor growth at Paccar. The long-term agreement, a five-year deal, withheld from Paccar maximum transmission rebates unless Eaton's share of sales to Paccar of linehaul and vocational transmissions (and other components) reached 95%. The FreedomLine was not excluded from Paccar's penetration calculation: purchases of the FreedomLine would count against Paccar reaching its penetration goals, thereby decreasing its incentive to sell the new technology. Dampening Paccar's purchases of the FreedomLine held particular value to Eaton since Paccar would be the first OEM (through Peterbilt) to release the FreedomLine to downstream customers.

62. As a direct and foreseeable result of the Eaton/Paccar anticompetitive agreements and Eaton's other exclusionary acts, ZF Meritor's share of transmission sales at Paccar consistently languished around 5% and fell to less than 1% in fiscal year 2005. In early 2005, Paccar's Peterbilt announced ZF Meritor/Meritor transmissions would no longer be available on new truck orders.

    D.    **Foreclosure at Volvo/Mack**

63. Having locked Freightliner, International, and Paccar into long-term *de facto* exclusive contracts, Eaton locked ZF Meritor out of the remaining portion of the market by entering into a similar exclusive arrangement with the only other OEM, Volvo/Mack.

64. In the spring and summer of 2002, ZF Meritor attempted to form a commercial partnership with Volvo/Mack for the manufacture, marketing, and sale of linehaul and vocational transmissions. This was a ZF Meritor priority given Eaton's agreements with each of the other OEMs. ZF Meritor offered substantial price reductions, year-over-year cost downs (*i.e.*, price decreases), and the opportunity for Volvo/Mack to obtain a full line of private brand transmissions, including vocational transmissions.

65. In the fall of 2002, Eaton and Volvo/Mack entered into a long-term five-year contract, expiring at the earliest in 2007. The agreement contained linehaul and vocational transmission penetration incentives that essentially withheld from Volvo/Mack maximum rebates or price reductions if ZF Meritor's sales reached 15% of Volvo/Mack's linehaul and vocational transmission purchases. Eaton further diminished ZF Meritor's opportunity for sales at Volvo/Mack by requiring Volvo/Mack to price ZF Meritor transmissions at a penalty to Eaton transmissions. Eaton also was made standard on all of Volvo/Mack's Class 8 linehaul trucks and Volvo's Class 8 vocational vehicles. Eaton offered Volvo/Mack additional price reductions on transmissions if Volvo/Mack excluded ZF Meritor transmissions from its data book.

66. Eaton's acts of exclusion through Volvo/Mack lacked any procompetitive justification and injured consumers. Customers seeking ZF Meritor transmissions to be

installed in Volvo/Mack trucks were dissuaded from doing so by, among other things, the threat of monetary penalties.

67.   As a direct and foreseeable result of the Eaton/Volvo/Mack anticompetitive agreement and Eaton's other exclusionary acts, ZF Meritor's penetration at Volvo/Mack declined. ZF Meritor's/Meritor's share of transmission sales to Volvo and Mack fell from an estimated 24% and 6%, respectively, in the fiscal fourth quarter of 2002, around the time of the Eaton/Volvo/Mack transaction, to approximately 11% and 2%, respectively, by the end of fiscal year 2005.

> E.   **Eaton used its exclusive dealing contracts to induce OEMs to push Eaton transmission sales to ZF Meritor's exclusion**

68.   Eaton designed its penetration rebates so that the OEMs would qualify for the rebates only if they diverted purchasers of ZF Meritor transmissions to Eaton transmissions. To the same end, Eaton relied on the overall structure of the contracts, its market strength, and further coordination with individual OEMs to induce the OEMs to, including through the present:

>    (a)   eliminate ZF Meritor from data book listings;

>    (b)   reduce the residual values to be paid for trucks sold with ZF Meritor transmissions;

>    (c)   offer larger concessions off of total truck prices for trucks equipped with Eaton transmissions;

(d) refuse to provide financing to customers that specified ZF Meritor transmissions;

(e) inform customers that if they wanted delivery by specified dates, the customers would have to change orders from ZF Meritor to Eaton transmissions;

(f) decline to hold build slots for truck buyers if they selected other than Eaton transmissions;

(g) market Eaton's three-pedal automated manual as essentially comparable to ZF Meritor's technologically superior two-pedal FreedomLine;

(h) offer preferential discounts on Eaton transmissions;

(i) employ other than cost-based pricing penalties on ZF Meritor transmissions;

(j) exclude ZF Meritor from warranty programs; and

(k) notify customers that ZF Meritor transmissions were not available, even though they were available.

69. The Eaton-precipitated OEM conduct obstructed ZF Meritor's pull through marketing efforts and materially increased sales of Eaton transmissions.

**F.  Other Eaton anticompetitive conduct further foreclosed ZF Meritor linehaul transmission sales and vocational market entry**

70. In combination with, or in addition to employing *de facto* exclusive contracts with the OEMs and the conduct those contracts precipitated, Eaton executed a

variety of exclusionary acts to foreclose Meritor and ZF Meritor sales of linehaul transmissions. Among these acts, Eaton:

(a) Threatened one or more OEMs with price retaliation on transmissions for which Eaton did not face meaningful competition if those OEMs purchased Meritor's or ZF Meritor's transmissions;

(b) Threatened one or more OEMs with unwarranted patent litigation if those OEMs purchased Meritor's or ZF Meritor's transmissions; and

(c) Delayed and disrupted OEM release and sales of the FreedomLine.

71. Eaton also used these and other exclusionary acts to obstruct Meritor's entry into the market for vocational transmissions. Given the significance of economies of scale in production of Class 8 Transmissions, and the substantial fixed and sunk costs associated with the research, development, and introduction of new transmission technology and products, Meritor required sales opportunities and ample investment or partnerships to enter into the vocational market. Eaton's anticompetitive practices, however, deprived Meritor and ZF Meritor of all three. Eaton locked the OEMs into long-term exclusive contracts covering linehaul and vocational transmissions and threatened retaliation with price increases or patent litigation if an OEM sold or licensed vocational transmission technology to Meritor or ZF Meritor.

### IV. ZF Meritor Forced From The Markets, Injuring Competition, Meritor, and ZF Meritor

72. Eaton's anticompetitive conduct, including its contracts with the OEMs – employing bundled rebates, lucrative share penetration incentives, data book and other exclusions, and punitive pricing on Meritor and ZF Meritor transmissions – had the practical effect of precluding ZF Meritor from selling linehaul and vocational transmissions to the OEMs. One OEM simply told ZF Meritor that it could not do business with ZF Meritor because of the OEM's contract with Eaton.

73. With its potential share of sales of linehaul and vocational transmissions to the OEMs limited to less than 10% and no practical ability to pull through meaningful sales downstream because of Eaton's exclusionary conduct, including dealings with the OEMs, Meritor and ZF began to dissolve ZF Meritor. Although ZF Meritor remains a legal entity, it no longer sells transmissions.

74. To fill the void created by ZF Meritor's market departure, Meritor has tried to remain a supplier of Class 8 Transmissions to the OEMs and has become a sales agent for ZF to ensure continued customer access to the FreedomLine. Eaton's anticompetitive conduct, however, has led to further decline in Meritor's sales – by the end of fiscal year 2005, Meritor's share of transmissions sales at the four OEMs, including sales of the FreedomLine, had tumbled to around 4%. Meritor, other than marketing the FreedomLine, will exit the business in January 2007.

75. The foregoing anticompetitive conduct by Eaton, individually and in coordination with the OEMs, has directly and proximately harmed competition by limiting consumer choice, eliminating competitive checks on pricing, suppressing innovation, and foreclosing an efficient and significant competitor from the markets for Class 8 Transmissions. Meritor and ZF Meritor have been excluded from the market for linehaul transmissions, and they have been deterred from undertaking investments in technology and products that would have threatened Eaton's monopoly in the market for vocational transmissions. If Meritor and ZF Meritor had not been foreclosed, competition would have intensified, and consumers would have benefited from lower prices for transmissions sold by Eaton, as well as those sold by Meritor and ZF Meritor. Instead, Eaton's conduct led to downstream customers being monetarily penalized and excluded from warranty programs if they purchased Meritor or ZF Meritor transmissions, and deprived of fair and timely access to ZF Meritor's advanced transmission technology, including but not limited to, Meritor's Engine Synchro Shift transmission system and North America's first two-pedal, fully automated manual transmissions.

76. The foregoing anticompetitive conduct by Eaton, individually and in concert with the OEMs, has caused antitrust injury to Meritor and ZF Meritor by, *inter alia*, foreclosing Meritor/ZF Meritor from selling their Class 8 Transmissions to OEMs; undermining Meritor's/ZF Meritor's attempts to pull through truck buyer orders from

OEMs of Meritor/ZF Meritor transmissions; impairing and disrupting the development, release and sales of Meritor's/ZF Meritor's technologically advanced transmission systems; interfering with Meritor's/ZF Meritor's actual and prospective contractual and partnering relationships with OEMs and downstream fleets and other customers; dislodging Meritor/ZF Meritor strategies to enter into the market for vocational transmissions so that it could more directly and broadly compete with Eaton transmissions; forcing OEMs and downstream customers to purchase Eaton, instead of Meritor/ZF Meritor, transmissions on grounds other than the merits; casting doubt upon the integrity and value of Meritor's/ZF Meritor's transmission technology; and driving Meritor's/ZF Meritor's production and other costs to economically unacceptable levels.

77. The foregoing anticompetitive conduct by Eaton has caused Meritor/ZF Meritor substantial financial harm and damage. The loss of market share, entry, and gains Meritor/ZF Meritor would have achieved but for Eaton's anticompetitive, exclusionary conduct, cost Meritor/ZF Meritor hundreds of millions of dollars in current and future profits. Harm to Meritor/ZF Meritor and damages they incurred also extend to their costs in dissolving ZF Meritor and the diminished valuation of their Class 8 Transmission business. The full amount, scope, extent, form, and components of Meritor's/ZF Meritor's harm and damages will be calculated during this litigation.

78. In contrast to the harm Eaton's conduct has caused consumers and Meritor/ZF Meritor, Eaton's truck business, which relies heavily on North American transmission sales, has amassed record profits. Since 2002, Eaton's operating profits from its truck business have increased roughly 400% (from $90 million to $453 million), and its operating margins have increased 157% (from 7.7% to 19.8%).

## CLAIMS FOR RELIEF

### Count I: Monopolization of the Linehaul Market in Violation of Sherman Act, Section 2 (15 U.S.C. § 2)

79. ZF Meritor and Meritor incorporate by reference paragraphs 1 through 78.

80. Linehaul transmissions constitute a relevant product market and North America is the relevant geographic market.

81. Eaton possessed (and currently possesses) monopoly power in the market for linehaul transmissions in North America. Barriers to entry and barriers to expansion by existing firms are high in this market. Eaton, with 95% share of the linehaul market, has the power to control price and exclude competition for transmissions in this market.

82. Eaton willfully and wrongfully obtained and/or maintained its monopoly in the linehaul market by engaging in the exclusionary, anticompetitive conduct set forth in the preceding paragraphs of this Complaint.

83. The anticompetitive effects of Eaton's conduct far outweigh any purported procompetitive justifications.

84. Eaton, through its exclusionary, anticompetitive conduct, has harmed consumers and impaired competition by, without limitation, depriving consumers of fair and timely access to innovative linehaul transmission technology and lower prices for linehaul transmissions, including Meritor and ZF Meritor manual and automated manual transmissions, which healthy and fair competition would have provided.

85. As a direct, foreseeable, and proximate result of Eaton's exclusionary, anticompetitive conduct, Meritor and ZF Meritor were damaged by, without limitation, lost sales of linehaul transmissions, costs of dissolving ZF Meritor, and diminution in value of Meritor's and ZF Meritor's transmission business, all in amounts to be proven at trial.

**Count II: Monopolization of the Vocational Market in Violation of Sherman Act, Section 2 (15 U.S.C. § 2)**

86. ZF Meritor and Meritor incorporate by reference paragraphs 1 through 85.

87. Vocational transmissions constitute a relevant product market and North America is the relevant geographic market.

88. Eaton possessed (and currently possesses) monopoly power in the market for vocational transmissions in North America. Barriers to entry and barriers to expansion by existing firms are high in this market. Eaton, with 90% or more share of the vocational market, has the power to control price and exclude competition for transmissions in this market.

89. Eaton willfully and wrongfully obtained and/or maintained its monopoly in the vocational market by engaging in the exclusionary, anticompetitive conduct set forth in the preceding paragraphs of this Complaint.

90. The anticompetitive effects of Eaton's conduct far outweigh any purported procompetitive justifications.

91. Eaton, through its exclusionary, anticompetitive conduct, has harmed consumers and impaired competition by, without limitation, depriving consumers of fair and timely access to innovative vocational transmission technology and lower prices for vocational transmissions, including Meritor and ZF Meritor transmissions, which healthy and fair competition would have provided.

92. As a direct, foreseeable, and proximate result of Eaton's exclusionary, anticompetitive conduct, Meritor and ZF Meritor were damaged by, without limitation, lost sales of vocational transmissions, costs of dissolving ZF Meritor, and diminution in value of Meritor's and ZF Meritor's transmission business, all in amounts to be proven at trial.

**Count III: Attempted Monopolization of the Linehaul Market in Violation of Sherman Act, Section 2 (15 U.S.C. § 2)**

93. ZF Meritor and Meritor incorporate by reference paragraphs 1 through 92.

94. Eaton willfully and wrongfully attempted to obtain and maintain monopoly power in the linehaul market in North America by engaging in the

exclusionary, anticompetitive conduct set forth in the preceding paragraphs of this Complaint.

95.   Eaton acted with specific intent to monopolize the linehaul market. Eaton's anticompetitive, exclusionary conduct has had a dangerous probability of success and Eaton has in fact achieved dominant position, and market share of 95% in the linehaul market. The anticompetitive effects of Eaton's conduct far outweigh any purported procompetitive justifications.

96.   Eaton, through its exclusionary, anticompetitive conduct, has harmed consumers and competition by, without limitation, depriving consumers of fair and timely access to innovative linehaul transmission technology and lower prices for those transmissions, including Meritor and ZF Meritor manual and automated manual transmissions, which healthy and fair competition would have provided.

97.   As a direct, foreseeable, and proximate result of Eaton's exclusionary, anticompetitive conduct, Meritor and ZF Meritor were damaged by, without limitation, lost sales of linehaul transmissions, costs of dissolving ZF Meritor, and diminution in value of Meritor's and ZF Meritor's transmission business, all in amounts to be proven at trial.

**Count IV: Attempted Monopolization of the Vocational Market in Violation of Sherman Act, Section 2 (15 U.S.C. § 2)**

98.   ZF Meritor and Meritor incorporate by reference paragraph 1 through

paragraph 97.

99.  Eaton willfully and wrongfully attempted to obtain and maintain monopoly power in the vocational market in North America by engaging in the exclusionary, anticompetitive conduct set forth in the preceding paragraphs of this Complaint.

100.  Eaton acted with specific intent to monopolize the vocational market. Eaton's anticompetitive, exclusionary conduct has had a dangerous probability of success and Eaton has in fact achieved dominant position, and market share of 90% or more, in the vocational market. The anticompetitive effects of Eaton's conduct far outweigh any purported procompetitive justifications.

101.  Eaton, through its exclusionary, anticompetitive conduct, has harmed consumers and competition by, without limitation, depriving consumers of fair and timely access to innovative vocational transmission technology and lower prices for those transmissions, including Meritor and ZF Meritor transmissions, which healthy and fair competition would have provided.

102.  As a direct, foreseeable, and proximate result of Eaton's exclusionary, anticompetitive conduct, Meritor and ZF Meritor were damaged by, without limitation, lost sales of vocational transmissions, costs of dissolving ZF Meritor, and diminution in value of Meritor's and ZF Meritor's transmission business, all in amounts to be proven at trial.

### Count V: Use of Exclusionary Contracts to Substantially Lessen Competition in Violation of Clayton Act, Section 3 (15 U.S.C. § 14)

103. ZF Meritor and Meritor incorporate by reference paragraph 1 through paragraph 102.

104. Eaton and OEMs entered into contracts for the purchase of goods (vocational and linehaul transmissions) that by their agreed upon terms, extended duration, and cumulative practical effect prevented the OEMs from purchasing Meritor's and ZF Meritor's transmissions.

105. OEMs purchased transmissions from Eaton, consistent with their respective exclusionary contracts with Eaton, which excluded Meritor and ZF Meritor from 90% or more of the sales opportunities for linehaul and vocational transmissions and substantially lessened competition or tended to create an Eaton monopoly in the linehaul and vocational markets in North America.

106. The anticompetitive effects of Eaton's exclusionary contracts far outweigh any purported procompetitive justifications.

107. Eaton, through its exclusionary contracts with OEMs, has harmed consumers and competition by, without limitation, depriving consumers of fair and timely access to innovative linehaul and vocational transmission technology and lower prices for those transmissions, including Meritor and ZF Meritor manual and automated manual transmissions, which healthy and fair competition would have provided.

108.  As a direct, foreseeable, and proximate result of Eaton's exclusionary, anticompetitive contracts, Meritor and ZF Meritor were damaged by, without limitation, lost sales of linehaul and vocational transmissions, costs of dissolving ZF Meritor, and diminution in value of Meritor's and ZF Meritor's transmission business, all in amounts to be proven at trial.

### Count VI:  Use of Exclusionary Contracts in Violation of Sherman Act, Section 1 (15 U.S.C. § 1)

109.  ZF Meritor and Meritor incorporate by reference paragraph 1 through paragraph 108.

110.  Eaton and the OEMs entered into agreements for the purpose of foreclosing Meritor and ZF Meritor from competing in the linehaul and vocational markets and assisting Eaton in willfully and wrongfully obtaining and maintaining monopoly power in those markets in North America.  The agreements achieved the purposes for which they were undertaken and unreasonably restrained trade.

111.  The anticompetitive effects of Eaton's exclusionary contracts far outweigh any purported procompetitive justifications.

112.  Eaton, through its exclusionary contracts with OEMs, has harmed consumers and competition by, without limitation, depriving consumers of fair and timely access to innovative linehaul and vocational transmission technology and lower prices for those transmissions, including Meritor and ZF Meritor manual and

automated manual transmissions, which healthy and fair competition would have provided.

113. As a direct, foreseeable, and proximate result of Eaton's exclusionary, anticompetitive contracts, Meritor and ZF Meritor were damaged by, without limitation, lost sales of linehaul and vocational transmissions, costs of dissolving ZF Meritor, and diminution in value of Meritor's and ZF Meritor's transmission business, all in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, ZF Meritor and Meritor respectfully request that the Court adjudge and decree that:

(a) Eaton unlawfully obtained and/or maintained monopolies in the markets for linehaul transmissions and vocational transmissions in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and/or unlawfully attempted to obtain and maintain monopolies in those markets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

(b) Eaton entered into exclusionary contracts that substantially lessened competition or tended to create a monopoly in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14; and

(c) Eaton entered into exclusionary agreements in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

(d)     Meritor and ZF Meritor be awarded their actual damages in an amount to be determined at trial, trebled pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, along with interest on such damages.

(e)     Meritor and ZF Meritor be awarded their costs of suit, including reasonable attorneys' fees, as provided in Section 4 of the Clayton Act, 15 U.S.C. § 15.

(f)     Meritor and ZF Meritor be awarded injunctive relief prohibiting Eaton and all persons or entities acting on its behalf or under its direction or control from engaging in any further conduct unlawful under Sections 1 or 2 of the Sherman Act, or Section 3 of the Clayton Act.

(g)     Meritor and ZF Meritor be granted such further relief as the Court may deem just and proper.

## JURY DEMAND

Meritor and ZF Meritor demand a trial by jury on all claims.

Dated:    October 5, 2006

Respectfully submitted,

By: _____*Karen V. Sullivan*_____
Charles M. Oberly, III (No. 743)
Karen V. Sullivan (No. 3872)
OBERLY, JENNINGS & RHODUNDA, P.A.
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, DE  19899
(302) 576-2000 (Tel)
(302) 576-2004 (Fax)

Attorneys for Plaintiffs ZF Meritor LLC and Meritor Transmission Corporation

Of Counsel:

R. Bruce Holcomb
Christopher H. Wood
Charles E. Luftig
DICKSTEIN SHAPIRO LLP
1825 Eye St. NW
Washington, DC  20006-5403
(202) 420-2200 (Tel)
(202) 420-2201 (Fax)