IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 06-623-SLR |
| v. | ) ) | |
| EATON CORPORATION, | ) ) | |
| Defendant. | ) ) | |

**EATON CORPORATION'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO TRANSFER**

Plaintiffs' Opposition concedes that none of the parties or the Big Four truck manufacturers they identified in the Complaint as unnamed co-defendants has any pertinent heavy duty transmission facilities, offices, or employees in the state of Delaware or within this district.

In contrast, Eaton's opening brief set forth facts establishing that the Middle District of North Carolina has significant ties to the pertinent heavy duty transmission businesses and facts allegedly at issue in this case - - which Plaintiffs' Opposition, again, does not dispute:

- Laurinburg, North Carolina has been Plaintiff ZF Meritor's principal place of business for the entire period allegedly at issue in this case. Compl. ¶ 4. It is the place where Plaintiffs manufactured heavy duty truck transmissions and it is the place where Meritor continues to assemble the FreedomLine transmissions it sells for ZF, the "global leader[]" in transmission technology, according to Plaintiffs' declarant. Allen Decl. ¶ 7. It houses more than 300 employees within its 260,000 square feet of office and plant space. In addition, Plaintiffs acknowledge that former employees may be nearby. *See* Allen Decl. ¶ 8.

- King's Mountain, North Carolina is the site of Eaton's single largest heavy duty transmission plant, a facility that manufactures manual and automated transmissions in a range of speeds and houses more than 650 people.

- Greensboro, North Carolina is the location of the North American headquarters of Volvo, one of the Big Four truck manufacturers identified and discussed at length in Plaintiffs' Complaint allegations as having violated the antitrust laws with Eaton by entering into a "de facto" exclusive deal. *E.g.*, Compl. ¶¶ 63-67.

- Volvo's Greensboro connection is particularly significant because the Volvo-Eaton contract signed in Fall 2002 is one of only two alleged facts that Plaintiffs specifically identified as having occurred within the last four years in their response to Eaton's motion to dismiss the vast majority of their allegations as time-barred. *See* Plaintiffs' Answering Brief In Opposition To Defendant's Motion To Dismiss, at 22 ("Chief among Eaton's conduct in the limitations period were actions it took at Volvo/Mack"). Plaintiffs' Opposition reiterates the importance of this fact, noting that "[t]he focus of this antitrust suit" is Eaton's dealings with Volvo and the other truck manufacturers. Plaintiffs' Opp. at 1.

- Greensboro, North Carolina is the location of Eaton's heavy duty transmission sales manager for Volvo Trucks.

- Cleveland, North Carolina is the location of Freightliner's largest heavy duty truck plant. Plaintiffs' Complaint identifies Freightliner as another critical third-party that violated the law with Eaton by entering into a "de facto" exclusive dealing arrangement. *E.g.*, Compl. ¶¶ 49-55.[1]

Plaintiffs make three arguments for why this Court should oversee this case despite North Carolina's connection to the facts allegedly at issue and Delaware's complete lack of connection to those facts, but none is sufficient.

First, Plaintiffs argue, in the opening sentence of their brief, that this case is "national in scope" because it allegedly concerns Eaton's conduct "throughout the United States." Plaintiffs posit that potential witnesses are, thus, "dispersed throughout the country." Plaintiffs' Opposition, at 1. But that does not show a connection *to Delaware* and - - not surprisingly, given

---

[1] In addition, Eaton's truck clutch business is based in nearby Charlotte, North Carolina. Plaintiffs' hint that this business has "nothing to do with transmissions," Opp. at 11, but Eaton respectfully disagrees. Eaton believes that many, if not all, of the components of heavy duty truck drive trains are likely to be at issue in this case because, on information and belief, Plaintiffs provided bundled pricing incentives across their entire DriveTrain Plus package (*i.e.*, transmissions, clutches, axles, drive shafts and braking systems) to which Eaton's pricing responded.

the fact that none of the parties or Big Four truck manufacturers Plaintiffs identified in their Complaint has heavy duty transmission operations here - - Plaintiffs fail to identify even a single example of Eaton conduct *in Delaware* or even a single witness *in Delaware* who possesses relevant facts. The vague prospect that someone from Delaware may someday in some way be part of this suit is not enough to make Delaware the appropriate venue.[2]

Second, Plaintiffs argue that Delaware is appropriate for reasons <u>unrelated</u> to the facts of this suit: that three of the four truck manufacturers, although operationally based elsewhere, were incorporated in Delaware. But that does not mean, under Fed. R. Civ. P. 45, that the manufacturers' witnesses - - who are likely to be in North Carolina and other locations more than 100 miles away - - can be required to attend trial in this district. *See* Fed. R. Civ. P. 45(c)(3)(A) ("the court . . . shall quash or modify [a] subpoena if it . . . (ii) requires a person who is not a party . . . to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person . . . ."); *see also Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62 ("Rule 45's goal is to prevent inconvenience to the flesh-and-blood human beings who are asked to testify, not the legal entity for whom those human beings work"). Eaton cited a case in its opening brief in which a federal court refused to transfer a case to Delaware although certain non-party witnesses were employed by companies incorporated in Delaware. The Court noted that Fed. R. Civ. P. 45 only permitted a court to compel people, not companies, to attend a trial. Because the witnesses were more than 100 miles away from the proposed Delaware venue, and thus could not be compelled by that court to attend a trial, the Corut denied transfer. *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 722 (W.D.

---

[2] Plaintiffs' Opposition argues that Eaton's dealings with "downstream" companies that buy trucks (not transmissions) from the Big Four truck manufacturers or their dealers is a reason for this Court to oversee this lawsuit. But other than referring to these customers generically as "fleets, dealers, and other truck purchasers," it fails to provide any facts indicating any actual "downstream" witness in Delaware. On the contrary, Plaintiffs identify two Delaware truck fleets, Allen Family Foods and Sentinel Transportation, but conspicuously fail to assert that either possesses any information relevant to the case. Plaintiffs' hypothetical point simply does not weigh in favor of Delaware.

3

Mich. 2004) ("a federal court's subpoena power is governed by Fed. R. Civ. P. 45 without regard to a party's state of incorporation. Therefore, the fact that STC and Greensteel were incorporated in Delaware is irrelevant to the issue of whether a court has the power to compel the attendance of an unwilling witness"). Plaintiffs ignore the language of Rule 45 and the caselaw, but this Court should not because it raises the possibility that critical Volvo and other non-party witnesses might not be available for trial.[3] Moreover, even if this Court could compel Volvo's witnesses to travel hundreds of miles from Greensboro, North Carolina to Wilmington for trial (or Freightliner's witnesses to come from Cleveland, North Carolina or ZF Meritor's former employees), that is hardly as convenient for them as Greensboro would be. This is significant because Plaintiffs have squarely put the truck manufacturers' conduct in issue, alleging not only that their contracts with Eaton violated the law, but also that each of them engaged in a range of other activities allegedly "precipitated" by Eaton. Compl. 68-69. Convenience of the expected trial witnesses - - and, in particular, the non-party witnesses - - is "the most important factor to consider when determining whether or not transfer is appropriate." *Memminger v. Infocure Corp.*, 2000 U.S. Dist. LEXIS 22077, at *12-13 (D. Del. Nov. 14, 2000) (attached as Exhibit 13 to Eaton's opening Memorandum); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) ("Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit . . . have traditionally weighed quite heavily in the 'balance of convenience' analysis").[4]

---

[3] Plaintiffs' acknowledgement that they may have *former* employees with relevant knowledge near their Laurinburg facility is equally significant because, while Plaintiffs promise they will do their best to make their former employees appear for trial in Wilmington, that is not the same as a North Carolina court's ability to compel their appearance in Greensboro via Fed. R. Civ. P. 45.

[4] Plaintiffs point to a second fact entirely unrelated to this action, that Eaton sued Meritor in Delaware in the mid-1990s for patent infringement (and won a jury verdict). Plaintiffs' Opp. at 10. But that is often a neutral factor in weighing the appropriate venue, particularly where, as here, Plaintiffs themselves filed an *ongoing* lawsuit against Eaton in North Carolina federal court. *Meritor Transmission Corp. v. Eaton Corporation*, C.A. No. 1:04 CV 178 (LHT) (W.D. N.C.).

Third, Plaintiffs fall back on the old saw that - - although they have been operationally based elsewhere for their entire history in the heavy duty transmission business - - their choice of forum is entitled to deference because they were incorporated in Delaware. Eaton's opening brief cited a number of cases which held that a plaintiff's choice of forum is <u>not</u> entitled to much deference where, as here, plaintiff has sued in a venue that is not its "home turf" and that has no identified connection to the facts that will likely be at issue in the case.

In response, Plaintiffs argue that "the home turf rule has little vitality following the Third Circuit's *Jumara* ruling." Plaintiffs' Opposition, at 9. The Third Circuit's decision in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), did not disavow the "home turf" rule. In fact, it did not mention the term at all. Plaintiffs cite one lone 1997 case for the proposition that *Jumara* killed the home turf rule, but more than a half dozen more recent cases attest to the continued vitality of the doctrine that a plaintiff which chooses a forum that is not its "home turf" deserves little deference. *See, e.g., Textron Innovations Inc. v. The Toro Co.*, No. Civ. A. 05-486 GMS, 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005) ("The court will afford less deference to TII's choice of Delaware as a forum because it is not its 'home turf,' or principal place of business"); *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, 2005 U.S. Dist. LEXIS 2825, at *5 (D. Del. Feb. 15, 2005) ("'[H]ome turf' refers to a corporation's principal place of business"; implicitly distinguishing "home turf" from "a corporation's decision to incorporate in a particular state"); *Stratos Lightwave, Inc. v. E20 Comm'ns, Inc.*, No. 01309, 2002 U.S. Dist. LEXIS 5653, at *6-7 (D. Del. March 26, 2002) (little deference because plaintiff "has not chosen its home turf"); *Bering Diagnostics GMBH v. Biosite Diagnostics*, No. Civ. A. 97-501 MMS, 1998 WL 24354, at *4 (D. Del. Jan. 6, 1998) ("to date [the 'home turf' rule] has not received a formal interment"). [5]

---

[5] All of those cases are consistent in holding that "home turf" means a company's principal place of business, not its state of incorporation. Plaintiffs cite *Praxair, Inc. v. ATMI, Inc.*, No. 031158, 2004 U.S. Dist. LEXIS 7076 (D. Del. Apr. 20, 2004), for the proposition that a company's place of incorporation can also qualify as its "home turf." Plaintiffs' Opp. at 9. That decision appears to be an anomaly.

5

Moreover, *Jumara* supports transferring this case to the Middle District of North Carolina because the majority of its private interest factors weigh in favor of that venue over Delaware, including: (1) North Carolina is the defendant's forum preference; (2) North Carolina is the likely location of some of the alleged facts upon which Plaintiffs' claims and/or Defendant's defenses are based; (3) North Carolina is convenient for the parties and at least two of the non-parties Plaintiffs charge with wrongdoing because Eaton, Meritor/ZF Meritor, Volvo and Freightliner all have operations there; (4) the potential unavailability in Delaware of non-party witnesses from Volvo, the other truck manufacturers, and Plaintiffs' former employees; and (5) North Carolina is the likely location of relevant books, records, data, and witnesses. In contrast, Plaintiffs have not identified any pertinent office, record, or witness in Delaware. *Jumara* itself, under similar circumstances, approved transfer because the Middle District of Pennsylvania was the location of the plaintiff's residence, the defendant was found there, and events pertinent to the lawsuit occurred there.

## CONCLUSION

This case should be transferred to the Middle District of North Carolina because that venue has a substantial connection to the facts allegedly at issue in this case. Maintaining this action in this district simply makes no sense given the district's complete lack of connection to any of the facts alleged in the Complaint. Alternatively, Eaton believes that the Western District of North Carolina is a more appropriate venue than Delaware for the reasons stated herein.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 351-9219
*Attorneys for Defendant*
*Eaton Corporation*

OF COUNSEL:

Robert F. Ruyak
Joseph A. Ostoyich
Curtis J. LeGeyt
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

December 21, 2006

## CERTIFICATE OF SERVICE

I, Donald E. Reid, hereby certify that on the 21st day of December, 2006, Eaton Corporation's Reply Memorandum In Further Support Of Its Motion To Transfer was served by electronic filing or e-mail on the following counsel of record:

>Charles M. Oberly, III, Esquire
>Oberly, Jennings & Rhodunda, P.A.
>1220 N. Market Street, Suite 710
>Wilmington, DE 19801

>Christopher Wood, Esquire
>Dickstein Shapiro LLP
>1825 Eye Street, NW
>West Tower, Suite 500
>Washington, DC 20006-5403
>Email: woodc@dicksteinshapiro.com

_____
Donald E. Reid (#1058)