IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>EATON CORPORATION, )<br>)<br>Defendant. ) | C.A. No. 06-623-SLR |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
EATON CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs' Opposition Brief underscores the Complaint's fatal flaws. First, the Complaint must be dismissed in its entirety because it does not allege that Eaton injured the competitive process, thus, enabling it to raise prices to supra-competitive levels. On the contrary, the Complaint here alleges the opposite: that Eaton *benefited* its only customers, the Big Four truck manufacturers, by *lowering prices* on its heavy duty transmissions and locking itself into those *lower prices* through long-term contracts. Plaintiffs' Opposition points to boilerplate allegations that *they* were "excluded", but even assuming that Meritor was actually out of the market(s) - - contrary to the factual allegations in the Complaint - - injury to a competitor is not sufficient to constitute injury to competition.

Second, the vast majority of Plaintiffs' allegations fail because they are time-barred. Plaintiffs' Opposition concedes that the Clayton Act's four-year statute of limitations applies to all of their claims, that the four-year period before they filed their suit only goes back to March 2002, and that the vast majority of their allegations pre-date March 2002 - - including allegations about the Freightliner, International, and Paccar contracts in 2000 and 2001 and even earlier conduct in the 1990s. The four-year statute on those acts began running when they occurred and it is long expired. The Complaint does not allege any exemption from the four-year

statute of limitations and Plaintiffs' Opposition does not point to one. The simple fact is that Plaintiffs *waited more than five years (and as much as fifteen years) after those alleged acts* to file their lawsuit and any claims based on those alleged acts are now time-barred.

### I. THE COMPLAINT'S FAILURE TO ALLEGE ANY INJURY TO THE COMPETITIVE PROCESS REQUIRES DISMISSAL

#### A. Injury To Plaintiffs Is Not Injury To Competition

Plaintiffs concede, of course, that antitrust injury is a required element of all of their claims and that antitrust injury is more than simply injury to a competitor. *See* Plaintiffs' Opp. at 12 (citing *Gill v. Del. Park LLC*, 294 F. Supp. 2d 638 (D. Del. 2003)). Indeed, the very case they cite followed the well-established rule that antitrust injury has two different and distinct elements: injury to a competitor and injury to competition. To state a claim, a Complaint must contain an allegation that defendant excluded plaintiff from participating in the market "*and* [that] the result was a decrease in competition in that market." *Gill*, 294 F. Supp. 2d at 644 (emphasis added).

Every time an alleged monopolist wins a sale or a contract, it injures a *competitor* because the competitor has lost (*i.e.*, been "excluded from") the sale or contract. But that is not injury to *competition*. Injury to competition requires plaintiff to allege (and ultimately prove) that defendant's anticompetitive conduct - - not its pro-competitive *lower* prices - - had an anticompetitive effect "beyond his own loss of business *or the market's loss of a competitor*." *California Computer Prods, Inc. v. Int'l Business Machs., Inc.*, 613 F.2d 727, 732 (9th Cir. 1979) (emphasis added).

For a competitor to allege antitrust injury, it must, thus, allege something in addition to and different from a simple allegation that a monopolist has won sales or contracts from *it*, grown stronger at *its* expense, or knocked *it* from the market. The Supreme Court has long held that the antitrust laws were designed for "the protection of *competition*, not *competitors*" and that it is "inimical" to the antitrust laws to allow a rival to claim antitrust injury

simply because *it* has been injured by defendant's conduct. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("it is inimical to the antitrust laws to award damages for losses stemming from continued competition").

Eaton's opening brief noted that the Complaint alleges that Plaintiffs have <u>not</u> been excluded from the market. Instead, the Complaint alleges that Meritor continues to participate in the market "to ensure continued customer access to the FreedomLine," an award-winning transmission manufactured by "Europe's premier transmission manufacturer," ZF Friedrichshafen ("ZF"). Meritor's relationship as the sales agent for ZF is significant because ZF is the "global leader[]" in transmission technology and the only company manufacturing manual, automated, and automatic transmissions. "No single manufacturer offer[s] such a range of products in North America." Compl. ¶¶ 38-39, 73-74.

Thus, Plaintiffs continue to operate in the market against Eaton just as they always have: as a single entity. Meritor directly participated in the market on its own from 1989-99. In 1999, it withdrew from direct participation in favor of owning 50% of the ZF Meritor LLC joint venture, which participated in the market until recently. And, Meritor is now directly participating in the market again, as ZF's sales agent. Compl. ¶¶ 73-74. Plaintiffs, thus, continue to operate as a single competitor - - just as they always have. The only change in recent years is that Meritor and ZF have changed the nature of their collaboration from a formal, separately-incorporated ZF Meritor LLC joint venture into a contractual sales agency.

Plaintiffs' Opposition fails to address any of these factual allegations and does not cite any case law for the proposition that a competitor which stays in the market has been "excluded" because it changed its status from a separately-incorporated joint venture into a sales agent. Instead, it just repeats the empty buzzword of "exclusion." Plaintiffs' Opp. at *passim*. Conclusory legalisms, however, fail as a matter of law, particularly where, as here, they are contradicted by the factual allegations of the Complaint. *See, e.g., Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 528 n. 17 (1983) (district court has "the

power to insist upon some specificity in pleading before allowing a potentially massive controversy to proceed"); *Commonwealth of Pennsylvania ex. rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 179 (3d Cir. 1988) ("for this purpose, the court does not consider conclusory recitations of law"); *see also Mason v. Am. Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003) ("legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness"); *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition").[1]

### B. Careful Scrutiny Demonstrates That Plaintiffs Have Failed To Allege Injury To The Competitive Process

Even if Plaintiffs had been excluded from the market, that would not constitute antitrust injury. Proving injury to the competitive process is different than proving injury to a competitor. In fact, a monopolist can knock its rivals out of the market entirely without necessarily injuring competition at all: "The exclusion of one or even several competitors, for a short or even a long time, is not *ipso facto* unreasonable." Instead, "[t]he exclusion of competitors is cause for antitrust concern only if it impairs the health of the competitive process

---

[1] Plaintiffs criticize Eaton for referring in its opening memorandum to their alleged "markets" as a single "market," but Eaton did so only because it was a convenient shorthand rather than having to refer to Plaintiffs' cumbersome "Class 8 linehaul," "Class 8 vocational," and "Class 8 specialty vocational" markets in every reference. Eaton did not make any legal argument related to Plaintiffs' market definition and does not do so now. In fact, the market definition allegations are immaterial for purposes of this motion because the Complaint does not allege that Plaintiffs were excluded from any of these markets: as noted above, Meritor is still in the linehaul market, and it never participated in either the vocational or specialty markets. Compl. ¶¶ 23 (identifying Eaton, Mack and Transmission Technologies Corporation as the only vocational transmission producers), 25 (General Motors' Allison division as only specialty vocational producer), ¶ 71 (Plaintiffs required "ample investment or partnership" before they would have been capable of producing vocational products).

itself." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 394 (7th Cir. 1984); *see also Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (plaintiff must demonstrate that exclusion "will foreclose *competition*"). The health of the competitive process is impaired only when the "probable (not certain) effect of the exclusion will be to raise prices above (and therefore reduce output below) the competitive level, or otherwise injure competition." *Roland Mach.*, 749 F.2d at 394.

But where is that allegation here? It does not exist. Instead, the Complaint alleges that Eaton won the second round of contracts from each of the Big Four truck manufacturers by *lowering* its prices and locking itself into *lower* prices for the long-term.

The Third Circuit, like other Circuits, requires district courts to "carefully scrutinize[]" antitrust claims brought by one competitor against another for precisely this reason: because a competitor's "interests are not necessarily congruent with the consumer's stake in competition." *Alberta Gas Chems. Ltd. v. E.I. DuPont de Nemours & Co.*, 826 F.2d 1235, 1239 (3d Cir. 1987). Careful scrutiny is necessary because a competitor might complain when its rival's conduct is too competitive:

> Actions that promote efficiency and lower prices in the marketplace, for example, may cause economic loss to competitors. Conduct that harms competitors may benefit consumers - - a result the antitrust laws were not intended to penalize.

*Barr Labs, Inc. v. Abbott Labs, Inc.*, 978 F.2d 98, 109 (3d Cir. 1992).

"Competition is a ruthless process. A firm that reduces cost and expands sales injures rivals. . . . These injuries to rivals are byproducts of vigorous competition, and the antitrust laws are not balm for rivals' wounds." *Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1338 (7th Cir. 1986). "Antitrust claims by competitors aggrieved by their rivals' low prices require critical examination because those low prices benefit consumers, and consumer welfare is the primary concern of the antitrust laws." *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 392 F. Supp. 2d 118, 129 (D. P. R. 2005). "Courts must be on guard against efforts of plaintiffs to use

the antitrust laws to insulate themselves from the impact of competition." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 55 (2d Cir. 1979).

Careful scrutiny shows that Plaintiffs' Complaint fails to allege facts indicating that Eaton injured the competitive process with the result that it has raised (or probably will) the Big Four truck manufacturers' prices to supra-competitive levels.

### 1. Eaton's Pro-Competitive Conduct Did Not Injure The Competitive Process

Eaton's opening brief cited a half dozen Supreme Court and Third Circuit decisions which held that a monopolist acts *pro-competitively* when it lowers its prices to win business. *See, e.g.*, Memorandum In Support Of Eaton Corporation's Motion To Dismiss Plaintiffs' Complaint, at 11-14 (citing cases). Plaintiffs' Opposition Brief does not address, let alone distinguish, any of these cases.

The rule of those cases is clear: "It is in the interest of competition to permit dominant firms to engage in vigorous competition, including price competition." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 343 (1990). Any rule that prohibited a monopolist from gaining market share by decreasing its prices would be "perverse." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 116 (1986).

An alleged monopolist is, obviously, permitted to provide these pro-competitive, lower prices in a contract. *Barr Labs*, 978 F.2d at 111 ("warehouse chains entered the contracts because of the inherent advantages they saw in them in price, convenience, and service"). And, it is permitted to provide lower contractual prices even if the contract is expressly exclusive (unlike the contracts alleged here) and lasts five years or longer. *Jefferson Parish Mem. Hosp. Dist. v. Hyde*, 466 U.S. 2, 45 (1984) (O'Connor, J. concurring) (five-year exclusive contract "may be substantially procompetitive by ensuring stable markets and encouraging long-term, mutually advantageous business relationships"); *Standard Oil Co. v. United States*, 337 U.S. 293, 306 (1949) ("In the case of the buyer, they may assure supply [and] afford protection against rises in price").

The Complaint here alleges pro-competitive conduct: that Eaton won a second generation of contracts with each of the Big Four truck manufacturers by *lowering* its prices. Complaint 49 ("millions in annual rebates and other incentives"), 57 ("incentives"), 58 ("compelling incentive"), 61 ("rebates"), 65 ("incentives" "price reductions"), 68 ("rebates"), 72 ("rebates"). The Big Four customers, of course, *benefited* from Eaton's lower prices - - which may explain why not one of them has complained about Eaton's conduct.

Plaintiffs argue that they have alleged antitrust injury, however, because paragraphs 75-76 vaguely assert - - in purely conclusory language - - that Eaton "harmed competition" by "limiting consumer choice" and that "consumers would have benefited from lower prices for transmissions" absent Eaton's conduct. Plaintiffs' Opp. at 1, 3, 13 (citing Complaint ¶¶ 75, 76). The Complaint does not identify any of these injured "consumers," however, and there are none: the Big Four truck manufacturers are the "only" direct purchasers of heavy duty transmissions and they benefited from Eaton's reduced prices. Compl. ¶ 27. The purely conclusory allegation that unidentified "consumers" were injured cannot be credited. *E.g., Gill*, 294 F. Supp. 2d at 644 ("The antitrust injury requirement, however, 'cannot be met by broad allegations of harm to the 'market' as an abstract entity'") (citing *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 n. 8 (1990)).

In *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984), the Seventh Circuit affirmed dismissal for failure to plead injury to competition in a case similar to this one, in which plaintiff alleged, in conclusory terms, that that its major customer, Ford, injured competition because it drove plaintiff from the market by purchasing more car carrying services from plaintiff's rival (thus, limiting consumer choice). The Court found that the conclusory allegation was insufficient because, as here, the Complaint contained no *factual* allegation of injury to the competitive process: "Specifically, there are no allegations that, having terminated Car Carriers in favor of Nu-Car, Ford was compelled, or would be compelled, to pay prices that were not the result of the competitive process." 745 F.2d at 1110. Moreover, the Court concluded that antitrust injury was inherently implausible on the face of the allegations:

7

> [I]t is inherently implausible that Ford, as a buyer that could 'dictate and control[]' the tariffs of its suppliers of transportation services, would conspire in order to allow its new carrier, Nu-Car, to charge non-competitive prices; the plaintiffs are alleging, in essence, that Ford conspired to injure itself.

*Id.* at 1109. *See also ASA Accugrade, Inc. v. American Numismatic Ass'n*, 370 F. Supp. 2d 213, 216 (D. D.C. 2005) (dismissing as conclusory allegations that defendants' antitrust violations "have and continue to harm competition" because their effect "was to diminish competition in the coin grading and authenticating marketplace by removing . . . [plaintiff's] market share and allowing . . . [one competitor] to increase its market share to the point where it exclusively controls prices in the market"); *Philips Getschow Co. v. Green Bay Brown County Prof'l Football Stadium Dist.*, 270 F. Supp. 1043, 1048 (E.D. Wisc. 2003) ("Philips merely asserts in conclusory fashion that the [alleged violation] had 'inherent anti-competitive consequences.' But the facts Philips alleges in the complaint actually resulted in *increased* competition, and it is the increased competition that caused Philips harm") (emphasis in original); *Reiffin v. Microsoft Corp.*, 158 F. Supp. 2d 1016, 1034 (N.D. Cal. 2001) (dismissing Sherman Act §§ 1 and 2 claims for failure to plead injury to competition because an allegation that defendant harmed competition by driving plaintiff from the market was insufficient: "An obvious side effect of preserving this competitive process is that businesses unable to compete go out of business. This signifies the vigor of competition, not its absence"); *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1285 (D. Kan. 1997) ("Plaintiff is not saved by its conclusory allegation that defendant's conduct injured competition or by its argument that the removal of one competitor from the market injures competition generally").

### 2. *LePage's* and *Dentsply* Are Distinguishable Because Defendants In Those Cases Injured Competitors *And* Competition

Eaton is not arguing that the types of conduct Plaintiffs have alleged - - lower pricing, "de facto" exclusive deals, or bundled rebates - - could never cause antitrust injury.[2] On the contrary, Eaton's opening brief cited a case involving each type of conduct where the Court noted - - in contrast to the allegations here - - that defendant's conduct had injured the competitive process and enabled it to raise prices to supra-competitive levels.

A monopolist could use lower prices to injure competition if, for example, it drove its rivals out of the market by lowering its prices below its costs of production (thus, losing money on each additional unit it sold) *and* it subsequently increased its prices to supra-competitive levels for a long enough period of time that it had a "dangerous probability, of recouping its investment in below-cost prices." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993). The first prong of such conduct (below-cost pricing) injures a competitor, but does not - - by itself - - injure competition because lower prices are always pro-competitive. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990) ("Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they cannot give rise to antitrust injury"). The second prong (subsequent supra-competitive pricing for a sustained period of time) is, thus, necessary to establish injury to the competitive process. *See Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191, 1200 (3d Cir. 1995) ("Predatory pricing schemes that fail at the recoupment stage may injure specific competitors, like [plaintiff], but do not injure competition (i.e., they do not injure consumers) and so produce no antitrust injury"). The Complaint here does not allege either prong of this predatory pricing test (*i.e.*, it does not allege

---

[2] As noted in Eaton's opening brief, the Complaint does not allege that the contracts required the Big Four truck companies to buy only Eaton heavy duty transmissions, but alleges that the practical effect of Eaton's discounts, rebates and price incentives was that each of the Big Four preferred Eaton's lower-priced transmissions, resulting in "de facto" exclusivity. *Id.* 3 ("de facto"), 48 ("de facto"), 70 ("de facto"), 72 ("practical effect").

9

below-cost pricing or subsequent supra-competitive pricing that raises a "dangerous probability" of recoupment), and Plaintiffs' Opposition does not argue for its applicability.

By the same token, as discussed in Eaton's opening brief and above, a monopolist's exclusive dealing might cause antitrust injury if it excluded at least one significant competitor from the market *and* the probable effect of defendant's conduct is that it will raise prices above the competitive level. Eaton noted in its opening brief that both *Dentsply* and *LePage's* were distinguishable from the Complaint here because in each case the alleged monopolist not only excluded its rivals (causing injury to its competitors), but also priced supra-competitively as a result (causing injury to competition). *See United States v. Denstply*, 399 F. 3d 181, 185 (3d Cir. 2005) (defendant excluded rivals *and* had "a reputation for aggressive price increases in the market and has created a high price umbrella"); *LePage's v. 3M*, 324 F.3d 141, 163 ("Scotch" tape monopolist used rebates bundled across a diverse range of unrelated health care, home care, and retail auto products to exclude its private-label tape rival with the expectation that it would "then cease or severely curtail its own private-label and second-tier tape lines" and raise prices; defendant's "interest in raising prices is well-documented").[3]

Eaton pointed out in its opening brief that the Plaintiffs here have not alleged any comparable injury to competition because they do not allege that Eaton has increased prices (or probably will) following the alleged exclusion. On the contrary, the Complaint alleges that Eaton has locked itself into lower prices through multi-year contracts. Plaintiffs' Opposition does not

---

[3] The *Dentsply* and *LePage's* cases are also factually distinguishable for a host of other reasons, as set out in Eaton's opening memorandum. Notably, *Denstply* was brought by the government, not an aggrieved competitor, and *LePage's* involved a situation where the defendant excluded its much smaller rival by requiring customers to buy a range of products unrelated to its monopoly "Scotch" tape in order to get rebates on its tape. The smaller rival simply did not make the diverse set of unrelated products and, thus, could not match defendant's rebates. Plaintiffs' Opposition does not address any of these factual distinctions and for good reason: Meritor is a multi-billion dollar company that sells a much broader range of "DriveTrain Plus" products to the Big Four truck manufacturers than Eaton does, including not only transmissions, but clutches, axles, drive shafts, and braking systems. *See* Eaton Memorandum, at 3. As a result, it is quite different from the small *LePage's* plaintiff.

address the point at all. Instead, Plaintiffs just cite *Dentsply* and *LePage's* without explaining why - - despite this critical difference from their Complaint - - either case should apply.[4] Because Plaintiffs' Complaint fails to allege injury to the competitive process, it should be dismissed in its entirety.[5]

## II. PLAINTIFFS' COMPLAINTS ABOUT 2000-01 CONTRACTS (AND EARLIER CONDUCT IN THE 1990s) ARE TIME BARRED

The vast majority of Plaintiffs' allegations fail to state a claim for another reason: they are time-barred. Plaintiffs concede that the Clayton Act's four-year statute of limitations applies to all of their claims, that the four-year period before they filed their suit only goes back to March 2002, and that many of their allegations pre-date March 2002 - - including allegations concerning the Freightliner, International, and Paccar contracts in 2000 and 2001 and even earlier conduct in the 1990s. Plaintiffs' Opp. at 21-22. Allegations that pre-date March 2002 are, on their face, time-barred.[6]

Plaintiffs respond by arguing that they also alleged at least two acts within the limitations period: Volvo/Mack's decision to award its contract to Eaton in the Fall of 2002 and

---

[4] Plaintiffs' citation to *Eli Lilly* is inapposite for the same reason: in that case, the defendant not only excluded a competitor it injured competition by subsequently keeping its prices artificially high. *See, e.g. SmithKline Corp. v. Eli Lilly and Co.*, 575 F.2d 1056, 1063 (3d Cir. 1978) (defendant maintained artificially high price of Keflin despite general erosion of prices of related drugs).

[5] The Complaint must also be dismissed to the extent Meritor is claiming that it was injured as a shareholder of ZF Meritor. Eaton's opening memorandum cited several cases for the well-established rule that a shareholder has no standing under the antitrust laws to sue for alleged harms suffered by the company it owns. *See* Eaton Memorandum, at 15 n. 12. Plaintiffs' Opposition does not address the point at all.

[6] Eaton's opening memorandum cited case law establishing that the statute of limitations accrues and begins running on the date an allegedly anticompetitive contract is signed. The fact that Eaton subsequently delivered product under the contracts during the four-year period does not solve the time bar. Eaton Memorandum, at 19-20 and n. 17. Plaintiffs' Opposition does not address this case law at all, other than to point out that two of the cases were handed down by the Fifth Circuit.

11

International's decision to renew its contract with Eaton in 2006. But these are red herrings: Eaton did not argue that Plaintiffs' allegations about acts *within* the statute of limitations period were time-barred; it argued that the allegations about acts that *pre-date* March 2002 are time-barred.

Plaintiffs' Opposition does not cite any case law (and there is none) for the novel proposition that a plaintiff may disregard the Clayton Act's statute of limitations, and go back to the beginning of time, if the defendant has committed any act during the statutory period. If that were the rule, the statute of limitations would be meaningless. It is not. Courts routinely dismiss allegations that pre-date the Clayton Act's four-year limitations period. *See, e.g., Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1052-53 (8th Cir. 2000) (reversing district court's failure to dismiss claims that defendant's acquisitions were anticompetitive: claims based upon the acquisitions were time-barred because they occurred at least five years before plaintiffs filed suit). This is true even when Plaintiffs allege that all of the defendant's acts together are part of a "continuing" violation. *E.g., Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997) ("the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period").[7] There is a narrow exception in conspiracy cases where the defendants "fraudulently concealed" a violation that began more than four years ago and continued into the limitations period. But the Complaint does not allege fraudulent concealment and the Plaintiffs' Opposition does not mention it.[8] Plaintiffs could not allege fraudulent concealment given the undisputed fact that their General Counsel sent a letter to

---

[7] *Klehr* was a civil racketeering case, but the opinion contains a lengthy discussion of why and how the Clayton Act's statute of limitations served as the model for and is applicable to civil racketeering cases- - including on this very point. *See Klehr*, 521 U.S. at 190 ("as in the antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other, earlier predicate acts that took place outside the limitations period").

[8] Plaintiffs cite to cases in which fraudulent concealment was alleged, like *In re Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144 (3d Cir. 1996), but those cases do not apply to their Complaint which lacks a fraudulent concealment allegation.

Eaton in January 2001 - - more than five years before they filed this suit - - claiming that Eaton's contract with Freightliner was anticompetitive.

As a result, the Court should dismiss all allegations relating to conduct that pre-dates the March 2002 statute of limitations cut-off.[9]

---

[9] Plaintiffs argue that a court can only dismiss entire "claims" not time-barred allegations, but that is precisely what statutes of limitations require courts to do. Moreover, courts routinely dismiss allegations in a range of circumstances where, as here, they cannot give rise to antitrust liability. *See, e.g., In re Intel Corp. Microprocessor Antitrust Litig.*, 352 F. Supp. 2d 555 (D. Del. 2006).

## CONCLUSION

For the foregoing reasons, this Court should grant Eaton's motion and dismiss it from this litigation.

                                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                        /s/ Donald E. Reid
                                        Donald E. Reid (#1058)
                                        Jason A. Cincilla (#4232)
                                        1201 N. Market Street
                                        P.O. Box 1347
                                        Wilmington, Delaware  19899-1347
                                        (302) 351-9219

OF COUNSEL:                          *Attorneys for Defendant*
                                        *Eaton Corporation*

Robert F. Ruyak
Joseph A. Ostoyich
Curtis J. LeGeyt
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

December 21, 2006

## CERTIFICATE OF SERVICE

I, Donald E. Reid, hereby certify that on the 21st day of December, 2006, a Reply Memorandum In Further Support Of Eaton Corporation's Motion To Dismiss Plaintiffs' Complaint was served by electronic filing or e-mail on the following counsel of record:

> Charles M. Oberly, III, Esquire
> Oberly, Jennings & Rhodunda, P.A.
> 1220 N. Market Street, Suite 710
> Wilmington, DE 19801
>
> Christopher Wood, Esquire
> Dickstein Shapiro LLP
> 1825 Eye Street, NW
> West Tower, Suite 500
> Washington, DC 20006-5403
> Email: woodc@dicksteinshapiro.com

_____
Donald E. Reid (#1058)