IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>EATON CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>) C.A. No. 06-623-SLR<br>)<br>)<br>)<br>)<br>) |

## EATON CORPORATION'S MOTION FOR REARGUMENT

Defendant Eaton Corporation respectfully asks the Court to reconsider its June 13, 2007 Order denying Eaton's motion to dismiss. Reconsideration is necessary because the Court applied a standard of review that was recently overturned by the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007). That error is significant here because Plaintiffs' Complaint fails to meet the Fed. R. Civ. P. 8(a)(2) pleading standard established in *Twombly*, and must be dismissed.

The Court denied Defendant's motion to dismiss on the grounds that a complaint can be dismissed "only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief." June 13, 2007 Order at 1. The Court relied upon *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for that standard.

In *Twombly*, the Supreme Court expressly disavowed the *Conley* "no set of facts" standard, and it is no longer good law: "this famous observation has earned its retirement." *Twombly*, 126 S. Ct. at 1963, 1969. *Conley* had long been criticized by courts and academics for "turn[ing] Rule 8 on its head." *Id.* (citation omitted). "We could go on, but there is no need to pile up further citations to show that *Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough." *Id.* The *Conley* standard was "best forgotten." *Id.*

Instead, *Twombly* held that a complaint must meet a more rigorous standard to survive dismissal: it must plead **facts** that **plausibly meet** each element of the proposed cause of action. *Twombly* concerned the proper pleading standards in a Sherman Act Section 1 case, but the Court's holding is broader and covers any cause of action. The Court first analyzed the proper pleading standard for any case under Rule 8(a)(2). *Id.* at 1964 ("the antecedent question"). It noted that Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief, including "the grounds upon which it rests." *Id.* The Court held that:

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires **more than labels and conclusions**, and a formulaic recitation of the elements of a cause of action will not do.

*Id.* at 1964-65 (emphasis added). Instead, the Complaint must contain **facts** that plausibly meet each element of a valid cause of action. The Court then applied "these general standards" to plaintiffs' Section 1 claim. *Id.* at 1965. In the context of Section 1, which requires an allegation that defendants conspired, the Court held that "a bare assertion of conspiracy will not suffice." *Id.* at 1966. Instead, there must be "enough factual matter (taken as true) to suggest that an agreement was made" and the facts must be "suggestive enough to render [the alleged] § 1 conspiracy plausible." *Id.* at 1965.

This Court should apply *Twombly* to reconsider its earlier decision and dismiss Plaintiffs' Complaint. The key legal element here is the requirement that plaintiffs allege "antitrust injury" in order to state a valid Sherman Act Section 1 and Section 2 claim. Plaintiffs' Complaint labels Defendants' conduct "anticompetitive" and this Court held that was enough to satisfy antitrust injury. June 13, 2007 Order, at 2. *Twombly* requires more, however. It requires **facts plausibly** suggesting antitrust injury.

Antitrust injury is a term of art. It means harm to the competitive process (not simply harm to a competitor). *E.g., Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (antitrust laws were enacted for "the protection of *competition*, not *competitors*") (emphasis added).

2

Plaintiffs' Complaint alleges they were excluded from the market. But that is only an allegation of (at most) harm to a competitor, not an allegation of harm to the competitive process. "The exclusion of competitors is cause for antitrust concern **only** if it impairs the health of the competitive process itself." *Roland Mach. Co. v. Dresser Indus.*, Inc., 749 F.2d 380, 394 (7th Cir. 1984) (emphasis added). The health of the competitive process is impaired only when the "probable (not certain) effect of the exclusion will be to raise prices above (and therefore reduce output below) the competitive level, or otherwise injure competition." *Id.* Exclusive deals that simply lower prices or provide other benefits to customers enhance competition and are, thus, lawful even though they harm a competitor.

Plaintiffs' Complaint does not make any factual allegation that Eaton raised or will likely raise its prices above or reduce its output below the competitive level -- and it could not. That is because the only factual allegation about the competitive process shows that Eaton *lowered* its prices and locked itself into those lower prices for the long-term. Compl. ¶¶ 49 ("millions in annual rebates and other incentives"), 61 ("rebates"), 65 ("price reductions"), 68 ("rebates"), 72 ("rebates"). That is a benefit to customers -- which may explain why customers are not complaining about the contracts they signed. Courts routinely find such contracts procompetitive and, therefore, lawful. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45 (1984) (O'Connor, J. concurring) ("may be substantially procompetitive by ensuring stable markets and encouraging long-term, mutually advantageous business relationships"); *Standard Oil Co. v. United States*, 337 U.S. 293, 306-07 (1949) ("may assure supply, afford protection against rises in price, enable long-term planning on the basis of known costs"); *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 111 (3d Cir. 1992) ("warehouse chains entered the contracts because of the inherent advantages they saw in them in price, convenience, and service").

"Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they cannot give rise to antitrust injury." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990). "Actions that promote efficiency and lower prices in the marketplace, for example, may cause

economic loss to competitors. Conduct that harms competitors may benefit consumers -- a result the antitrust laws were not intended to penalize." *Barr Labs.*, 978 F.2d at 109. "A firm that reduces cost and expands sales injures rivals . . . . These injuries to rivals are byproducts of vigorous competition, and the antitrust laws are not balm for rivals' wounds." *Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1338 (7th Cir. 1986). Any rule that prohibited a monopolist from gaining market share by lowering its prices "would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. The antitrust laws require no such perverse result." *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 116 (1986).

Plaintiffs cannot get past a motion to dismiss by papering over their own factual allegations of lower prices and sticking a conclusory "anticompetitive" label on them. *Twombly*, 127 S. Ct. at 1065 ("requires more than labels and conclusions"). *See also Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo., Inc.* 836 F.2d 173, 179 (3d Cir. 1987) ("for this purpose the court does not consider conclusory recitations of law"); *Gill v. Del. Park LLC*, 294 F. Supp. 2d 638, 644 (D. Del. 2003) ("The antitrust injury requirement, however, 'cannot be met by broad allegations of harm to the "market" as an abstract entity'") (citing *Atlantic Richfield*, 495 U.S. at 340 n. 8)); *Phillips Getschow Co. v. Green Bay Brown County Prof'l Football Stadium Dist.*, 270 F. Supp. 2d 1043, 1048 (E.D. Wis. 2003) ("Phillips merely asserts in conclusory fashion that the [alleged violation] had 'inherent anti-competitive consequences.' But the facts Phillips alleges in the complaint actually resulted in *increased* competition") (citation omitted)).

Dismissal is, thus, warranted here for the same reason the Supreme Court concluded dismissal was appropriate in *Twombly*: Plaintiffs have failed to plead **facts** that plausibly meet a critical element of their Sherman Act cause of action. A plaintiff that fails to plead the required facts cannot force a defendant to incur "the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence.'" *Twombly*, 127 S. Ct. at 1967. Instead, *Twombly* held that deficiencies in a plaintiff's claim should be weeded out at the pleading stage, which is "'the point of minimum expenditure of time and money by the parties and the court,'" before the expense and burden of

discovery are incurred. *Id.* at 1966 (citation omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'" *Id.* at 1967.

Plaintiffs here have alleged that Eaton's monopoly conduct began more than fifteen years ago. Discovery in this case, if it proceeds, will be massive. Indeed, Plaintiffs have already served *110 document requests* on Eaton essentially seeking every document in Eaton's possession relating in any way to the production or sale of heavy duty truck transmissions over the last *eleven and a half years*. Ten of the requests call for documents going back *more than seventeen years*. Requiring the parties to expend significant sums litigating this case through discovery -- when Plaintiffs' allegations do not state a valid claim -- puts the cart before the horse. *Twombly* makes clear that a plaintiff must plead facts that plausibly support each element of its claim (and here, in particular, the antitrust injury element) before the parties should be forced to submit to expensive and burdensome discovery. For these reasons, Plaintiffs' Complaint should be dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Donald E. Reid*

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 351-9219
  *Attorneys for Defendant*
  *Eaton Corporation*

OF COUNSEL:

Robert F. Ruyak
Joseph A. Ostoyich
Curtis J. LeGeyt
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

June 29, 2007

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>EATON CORPORATION, )<br>)<br>Defendant. ) | C.A. No. 06-623-SLR |

PROPOSED ORDER

This matter is before the Court on the Motion of Defendant Eaton Corporation ("Eaton") for reargument of the Court's June 13, 2007 Order Denying Eaton's Motion to Dismiss. In consideration of Eaton's motion, the Court being otherwise fully advised, it is hereby:

ORDERED that the Motion for Reargument is hereby GRANTED and Eaton's Motion To Dismiss is hereby GRANTED..

SO ORDERED this _____ day of _____, 2007.

_____
Hon. Sue L. Robinson, Chief Judge

**CERTIFICATE OF SERVICE**

I, Donald E. Reid, hereby certify that on the 29th day of June, 2007, Eaton Corporation's Motion For Reargument was served by electronic filing or e-mail on the following counsel of record:

>Charles M. Oberly, III, Esquire
>Oberly, Jennings & Rhodunda, P.A.
>1220 N. Market Street, Suite 710
>Wilmington, DE 19801
>coberly@ojlaw.com
>
>Christopher Wood, Esquire
>Dickstein Shapiro LLP
>1825 Eye Street, NW
>West Tower, Suite 500
>Washington, DC 20006-5403
>Email: woodc@dicksteinshapiro.com

_____
Donald E. Reid (#1058)