AO88 (Rev. 12/06) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF NORTH CAROLINA

ZF Meritor LLC and Meritor Transmission Corp.

V.

Eaton Corp.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 06-623-SLR (D. Delaware)

TO: Volvo Trucks North America, Inc. and Mack Trucks, Inc.
7900 National Service Road
Greensboro, NC 27402-6115

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attached Exhibit A

| PLACE Volvo Trucks North America, Inc. 7900 National Service Road Greensboro, NC 27402 | DATE AND TIME 8/15/2007 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *(Attorney for plaintiff)* | DATE 7/9/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Christopher H. Wood, Dickstein Shapiro, LLP
1825 Eye Street NW, Washington, DC 20006 202-420-4878

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | JULY 12, 2007 | Volvo Trucks North America and Mack Trucks, Inc |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Therence Pickett, General Counsel | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Steve Mitchell | Process Server |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___JULY 12, 2007___                    _[signature]_
                    DATE                              SIGNATURE OF SERVER

ADDRESS OF SERVER

Capitol Process Services, Inc.
1827 18th Street, NW
Washington, DC 20009

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

|  |  |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION,<br><br>              Plaintiffs,<br><br>              v.<br><br>EATON CORPORATION,<br><br>              Defendant. | Civil Action No. 06-623-SLR |

# EXHIBIT A

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, you have been subpoenaed to "produce and permit inspection, copying, testing, or sampling of designated books, documents, electronically stored information, or tangible things in the possession, custody or control" of Volvo Trucks North America, Inc. and Mack Trucks, Inc.

## DEFINITIONS

1.     "*You*," "*Your*," or "*Volvo/Mack*" means Volvo Trucks North America, Inc. and Mack Trucks, Inc., its present and former officers, directors, employees, agents, representatives, attorneys, consultants and all other persons authorized to act or acting on its behalf for any purpose whatsoever, and all predecessors, successors, direct parents, affiliates, subsidiaries, partnerships, joint ventures or initiatives, including but not limited to divisions, business units, and offices.

2.     "*ZF Meritor*" means plaintiffs ZF Meritor LLC and Meritor Transmission Corporation, their present and former officers, directors, employees, agents, representatives, attorneys, consultants and all other persons authorized to act or acting on its behalf for any purpose

whatsoever, and all predecessors, successors, direct parents, affiliates, subsidiaries, partnerships, joint ventures or initiatives, divisions, business units, and offices.

3.   "*Eaton*" means defendant Eaton Corporation, its present and former officers, directors, employees, agents, representatives, attorneys, consultants and all other persons authorized to act or acting on its behalf for any purpose whatsoever, and all predecessors, successors, direct parents, affiliates, subsidiaries, partnerships, joint ventures or initiatives (e.g., Roadranger), divisions, business units, and offices.

4.   "*OEMs*" means Freightliner LLC, *Volvo/Mack*, Paccar Inc. (including Peterbilt Motors Company and Kenworth Truck Company), and International Truck and Engine Corporation.

5.   "*Class 8 Truck*" means any vehicle with a gross vehicle weight of 33,001 pounds or more; these vehicles sometimes are referred to as heavy-duty trucks.

6.   "*Transmission*" means all makes and models or variations of transmissions used in *Class 8 Trucks*, whether used for linehaul, vocational, or other applications, and whether manual, automated manual or automated mechanical, or automatic.

7.   "*North America*" and "*North American*" means the United States, Canada, and Mexico.

8.   "*Person*" means natural persons and individuals, and all legal entities, publicly or privately held, including without limitation, corporations, partnerships, limited liability companies, joint ventures, associations, non-profit and for-profit organizations, governments and public agencies and departments.

9.   "*Document*" is used in the broadest sense permissible under Fed. R. Civ. P. 34, and includes, without limitation, all originals and non-identical copies and drafts, whether different from the original in any way (e.g., marginalia, handwritten notations, email conversation threads or document family groups containing the original), of all writings, electronically stored information, data, graphic matter, visual or aural representations (e.g., photographs, recordings,

drawings, voice messages and voicemails), and any other medium upon which, or from which any representation, *Communication*, or other information can be accessed, recorded, extracted, or memorialized.

10. "*Communication*" means the conveyance of information from a *Person* to another *Person*, without regard to the nature or number of the recipients, or the medium used for such conveyance.

11. "*Relating to*" and "*Relate to*" means directly or indirectly bearing upon or touching on, and therefore also means "concerning," "pertaining to," "referring to," "regarding," "dealing with," "connected with," and "evidencing."

12. "*Price*" and "*Pricing*" mean actual, proposed, or recommended monetary values or rates; cost downs, increases or decreases in price; retail, wholesale, transfer, or exchange prices; markups, discounts, rebates, concessions, residual valuations, promotions or promotional allowances; competitive equalization (CE) or price assistance (PA); and financing, warranty, policy, or other related costs or charges.

## INSTRUCTIONS

1. Unless otherwise indicated, each of these requests seeks *Documents Relating to North America* and for the period beginning January 1, 1996 and extending through the present, including any *Documents* dated, generated, referring to, sent, or received during that period.

2. To the extent responsive *Documents* are maintained electronically, including, without limitation, *Documents* stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether maintained on or off *Your* premises, produce these *Documents* in the electronic, machine-readable form, in which they ordinarily are retained and in a manner

that maintains the integrity of metadata, together with data dictionaries, lookup tables or other instructive materials necessary to read, display, and interpret the *Documents*.

3.      *Documents* in *Your* possession, custody or control include, without limitation, information in headquarters buildings; corporate, divisional, regional, field marketing and sales, or other offices; plants, engineering and production facilities; on-and-off-site record retention, data, and electronic backup facilities; and homes, automobiles, and other locations in which *Documents* are stored by *Volvo/Mack*, its employees, officers and directors, and agents or representatives, whether attorneys, consultants or other authorized *Persons*.

4.      If any portion of a *Document* is responsive, produce for inspection the entire document, including any attachments and exhibits thereto.  Also produce all folder or file jackets and covers in which responsive *Documents* are contained, including any labels thereon.

5.      If *You* do not have in *Your* possession, custody or control *Documents* responsive to all or part of a request herein, please so state in the response to that request and identify any category or sub-category of requested *Document* not in *Your* possession, custody or control.

6.      For each responsive *Document* withheld from inspection and copying on the basis of an asserted privilege or other protection, provide a log to counsel for *ZF Meritor* containing information sufficient to meet the requirements of Fed. R. Civ. Pro. 45(d)(2).  Log attachments claimed to be privileged or otherwise protected separately from the *Document* to which it is attached.  For each logged *Document*, produce for inspection that portion(s) of the *Document* (including attachments and exhibits thereto) that is not claimed to be privileged or otherwise protected from inspection, with the redacted portion(s) of the *Document* identified with a redaction label.

7.      If *You* decline to produce for inspection *Documents* requested herein on the basis of an objection (other than privilege), identify the specific category or sub-category of *Documents*

being withheld and explicitly state the reason for the objection. Thus, for example, instead of objecting by stating only that production would be "unduly burdensome" or that the information is not reasonably accessible, please explain why the production would cause the claimed burden or the information is not reasonably accessible. Similarly, and by further example, if *You* consider a request to be "overly broad," or "unduly costly" please explain why *You* believe it to be so.

8. If any of the definitions, instructions, or requests herein are objected to as vague or ambiguous, identify the language *You* believe causes the vagueness or ambiguity and state how *You* have interpreted the contested language in formulating *Your* response(s) and *Document* production.

9. The conjunctive (and) is to be read as if also stated in the disjunctive (or), and vice versa; the singular form of a noun is to be read as including the plural form, and vice versa; the word "all" is to be read as including the word "each," and vice versa; the word "any" is to be read as including the word "every," and vice versa; the masculine gender of any noun or pronoun is to be read as including the feminine gender, and vice versa; and the past tense of any verb is to be read as including the present tense, and vice versa.

10. Purchase and sales invoices, and technical, engineering *Documents*, such as engineering drawings, layouts and lab work orders, responsive to the requests herein do not need to be produced upon the inspection date set forth in the subpoena as long as they are preserved and made available for production upon request.

11. *Your* production of *Documents* shall be covered by the Protective Order entered by the Court in this litigation.

## DOCUMENTS TO BE PRODUCED

**Organization**

1.      *Documents* sufficient to show the organization of *Your* boards, committees, project teams, other groups or units, and executive, managerial, purchasing, procurement, engineering, product development and other employees that have or had responsibility *Relating to Transmissions*.

2.      For the period January 1, 1990 through the present, *Documents* constituting or *Relating to* contracts and agreements, including proposed or actual revisions, amendments or other modifications or adjustments thereto, between *You* and any *Transmission* manufacturer for the supply of *Transmissions*.

3.      *Documents* (other than those identified in response to the preceding request) constituting or *Relating to* any proposed or contemplated *Transmission* supply agreement or offer to supply or purchase *Transmissions* between *You* and any *Transmission* manufacturer.

4.      *Documents* sufficient to show each *Transmission* manufacturer program, promotion, or contractual provision pursuant to which *You* received compensation or other benefits on *Your* purchases of *Transmissions*, and for each such program, promotion or provision, including but not limited to provisions providing for penetration-based rebates, the monthly, quarterly and annual compensation *You* received, by *Transmission* model number.

5.      *Documents* constituting, reciting or discussing the factors *You* assessed or materials *You* referenced when selecting *Transmissions* for installation in *Class 8 Trucks*, including but not limited to component procurement or purchasing manuals, guidelines, guides, or protocols.

6.      *Documents Relating to Your* decisions as to whether *You* would make *ZF Meritor*, ZF Friedrichshafen AG, or *Eaton Transmissions* available in *Your Class 8 Trucks*, including but not

limited to whether *You* would engineer those manufacturers' *Transmissions* into new *Class 8 Truck* models.

7.    *Documents* sufficient to show the *Prices You* paid for *Transmissions*, by *Transmission* model number.

8.    *Documents* constituting or *Relating to Communications* between *You* and any *Transmission* manufacturer *Relating to* proposed or actual changes in the *Prices You* paid for *Transmissions*.

9.    *Documents Relating to* the published status of *Transmissions* offered by *Eaton*, *ZF Meritor*, or any other *Person* in *Your* data book, specification software, or other *Class 8 Truck* component specification publication, including but not limited to *Communications* about standard, exclusive, sole, preferred or optional position, or the removal or elimination of *Transmissions* from published status.

10.    *Documents Relating to* the *Prices You* listed for *Transmissions* in *Your* data book, specification software, or other *Class 8 Truck* component specification publication, including but not limited to the actual *Prices* listed and how *You* selected those *Prices*, whether through the use of factors, formulas, or other methods, including *Communications* with third parties.

11.    *Documents* constituting *Your Class 8 Truck* data books, specification software, and other component specification publications as they *Relate to Transmissions*.

12.    *Documents Relating to* the *Prices You* charged or offered for *Transmissions* <u>not</u> listed in *Your* data book, specification software, or other *Class 8 Truck* component specification publication, including but not limited to the *Prices* offered and how *You* selected those *Prices*, whether through the use of factors, formulas, or other methods, including *Communications* with third parties.

13. *Documents* constituting or recounting *Your* marketing, business, procurement, strategic, sales, and operating plans, as well as studies, analyses, presentations, and overviews *Relating to Transmissions*.

14. *Documents* constituting or recounting *Your* forecasts, predictions, or projections for *Class 8 Truck* purchaser demand for manual, automated manual or automated mechanical, and automatic *Transmissions*.

15. *Documents* sufficient to show, on an annual basis, *Your* share in each of the markets for *Class 8 Trucks* (e.g., linehaul), and the share of *Your* competitors in those markets as a percentage of the total dollar volume of sales, and as a percentage of the total number of units sold.

16. *Documents Relating to Your,* or any other *Person's,* actual or potential entry into, or exit from, the markets for *Transmissions*, including but not limited to the entry of Rockwell International Corporation in or around 1988.

17. *Documents Relating to* competition, or the absence of competition, among or between *Transmission* manufacturers for the sale of *Transmissions*.

18. *Documents* constituting or *Relating to Communications* between *You* and *Eaton Relating to ZF Meritor* or ZF Friedrichshafen AG.

19. *Documents* constituting or *Relating to Communications* between *You* and *Eaton Relating to* marketing, planning, or strategies, in the markets for *Transmissions*.

20. *Documents* constituting or *Relating to Communications* between *You* and *Eaton Relating to* patent proceedings *Eaton* would pursue or consider pursuing against *You* if *You* collaborated with *ZF Meritor* on *Transmission* technology or *Transmission* technology-related transactions.

21. *Documents* constituting or *Relating to Communications* between *You* and *Eaton* or any other *Person Relating to* the inclusion or exclusion of the FreedomLine *Transmission* from the penetration provisions set forth in *Your Transmission* supply agreements with *Eaton*.

22. *Documents Relating to* the performance, modification, enforcement, breach, or implementation of *Your Transmission* supply agreements with *Eaton*, including but not limited to the withholding, decrease, or loss of any benefit under those contracts, such as rebates, marketing funds, or cost downs for failure to reach specified *Transmission* penetration goals.

23. *Documents Relating to* inducements offered by *Eaton* to increase *Your* purchases or specification of *Eaton Transmissions* or decrease *Your* purchases or specification of other manufacturers' *Transmissions*.

24. *Documents Relating to* the inclusion or exclusion of *ZF Meritor Transmissions*, or other *Transmissions*, from *Your* warranty or component specification programs.

25. *Documents Relating to Prices Eaton* would or could charge *You* for *Transmissions* if *You* entered into contracts or other arrangements with *ZF Meritor* or other *Persons* for the purchase of *Transmissions*.

26. *Documents Relating to* actual or potential litigation *Eaton* would or could file against *You* if *You* sold or licensed *Transmission* technology or assets to *ZF Meritor* or other *Persons*, or entered into contracts or other arrangements with *ZF Meritor* or other *Persons* for the purchase of *Transmissions*.

27. *Documents Relating to* the provision of *Transmission* marketing, advertising, promotional or other funds or monies *Eaton* would (or would not) provide to *You* if *You* entered into contracts or other arrangements with *ZF Meritor* or other *Persons* for the purchase of *Transmissions*.

28.     *Documents Relating to Your* release or launch of *ZF Meritor's* FreedomLine *Transmission*.

29.     *Documents Relating to* representations or announcements by *Eaton* concerning the date when the UltraShift 10-speed would become available to *You* or *Your* customers.

30.     *Documents Relating to* any actual or proposed *Volvo/Mack/ZF Meritor* or ZF Friedrichshafen AG collaboration *Relating to Transmissions*.

31.     *Documents Relating to* the *ZF Meritor* Fuel Performance Program or any other *ZF Meritor Transmission* marketing or sales initiative or incentive program.

32.     *Documents Relating to Your* use of data book positioning, residuals, concessions, financing, build slots, representations as to product availability, delivery guarantees, and marketing and other programs or policies to affect sales or influence purchases of *Transmissions*.

33.     Contracts, commitments, and agreements, including revisions, amendments or other modifications or adjustments thereto, between *You* and any *Class 8 Truck* purchaser *Relating to* the *Price* or specification of *Transmissions*.

34.     *Documents* describing, discussing, or analyzing *Class 8 Truck* purchaser loyalty to, or preference for *Transmissions* of any manufacturer.

35.     *Documents* constituting or *Relating to Communications* between *You* and *Class 8 Truck* dealerships, individually or collectively, including but not limited to any *Class 8 Truck* dealer advisory panel, council or similar entity, *Relating to Your Transmission* supply agreement with *Eaton*, or the availability, *Pricing*, specification or selection of *Eaton Transmissions* or the *Transmissions* of other *Transmission* manufacturers.

36.     *Documents* constituting or *Relating to Communications* between *You* and any *Class 8 Truck* purchasers, *Relating to Your Transmission* supply agreement with *Eaton* or the

specification or selection of *Eaton Transmissions* or the *Transmissions* of other *Transmission* manufacturers.

37.     *Documents* constituting or *Relating to Communications* between *You* and any *Class 8 Truck* purchaser about *ZF Meritor's Transmission* business or *ZF Meritor's Transmissions*.

38.     *Documents* constituting or *Relating to Communications* between or among *You* and any other *OEMs Relating to* competition between *ZF Meritor* and *Eaton, your* procurement or purchases of *Transmissions*, or *ZF Meritor's* and *Eaton's* respective *Transmission* businesses.

*39.*     *Documents* constituting or *Relating to Communications* between *You* and *ZF Meritor* or ZF Friedrichshafen AG *Relating to Your Transmission* supply agreements with *Eaton* or the specification or selection of *Eaton Transmissions* or the *Transmissions* of other manufacturers.

40.     *Documents Relating to* any full or partial, official or unofficial, recall of *Eaton Transmissions*, including but not limited to the AutoShift.

41.     *Documents* comparing or contrasting *Eaton Transmissions* with *ZF Meritor Transmissions*, or otherwise evaluating, analyzing, or assessing the attributes of *Eaton Transmissions* versus *ZF Meritor Transmissions*, including but not limited to *Transmission* failure rates or the quality or reliability of *Eaton's* and *ZF Meritor's* technical, engineering, or other *Transmission* support services.

42.     *Documents* sufficient to show how compensation and other benefits, including but not limited to bonuses, provided to *Your* employees with *Transmission* responsibility were, or could be, affected by performance in procuring *Transmissions* or selling them in *Your Class 8 Trucks*.

43.     *Documents* sufficient to show *Your* document (hard copy and electronic) retention and destruction policy, guidelines, guide or protocols.