# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

DONALD E. REID
302 351 9219
302 425 3001 Fax
dreid@mnat.com

November 7, 2007

**VIA ELECTRONIC FILING**

The Honorable Sue L. Robinson
United States District Court
 for the District of Delaware
844 King Street
Wilmington, DE 19801

        Re:    ZF Meritor LLC, et al. v. Eaton Corporation
                 Civil Action No. 06-623-SLR

Dear Judge Robinson:

        Enclosed is a Supplemental Citation of Recent Authority In Further Support of Eaton Corporation's Motion For Reconsideration.

                                 Respectfully yours,

                                 /s/ Donald E. Reid

                                 Donald E. Reid (#1058)

DER/amr
Enclosure
cc:    Dr. Peter T. Dalleo, Clerk (w/enc.) (Via E-Filing)
        Karen V. Sullivan, Esquire (w/enc.) (Via E-Filing)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>EATON CORPORATION,,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 06-623-SLR<br>)<br>)<br>)<br>) |

**SUPPLEMENTAL CITATION OF RECENT AUTHORITY IN FURTHER SUPPORT OF EATON CORPORATION'S MOTION FOR RECONSIDERATION**

On June 29, 2007, Eaton Corporation ("Eaton") filed its Motion for Reconsideration requesting that the Court reconsider its June 13, 2007 Order denying Eaton's motion to dismiss based on *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007). This supplemental memorandum is being filed to bring to the Court's attention a recent decision in the Sixth Circuit, *NicSand, Inc. v. 3M Co.,* No. 05-3431, 2007 U.S. App. LEXIS 24270 (6th Cir. Oct. 17, 2007). In *NicSand,* the Sixth Circuit upheld the dismissal of a complaint for failure to plead antitrust injury because the defendant's conduct in offering upfront rebates and entering into exclusive contracts was not anticompetitive. *Id.* at *2. *NicSand* is factually similar to the case at bar and the Complaint here fails for the same reasons.

NicSand competed with the defendant, 3M, for sales of automotive sandpaper to six large retailers. *Id.* By 2001, 3M had secured exclusive contracts with five of the six retailers by offering them "greater up-front discounts and longer exclusive agreements than [NicSand] had offered in the past or apparently was willing to offer in the future." *Id.* Thereafter, NicSand's sales volumes dropped significantly. *Id.* NicSand filed antitrust claims alleging that 3M's

conduct constituted an unlawful monopoly or attempted monopoly under Sherman Act Section 2. *Id.* at *18. The district court dismissed the complaint for failure to plead antitrust injury. *Id.*

The Sixth Circuit, citing *Twombly*, held that to survive a motion to dismiss a plaintiff must allege *facts* that plausibly meet the elements of an antitrust claim. *Id.* at *14. "[A]ntitrust standing is a threshold, pleading stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law -- lest the antitrust laws become a treble-damages sword rather than the shield against competition-destroying conduct that Congress meant it to be." *Id.* at **10-11. The court noted that *Twombly* meant that federal courts should be "'reasonably aggressive' in weeding out meritless antitrust claims at the pleading stage." *Id.* at *11 (citation omitted).

The Sixth Circuit upheld the dismissal of NicSand's complaint for failure to allege antitrust injury. The court reiterated that the antitrust laws were designed to protect competition, not competitors: "At a minimum, this requirement means that one competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition." *Id.* at *13. Antitrust injury is present only where the claimed injury and damage "'is attributable to an anticompetitive aspect of the transaction under scrutiny.'" *Id.* at *14 (citation omitted).

The court held that the damages purportedly suffered as a result of the three alleged anticompetitive practices – upfront discounts, multi-year agreements, and exclusive agreements – did not "'match the rationale for finding [an antitrust] violation' ... but indeed flow[ed] from the kind of competition that the antitrust laws were designed to foster." *Id.* at **15-16 (internal citation omitted) (alteration in original). With regard to the upfront discounts, the court held that the complaint failed to allege antitrust injury because there were no allegations of predatory pricing. *Id.* at **16-17 ("If the up-front payments ... 'are not predatory, any losses flowing from them cannot be said to stem from an *anticompetitive* aspect of defendant's conduct. It is in the interest of competition to permit . . . firms to engage in vigorous competition, including price competition.'") (citation omitted) (alteration and emphasis in original). In fact, the payments actually furthered the "competition-enhancing goals of the antitrust laws:"

> The 'payments' are nothing more than 'price reductions offered to buyers for the exclusive right to supply a set of stores under multi-year contracts.' ... '[C]utting prices in order to increase business often is the very essence of competition'; and 'mistaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect. We must be concerned lest a rule or precedent that authorizes a search for a particular type of undesirable pricing behavior end up discouraging legitimate price competition.'

*Id.* at \*\*17-18 (citations omitted). Similarly, the multi-year nature and exclusivity of the agreements did not cause antitrust injury because the agreements were **competitive**, not anticompetitive, without additional allegations of illegal tying or barriers to new entry and an allegation that they resulted in the charging of monopoly prices. *See id.* at \*\*19, 26 ("Just as 3M's advances amounted to legitimate competition, so did its decision to enter into multi-year agreements .... In the end, NicSand simply has not alleged facts establishing that the agreements in and of themselves created market-entry barriers that caused it a cognizable antitrust injury); *see id.* at 26 (citing *Indeck Energy Serv. v. Consumers Energy Co.*, 250 F.3d 972 (6th Cir. 2000) (no antitrust injury simply because exclusive supply contract of 10-15 years duration prohibited market entry by plaintiff).

The Complaint here suffers from the same deficiencies as the complaint in *NicSand* and should be dismissed for the same reasons. As in *NicSand*, the gravamen of Plaintiffs' claim here is that Eaton's policy of offering discounts to retailers was anticompetitive and caused antitrust injury because ZF Meritor ultimately lost sales and was forced to leave the market. Plaintiffs, however, fail to allege any facts that Eaton's contracts harmed **the competitive process** rather than one competitor. There is no allegation, for instance, that the contracts resulted in higher prices for consumers or unreasonably barred new entry into the market. To the contrary, the only factual allegations show that Eaton **lowered** its prices and locked itself into those lower prices for the long term. *See* Eaton Corp.'s Mot. for Reargument, at 3. Nor, as in *NicSand*, is there any allegation that Eaton's discounts constitute predatory pricing or that Eaton engaged in illegal tying. *See NicSand*, 2007 U.S. App. LEXIS 24270, at \*15 ("courts typically have permitted such claims to proceed only when one of the rivals has engaged in some form of predatory pricing or

illegal tying – when the rival has engaged in something more than vigorous price, product or service competition") (citation omitted). In short, as in *NicSand,* Eaton's conduct benefited consumers, enhanced competition and is exactly the type of conduct the antitrust laws were designed to promote. As such, Plaintiffs' complaint fails to allege facts establishing antitrust injury.

For the foregoing reasons, this Court should grant Eaton's motion and dismiss it from this litigation.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Donald E. Reid*

Donald E. Reid (#1058)
Jason A. Cincilla (#4232)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19877-1347
(302) 351-9219
*Attorneys for Defendant
Eaton Corporation*

OF COUNSEL:

Robert F. Ruyak
Joseph A. Ostoyich
Melissa R. Handrigan
Curtis J. LeGeyt
HOWREY LLP
1299 Pennsylvania Avenue
Washington, DC 20004

Dated: November 6, 2007

**CERTIFICATE OF SERVICE**

I, Donald E. Reid, hereby certify that on the 7th day of November, 2007, a Supplemental Citation Of Recent Authority In Further Support Of Eaton Corporation's Motion For Reconsideration was served by electronic filing or e-mail on the following counsel of record:

        Karen V. Sullivan, Esquire
        Oberly, Jennings & Rhodunda, P.A.
        1220 N. Market Street, Suite 710
        Wilmington, DE 19801
        coberly@ojlaw.com

        Christopher Wood, Esquire
        Dickstein Shapiro LLP
        1825 Eye Street, NW
        West Tower, Suite 500
        Washington, DC 20006-5403
        Email: woodc@dicksteinshapiro.com

        /s/ Donald E. Reid
        Donald E. Reid (#1058)