# OBERLY, JENNINGS & RHODUNDA, P.A.

1220 Market Street - Suite 710
P. O. Box 2054
Wilmington, Delaware 19899

Charles M. Oberly, III
Kathleen M. Jennings
William J. Rhodunda, Jr.
-----------
Karen V. Sullivan
Chandra J. Rudloff

(302) 576-2000
Fax (302) 576-2004
E.I.No. 51-0364261
Writer's e-mail ksullivan@ojlaw.com

November 15, 2007

<u>Via CM/ECF</u>
The Honorable Sue L. Robinson
United States District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124, Lockbox 31
Wilmington, DE 19801

    RE:    *ZF Meritor LLC, et al. v. Eaton Corp.*, 06-623-SLR

Dear Judge Robinson,

    Enclosed is Plaintiffs ZF Meritor LLC and Meritor Transmission Corporation's Opposition to Defendant's Supplemental Citation of Recent Authority in Further Support of its Motion for Reconsideration.

                                              **Respectfully,**

                                              */s/ Karen V. Sullivan*

                                          **KAREN V. SULLIVAN (No. 3872)**

Enclosure

cc:    Dr. Peter T. Dalleo, Clerk (via CM/ECF)
        Donald E. Reid, Esquire (via CM/ECF)

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

|  |  |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION,<br><br>     Plaintiffs,<br><br>     v.<br><br>EATON CORPORATION,<br><br>     Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 06-623-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

PLAINTIFFS ZF MERITOR LLC AND MERITOR TRANSMISSION CORPORATION'S
OPPOSITION TO DEFENDANT'S SUPPLEMENTAL CITATION OF RECENT
AUTHORITY IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION

Like its prior submissions, Eaton's brief citing to the Sixth Circuit's recent decision in NicSand, Inc. v. 3M Co., No. 05-3431, 2007 U.S. App. LEXIS 24270 (6th Cir. Oct. 17, 2007) continues to insist that the Complaint's "only factual allegations show that Eaton *lowered* its prices." See Suppl. Citation of Recent Authority ("Citation"), D.I. 39, at 3 (emphasis in original).[1] This mischaracterization of the allegations is not a basis for dismissal. As the Court ruled in June, a "court cannot dismiss a case based on the defendant's characterization of the relevant facts at this stage of the proceedings." See Order, D.I. 17, at 2. Instead, a decision on dismissal must emanate from an analysis of the allegations of the complaint. See Arthrocare Corp. v. Smith & Nephew, Inc., No. Civ. 01-504-SLR, 2004 WL 896002, at *2 (D. Del. Mar. 10,

---

[1] See also Mem. in Supp. of Def.'s Mot. to Dismiss Pls.' Compl., D.I. 8, at 2; Reply Mem. in Further Supp. of Def.'s Mot. to Dismiss Pls.' Compl., D.I. 15, at 1; Def.'s Mot. for Reargument, D.I. 27, at 3; Reply Mem. in Further Supp. of Def.'s Mot. for Recons., D.I. 33, at 2.

2004) (citing Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)).

The Complaint alleges that Eaton engaged in numerous acts designed to "drive Meritor and any affiliated entities out of the linehaul market, and foil any further attempts to enter the vocational market." Compl. ¶ 47. Eaton "used its dominant position to induce all heavy duty truck manufacturers to enter into *de facto* exclusive dealings contracts." Id. ¶ 3. These contracts contained provisions that:

- excluded Plaintiffs' transmissions from customer data books (i.e., product catalogues, or, stated differently, shelf space) (id. ¶ 57),

- "linked rebates on vocational transmissions for which [Eaton] faced no meaningful competition … to purchase(s) of linehaul transmissions for which Eaton faced competition" (id. ¶ 49),

- required Plaintiffs' transmissions be priced at a "penalty" to Eaton's transmissions (id. ¶ 50), and

- dissuaded customers from purchasing/selling Plaintiffs' innovative FreedomLine transmission (id. ¶ 61).

Additionally, Eaton "relied on the overall structure of the contracts, its market strength, and further coordination with individual OEMs [i.e., customers] to induce the OEMs" to engage in various acts that further diverted purchasers of Plaintiffs' transmissions to Eaton's Transmissions. Id. ¶ 68 (reciting 11 types of activity). For example, the OEMs:

- reduced "residual values to be paid for trucks sold with ZF Meritor transmissions" (id. ¶ 68(b)),

- informed "customers that if they wanted [truck] delivery by specified dates, the customers would have to change orders from ZF Meritor to Eaton transmissions" (id. ¶ 68(e)),

- declined to "hold build slots for truck buyers if they selected other than Eaton transmissions" (id. ¶ 68(f)), and

- excluded Plaintiffs' transmissions from OEM truck warranty program eligibility (id. ¶ 68(j)).

Eaton's conduct "excluded competitors from making sales" and contributed to high barriers to entry in the relevant markets. Id. ¶ 32. Indeed, Eaton's actions ultimately restricted Plaintiffs' access to less than 10% of the applicable markets (id. ¶ 48), and thereby foreclosed Plaintiffs from participating in the market for heavy duty linehaul transmissions, and prevented Plaintiffs from entering into the market for heavy duty vocational transmissions. Id. ¶¶ 72-74. This foreclosure directly harmed competition and Plaintiffs. Id. ¶¶ 75-77.[2]

Defendant's citation to NicSand, Inc., 2007 U.S. App. LEXIS 24270 is misplaced. There, the Sixth Circuit considered whether it would "allow one monopolist [NicSand] to sue a competitor for seizing its market position by charging less for its goods." Id. at *34.[3] In the instant case, the relationship between Defendant and Plaintiffs is the opposite. Defendant Eaton is, and essentially always has been, a monopolist in the relevant transmission markets (Compl., D.I. 1 ¶¶ 17, 21, 23, 33-34), while Plaintiffs ZF Meritor and Meritor, unlike NicSand, never stood as the "market leader," never "controlled 67% of the market," never had "every opportunity to compete," never "used the existing barriers to entry … to preserve its lock on the market," and never sat "on the inside looking out." NicSand, at *24.

Although NicSand presented a factual backdrop different than that presented in this matter, the Sixth Circuit recognized that a competitor may bring an antitrust action when a "rival has engaged in something more than vigorous price, product or service competition." Id. at *15 (citing LePage's Inc. v. 3M, 324 F.2d 141, 155-57 (3d Cir. 2003)). A dominant player may be

---

[2] Plaintiffs do not exclude the possibility that Eaton may have engaged in predatory pricing and do not waive such an allegation. The question will be explored and answered through discovery.

[3] See id. at *23 ("NicSand has not sued 3M because it wants to share shelf space with its competitor; it sued 3M because it wants that shelf space all to itself – just as it had it in 1997.").

subject to an antitrust action when it uses exclusive "contracts and its current market dominance to establish unreasonable barriers to entry …." Id. at *33.  That, and more, is what has been alleged here.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Reconsideration should be denied.

OBERLY, JENNINGS & RHODUNDA, P.A.


Dated: November 15, 2007          /s/ Karen V. Sullivan
Charles M. Oberly, III (No. 743)
Karen V. Sullivan (No. 3872)
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, DE  19899
(302) 576-2000 – Telephone
(302) 576-2004 – Facsimile

-and-

R. Bruce Holcomb
Christopher H. Wood
Charles E. Luftig
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403

Attorneys for Plaintiffs ZF Meritor LLC and Meritor Transmission Corporation