## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ZF MERITOR LLC and MERITOR          )
TRANSMISSION CORPORATION            )
                                    )
            Plaintiffs,             )
                                    )          C.A. No. 1:06-cv-623-SLR
                  v.                )
                                    )
EATON CORPORATION,                  )
                                    )
            Defendant.              )

## DEFENDANT EATON CORPORATION'S
## ANSWER TO PLAINTIFFS' COMPLAINT

Defendant Eaton Corporation ("Eaton"), by and through its undersigned counsel, hereby responds to Plaintiffs' Complaint as follows:

1.      Eaton denies the allegations in paragraph 1 of the Complaint, except it admits that it and Meritor have been suppliers of manual transmissions to original equipment manufacturers ("OEMs") of heavy duty trucks in North America.  Eaton avers that it lacks knowledge and information sufficient to form a belief as to the truth or falsity of the specific allegations in paragraph 1 regarding Meritor's transmission sales.  Eaton specifically denies that it has engaged in any conduct in violation of Sections 1 and 2 of the Sherman Act, Section 3 of the Clayton Act, or any other laws cited in the Complaint.

2.      Eaton admits that Meritor and ZF Friedrichshafen AG formed a joint venture related to transmission sales, but avers that it lacks knowledge and information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 2 of the Complaint.

3.      Eaton admits that it entered into contracts for the sale of heavy duty transmissions to certain OEMs, and avers that those contracts speak for themselves.  To the extent certain allegations in paragraph 3 allege legal conclusions, including allegations relating to "exclusionary actions," "dominant position," "*de facto* exclusive dealing contracts" and

"unlawful contracts and other exclusionary conduct," no response is required. Eaton denies the remaining allegations in paragraph 3 of the Complaint.

4.     Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 4 of the Complaint, which relate to Plaintiffs, but admits that, to the best of its knowledge, ZF Meritor LLC and/or affiliated entities at times sold and marketed Class 8 transmissions in North America.

5.     Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 5 of the Complaint, which relate to Plaintiffs, but admits that, to the best of its knowledge, Meritor Transmission Corporation and/or affiliated entities at times sold and marketed Class 8 transmissions in North America.

6.     Eaton admits that it is a corporation organized under the laws of Ohio with its principal place of business in Cleveland, Ohio and that it sold and marketed Class 8 Transmissions in North America.

7.     Eaton states that the allegations in paragraph 7 of the Complaint relating to whether "this Court has jurisdiction over this matter" are legal conclusions and, thus, no response is required.

8.     Eaton states that the allegations in paragraph 8 of the Complaint relating to whether "[v]enue is proper" are legal conclusions and, thus, no response is required. Eaton admits that heavy duty trucks with Eaton transmissions traverse roadways in this district, but otherwise denies that it "transacts business" in or "resides within this district." Eaton admits that it has previously brought a patent infringement suit pertaining to transmission technology and obtained a jury verdict of willful infringement against Meritor in this judicial district.

9.     Eaton admits that it has sold transmissions across state lines. To the extent that certain allegations in paragraph 10 allege legal conclusions, including allegations relating to whether Eaton's "activities substantially affect, interstate commerce," no response is required.

10.    Eaton admits that the allegations in paragraph 10 of the Complaint generally summarize the operation of vehicle engines and transmissions.

11.    Eaton admits that the allegations in paragraph 11 of the Complaint generally summarize the operation of vehicle engines and transmissions.

12.    Eaton admits that the allegations in paragraph 12 of the Complaint generally summarize the operation of vehicle engines and transmissions.

13.    Eaton admits that the allegations in paragraph 13 of the Complaint generally summarize the operation of vehicle engines and transmissions, but denies paragraph 13 to the extent Plaintiffs purport to define manual and automatic transmissions. Eaton avers that in a manual transmission the driver's energy (i.e., pulling the stick shift) causes the gears to change.

14.    Eaton denies the statements in paragraph 14 that refer to "automated manuals" and a "fully automated manual transmission," but generally admits that the remaining allegations in paragraph 14 summarize the driver's performance in a vehicle.

15.    Eaton admits that the allegations in paragraph 15 of the Complaint generally summarize the various vehicles classes and transmission types.

16.    Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the specific allegations in paragraph 16 of the Complaint related to unit volume and revenue, but generally admits that a number of companies manufactured and/or sold several hundred thousand Class 8 transmissions for substantial revenue in 2005.

17.    Eaton admits that Meritor, Allison Transmission, and Transmission Technologies Corporation manufactured and sold transmissions in North America and that Mack Trucks, Inc. produced some transmissions for internal use. Eaton denies that Allison Transmission is a division of General Motors, and otherwise denies or lacks knowledge and information sufficient to admit or deny the specific allegations in paragraph 17 relating to each company's purported percentage of overall Class 8 transmission sales.

18.    Eaton admits that the allegations in paragraph 18 of the Complaint generally summarize the various characteristics of transmissions and their suitability in certain types of vehicles. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the specific allegation regarding the beliefs of unidentified truck "purchasers,"

"operators," and "owners" regarding the significance of certain transmission characteristics and overall vehicle value.

19. Eaton denies the allegations in paragraph 19 of the Complaint relating to "three distinct product markets" or avers that those allegations call for a legal conclusion and, thus, no response is required. Eaton further denies the allegation that Class 8 transmissions for vehicles used in different applications are "not good substitutes" for one another. Eaton further avers that it lacks knowledge and information sufficient to form a belief as to the truth or falsity of allegations regarding whether unidentified "purchasers" are unlikely to substitute one transmission for another.

20. Eaton denies the allegation in paragraph 20 of the Complaint that there is a distinct "linehaul market" and, to the extent that the allegation calls for a legal conclusion, further states that no response is required. Eaton admits that linehaul trucks are generally used to travel long distances on highways and often use 9- and 10-speed manual and automated mechanical transmissions in the torque ratings and pedal configurations alleged. Eaton further avers that it lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding how unidentified "purchasers" would respond to a "small but significant, non-transitory increase in price" and whether "substitution" by those purchasers would be "significant," and, to the extent such allegations call for legal conclusions, states that no further response is required.

21. Eaton denies that it has "monopoly power in the market for linehaul transmissions" and, to the extent such allegations call for legal conclusions, states that no response is required. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the specific allegations in paragraph 21 relating to transmission sales by ZF Meritor and TTC, but generally admits that ZF Meritor and TTC both sell Class 8 transmissions in North America.

22. Eaton denies the allegation that there is a distinct "vocational market" or distinct "vocational transmissions" and, to the extent such allegations call for legal conclusions, states

that no response is required.   Eaton generally admits that heavy duty trucks operating in rugged performance and on- and off-road environments often include transmissions in the speeds and torque ratings alleged.   Eaton further avers that it lacks knowledge and information sufficient to form a belief as to the truth or falsity of the specific allegations regarding how unidentified "purchasers" would respond to a "small but significant, non-transitory increase in price" and whether "substitution" by those purchasers would be "significant," and, to the extent such allegations call for legal conclusions, states that no further response is required.

23.     Eaton denies that it has "monopoly power in the market for vocational transmissions," that there are distinct "vocational transmissions," and that it is the "only external manufacturer and supplier of vocational transmissions in North America," and, to the extent such allegations call for legal conclusions, states that no further response is required.   Eaton generally admits that, to the best of its knowledge, several companies, including Mack Trucks Inc. and TTC,   manufacture or sell transmissions for heavy duty trucks that are used in vocational operations in North America.

24.     Eaton denies that there is a distinct "specialty transmission market" and distinct "specialty transmissions" and, to the extent such allegations call for legal conclusions, states that no further response is required.   Eaton generally admits that automatic transmissions are used in certain "start and stop" heavy duty trucks.   Eaton further avers that it lacks knowledge and information sufficient to form a belief as to the truth or falsity of the specific allegations regarding how unidentified "purchasers" would respond to "a small but significant, non-transitory increase in price" and whether "substitution" by those purchasers would be "significant," and, to the extent such allegations call for legal conclusions, states that no further response is required.

25.     Eaton denies that there is a distinct "specialty transmission market" and, to the extent that such an allegation calls for a legal conclusion, states that no further response is required.   Eaton generally admits that Allison is the primary manufacturer of heavy duty automatic transmissions in North America.

26.    Eaton denies that there is a distinct North American market for "linehaul and vocational transmissions," and, to the extent such an allegation calls for a legal conclusion, states that no further response is required. Eaton generally admits that Class 8 trucks are manufactured in a wide assortment of configurations, are used for assorted applications, run across an extensive network of highways and expressways, and are typically non-synchronous in North America, but lacks knowledge and information sufficient to form a belief as to whether Class 8 truck transmissions are typically non-synchronous outside of North America. Eaton further admits that suppliers of North American Class 8 transmissions "tend" to locate their primary manufacturing and assembly facilities, and marketing, distribution, and service personnel in North America. Eaton denies that transmissions used in Class 8 vehicles in North America are "different" from transmissions used in Class 8 vehicles in other regions of the world, and denies that unidentified "consumers" cannot practicably turn to other regions of the world for transmissions to use in North American Class 8 vehicles and avers, for example, that some consumers have purchased heavy duty transmissions manufactured outside North America by companies including ZF Friedrichshafen AG.

27.    Eaton denies that Freightliner, Paccar, Volvo/Mack and International are the only direct purchasers of Class 8 transmissions in North America. Eaton admits to the best of its knowledge that each identified OEM is a subsidiary, division, or operating group of the corporate entities alleged in paragraph 27 and that each sells trucks under the brand names alleged.

28.    Eaton generally admits that OEMs manufacture and sell Class 8 trucks to dealers as well as to large truck fleet operators, that dealers in turn sell those trucks to fleet and owner operators, and, to the best of its knowledge, that truck buyers often specify the brand of transmission and other components to be used in the Class 8 trucks they purchase.

29.    Eaton generally admits that OEMs utilize data books and online ordering software in marketing and selling trucks and that they often list components, with different price options, as standard or optional. Eaton further states that each OEM's data books and software speak for themselves. Eaton lacks knowledge and information sufficient to form a belief as to the truth or

falsity of the remaining allegations in paragraph 29 of the Complaint relating to the actions and preferences of unidentified truck buyers.

30.    Eaton admits that OEMs utilize data books and online ordering software, and states that those data books and software speak for themselves.  Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding whether each OEM's "ability to sell the transmission is diminished severely if not eliminated" if it does not include a transmission in its data book or online ordering software, whether each OEM "always price[s]" such a transmission with an up-charge, and how often unidentified truck customers ask each OEM to purchase such transmissions.

31.    Eaton generally admits to the best of its knowledge that transmission manufacturers may try to use monetary incentives such as discounts, as well as demonstrations of product superiority and value, in an effort to entice truck buyers to order a particular transmission from an OEM.  Eaton denies that pull through marketing becomes "considerably more costly and far less effective" under the circumstances alleged and, to the extent the allegation relates to other transmission manufacturers or suppliers, lacks knowledge and information sufficient to form a belief as to its truth or falsity.

32.    Eaton denies that "[e]ntry barriers are high in the markets for Class 8 transmissions," that it has "excluded competitors from making sales to the four OEMs," and that "[w]ithout these sales, competitors cannot achieve the economies of scale necessary to compete effectively."  Eaton generally admits that designing, manufacturing, validating the reliability and other attributes, and selling heavy duty truck transmissions requires a substantial investment and can take a year or more and may require sustained investments in marketing, warranty programs, demonstrations, sales and service in order to persuade customers to purchase or switch transmissions.  To the extent allegations relating to "entry barriers" call for legal conclusions, Eaton states that no further response is required.

33.    Eaton admits that it has been a leading supplier of heavy duty manual transmissions in North America for more than 40 years and, to the best of its knowledge, that its

transmission business is widely known. Eaton denies that it is "dominant" and, to the extent that allegation calls for a legal conclusion, states that no further response is required.

34.    Eaton denies that there are "markets for linehaul and vocational transmissions" and the percentage ascribed, and, to the extent those allegations call for legal conclusions, states that no further response is required. Eaton lacks knowledge and information sufficient to form a belief at this time as to the truth or falsity of the allegations that "[b]y the late 1980s," it had the alleged market share, the standard position in the data books "for nearly every truck model at each of the OEMs," and whether it described itself as "solidly entrenched" in the marketplace.

35.    Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegation regarding whether Meritor's predecessor began to manufacture and sell linehaul transmissions "in response to customer demand." Eaton generally admits that Plaintiffs or their predecessor at some point in the late 1980s or early 1990s began to manufacture and sell certain manual transmissions for use in Class 8 trucks and that Plaintiffs or their predecessor also sold numerous other drivetrain components.

36.    Eaton denies that it "frustrated Meritor's further attempts to expand its transmission supply relationships with OEMs, including sales of vocational transmissions, by explicitly or implicitly threatening OEMs with punitive pricing on transmissions for which Eaton was the sole supplier, and with unwarranted patent litigation if OEMs sold or licensed transmission technology to Meritor." Eaton admits to the best of its knowledge that Meritor primarily sold Class 8 transmissions only in 9- and 10-speeds. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding the percentage of Class 8 transmission sales Meritor achieved by 1992 and whether it achieved additional growth for the reasons alleged.

37.    Eaton admits that it offered automated transmissions in the mid-1990s, including its Top 2 and AutoSelect products, that Meritor offered an ESS transmission for a period of time in the mid to late 1990s, and to the best of its knowledge that these automated mechanical transmission products were among the first generation of Class 8 transmission automated

products in North America. Eaton lacks knowledge and information at this time sufficient to form a belief as to the truth or falsity of the allegation that Meritor's ESS transmission benefited unidentified consumers "by, among other things, causing Eaton to reduce the price of its automated products."

38.    Eaton denies that there is a distinct "linehaul market," that it engaged in "efforts to stifle competition," and that it was "dominant[t]" in any alleged market and, to the extent such allegations call for legal conclusions, states that no further response is required. Eaton admits that Meritor and ZF Friedrichshafen AG, a leading European transmission manufacturer, formed a joint venture at some point in 1999 related to transmission sales in North America, but otherwise lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding why Meritor formed the joint venture and the precise legal interest of each party in the venture.

39.    Eaton denies that "[n]o single manufacturer offered such a range of products in North America" as ZF Meritor, and that ZF Meritor was a "formidable competitor" to Eaton and, to the extent such allegations call for legal conclusions, states that no further response is required. Eaton generally admits that ZF's line of transmissions in Europe included automatic and automated mechanical transmissions, but otherwise lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding ZF's expertise in transmission technology and the combination created by the joint venture.

40.    Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 40 of the Complaint, which relate to Plaintiffs, their contracts and sales with OEMs, and their expectations.

41.    Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 41 of the Complaint, which relate to the listing of certain of Plaintiffs' transmissions in certain OEMs' data books. To the extent the allegation that certain of Plaintiffs' transmissions were listed as a "competitively priced option" in certain OEM data books calls for a legal conclusion, Eaton states that no further response is required.

42.    Eaton denies that there is a distinct "linehaul market," and to the extent this allegation calls for a legal conclusion, states that no further response is required. Eaton generally admits that at some point in late 1999 ZF Meritor announced that it expected to introduce the two-pedal "FreedomLine" transmission, based on ZF's ASTronic transmission, to North America. Eaton also generally admits that it announced a two-pedal UltraShift transmission in 2002. Eaton denies that the FreedomLine beat the UltraShift to market release by "nearly three years" and lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding whether Plaintiffs "targeted" trucks operated for linehauls with the FreedomLine.

43.    Eaton denies to the best of its knowledge that the FreedomLine transmission met with "overwhelming positive feedback and accolades from the trade press and customers" and lacks knowledge and information sufficient to form a belief as to the truth or falsity of this allegation to the extent it relates to information about the FreedomLine provided to Plaintiffs or other third-parties. Eaton lacks knowledge and information at this time sufficient to form a belief as to the truth or falsity of the allegations relating to the Truck Writers of North America.

44.    Eaton generally admits that the FreedomLine operated with an accelerator and brake pedals and did not have a clutch pedal, and that earlier generations of automated mechanical transmissions had three pedals because of their use of a manual clutch.

45.    Eaton generally admits that two-pedal automated mechanical transmissions generally provide enhanced driver safety, less drive train wear, and a quieter ride than three-pedal transmissions, but lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding whether two-pedal automated mechanical transmissions are generally able to provide truck operators with better fuel economy. Eaton also lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding driver instruction and retention and the residual value of trucks.

46.    Eaton denies that it had a "dominant position" and to the extent such an allegation calls for a legal conclusion, states that no further response is required. Eaton generally denies

each allegation pertaining to "automated manual transmissions" and specifically denies that vehicles with a two-pedal configuration or transmissions featuring so-called "third generation technology" are known as "automated manual transmissions." Eaton generally admits that it did not have a two-pedal product in the market for sale in North America in November 1999. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations relating to unspecified persons' "predictions" about whether such transmission sales "would gain significant share" among Class 8 transmission users. Eaton generally admits that it expected and saw modest growth in demand for two-pedal configuration-based transmissions after 2000.

47.    Eaton denies that there are distinct "linehaul" and "vocational" markets, that it engaged in "exclusionary conduct designed to thwart competition," intended to "drive Meritor and any affiliated entities out of the linehaul market," and "foil[ed]" Plaintiffs' efforts to manufacture and sell transmissions suitable for trucks used for vocational operations, and that it was "dominant[t]." Eaton also denies the allegations that ZF Meritor's transmissions were "competitively priced" and that the FreedomLine transmission was "industry leading." To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

48.    Eaton admits that it entered into contracts with Freightliner, Paccar, International, and Volvo for the sale of heavy duty transmissions, and states that the contracts speak for themselves. Eaton denies the allegations that there are distinct linehaul and vocational markets, that it was "dominant[t]," that it entered into "*de facto* exclusive contracts" with each OEM, that it "foreclose[d] competition," that it "tie[d] up each OEM's purchases," and that there would be "no room" for ZF Meritor if OEMs purchased Eaton transmissions under the terms of their contracts. To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

49.    Eaton admits that it entered into a contract with Freightliner for the sale of heavy duty transmissions, and states that the contract speaks for itself. Eaton denies that it provided

"sizeable" rebates to Freightliner, that Freightliner would pay "substantially more" for transmissions unless it qualified for rebates, that it "dislodged" or "excluded" ZF Meritor from selling transmissions to Freightliner, and that it "linked" rebates on transmissions to each other. To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

50.    Eaton denies that it "demanded" the allegations in Paragraph 50 of Complaint, that "there was no procompetitive justification" for Eaton's actions, and that "Eaton's only aspiration was to drive ZF Meritor out of the market." To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

51.    Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 51 of the Complaint, which relate to Plaintiffs.

52.    Eaton admits that it entered into a contract with Freightliner for the sale of heavy duty transmissions, and states that the contract speaks for itself. Eaton denies that its contract terms were "non-negotiable," that it "secured all of Freightliner's transmission business" and that its contract "assure[d] ZF Meritor would starve in the market before having an opportunity to partner with Freightliner again."

53.    Eaton denies the allegations that "Freightliner's acceptance of Eaton's demands harmed competition and injured consumers" and that it "impaired consumer access" to Plaintiffs' transmissions. To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

54.    Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 54 of the Complaint that relate to Plaintiffs. Eaton otherwise denies the allegation that its contract with Freightliner had a "restrictive and exclusionary nature" and, to the extent these allegations call for legal conclusions, states that no further response is required.

55.    Eaton admits that it entered into contracts with Freightliner for the sale of heavy duty transmissions, and states that the contracts speaks for themselves. Eaton denies the

allegations that its contract with Freightliner was "anticompetitive" and that it committed "other exclusionary acts." To the extent these allegations call for legal conclusions, Eaton states that no further response is required. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations of Plaintiffs' percentage share of Freightliner's overall transmission purchases in 2000 and 2005.

56. Eaton admits that it entered into contracts with International for the sale of heavy duty transmissions, and states that the contracts speaks for themselves. Eaton denies the allegation that the contract was a "*de facto* exclusive contract." To the extent this allegation calls for a legal conclusion, Eaton states that no further response is required.

57. Eaton admits that it entered into contracts with International for the sale of heavy duty transmissions, and states that the contracts speaks for themselves. Eaton denies that there are distinct "linehaul" and "vocational" markets, that there was "no procompetitive justification" for the contract, and that it "acted solely to bar and foreclose ZF Meritor from markets for Class 8 transmissions." To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

58. Eaton admits that it entered into contracts with International for the sale of heavy duty transmissions, and states that the contracts speak for themselves. Eaton denies the allegation that it engaged in "exclusionary practices at International." To the extent that allegation calls for a legal conclusion, Eaton states that no further response is required. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 58 of the Complaint relating to purported statements made by International.

59. Eaton denies the allegations that it engaged in "exclusionary conduct at International," that it "impaired consumer access" to ZF Meritor transmissions and "penalized downstream truck fleets and other customers." To the extent those allegations call for legal conclusions, Eaton states that no further response is required. Eaton lacks knowledge and

information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 59 of the Complaint to the extent they relate to third party truck fleets and other customers.

60.    Eaton admits that it entered into contracts with International for the sale of heavy duty transmissions, and states that the contracts speak for themselves.  Eaton denies the allegations that it entered into an "anticompetitive agreement" with International or engaged in "exclusionary acts."  To the extent those allegations call for legal conclusions, Eaton states that no further response is required.  Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations relating to Plaintiffs' purported share of International's overall transmission purchases in 2000 and 2005 and the allegations regarding whether Meritor transmissions will be engineered into the vehicle platform.

61.    Eaton admits that it entered into contracts with Paccar for the sale of heavy duty transmissions, and states that the contracts speaks for themselves.  Eaton denies that there are distinct "linehaul" and "vocational" markets, that it had a "pre-existing, seemingly exclusive" relationship with Paccar, and that it "prevent[ed]" ZF Meritor growth at Paccar or "[d]ampen[ed] Paccar's purchases" of ZF Meritor's products.  To the extent these allegations call for legal conclusions, Eaton states that no further response is required.  Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding ZF Meritor's past and expected sales to Paccar.

62.    Eaton admits that it entered into contracts with Paccar for the sale of heavy duty transmissions, and states that the contracts speaks for themselves.  Eaton denies the allegations that it entered into "anticompetitive agreements" with Paccar or engaged in "other exclusionary acts."  To the extent these allegations call for legal conclusions, Eaton states that no further response is required.  Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 62 of the Complaint relating to ZF Meritor's share of Paccar's overall transmission purchases, and announcements made by Paccar's Peterbilt in early 2005 relating to ZF Meritor/Meritor transmissions.

63.    Eaton admits that it entered into contracts with Volvo/Mack for the sale of heavy duty transmissions, and states that the contracts speaks for themselves.  Eaton denies the allegation that it entered into "*de facto* exclusive contracts" with Freightliner, International, and Paccar, and that it "locked ZF Meritor out" of Volvo/Mack business by entering into a "similar exclusive arrangement."  To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

64.    Eaton denies that there are distinct "linehaul" and "vocational" markets.  To the extent these allegations calls for legal conclusions, Eaton states that no further response is required.  Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations that relate to Plaintiffs' attempts to form a commercial partnership with Volvo/Mack and its purported offer to sell transmissions to Volvo/Mack.

65.    Eaton admits that it entered into contracts with Volvo/Mack for the sale of heavy duty transmissions, and states that the contracts speaks for themselves.  Eaton denies that there are distinct "linehaul" and "vocational" markets, that it "essentially withheld" rebates from Volvo/Mack, and that it "diminished ZF Meritor's opportunity for sales" at Volvo/Mack.  Eaton further denies that it "require[ed] Volvo/Mack to price ZF Meritor transmissions at a penalty to Eaton transmissions."  To the extent these allegations call for legal conclusions, Eaton states that no further response is required.  Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations that relate to Plaintiffs and Volvo/Mack.

66.    Eaton denies the allegations that its contracts with Volvo/Mack "lacked any procompetitive justification and injured consumers," and that it engaged in "acts of exclusion."  To the extent these allegations call for legal conclusions, Eaton states that no further response is required.  Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations that relate to whether unspecified truck "customers" of Volvo/Mack were "dissuaded" from purchasing ZF Meritor transmissions or were subject to "the threat of monetary penalties."

67.     Eaton admits that it entered into a contract with Volvo/Mack for the sale of heavy duty transmissions, and states that the contract speaks for itself. Eaton denies the allegations that it entered into an "anticompetitive agreement" with Volvo/Mack or engaged in "other exclusionary acts." To the extent these allegations call for legal conclusions, Eaton states that no further response is required. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations that relate to Plaintiffs' purported share of Volvo/Mack's overall transmission purchases in 2002 and 2005.

68.     Eaton admits that it entered into contracts with Freightliner, Paccar, International, and Volvo for the sale of heavy duty transmissions, and states that the contracts speak for themselves. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of any actions purportedly taken by any OEMs, and the reasons for those actions, but otherwise denies the allegations that it "relied on the overall structure of the contracts, its market strength, and further coordination with individual OEMs to induce the OEMs" to engage in acts alleged in subparts (a) through (k).

69.     Eaton denies that it "precipitated" OEM conduct that "obstructed" ZF Meritor's pull-through marketing efforts.

70.     Eaton admits that it entered into contracts with Freightliner, Paccar, International, and Volvo for the sale of heavy duty transmissions, and states that the contracts speak for themselves. Eaton denies that there is a distinct "linehaul transmission" market, that it entered into "de facto exclusive contracts" or engaged in the "exclusionary acts" as alleged in subparts (a) through (c). To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

71.     Eaton denies the allegations in paragraph 71 of the Complaint that there are distinct "vocational" and "linehaul" markets, that it "locked the OEMs" into long-term "exclusive" contracts, that it "used these and other exclusionary acts to obstruct Meritor's" production of transmissions used for vocational truck operations, that it "threatened retaliation with price increases or patent litigation if an OEM sold or licensed vocational transmission

technology to Meritor or ZF Meritor," and that it engaged in "anticompetitive practices." To the extent these allegations call for legal conclusions, Eaton states that no further response is required. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations related to Meritor's requirements for sales opportunities, ample investments, or partnerships to begin producing transmissions used for vocational truck operations.

72.     Eaton admits that it entered into contracts with Freightliner, Paccar, International, and Volvo for the sale of heavy duty transmissions, and states that the contracts speak for themselves. Eaton denies that it engaged in "anticompetitive conduct," "bundled rebates" and engaged in "punitive pricing" and "other exclusions" that had "the practical effect of precluding ZF Meritor from selling" transmissions to certain OEMs. Eaton also denies that there are distinct "linehaul" and "vocational" transmission markets. To the extent these allegations call for legal conclusions, Eaton states that no further response is required. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegation of what "[o]ne OEM" told Plaintiffs.

73.     Eaton denies that it engaged in "exclusionary conduct" and that there are distinct "linehaul" and "vocational" transmission markets. To the extent these allegations call for legal conclusions, Eaton states that no further response is required. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations regarding ZF and Meritor's dissolution of their ZF Meritor joint venture.

74.     Eaton denies that it engaged in "anticompetitive conduct." To the extent this allegation calls for a legal conclusion, Eaton states that no further response is required. Eaton lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations relating to the reasons for the formation of the "sales agent" relationship between Meritor and ZF, the structure of that relationship, Meritor's sales share pursuant to that relationship, and Meritor's intentions with respect to the heavy duty truck transmission business.

75.    Eaton denies that there are distinct "linehaul" and "vocational" transmission markets, that it engaged in "anticompetitive conduct," and that it "directly and proximately harmed competition" by limiting consumer choice, eliminating competitive checks on pricing, suppressing innovation, and foreclosing or excluding an efficient and significant competitor. Eaton also denies that its conduct led to unidentified "downstream customers being monetarily penalized and excluded from warranty programs" and "deprived of timely access" to ZF Meritor transmissions.    To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

76.    Eaton denies that it engaged in "anticompetitive conduct," "caused antitrust injury" to Plaintiffs, "foreclosed," "undermin[ed]," "impair[ed] and disrupt[ed]," "interfer[ed] with," or "dislodged" in the various manners alleged in paragraph 76.    Eaton also denies that it "forc[ed]" OEMs and downstream customers to purchase Eaton transmission on grounds other than the merits and "dr[o]v[e]" Plaintiffs' production and other costs to economically unacceptable levels.    To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

77.    Eaton denies that it engaged in the "foregoing anticompetitive conduct" or "caused Meritor/ZF Meritor substantial financial harm and damage."    To the extent these allegations call for legal conclusions, Eaton states that no further response is required.

78.    Eaton states that its operating profits and operating margins since 2002 are set forth in its various public disclosures, and that such disclosures speak for themselves.    Eaton denies that it caused antitrust injury to consumers or Plaintiffs.

79.    Eaton incorporates by reference its responses to paragraphs 1-78.

80.    Eaton denies the allegations in paragraph 80 of the Complaint.    To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

81.    Eaton denies the allegations in paragraph 81 of the Complaint.    To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

82.     Eaton denies the allegations in paragraph 82 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

83.     Eaton denies the allegations in paragraph 83 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

84.     Eaton denies the allegations in paragraph 84 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

85.     Eaton denies the allegations in paragraph 85 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

86.     Eaton incorporates by reference its responses to paragraphs 1-85.

87.     Eaton denies the allegations in paragraph 87 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

88.     Eaton denies the allegations in paragraph 88 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

89.     Eaton denies the allegations in paragraph 89 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

90.     Eaton denies the allegations in paragraph 90 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

91.     Eaton denies the allegations in paragraph 91 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

92.     Eaton denies the allegations in paragraph 92 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

93.     Eaton incorporates by reference its responses to paragraphs 1-92.

94.     Eaton denies the allegations in paragraph 94 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

95.     Eaton denies the allegations in paragraph 95 of the Complaint.   To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

96.    Eaton denies the allegations in paragraph 96 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

97.    Eaton denies the allegations in paragraph 97 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

98.    Eaton incorporates by reference its responses to paragraphs 1-97.

99.    Eaton denies the allegations in paragraph 99 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

100.    Eaton denies the allegations in paragraph 100 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

101.    Eaton denies the allegations in paragraph 101 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

102.    Eaton denies the allegations in paragraph 102 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

103.    Eaton incorporates by reference its responses to paragraphs 1-102.

104.    Eaton denies the allegations in paragraph 104 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

105.    Eaton denies the allegations in paragraph 105 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

106.    Eaton denies the allegations in paragraph 106 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

107.    Eaton denies the allegations in paragraph 107 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

108.    Eaton denies the allegations in paragraph 108 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

109.    Eaton incorporates by reference its responses to paragraphs 1-108.

110.    Eaton denies the allegations in paragraph 110 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

111.    Eaton denies the allegations in paragraph 111 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

112.    Eaton denies the allegations in paragraph 112 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

113.    Eaton denies the allegations in paragraph 113 of the Complaint.  To the extent these allegations call for a legal conclusion, Eaton states that no further response is required.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' Complaint, in whole or in part, fails to state claims upon which relief may be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

### Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered antitrust injury or any threatened antitrust injury as a result of Eaton's conduct.

### Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because the actions of Eaton were not the proximate cause of the loss or damages, if any, to Plaintiffs.

### Fifth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, because any damages Plaintiffs claim to have suffered are too speculative to be recovered.

**Sixth Affirmative Defense**

Plaintiffs' claims are barred, in whole or in part, to the extent they should have been brought as compulsory claims in prior patent litigation between the parties.

**EATON FURTHER DENIES THAT PLAINTIFFS ARE ENTITLED TO THE RELIEF FOR WHICH THEY ARE PRAYING**

Respectfully submitted,

MORRIS, NICHOLS, ARSHT, & TUNNELL LLP


_/s/ Donald E. Reid_
Donald E. Reid (#1058)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 351-9219

Robert F. Ruyak
Joseph A. Ostoyich
HOWREY LLP
1299 Pennsylvania Avenue
Washington, DC 20004
(202) 783-0800

_Attorneys for Defendant_
_Eaton Corporation_

Dated: February 28, 2008

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by regular mail on this 28th day of February 2008 upon:

Charles M. Oberly, III
Karen V. Sullivan
OBERLY, JENNINGS & RHODUNDA, P.A.
1220 Market Street, Suite 710
P.O. Box 2054
Wilmington, DE 19899

Christopher Wood
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006-5403


_____ */s/ Donald E. Reid* _____
Donald E. Reid