IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>EATON CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 06-623-SLR<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

At Wilmington this 14th day of September, 2009, having reviewed the materials submitted by the parties in connection with various evidentiary disputes;

IT IS ORDERED that:

1. **Coconspirator statements.** Plaintiffs ZF Meritor LLC and Meritor Transmission Corporation (collectively, "Meritor") assert that they should be allowed to admit evidence at trial pursuant to Fed. R. Evid. 801(d)(2)(E), which provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. According to the Third Circuit,

> [i]n order for an out-of-court statement to be admissible pursuant to Rule 801(d)(2)(E), the district court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy.

*In re Flat Glass Antitrust Litigation*, 385 F.3d 350, 375 (3d Cir. 2004) (*citing United*

*States v. Ellis*, 156 F.3d 493, 496 (3d Cir. 1998)). It is a plaintiff's burden to show, by a preponderance of the evidence, that all of the above elements have been met. *See In re Flat Glass Antitrust Litigation*, 385 F.3d at 375.

 2. Meritor quotes the following language from the above cited case to support the contention that it has adduced sufficient evidence from which a jury could permissibly infer the existence of a conspiracy:

> The existence of an agreement is "[t]he very essence of a section 1 claim." . . . The Sherman Act speaks in terms of a "contract," "combination" or "conspiracy," but courts have interpreted this language to require "some form of concerted action." . . . In other words, there must be a "unity of purpose or a common design and understanding or a meeting of the minds'" or "'a conscious commitment to a common scheme.'" . . .

*Id.* at 356-57) (citations omitted). The Third Circuit, however, has further explained that

> "antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case." . . . In other words, certain "inferences may not be drawn from circumstantial evidence in an antitrust case." . . . This higher threshold is imposed in antitrust cases to avoid deterring innocent conduct that reflects enhanced, rather than restrained, competition. . . .

*Id.* at 357 (citations omitted). In this regard, the Third Circuit has explored

> "exactly what inferences are circumscribed in a section 1 case" [by identifying] "two important circumstances underlying the [Supreme] Court's decision in *Matsushita [Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)]": (1) [whether] "the plaintiffs' theory of conspiracy was implausible"; and (2) [whether] "permitting an inference of antitrust conspiracy in the circumstances 'would have the effect of deterring **significant** procompetitive conduct.'"

*Id.* (citations omitted) (emphasis in original).

 3. Meritor has asserted a § 1 claim in its complaint (count VI), whereby it is alleged that "Eaton and the OEMs entered into agreements **for the purpose of**

2

**foreclosing Meritor and ZF Meritor from competing** in the linehaul and vocational markets and assisting Eaton in willfully and wrongfully obtaining and maintaining monopoly power in those markets in North America." (D.I. 165, ex. 1 at 37) (emphasis added) The question remains whether Meritor has adduced sufficient evidence of **illegal** concerted action to justify the admission of documents under Rule 801(d)(2)(E) and the use of the word "conspiracy" in front of the jury.

    4. The evidence of record is ambiguous at best, given that Meritor variously asserts both that the OEMs "agreed" and/or were "induced" to act "in concert" with Eaton[1] and that the OEMs were "coerced" into acting "in concert" with Eaton at the risk of being "punished."[2] It can be inferred from the evidence that Eaton acted "in concert" with the OEMs, through its contractual relations with the OEMs, in order to achieve its intended goal of market dominance. It is not clear from the evidence, however, whether the OEMs shared that goal; that is, whether there was, in fact, a "unity of purpose" or "a conscious commitment to a common scheme." Of course, the use by Eaton (at least to a large extent) of industry-wide practices does not help Meritor's cause.

    5. Therefore, in order to balance the competing concerns of Meritor ( in admitting relevant evidence) and of Eaton (in precluding the admission of confusing, unduly prejudicial and/or completely untrustworthy evidence), the following guidance is offered for the admission of evidence at trial:

        a. Meritor may not use the word "conspiracy" until authorized to do so by

---

[1] (*See, e.g.,* D.I. 165, ex. 1 at 25; D.I. 163, ex. 1 at 51-52, 106)

[2] (*See, e.g.,* D.I. 165, ex. 1 at 27; D.I. 163, ex. 1 at 51-52, 106)

3

the court upon further application.

      b. Meritor may admit documents created by Eaton and the OEMs that reflect the course of their business relationship.

      c. Meritor may not admit documents that contain multiple levels of hearsay, e.g., documents created neither by Eaton or the OEMs but that allegedly relate what the declarant believes to be a statement by Eaton or the OEMs, particularly if the statement is allegedly made by someone other than an executive (someone with authority to make decisions) or offered to prove the opposite of a conspiracy, that is, that the OEMs were being coerced or were unhappy with their relationship with Eaton.

    6. **Steel surcharges.** Given the time constraints of this trial (certainly a matter of concern to Meritor), the minimal relevance of the evidence proffered by Meritor about how Eaton handled steel surcharges with one OEM is far outweighed by the risk of jury confusion and of satellite litigation as to how Eaton and Meritor resolved the problem of raw material increases with other OEMs.

    7. **Pricing of Mack transmissions.** The dispute between Mack and Eaton over pricing in March 2003 appears to be nothing more than a contractual dispute and irrelevant to the issue of market power. The question of why Eaton was listed in the 2002 contract in standard position on Mack's on-highway trucks may well be relevant to the question of Eaton's market power. Documents shall be admitted consistent with this reasoning.

    8. **Truck-buyer testimony.** Meritor requests permission to call as witnesses several "truck buyers." The question is not whether such witnesses have relevant

evidence to offer; the question is whether their proffered testimony was timely identified and vetted through the discovery process. The witnesses were not identified in Meritor's Rule 26 initial disclosures, nor in any supplemental disclosures. Of the approximately 2.8 million pages of documents produced in this case, Mr. Haznaw's name appears on one page; Mr. Miller's name appears in five documents; Mr. Perkins' name appears in 40 documents; and Mr. Kreilkamp's name appears in 121 documents.[3] Although Dr. DeRamus referred to two "testament letters" given by truck buyers on page 162 of his expert report, none of the proposed witnesses authored these letters. Given the magnitude of the record at bar, I conclude that none of the proferred witnesses were adequately disclosed, as required by my trial guidelines. Moreover, because the proposed testimony pertains to topics which are subjective, i.e., based on their experience and knowledge in the trucking industry, Eaton will not have the opportunity to present witnesses to offer contrary testimony based on their experience and knowledge.

_____
United States District Judge

---

[3] (D.I. 168 at 2)