IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ZF MERITOR LLC and MERITOR          )
TRANSMISSION CORPORATION,           )
                                    )
              Plaintiffs,           )
                                    )
       v.                           )  Civ. No. 06-623-SLR
                                    )
EATON CORPORATION,                  )
                                    )
              Defendant.            )


**FINAL JURY INSTRUCTIONS**


Dated:   October 7, 2009

## TABLE OF CONTENTS
## FINAL INSTRUCTIONS

*Opening Instructions*
1. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
2. Jurors' Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
3. The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
4. The Parties' Contentions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
5. Corporations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
6. Burdens Of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
7. Evidence Defined . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
8. Consideration of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
9. Direct and Circumstantial Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
10. Credibility of Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
11. Number of Witnesses  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
12. Expert Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
13. Deposition Testimony  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
14. Introduction- Antitrust Laws and Plaintiffs' Claims. . . . . . . . . . . . . . . . . . . . 16

*Section 1:  Unreasonable Restraint of Trade*
15. Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
16. Elements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
17. Agreement Defined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
18. Proof of Competitive Harm- Generally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
19. Relevant Product Market. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
20. Relevant Geographic Market. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
21. Competitive Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
22. Evidence of a Valid Business Purpose (Pro-Competitive Justification). . . . . . 26
22a. Balancing the Competitive Effects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Section 2 Monopolization*
23. Elements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
24. Relevant Market . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
25. Existence of Monopoly Power  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
26. Willful Acquisition or Maintenance of Monopoly Power  . . . . . . . . . . . . . . . . 33
27. Evidence of a Valid Business Purposes (Pro-Competitive Justification)  . . . . . 35
28. Balancing the Competitive Effects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Section 2 Attempt to Monopolize*
29. Elements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
30. Anticompetitive Conduct  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
31. Specific Intent to Achieve Monopoly Power . . . . . . . . . . . . . . . . . . . . . . . . . 39
32. Dangerous Probability of Success . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Clayton Act:  Section 3*
33. Elements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

34.   Relevant Market . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45
35.   De Facto Exclusive Dealing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
36.   Substantial Lessening of Competition. . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**Antitrust Injury and Causation**
37.   Generally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .49
38.   Definition of Business or Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .52

**Deliberation and Verdict**
39.   Introduction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
40.   Unanimous Verdict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
41.   Duty To Deliberate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
42.   Court Has No Opinion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

## 1. INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room. Please listen carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

## 2. JURORS' DUTIES

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 3. THE PARTIES

I will now review for you the parties in this action.  Plaintiffs are Meritor Transmission Corporation and ZF Meritor LLC.  Meritor Transmission Corporation (which I will call "Meritor") is a subsidiary of ArvinMeritor, Inc., a manufacturer of transmissions, axles, brakes, drive shafts, and other truck components.  Prior to 1999, Meritor made certain manual transmissions.  In mid-1999, Meritor formed a joint venture with ZF Friedrichshafen AG (which I will call "ZF AG"), a German manufacturer of transmissions and other truck components.  The joint venture was called ZF Meritor LLC (which I will call the "joint venture").  Meritor and ZF AG were each 50% shareholders of the joint venture.

The joint venture made and sold certain manual transmissions and assembled automated mechanical transmissions it purchased from ZF AG and imported from Germany.  The joint venture operationally dissolved at the end of 2003.  Meritor again made certain manual transmission after that time and acted as the sales agent for ZF AF's automated mechanical transmissions.  In 2006, Meritor stopped making manual transmissions, although it continued to market ZF AG's automated mechanical transmission, the FreedomLine.

At times, I will refer to Meritor and the joint venture collectively as "plaintiffs."  But you should understand that they are distinct companies with different operations.

The defendant is Eaton Corporation (which I will refer to as "defendant").  Defendant began manufacturing heavy duty truck manual transmissions in North America in 1958.  From 1958 until the late 1980s, defendant was the only manufacturer of Class 8 manual transmissions in North America.  In the 1990s, defendant introduced

3

an automated mechanical transmission.  It continues to sell a number of manual and automated mechanical transmissions today.

## 4.  THE PARTIES' CONTENTIONS

Plaintiffs allege that defendant entered into long-term contracts and engaged in other conduct in furtherance of the contracts that unreasonably restrained trade in violation of Section 1 of the Sherman Act.

Plaintiffs further allege that defendant unlawfully acquired or maintained a monopoly in, or attempted to monopolize, a relevant market, in violation of Section 2 of the Sherman Act, by entering into long-term contracts with the OEMs and engaging in other conduct.  Plaintiffs allege that the contracts also violated Section 3 of the Clayton Act.  Plaintiffs claim that defendant harmed the competitive process by engaging in anticompetitive conduct and also forced plaintiffs to go out of business and otherwise caused them injury.

 Defendant contends that the contracts and conduct benefitted customers and were pro-competitive and, as a result, it denies plaintiffs' claims.  More specifically, defendant denies that it had or exercised monopoly power in any relevant market, denies that its contracts were exclusive, and denies that it harmed its customers or acted anticompetitively.

## 5.  CORPORATIONS

Under the law, a corporation is a person, but it can act only through its agents - such as its directors, officers, managers, or others acting on its behalf.  A corporation is legally bound by the acts and the statements of its agents done or made within the scope of their employment or their apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of duties the agent would have (judging from his position with the company), the responsibilities previously entrusted to him or his office, and the circumstances surrounding his past conduct.

To summarize, in order for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting with the scope of his employment or his apparent authority.

A corporation is entitled to the same fair trial as a private individual.  The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence.

6

## 6.  BURDENS OF PROOF

Plaintiffs have the burden of proving their asserted violations of the antitrust laws by what is called a preponderance of the evidence.  That means that plaintiffs have to produce evidence which, when considered in light of all of the facts, leads you to believe that what plaintiffs assert is more likely true than not.  To put it differently, if you were to put the evidence of plaintiffs and defendant on opposite sides of a scale, the evidence supporting plaintiffs' claims would have to make the scales tip somewhat on plaintiffs' side for your verdict to be for plaintiffs.

If plaintiffs meet their burden of proving their case, defendant bears the burden of proof with respect to any affirmative defenses, such as proving it had legitimate business purposes for the alleged conduct.  This means that defendant has the burden of proving certain defenses by a preponderance of the evidence.  If defendant fails to establish any of its affirmative defenses by a preponderance of the evidence, you must find that those defenses cannot be applied.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt.  That requirement does not apply to a civil case; therefore, you should put it out of your mind.

## 7. EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify evidence.

During the trial, I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

8

## 8. CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 9.  DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 10.  CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand.  Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently.  Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial.  It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth.  People may tend to forget some things or remember

11

other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## 11.  NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

## 12. EXPERT WITNESSES

When knowledge of technical or financial subject matter might be helpful to the jury, a person who has special training or experience in that technical or financial field is permitted to state his or her opinion on those technical or financial matters. That person is called an expert witness. However, you are not required to accept that opinion. As with any other witness, it is up to you to judge the credentials and credibility of each expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

## 13. DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or played electronically. This testimony is entitled to the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## 14. INTRODUCTION - ANTITRUST LAWS AND PLAINTIFFS' CLAIMS

The purpose of the antitrust laws is to preserve free and unfettered competition in the marketplace.  The antitrust laws protect competition, not individual competitors, and rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

Plaintiffs have brought four separate antitrust claims against defendant. Plaintiffs' first claim is under Section 1 of the Sherman Act, which prohibits a person or corporation from entering into contracts, combinations, and conspiracies that unreasonably restrain trade in a relevant market.  Plaintiffs' second claim is under Section 2 of the Sherman Act, which prohibits a person or corporation from willfully acquiring or maintaining a monopoly in a relevant market.  Plaintiffs' third claim is for attempted monopolization under Section 2.  Plaintiff's fourth claim is under Section 3 of the Clayton Act, which prohibits the use of exclusive dealing contracts to foreclose competition in a relevant market.

Each of plaintiffs' first three claims has an element regarding interstate or foreign commerce.  Plaintiffs' fourth claim for exclusive dealing under Section 3 of the Clayton Act has an element regarding "use, consumption or resale in the United States."  I am instructing you, for purposes of the each of plaintiffs' claims, that you should find that plaintiffs have met their burden of proof.

16

## SECTION 1:  UNREASONABLE RESTRAINT OF TRADE

## 15.  OVERVIEW

Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable.  You must determine, therefore, whether the restraint challenged here - including the long-term supply contracts between defendant and the OEMs for heavy duty transmissions and other conduct- are unreasonable restraints of trade.  In making this determination, you must decide whether plaintiffs have proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product market and a relevant geographic market.  If you find that the plaintiffs have proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the  restraint produces countervailing competitive benefits.  If you find that it does, then you must balance the competitive harm against the competitive benefit.  The challenged restraint is illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit.  I will now review each step of the analysis in more detail.

## SECTION 1:  UNREASONABLE RESTRAINT OF TRADE

### 16. ELEMENTS

Plaintiffs challenge defendant's conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations and conspiracies that unreasonably restrain trade.  To establish a violation of Section 1 of the Sherman Act, plaintiffs must prove the following, by a preponderance of the evidence:

**First,** that defendant entered into one or more agreements with the OEMs;

**Second**, that those agreements produced anticompetitive effects within the relevant market;

**Third**, that the objects of the conduct pursuant to the agreements were illegal; and

**Fourth**, that plaintiffs suffered antitrust injuries as a proximate result of defendant's agreements with the OEMs.  You will need to determine whether plaintiffs have proven this element consistent with instructions 38 and 39.

If you find that plaintiffs have failed to prove any of these elements, then you must find for defendant and against plaintiffs on this claim.  If you find that plaintiffs have proven the elements by a preponderance of the evidence, then you must find for plaintiffs and against defendant on this claim.  I will now explain each of these elements to you.

18

## SECTION 1:  UNREASONABLE RESTRAINT OF TRADE

### 17.  AGREEMENT DEFINED

Plaintiffs must prove that defendant entered into one or more agreements with the OEMs.  Such agreements require a unity of purpose or a common design and understanding or meeting of the minds in an unlawful arrangement.  The agreements may be either expressly stated in a contract or inferred from the circumstances. Unilateral action, no matter what its motivation, is not unlawful.

19

## SECTION 1:  UNREASONABLE RESTRAINT OF TRADE

## 18.  PROOF OF COMPETITIVE HARM - GENERALLY

As I mentioned, in order to prove that the challenged restraint is unreasonable, plaintiffs must demonstrate that the restraint has resulted in a substantial harm to competition.  Although it may be relevant to the inquiry, harm that occurs merely to the individual business of the plaintiffs is not sufficient, by itself, to demonstrate harm to competition generally.  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.

Furthermore, plaintiffs must show that the harm to competition occurred in an identified market, known as a "relevant market."  There are two aspects to a relevant market.  The first aspect is known as the relevant product market.  The second aspect is known as the relevant geographic market.

It is plaintiffs' burden to prove the existence of a relevant market.

## SECTION 1:  UNREASONABLE RESTRAINT OF TRADE

### 19.  RELEVANT PRODUCT MARKET

Plaintiffs must prove, by a preponderance of the evidence, the existence of a relevant product market.  The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.

In this case, the parties agree that the relevant product market is Class 8 heavy duty transmissions.  You should use this definition throughout these instructions.

21

## SECTION 1: UNREASONABLE RESTRAINT OF TRADE

## 20.  RELEVANT GEOGRAPHIC MARKET

You must determine what the relevant geographic market is.  Plaintiffs have the burden of proving the relevant geographic market by a preponderance of the evidence. The relevant geographic market is the area in which defendant faces competition from other firms that compete, or could compete, in the relevant product market and to which customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

In this case, plaintiffs claim that the relevant geographic market is North America, which includes the United States, Canada and Mexico, or "NAFTA" as it is more commonly referred to.  Defendant claims that plaintiffs have not met their burden to establish that the relevant geographic market is North America.  Defendant contends that North American transmission manufacturers, including plaintiffs and defendant, face actual and potential competition from global manufacturers located in Europe and Asia.

In determining whether plaintiffs have met their burden and demonstrated that their proposed geographic market is proper, you may consider several factors, including:

1.  The geographic areas where plaintiffs and defendant sold heavy duty transmissions and where their customers are located;

22

2.  The geographic areas customers considered for supply when buying heavy duty transmissions;

3.  The geographic areas where customers have turned or seriously considered turning for supply;

4.  The geographic areas that suppliers view as potential sources of competition;

5.  Whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

## SECTION 1:  UNREASONABLE RESTRAINT OF TRADE

## 21.  COMPETITIVE HARM

If you find that plaintiffs have proven the existence of a relevant market, then you must determine whether plaintiffs also have proven that the challenged restraint has had a substantial harmful effect on competition in that market.  A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, and higher product quality.  If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced competitive harm, you may look at the following factors:  the effect of the restraint on prices, output, product quality and service; the purpose and nature of the restraint; the nature and structure of the relevant market, both before and after the restraint existed; the number of competitors in the relevant market and the level of competition among them, both before and after the restraint existed; and whether the defendant possessed "market power."

The last factor mentioned, market power, has been defined as an ability profitably to raise prices above those that would be charged in a competitive market for a sustained period of time.  A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does

24

not possess market power.  The ability to charge higher prices for better products or services, however, is not market power.  An important factor in determining whether the defendant possesses market power is the defendant's market share; that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors you may consider in determining whether defendant has market power include barriers to entry, entry and exit by other companies, number and size of competitors, and the power of the buyers in the industry.  If defendant does not possess market power, then it is less likely that the challenged restraint has resulted in a substantial effect on competition in the market.

## SECTION 1:  UNREASONABLE RESTRAINT OF TRADE

## 22.  EVIDENCE OF A VALID BUSINESS PURPOSE

## (PRO-COMPETITIVE JUSTIFICATION)

If you find that plaintiffs have proven that defendant engaged in an unreasonable restraint of trade that resulted in substantial harm to competition in the relevant market, then you next must determine whether defendant has proven, by a preponderance of the evidence, a pro-competitive justification for its conduct.  That is, you must consider whether defendant's actions were carried out for valid business reasons.  A pro-competitive justification is valid if it relates directly or indirectly to the enhancement of consumer welfare, for example, the pursuit of efficiency and quality control or to offer a better product or lower prices.

If you find that defendant's conduct resulted in competitive benefits, then you also must consider whether the conduct was reasonably necessary to achieve the benefits.  If plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that created substantially less harm to competition, then they cannot be used to justify the conduct.

## SECTION 1:  UNREASONABLE RESTRAINT OF TRADE

### 22a.  BALANCING THE COMPETITIVE EFFECTS

If you find that defendant's anticompetitive conduct was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same conduct.  If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint of trade is unreasonable.  If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint of trade is not unreasonable.  In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just a single competitor or group of competitors

## SECTION 2:  MONOPOLIZATION

### 23.  ELEMENTS

Section 2 of the Sherman Act prohibits monopolization.  Plaintiffs allege that they were injured by defendant's unlawful monopolization of the relevant market.  To prevail on this claim, plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First**, that the alleged market is a valid relevant market;

**Second**, that defendant possessed monopoly power in that market;

**Third**, that defendant "willfully" acquired or maintained monopoly power in that market by engaging in anticompetitive conduct;

**Fourth**, that defendant's conduct occurred in or affected interstate commerce; and

**Fifth**, that plaintiffs suffered antitrust injuries in their business or property because of defendant's anticompetitive conduct.  You will need to determine whether plaintiffs have proven this element consistent with instructions 38 and 39.

If you find that plaintiffs have failed to prove any of these elements, then you must find for defendant and against plaintiffs on this claim.  If you find that plaintiffs have proven the elements by a preponderance of the evidence, then you must find for plaintiffs and against defendant on this claim.  I will now explain each of these elements to you.

28

## SECTION 2: MONOPOLIZATION

### 24. RELEVANT MARKET

In order to meet their burden on the Sherman Act Section 2 claims, plaintiffs must prove, by a preponderance of the evidence, a relevant product market and a relevant geographic market. You should follow instructions 19 and 20 in this regard.

## SECTION 2: MONOPOLIZATION

## 25. EXISTENCE OF MONOPOLY POWER

If you find that plaintiffs have proven the relevant market, then you should determine whether defendant had monopoly power in that market. Monopoly power is the power to control prices or exclude competition in a relevant market. Monopoly power, in and of itself, is not unlawful.

The evidence presented by the parties includes evidence of defendant's market share, barriers to entry into the relevant market, entry and exit by other companies, the number and size of other alleged competitors, and the market power of the OEMs. If this evidence establishes that defendant had the power to control prices and exclude competition in the relevant market, then you may conclude that defendant had monopoly power in the market.

### Market Share

The first factor that you should consider is defendants' share of the relevant market. A market share above 50 percent may be sufficient to support an inference that defendant had monopoly power. This presumption may be rebutted, however, by evidence that defendant did not have the ability to unilaterally raise prices and exclude competitors. In considering whether defendant had monopoly power, it is important to consider other aspects of the relevant market, including the factors discussed below.

### Market Share Trends

The trend in defendant's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly

power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

### Barriers to Entry

You may also consider whether there were barriers to entry into the relevant market.  Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way.  Barriers to entry include regulatory requirements, specialized marketing practices, and the reputation of the companies already participating in the market (or the brand name recognition of their products).

Evidence of low or no entry barriers may be evidence that defendant did not have monopoly power, regardless of its market share, because new competitors could enter easily if defendant attempted to raise prices for a substantial period of time.  By contrast, evidence of high barriers to entry along with high market share may support an inference that defendant had monopoly power.

### Entry and Exit By Other Companies

The history of entry and exit in the relevant market may be helpful to consider. Entry of new competitors or expansion of existing competitors may be evidence that defendant lacked monopoly power.  On the other hand, departures from the market, or the failure of firms to enter the market or expand their sales, particularly if prices and profit margins are relatively high, may support an inference that defendant had monopoly power.

### Number and Size of Competitors

31

You may consider whether defendant's competitors were capable of effectively competing.  In other words, you should consider whether the financial strength, market shares and number of competitors in the relevant market acted as a check on defendant's ability to price its products.  If defendant's competitors were vigorous or had large or increasing market shares, this may be evidence that defendant lacked monopoly power. On the other hand, if you determine that defendant's competitors were weak or had small or declining market shares, this may support an inference that defendant had monopoly power.

**Power of the Buyers**

You may consider whether the OEMs in the relevant market had sufficient market power to preclude defendant from raising prices above competitive levels and exclude competition.

## SECTION 2: MONOPOLIZATION

### 26. WILLFUL ACQUISITION OR MAINTENANCE OF MONOPOLY POWER

If you find that plaintiffs have proven the existence of the relevant market and that defendant possessed monopoly power in that market, then you must determine whether plaintiffs have also proven that defendant willfully acquired or maintained monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition or maintenance of monopoly power through anticompetitive acts from the acquisition or maintenance of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a pro-competitive purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these

33

goals – or the achievement of these goals – unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In this case, plaintiffs contend that defendant had monopoly power and used it to enter into anticompetitive long-term supply contracts and engage in other conduct to prevent or exclude competition or frustrate the efforts of other companies to compete for customers in the relevant market. In determining whether defendant's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

The acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or commercial success. They must represent conduct that has made it very difficult or impossible for competitors to compete and that was taken for no legitimate business reason. You may not find that a company willfully acquired or maintained monopoly power solely through the exercise of superior foresight and skill; or because of natural advantages such as unique geographic access to markets; or because of economic or technical efficiency, including efficiency resulting from research; or because changes in cost or taste have driven out all but one supplier.

## SECTION 2:  MONOPOLIZATION

## 27.  EVIDENCE OF A VALID BUSINESS PURPOSE

## (PRO-COMPETITIVE JUSTIFICATION)

If you find that plaintiffs have proven that defendant engaged in anticompetitive

acts that resulted in substantial harm to competition in the relevant market, then you

next must determine whether defendant has proven, by a preponderance of the

evidence, a pro-competitive justification for its conduct.  You should follow instruction 22

in this regard.

35

## SECTION 2:  MONOPOLIZATION

## 28.  BALANCING THE COMPETITIVE EFFECTS

If you find that defendant's anticompetitive conduct was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same conduct.  You should follow instruction 22a in this regard.

## SECTION 2:  ATTEMPT TO MONOPOLIZE

### 29. ELEMENTS

Plaintiffs allege that they were injured by defendant's unlawful attempt to monopolize.  To prevail on their claim of attempted monopolization, plaintiffs must prove each of the following elements by a preponderance of the evidence:

**First**, that defendant engaged in anticompetitive conduct;

**Second**, that defendant had a specific intent to achieve monopoly power;

**Third**, that there was a dangerous probability that defendant would achieve its goal of monopoly power in the relevant market;

**Fourth**, that defendant's conduct occurred in or affected interstate commerce; and

**Fifth**, that plaintiffs suffered antitrust injuries in their business or property by defendants' anticompetitive conduct.  You will need to determine whether plaintiffs have proven this element consistent with instructions 38 and 39.

If you find that plaintiffs have failed to prove any of the elements, then you must find for defendant and against plaintiffs on their claim of attempted monopolization.  If you find that plaintiffs have proven the elements by a preponderance of the evidence, then you must find for plaintiffs and against defendant on this claim.

## SECTION 2: ATTEMPT TO MONOPOLIZE

### 30. ANTICOMPETITIVE CONDUCT

It is not sufficient for plaintiffs to prove that defendant intended to monopolize the relevant market. Plaintiffs must also show that defendant engaged in anticompetitive conduct, coupled with a specific intent to monopolize and a dangerous probability that defendant would succeed.

I previously instructed you on the standards to apply in determining whether defendant's conduct is anticompetitive or if it is, on balance, justified by a valid business purpose. You should rely on those instructions in your evaluation of this claim as well.

38

## SECTION 2: ATTEMPT TO MONOPOLIZE

## 31.  SPECIFIC INTENT TO ACHIEVE MONOPOLY POWER

The second element that plaintiffs must prove is that defendant had a specific intent to monopolize a relevant market.  Plaintiffs must first prove the relevant market. Plaintiffs must then prove that defendant had a specific intent to monopolize that market.  I have previously instructed you regarding determining whether plaintiffs have proven the relevant market for purposes of their other claims; those instructions apply with equal force to plaintiffs' attempt to monopolize claim.

If you find that plaintiffs have proven the relevant market, you must then decide whether defendant had the specific intent to monopolize that market.  In other words, you must decide if the evidence shows that defendant acted with the conscious aim of acquiring the power to control prices or to exclude or destroy competition in the relevant market.

There are several ways in which plaintiffs may prove that defendant had the specific intent to monopolize.  There may be evidence of direct statements of defendant's intent to obtain a monopoly in the relevant market.  Such proof of specific intent may be established by documents prepared by responsible agents of defendant at or about the time of the conduct in question or by testimony concerning statements made by responsible agents of defendant.  You must be careful, however, to distinguish between a defendant's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

39

Even if you decide that the evidence does not prove directly that defendant actually intended to obtain a monopoly, specific intent may be inferred from what defendant did.  For example, if the evidence shows that the natural and probable consequence of defendant's conduct in the relevant market was to give defendant control over prices and to exclude or destroy competition, and that this was plainly foreseeable by defendant, then you may (but are not required to) infer that defendant specifically intended to acquire monopoly power.

## SECTION 2: ATTEMPT TO MONOPOLIZE

## 32.  DANGEROUS PROBABILITY OF SUCCESS

If you find that defendant had the specific intent to achieve a monopoly and engaged in anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize, namely, that there was a dangerous probability that defendant would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

The court's previous instructions with respect to monopoly power apply with equal force to plaintiffs' attempt to monopolize claim.

In determining whether there was a dangerous probability that defendant would acquire the ability to control price and exclude competition in a relevant market, you should consider such factors as:

**First**, defendant's market share;

**Second**, the trend in defendant's market share;

**Third**, whether the barriers to entry into the market made it difficult for competitors to enter the market; and

**Fourth**, the likely effect of any anticompetitive conduct on defendant's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that defendant would ultimately acquire monopoly power.  A dangerous probability of success need not mean that success was nearly

certain, but it does mean that there was a substantial and real likelihood that defendant would ultimately acquire monopoly power.

## CLAYTON ACT:  SECTION 3

### 33.  ELEMENTS

Plaintiffs also have claims under Section 3 of the Clayton Act.  Plaintiffs allege that defendant used exclusive dealing arrangements with the OEMs to foreclose competition in a substantial portion of the relevant market, and that plaintiffs were injured as a result of these exclusive dealing arrangements.  To prevail on this claim, plaintiffs must prove the following elements by a preponderance of the evidence:

**First**, that the alleged relevant market is valid;

**Second**, that defendant entered into at least one contract for the sale of transmissions for use, consumption or resale in the United States that constituted a de facto exclusive dealing contract in a valid relevant market;

**Third**, that defendant entered into a sufficient number of de facto exclusive dealing contracts such that it substantially lessened competition or tended to create a monopoly in a valid relevant market;

**Fourth,** that defendant had no valid business justification for entering into those contracts;

**Fifth**, that plaintiffs suffered antitrust injuries as a result of defendant's exclusive de facto dealing contracts.  You will need to determine whether plaintiffs have proven this element consistent with instructions 38 and 39.

If you find that plaintiffs have failed to prove any of these elements by a preponderance of the evidence, you must find for defendant and against plaintiffs on

43

this claim. If you find that plaintiffs have met their burden of proof as to each element, then you may find for plaintiffs and against defendant on this claim.

## CLAYTON ACT:  SECTION 3

### 34.  RELEVANT MARKET

In order to meet their burden on their Clayton Act Section 3 claim, plaintiffs must first

prove, by a preponderance of the evidence, a relevant product market and a relevant

geographic market.  You should follow instructions 19 and 20 in this regard.

## CLAYTON ACT: SECTION 3

## 35. DE FACTO EXCLUSIVE DEALING

An actual exclusive dealing contract is one where the express terms state that the buyer agrees to purchase a product for a period of time exclusively from one supplier and to refuse to buy from others. Plaintiffs do not allege that in this case. Rather, plaintiffs allege that the long-term supply contracts with defendant, in effect, committed the OEMs to purchase at least a substantial share of their transmissions from defendant. I will refer to this as a "de facto" exclusive dealing contract.

You should not assume that a contract is illegal merely because it is exclusive. Exclusive agreements, in and of themselves, do not violate the antitrust laws. Instead, plaintiffs must prove, by a preponderance of the evidence, that defendant had de facto exclusive dealing contracts that foreclosed competition in a substantial share of a relevant market. That is to say, that defendant had de facto exclusive dealing contracts sufficient in scope and duration to injure competition generally by foreclosing competitors from the opportunity to compete for a substantial share of the relevant market.

## CLAYTON ACT:  SECTION 3

## 36.  SUBSTANTIAL LESSENING OF COMPETITION

If you find that plaintiffs have proven that defendant entered into de facto exclusive dealing contracts, you should then consider whether plaintiffs have proven, by a preponderance of the evidence, that those contracts substantially lessened competition in the relevant market.  Only if you find that plaintiffs have proven a substantial lessening of competition in a relevant market due to defendant's contracts can you find in favor of plaintiffs on their Clayton Act Section 3 claim.

In deciding this issue, you should consider the structure of the relevant market and the percentage of the relevant market closed off by, or tied up because of, the contracts.  In this regard, you may consider how many companies were in the market and whether the contracts significantly limited the opportunities for competing sellers to enter or remain in the market.

You must consider the probable effect that the contracts had on competition in the market.  If you find that defendant's contracts did not substantially lessen competition, then you must find in favor of defendant.

If you find that plaintiffs have proven that defendant's contracts substantially lessened competition in the relevant market, then you must go on to consider whether there is any legitimate business justification for the contract and whether they are reasonable.  Only unreasonable restraints of this type are unlawful.  In this regard, you should consider such factors as:

47

1.  The circumstances under which defendant set up these contracts and what reasons it had for doing so;

2.  The relative bargaining strength of the parties to the contracts.  If the parties had relatively equal bargaining strength, then the contracts are less likely to be unreasonable;

3.  How long in time the contracts were effective.  If the contracts lasted a relatively short time and did not significantly limit the opportunity for competing sellers to enter or remain in the market, then they were less likely to be unreasonable;

4.  Any favorable effects on competition that the contracts produced; and

5.  Any alternative channels of distribution that may have been available to plaintiffs.

If you find the contracts foreclosed competition in a substantial portion of the relevant market, and that the anticompetitive effects of those contracts outweighed any pro-competitive effects, you must consider whether plaintiffs were injured as a result of these contracts, consistent with instructions 38 and 39.

## ANTITRUST INJURY AND CAUSATION

### 37.  GENERALLY

If you find that defendant has violated any of the antitrust laws as alleged by

plaintiffs, then you must decide if plaintiffs were injured by defendant's conduct.  In this

trial you are not being asked to determine the amount of damages the plaintiffs are

entitled to recover, but whether plaintiffs are entitled to recover damages at all.

Plaintiffs are entitled to recover damages for an injury to their business or property if

they can establish, by a preponderance of the evidence, three elements of injury and

causation:

**First**, that plaintiffs were in fact injured as a result of defendant's violation of the

antitrust laws;

**Second**, that defendant's illegal conduct was a material cause of plaintiffs' injury;

and

**Third**, that plaintiffs' injury is an injury of the type that the antitrust laws were

intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage."

For plaintiffs to establish that they are entitled to recover damages, they must prove

that they were injured as a result of defendant's violation of the antitrust laws.  Proving

the fact of damage does not require plaintiffs to prove the dollar value of their injuries.

It requires only that plaintiffs prove that they were in fact injured by defendant's antitrust

violation.

49

Plaintiffs must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that defendant's illegal conduct was a material cause of plaintiffs' injuries.  This means that plaintiffs must prove that some damage occurred to them as a result of defendant's alleged antitrust violation, and not some other cause. Plaintiffs are not required to prove that defendant's antitrust violation was the sole cause of their injuries; nor need plaintiffs eliminate all other possible causes of injury.  It is enough if plaintiffs have proven that the alleged antitrust violation was a material cause of their injuries.  However, if you find that plaintiffs' injuries were caused primarily by something other than the alleged antitrust violation, then you must find that plaintiffs have failed to prove that they are entitled to recover damages from defendant.

Finally, plaintiffs must establish that their injuries are the type of injuries that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then plaintiffs' injuries are antitrust injuries.  On the other hand, if plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then plaintiffs' injuries are not antitrust injuries.  You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against – such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit – and the antitrust laws do not permit plaintiffs to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

50

However, if plaintiffs can establish that they were in fact injured by defendant's conduct, that defendant's conduct was a material cause of their injury, and that plaintiffs' injury was the type that the antitrust laws were intended to prevent, then you should find that plaintiffs have met their burden of proof on this element of their claims.

I instruct you that the date for determining injury is March 28, 2002, and you should find for plaintiffs on this element if you determine that plaintiffs suffered antitrust injuries after that date.

## ANTITRUST INJURY AND CAUSATION

## 38. DEFINITION OF BUSINESS OR PROPERTY

Plaintiffs must establish that the injury they claim to have suffered was an injury to their "business or property."  The term "business" includes any commercial interest or venture, and you are instructed that plaintiffs have been injured in their "business" if you find that they have suffered injury to any of their commercial interests or enterprises as a result of defendant's alleged antitrust violation.  The term "property" includes anything of value plaintiffs own, possess, or in which plaintiffs have a protectable legal interest. You are instructed that plaintiffs have been injured in their "property" if you find that anything of value that they own, possess, or have a legal interest in has been damaged as a result of defendant's alleged antitrust violation. You are further instructed that plaintiffs have been injured in their "property" if you find that they have paid an inflated price for goods, services, any legal interest of value, or have lost money as a result of defendant's alleged antitrust violation.

## DELIBERATION AND VERDICT

## 39.  INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 5-4, or 3-6, or whatever your vote happens to be.  That should stay secret until you are finished.

### 40. UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions about plaintiffs' Sherman Act or Clayton Act claims.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict in the courtroom to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## 41.  DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m.  If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and

resume your deliberations on the next business day.  You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may talk about the case only while you are in the jury room and everyone on the jury is present.

So if you do go home this evening, keep that instruction in mind.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone.  So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 12:30 and 1:30, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

## 42.  COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourselves based on the evidence presented.