```
 1                        - VOLUME A -

 2              IN THE UNITED STATES DISTRICT COURT

 3              IN AND FOR THE DISTRICT OF DELAWARE

 4                          - - -

 5
      ZF MERITOR LLC and MERITOR      :   CIVIL ACTION
 6    TRANSMISSION CORPORATION,       :
                                      :
 7                   Plaintiffs,      :
                                      :
 8         vs.                        :
                                      :
 9    EATON CORPORATION,              :
                                      :
10                   Defendant.   :   NO. 06-623 (SLR)

11
                                - - -
12
                               Wilmington, Delaware
13                             Friday, September 11, 2009
                               9:55 o'clock, a.m.
14
                                - - -
15
      BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J., and a jury
16
                                - - -
17
      APPEARANCES:
18

19            DRINKER, BIDDLE & REATH LLP
              BY:  KAREN V. SULLIVAN, ESQ.
20

21                   -and-

22

23

24                             Valerie J. Gunning
                               Brian P. Gaffigan
25                             Official Court Reporters
```

1    APPEARANCES (Continued):

2
              DICKSTEIN SHAPIRO LLP
3             BY:  JAY N. FASTOW, ESQ.,
                   PAUL R. TASKIER, ESQ.
4                  JAMES R. MARTIN, ESQ.,
                   JUSTIN W. LAMSON, ESQ.
5                  LAUREN BARSKI, ESQ. and
                   JENNIFER D. HACKETT, ESQ.
6                  (Washington, D.C.)

7

8                  Counsel for Plaintiffs

9

10
              MORRIS, NICHOLS, ARSHT & TUNNELL
11            BY:  DONALD E. REID, ESQ.

12                     -and-

13

14            HOWREY LLP
              BY:  JOSEPH A. OSTOYICH, ESQ.,
15                 ROBERT F. RUYAK, ESQ.,
                   MELISSA HANDRIGAN, ESQ.
16                 ANDREW D. LAZEROW, ESQ.,
                   ERIK T.  KOONS, ESQ. and
17                 WILLIAM C. LAVERY, ESQ.
                   (Washington, D.C.)

18

19                 Counsel for Defendant

20                     - - -

21

22

23

24

25

```
 1                     P R O C E E D I N G S

 2                (Proceedings commenced in the courtroom,

 3      beginning at 9:55 a.m.)

 4                THE COURT:  All right.  I understand that our

 5      jury is on its way up.  I gave them coffee and doughnuts so

 6      they could be in a good mood.  And there's leftovers, so we

 7      can have them while we're doing voir dire.

 8                Are there any issues that we should address this

 9      morning?

10                MR. FASTOW:  Your Honor, just a couple of

11      introductions, if I might.

12                THE COURT:  Sure.

13                MR. FASTOW:  I think this is the time for client

14      representatives.

15                THE COURT:  Sure.

16                MR. FASTOW:  First, I'd like to introduce Mr.

17      Charles Allen, who will be the representative for plaintiff

18      ZF Meritor.

19                THE COURT:  Already.

20                MR. FASTOW:  And although he's not here today,

21      Mr. Vernon Baker will be the representative for plaintiff

22      Meritor Transmission.

23                THE COURT:  All right.  Thank you very much.

24                MR. FASTOW:  I'd also like to introduce Mr. John

25      Gilliland, who we'd like to have join us today as a
```

```
1   consultant with the jury selection process.
2            THE COURT:  All right.
3            MR. FASTOW:  And we would trust that defense
4   counsel wouldn't make any comments about his role today.
5            THE COURT:  All right.  Now, I don't generally
6   allow jury consultants into the voir dire, but, certainly,
7   when you are exercising your peremptory challenges, you
8   certainly may.
9            MR. FASTOW:  Thank you, your Honor.
10           THE COURT:  All right.
11           MR. RUYAK:  I have an introduction.  I would
12  like to introduce Mr. Ken Davis, who is our corporate
13  representative.  He's president of the America's Vehicle
14  Corporation.
15           THE COURT:  All right.  Thank you very much.
16           You can let them in if they're ready.
17           (The prospective jurors entered the courtroom.)
18           THE COURT:  We are going to have to use the
19  first two rows ultimately, but if you want to just rearrange
20  everybody afterwards, that's fine.
21           And you all may be seated.  Sorry.
22           Good morning, ladies and gentlemen.  I am
23  delighted and actually surprised that so many of you showed
24  up today, and the parties and I truly appreciate your coming
25  in this weather from all parts of the state, so thank you
```

1    very much.

2              This exercise will take a little bit of time, so

3    please bear with us.

4              The good news is, we're going to select a jury

5    today, but once we select our jury and swear them in, we

6    will send you home and we'll start the trial officially on

7    Monday.  So it will be a long morning, but we will let you

8    enjoy your Friday afternoon.

9              Good morning.  I'm Judge Robinson.  I will be

10   presiding over the trial for which a jury is about to be

11   drawn in the case captioned ZF Meritor LLC and Meritor

12   Transmission Corporation versus Eaton Corporation.

13             Briefly stated, this is an action arising under

14   the antitrust laws of the United States.  Plaintiffs and

15   defendant are or were manufacturers of automotive

16   components.  More specifically, heavy-duty truck

17   transmissions.

18             Plaintiffs claim that defendant engaged in

19   conduct that foreclosed competition and created a monopoly

20   in the markets for such transmissions, thus violating the

21   antitrust laws of the United States.

22             Defendant denies these allegations.

23             The trial may last up to 16 days.  I time my

24   trials, so the attorneys have to complete their trial

25   presentations within these limits.  However, jury

1   deliberations may require you to be present longer than the

2   scheduled 16 days.

3          Our trial days will run approximately from 9:30

4   in the morning until 4:30 in the afternoon.  I note that

5   trial is currently scheduled to run from today through

6   October 7th.  However, no trial is scheduled for Friday,

7   September 18th, Monday, September 21st, or Monday,

8   September 28th.

9          Now, in light of this brief summary, I'm going

10  to ask you certain questions, the purpose of which is to,

11  first, enable the Court to determine whether or not any

12  prospective juror should be excused for cause, and, second,

13  to enable counsel for the parties to exercise their

14  individual judgment with respect to peremptory challenges.

15  That is, challenges for which no reason need be given by

16  counsel.

17         If any of you answer any of these questions

18  "yes" in your head, you need to stand up, and upon being

19  recognized by me, state your juror number.  Now, there are

20  an awful lot of you here, and it's going to get confusing if

21  you all state your number at the same time.  I try to go

22  from front to back and the left side, my left side of the

23  courtroom and then go over to the right side of the

24  courtroom, so just be aware of who is standing up around you

25  and try not to talk at the same time.

7

1                    For those of you who answer any of the questions
2       "yes," we're going to call you up individually, to follow up
3       on those answers.
4                    All right.  Ms. Davis, would you please
5       administer the oath.
6                    (Jury panel sworn/affirmed.)
7                    THE COURT:  You may be seated.  Thank you very
8       much.
9                    All right.  Now, you have been given -- I hope
10      you've been given a lot of lists, and the first couple of
11      questions that I have for you are with respect to those
12      lists.
13                   The first is the list of companies and
14      organizations.  And the first question is, have you, a
15      family member, or close friend, ever worked for any of these
16      companies or organizations?
17                   Your number?
18                   JUROR NO. 29:  29.
19                   THE COURT:  29.
20                   JUROR NO. 66:  66.
21                   THE COURT:  66.
22                   JUROR NO. 21:  21.
23                   THE COURT:  21?
24                   JUROR NO. 21:  21.
25                   THE COURT:  21.  Thank you.

```
 1                    And your number?

 2                    JUROR NO. 65:  65.

 3                    THE COURT:  65.  Thank you.

 4                    It's good if I repeat your number.  That means

 5     I've got it.

 6                    Yes, sir?

 7                    JUROR NO. 58:  57.

 8                    THE COURT:  57.  Thank you.

 9                    JUROR NO. 30:  30.

10                    THE COURT:  30.

11                    Anyone else on that question?

12                    All right.  The second question, still with

13     respect to this list of companies and organizations, do you

14     or any member of your household now own, or have you or any

15     such member ever owned any stocks or bonds in any of these

16     companies or organizations?

17                    JUROR NO. 29:  29.

18                    THE COURT:  29.

19                    JUROR NO. 66:  66.

20                    THE COURT:  66.

21                    JUROR NO. 25:  25.

22                    THE COURT:  25.

23                    Anyone else?

24                    Next question, still with regard to this list.

25     Have you, any family member, or anyone close to you ever had
```

1    any dealings with or relied financially in any way on any of

2    the companies or organizations?

3                JUROR NO. 25:  25.

4                THE COURT:  25.

5                JUROR NO. 29:  29.

6                THE COURT:  29.

7                JUROR NO. 30:  30.

8                THE COURT:  30.

9                JUROR NO. 33:  33.

10                THE COURT:  33.

11                JUROR NO. 36:  36.

12                THE COURT:  36.

13                JUROR NO. 79:  79.

14                THE COURT:  79.

15                And if you have any doubts, it is better to be

16    safe than sorry and just stand up and share your concerns.

17    Give us your number and share your concerns when we call you

18    up.

19                All right.  Yes?

20                JUROR NO. 69:  69.

21                THE COURT:  69.

22                JUROR NO. 53:  53.

23                THE COURT:  53.

24                Anyone else?  Yes?

25                JUROR NO. 65:  65.

```
 1                    THE COURT:  65.

 2                    JUROR NO. 56:  56.

 3                    THE COURT:  56.

 4                    JUROR NO. 66:  66.

 5                    THE COURT:  66.

 6                    JUROR NO. 1:  1.

 7                    THE COURT:  1.  Okay.

 8                    All right.  I think this is the last question

 9      that has to do with that list.

10                    Have you, any family member, or anyone close to

11      you had any experience with the products of any of those

12      companies or otherwise have any strong feelings, positive or

13      negative, toward any of these companies or organizations?

14                    I will start over on this side.  Yes, sir?

15                    JUROR NO. 70:  70.

16                    THE COURT:  70.

17                    JUROR NO. 29:  29.

18                    THE COURT:  29.

19                    JUROR NO. 30:  30.

20                    THE COURT:  30.

21                    JUROR NO. 36:  36.

22                    THE COURT:  36.

23                    JUROR NO. 33:  33.

24                    THE COURT:  33.

25                    JUROR NO. 21:  21.
```

```
1              THE COURT:  21.

2              JUROR NO. 4:  4.

3              THE COURT:  4.

4              JUROR NO. 56:  56.

5              THE COURT:  56.

6              JUROR NO. 2:  2.

7              THE COURT:  2.

8              All right.  The next question has to do with the

9    list of additional parties to the litigation.

10             Have you, any family member, or anyone close to

11   you had any deals with any of these -- well, with these

12   companies?

13             All right.  I'm sorry.  Hold on.  I just want to

14   make sure I have the right list myself.  Yes.  All right.

15   With these companies.

16             JUROR NO. 70:  70.

17             THE COURT:  70.

18             JUROR NO. 25:  25.

19             THE COURT:  25.

20             JUROR NO. 60:  60.

21             THE COURT:  60.

22             JUROR NO. 30:  30.

23             THE COURT:  30.

24             JUROR NO. 69:  69.

25             THE COURT:  69.
```

```
1                    JUROR NO. 3:  3.

2                    THE COURT:  3.

3                    All right.  You have been given a list of

4      attorneys and law firms involved in this litigation.  The

5      question is, are you related to, or personally acquainted

6      with, any of these attorneys, or have you ever been

7      represented by any of these attorneys or other associates or

8      members of the listed law firms?

9                    Yes, ma'am?

10                    JUROR NO. 51:  51.

11                    THE COURT:  51.

12                    JUROR NO. 4:  4.

13                    THE COURT:  4.

14                    JUROR NO. 3:  3.

15                    THE COURT:  3.

16                    30.

17                    Anyone else?

18                    All right.  Now, can I ask counsel a question

19     before I ask this question of the jury pool?  The next

20     question is about the individuals who might appear as

21     witnesses in this case and the question is, are any of them

22     from Delaware?  If they are not, then that would help these

23     folks determine whether they might know someone, just as an

24     added bit of information.

25                    Any of them from Delaware?  Don't know?
```

1            MR. FASTOW:  I don't know, your Honor.

2            THE COURT:  Don't know.

3            MR. OSTOYICH:  We don't think so, your Honor.

4            THE COURT:  All right.  We don't think they are

5    from Delaware, but we can't be sure.  So if you have any

6    doubts, let us know.  The list of individuals who might

7    appear as witnesses in this case, are any of you related to,

8    or personally acquainted with, any of these individuals?

9            (No audible response.)

10           THE COURT:  All right.  Next question, do you

11   have any personal knowledge of this case, or have you read

12   or heard it discussed, or have an opinion regarding it?

13           (No audible response.)

14           THE COURT:  Next question.  Have you ever been a

15   plaintiff, a defendant, or a witness in a civil lawsuit?

16           JUROR NO. 4:  4.

17           THE COURT:  4.

18           That's the good news.  Okay.

19           Next question.  Have you ever served as a juror

20   in a civil, not a criminal, a civil lawsuit?

21           JUROR NO. 57:  57.

22           THE COURT:  57.

23           JUROR NO. 49:  49.

24           THE COURT:  49.

25           JUROR NO. 60:  60.

1                    THE COURT:  60.

2                    JUROR NO. 39:  39.

3                    THE COURT:  39.

4                    Next question.  It has to do with a list of

5          subject areas that you were given.  And the question is,

6          have you ever been educated, employed, trained, or had any

7          experience in any of those areas?

8                    JUROR NO. 42:  42.

9                    THE COURT:  42.

10                    JUROR NO. 46:  46.

11                    THE COURT:  46.

12                    JUROR NO. 53:  53.

13                    THE COURT:  53.

14                    JUROR NO. 28:  28.

15                    THE COURT:  28.

16                    JUROR NO. 1:  1.

17                    JUROR NO. 30:  30.

18                    THE COURT:  30.

19                    JUROR NO. 36:  36.

20                    THE COURT:  36.

21                    JUROR NO. 33:  33.

22                    THE COURT:  33.

23                    JUROR NO. 15:  15.

24                    THE COURT:  15.

25                    JUROR NO. 79:  79.

1          THE COURT:  79.

2          JUROR NO. 4:  4.

3          THE COURT:  4.

4          All right.  Next question.  Have you ever worked

5     for a company that has been alleged to have engaged in or

6     has alleged that another company has engaged in an unlawful

7     monopoly or restraint of trade?

8          JUROR NO. 56:  56.

9          THE COURT:  56.

10         Next question.  Do any of you work for a company

11    that buys or leases large trucks?

12         30.

13         36?

14         JUROR NO. 36:  Yes.

15         JUROR NO. 19:  19.

16         THE COURT:  19.

17         JUROR NO. 56:  56.

18         THE COURT:  56.

19         JUROR NO. 46:  46.

20         THE COURT:  46.

21         JUROR NO. 37:  37.

22         THE COURT:  37.

23         JUROR NO. 7:  7.

24         THE COURT:  7.

25         JUROR NO. 54:  54.

16

1        THE COURT:  54.

2        JUROR NO. 18:  18.

3        THE COURT:  18.

4        Next question.  Do any of you work for a company

5   that performs maintenance on large trucks?

6        30.

7        JUROR NO. 19:  19.

8        THE COURT:  19.

9        Next question.  Do any of you work for a company

10  that sells parts to truck manufacturers or truck suppliers?

11       30.

12       Okay.  Anyone else?

13       (No audible response.)

14       THE COURT:  All right.  We're down to our last

15  two questions that generally deal with whether any of you

16  have any concerns, whether they're physical concerns, time

17  constraints, whatever.  If you have any concern about

18  serving as a juror in this lawsuit, you need to stand up and

19  give us your number so we can talk to you about it.  So

20  answer one of these questions.  It does not matter which

21  one.  Just answer one of them "yes" so we can talk to you.

22       The first of these questions is, do you have any

23  special disability or problem that would make it difficult

24  or impossible for you to serve as a member of the jury in

25  this case?

```
1                    JUROR NO. 25:  25.

2                    THE COURT:  25.

3                    JUROR NO. 60:  60.

4                    THE COURT:  60.

5                    JUROR NO. 32:  32.

6                    THE COURT:  32.

7                    JUROR NO. 1:  1.

8                    THE COURT:  1.

9                    JUROR NO. 20:  20.

10                   THE COURT:  20.

11                   JUROR NO. 17:  17.

12                   THE COURT:  17.

13                   JUROR NO. 21:  21.

14                   THE COURT:  21.

15                   JUROR NO. 49:  49.

16                   THE COURT:  49.

17                   JUROR NO. 76:  76.

18                   THE COURT:  76.  I'm old fashioned to think of

19      76 Trombones when I hear that number, but that's just me.

20                   Yes?

21                   JUROR NO. 4:  4.

22                   THE COURT:  4.

23                   Anyone else?

24                   JUROR NO. 78:  78.

25                   THE COURT:  78.
```

1           Last question.  Do you know of any other matter

2    which you believe should be called to the Court's attention

3    as having some bearing upon your qualifications or ability

4    to sit as a juror, or which you think may prevent you from

5    rendering a fair and impartial verdict based solely upon the

6    evidence and my instructions as to the law?

7           JUROR NO. 3:  3.

8           THE COURT:  3.

9           JUROR NO. 42:  42.

10          THE COURT:  42.

11          JUROR NO. 45:  45.

12          THE COURT:  45.

13          Anyone else?

14          All right.  We have quite a few people who

15   answered at least one of these questions affirmatively.

16   We're going to call them in numerical order back to the jury

17   room to speak with counsel and with me.  If, during this

18   period of time, you think of something that you want to

19   address with the Court, just get my staff's attention and we

20   will call you back at the end of the folks who answered

21   initially.  All right?

22          Thank you very much, counsel.

23          (The following occurred in the jury room.)

24          THE COURT:  What I'm going to do is with my

25   staff go through all the jurors who answered questions so

1    we're all on the same page with respect to who comes back.

2    I will ask the first followup questions and leave counsel to

3    follow up with that.

4              I don't accept -- I don't talk about excuses for

5    cause until the end.  Usually, I mean, we don't have any

6    problems, because we have 52 available for cause, but when

7    we are closer than that, I like to prioritize.

8              So, anyway, if someone has answered one of our

9    last questions, which means they have a general problem with

10   serving, I usually start with that.  If it seems like a good

11   reason, let's not spend a whole lot of time talking about

12   any other conflicts they have because they're going to be

13   excused anyway.  Okay?  Good.

14             All right.  Are we all set?  Juror 1 answered

15   1C, 8 and 13.

16             Juror 2, 1D.

17             Juror 3, 2, 3, and 14.

18             Juror 4, 1D, 3, 6, 8, 13.

19             Juror 7, 10.

20             Juror 15, 8.

21             Juror 17, 13.

22             Juror 18, 10.

23             Juror 19, 10 and 11.

24             Juror 20, 13.

25             Juror 21, who wasn't supposed to be here, a late

1    show, 1A, 1D and 13.

2                   Juror 25, 1B and C, 2 and 13.

3                   Juror 28 answered 8.

4                   Juror 29 answered 1A, B, C and D.

5                   Juror 30, who gets our prize today, answered 1A,

6    C, D, 2, 3, 8, 10, 11, 12.

7                   Juror 32 answered 13.

8                   Juror 33 answered 1C, 1D and 8.

9                   Juror 36 answered 1C, 1D, 8 and 10.

10                  Juror 37 answered 10.

11                  Juror 39 answered 7.

12                  Juror 42 answered 8 and 14.

13                  Juror 45 answered 14.

14                  Juror 46 answered 8 and 10.

15                  Juror 49 answered 7 and 13.

16                  Juror 51 answered 3.

17                  Juror 53 answered 1C and 8.

18                  Juror 54 answered 10.

19                  Juror 56 answered 1C, 1D, 9 and 10.

20                  Juror 57 answered 1A and 7.

21                  Juror 60 answered 2, 7 and 13.

22                  Juror 65 answered 1A, 1C.

23                  Juror 66 answered 1A, 1B, 1C.

24                  Juror 69 answered 1C and 2.

25                  Juror 70 answered 1D and 2.

Juror No. 1 - voir dire

1           Juror 76 answered 13.

2           Juror 78 answered 13.

3           Juror 79 answered 1C and 8.

4           DEPUTY CLERK:  And, Judge, John Trickey sent me

5    an e-mail stating that there was a typo on number 75's last

6    name.  It's Bryant rather than Tryant.

7           THE COURT:  All right.  So he shouldn't have

8    been assigned 75, but we'll give it to him anyway.  Okay.

9           All right.  We'll bring them in one at a time.

10   And, Val, I will try to remember to announce what juror

11   numbers they are when they come in for the record.

12           (Prospective juror enters juryroom.)

13           Hi.  How are you?  I'm going to have you sit

14   here next to me.  You are Juror No. 1?

15           JUROR NO. 1:  Yes, ma'am.

16           THE COURT:  And you answered a few questions.

17   Let me start with our last question, which was having some

18   concerns about serving as a juror in this case.

19           JUROR NO. 1:  Yes.  I recently had congestive

20   heart failure, so I have to take a lot of water pills, so

21   sometimes it's one or five minutes, you know.  It depends

22   who how often I have to go.

23           The other one is, another concern I have is I

24   don't know if I would be really good because I have a

25   distaste for lawyers and -- well, you know, you think it's

Juror No. 1 - voir dire

1   funny, but I had my house done and they stood up and lied

2   about me.  I've had a disgust for them ever since.

3          THE COURT:  All right.  Well, we take breaks

4   every hour-and-a-half and try to accommodate jurors, but you

5   think with the medication you are on that it would still be

6   a very uncomfortable experience for you to sit in the jury?

7          JUROR NO. 1:  Probably because I have to take

8   40 milligrams twice a day.

9          THE COURT:  All right.  And, in addition to

10  that, you've got some mental reservations about being able

11  to be an impartial juror because you don't like the process

12  at all?

13         JUROR NO. 1:  Yes.

14         THE COURT:  All right.

15         JUROR NO. 1:  I don't like lawyers.

16         THE COURT:  All right.  Well, I won't comment on

17  that, but you also -- let me just, for the record, you also

18  answered two other of our questions.

19         JUROR NO. 1:  Well, I'm not sure if I answered

20  those right.

21         THE COURT:  All right.  The subject areas.  Was

22  there a subject area that you had some experience in?  Do

23  you recall?

24         JUROR NO. 1:  Maintenance.  Truck maintenance.

25         THE COURT:  Was that a job or --

Juror No. 1 - voir dire

 1                JUROR NO. 1:  Job.

 2                THE COURT:  And how long did you --

 3                JUROR NO. 1:  In the truck maintenance area?

 4                THE COURT:  Yes.

 5                JUROR NO. 1:  Probably about 36 years.

 6                THE COURT:  All right.  And one of the first

 7   questions was whether you ever had any dealings with or

 8   relied financially in any way on any of the listed?

 9                JUROR NO. 1:  No, no.  I must have

10   misinterpreted the question.

11                THE COURT:  All right.  Fine.

12                Are there any followup questions by counsel of

13   this juror?

14                MR. RUYAK:  Not from our side.

15                MR. FASTOW:  No.

16                THE COURT:  Thank you very much.  Appreciate it.

17                And you can let the next person in.

18                JUROR NO. 1:  All right.

19                THE COURT:  Thank you.

20                (Prospective juror exits juryroom.)

21                THE COURT:  I don't think he's going to be one

22   of our jurors.

23                (Prospective juror enters juryroom.)

24                THE COURT:  Hi.  How are you?  If you could have

25   a seat here, next to me.  You should be Juror No. 2.

Juror No. 2 - voir dire

1          JUROR NO. 2:  That's correct.

2          THE COURT:  And you answered one of our

3    questions, and that is whether you, a family member, or

4    anyone close to you had ever had any experience with the

5    products of any of the listed companies or had any strong

6    feelings, positive or negative, about any of the companies?

7          JUROR NO. 2:  I owned a Chris-Craft boat in the

8    early 80s that had an out-drive on it that was made by

9    Eaton.  I believe it was Eaton Gear Corporation, or Eaton

10   Company.  And I dealt with the company, trying to get parts

11   to fix it up.  It was an old boat.

12         THE COURT:  An old boat.  Was it good

13   experience, bad experience?  Would your experience make it

14   difficult for you to be impartial in this case?

15         JUROR NO. 2:  I don't think so.  I was fairly

16   young, so I didn't have money to buy parts, but, you know,

17   so I would say it wasn't positive or negative.

18         THE COURT:  All right.  Just a fact?

19         JUROR NO. 2:  Just a fact.  I just bring it up.

20   That's all.

21         THE COURT:  All right.  Let's see if counsel

22   have any followup questions.  Before I ask, when was this?

23   How long ago was this?

24         JUROR NO. 2:  I would say approximately 1983.

25         THE COURT:  All right.  So we're going back a

Juror No. 2 - voir dire

1   little ways.  Let's see if plaintiffs' counsel have any

2   follow up?

3                   MR. FASTOW:  Did that experience leave you with

4   any attitude, positively or negatively, towards Eaton?

5                   JUROR NO. 2:  No.

6                   THE COURT:  Or towards part component

7   manufacturers, generally?

8                   A JUROR:  I guess I just became aware that what

9   the company was at that time.  I had never heard of it until

10  that point, and then I realized that they made gears and,

11  you know, automotive-type gearing.  But it's not really

12  positive or negative, as far as, oh, they ripped me off, or

13  they wouldn't fix my part.  It was just an old boat I was

14  trying to put back together and, you know, apparently these

15  out-drives, no matter who makes them, have issues.  So I

16  mean I didn't direct it towards that company or any other

17  company.

18                  MR. FASTOW:  Since you learned about Eaton, have

19  you followed it or paid particular attention to them, going

20  on with Eaton?

21                  JUROR NO. 2:  No.  In.

22                  THE COURT:  Anything?

23                  MR. RUYAK:  No, your Honor.

24                  THE COURT:  All right.

25                  MR. FASTOW:  Do you have any attitude towards

Juror No. 3 - voir dire

1     the quality of the parts you got from Eaton?

2              JUROR NO. 2:  I actually didn't purchase parts.

3     I was informed they were available at that time but I never

4     actually purchased them.  I didn't have a lot of money.  I

5     just made do with what I had at that time.

6              THE COURT:  All right.  Thank you very much.

7     Appreciate it.

8              JUROR NO. 2:  All right.

9              MR. RUYAK:  Thank you.

10             (Prospective juror exits juryroom.)

11             *     *     *

12             (Prospective juror enters juryroom.)

13             THE COURT:  Hi.  How are you?  If you could have

14    a seat next to me.

15             JUROR NO. 3:  Thank you.

16             THE COURT:  And you should be Juror 3.

17             JUROR NO. 3:  That's right.

18             THE COURT:  You answered a couple of questions,

19    but let me start with the fact you answered one of our last

20    questions affirmatively.  Can you explain that?

21             JUROR NO. 3:  Yeah.  I'm currently a seasonal

22    employee of the State of Delaware, and I'm paid on an

23    hourly basis.  If I don't work, I don't get paid.  And the

24    compensation provided by the court will not cover the

25    expenses that I have.

Juror No. 3 - voir dire

1              THE COURT:  Okay.

2              JUROR NO. 3:  I have a wife and two kids.

3              THE COURT:  So if we're talking about a 16-day

4     trial, that's a substantial --

5              JUROR NO. 3:  Absolutely.

6              THE COURT:  The first questions you answered I

7     think affirmatively had to do with the list of additional

8     companies?

9              JUROR NO. 3:  Yes.  I didn't know which one was

10    the appropriate one, but I know someone at Morris Nichols.

11    I believe I do.  Morris Nichols.

12             THE COURT:  All right.

13             JUROR NO. 3:  I grew up in Seaford, and Dave

14    Harris I believe is a partner there?

15             MR. REID:  Correct.

16             JUROR NO. 3:  I know him and am very good

17    friends with his wife's family, especially.

18             THE COURT:  All right.

19             JUROR NO. 3:  And I know an associate, Ted

20    Kittila.

21             THE COURT:  All right.

22             JUROR NO. 3:  That's it.

23             THE COURT:  That's it.  All right.

24             Any followup questions for this juror from

25    plaintiffs' counsel?

Juror No. 4 - voir dire

1              MR. RUYAK:  No, your Honor.

2              MR. FASTOW:  No, your Honor.

3              THE COURT:  Thank you very much.  Appreciate it.

4              (Prospective juror exits juryroom.)

5              THE COURT:  Given the fact that we have lots of

6     people, people like this who are a financial hardship --

7              MR. RUYAK:  Yes.  They have to worry about

8     themselves.

9              (Prospective juror enters juryroom.)

10             THE COURT:  Hi.  How are you?

11             JUROR NO. 4:  Hi.

12             THE COURT:  If you could have a seat next to me.

13    You should be Juror No. 4?

14             JUROR NO. 4:  Yes.

15             THE COURT:  And you answered a variety of

16    questions.

17             JUROR NO. 4:  Yes.

18             THE COURT:  But you answered one of our last

19    questions affirmatively, so let's start with that.

20             JUROR NO. 4:  Okay.

21             THE COURT:  You have some concerns about serving

22    as a juror?

23             JUROR NO. 4:  Yes.

24             THE COURT:  Can you let us know?

25             JUROR NO. 4:  Yes.  I do not have a vehicle that

Juror No. 4 - voir dire

1    runs.  I'm 89.6 miles away from here and I had to borrow a

2    car to gets here.  There's no public transportation and the

3    cost of a taxi is prohibitive.

4                THE COURT:  All right.  So this would truly be a

5    hardship for you to get here?

6                JUROR NO. 4:  Absolutely.  It took me over two

7    hours this morning.  I can't keep asking to borrow a car.

8                THE COURT:  Right.

9                JUROR NO. 4:  Mine just doesn't -- ain't going

10   to make it.

11               THE COURT:  Let me briefly go over some of your

12   other answers.

13               JUROR NO. 4:  Mm-hmm.

14               THE COURT:  The first was, any experience with

15   the products of any of companies listed?

16               JUROR NO. 4:  You said positive or negative.

17               THE COURT:  Yes.

18               JUROR NO. 4:  I owned a Jeep, DaimlerChrysler

19   Jeep.  That's it.

20               THE COURT:  Okay.  Positive or negative?

21               JUROR NO. 4:  Positive.

22               THE COURT:  All right.  Just out of curiosity.

23               JUROR NO. 4:  Two of them, as a matter of fact.

24               THE COURT:  Law firms?

25               JUROR NO. 4:  Yes.  Tunnell represented me.

Juror No. 4 - voir dire

1              THE COURT:  Okay.  And how long ago?  That must

2     have been a while.

3              JUROR NO. 4:  Ten years.

4              THE COURT:  Ten years?  All right.

5              Six.  Plaintiff/defendant/witness in a civil

6     lawsuit?

7              JUROR NO. 4:  Yes.  I have given -- I have been

8     in District Court, U.S. District Court giving testimony.  I

9     have been a defendant in a civil lawsuit in Sussex County.

10             THE COURT:  Okay.  Have any of those experiences

11    made it difficult for you to be -- would any of those

12    experiences make it difficult for you to be an impartial

13    juror in this case?

14             JUROR NO. 4:  Probably.

15             THE COURT:  You had some bad experiences through

16    this?

17             JUROR NO. 4:  Yes, I did, in mediation.

18             THE COURT:  A bad experience in mediation?

19             JUROR NO. 4:  Yes.

20             THE COURT:  That's not good.

21             JUROR NO. 4:  No.

22             THE COURT:  All right.  Subject areas, the last

23    thing we're going to ask you about.

24             JUROR NO. 4:  Subject areas?

25             THE COURT:  Yes.  I think you answered yes, that

Juror No. 7 - voir dire

1    you had some experience or training in any of the listed

2    subject matters?  Do you recall that?  Sorry.  Subject

3    areas.  Trucking industry, antitrust.

4                JUROR NO. 4:  Yes.  Monopolies, in general.

5                THE COURT:  All right.

6                JUROR NO. 4:  I have a very, very negative

7    opinion of monopolies.

8                THE COURT:  Okay.

9                JUROR NO. 4:  The liquor industry in this state

10   is a monopoly.  You are forced to buy from one company.

11   They price fix, they gouge, and I'm way against monopolies.

12               THE COURT:  Okay.  Let's see if the lawyers have

13   any followup questions.  Anything?

14               MR. FASTOW:  No, your Honor.

15               THE COURT:  Anything from defense?

16               MR. RUYAK:  No.

17               THE COURT:  Thank you very much.  Appreciate it.

18               (Prospective juror exits juryroom.)

19               *    *    *

20               (Prospective juror enters juryroom.)

21               THE COURT:  All right.  Hi.  How are you?

22   Please have a seat next to me.

23               You should be Juror 7.

24               JUROR NO. 7:  Yes, ma'am.

25               THE COURT:  And you answered one of our

Juror No. 7 - voir dire

1   questions affirmatively.  And the question was, do you work

2   for a company that buys or leases large trucks?

3            JUROR NO. 7:  Yes, ma'am.

4            THE COURT:  And can you tell us what company

5   that is?

6            JUROR NO. 7:  Yes.  It's Nixon Medical Uniform

7   Service and Medical Wear.  And we lease trucks in four

8   different states to deliver medical supplies or medical

9   clothing to outpatient health care.

10            THE COURT:  Now, does your particular position

11   have something to do with that part of the business?

12            JUROR NO. 7:  I'm the corporate H.R. Director,

13   ma'am.  No, ma'am.

14            THE COURT:  Okay.

15            JUROR NO. 7:  I don't purchase the vehicles.

16   I'm aware of it because we do purchase and lease vehicles.

17            THE COURT:  All right.  Is there anything about

18   your company's use of leased trucks -- would anything about

19   that make it difficult for you to be an impartial juror in

20   this case?

21            JUROR NO. 7:  No, ma'am.

22            THE COURT:  Let's see if the lawyers have any

23   followup questions for you.

24            Anything?

25            MR. FASTOW:  In your job, do you hear or learn

Juror No. 7 - voir dire

1    about the leased trucks, how they do, whether they have

2    problems, so forth?

3                   JUROR NO. 7:  I do.  From a safety perspective

4    more than anything else, whether or not vehicles are being

5    appropriately maintained, if there are any issues with the

6    maintenance of those vehicles, with regard to how much of a

7    safety issue it creates for a driver.

8                   MR. FASTOW:  So it would be fair to say that you

9    are involved in issues of vehicle operation defects and so

10   forth?

11                  JUROR NO. 7:  Yes, sir.

12                  THE COURT:  But none of the companies that are

13   involved here are those --

14                  JUROR NO. 7:  No, ma'am.

15                  THE COURT:  -- that you've learned about through

16   your experience in the job?

17                  JUROR NO. 7:  Yes, ma'am.

18                  THE COURT:  All right.  Anything else from

19   plaintiff?

20                  MR. FASTOW:  No.

21                  THE COURT:  Anything from defendant's counsel?

22                  MR. RUYAK:  I don't think so.

23                  THE COURT:  Thank you very much.

24                  JUROR NO. 7:  Thank you.

25                  (Prospective juror exits juryroom.)

Juror No. 15 - voir dire

1                    *    *    *

2              (Prospective juror enters juryroom.)

3              THE COURT:  Hi.  How are you?

4              JUROR NO. 15:  Good.  How are you?

5              THE COURT:  If you could have a seat next to me.

6         I think you answered one question, and that had

7    to do with a list of subject areas and whether you had any

8    training or experience in them?

9              JUROR NO. 15:  I just had education on antitrust

10   laws briefly in college.

11             THE COURT:  Okay.  So it was a course or part of

12   a course?

13             JUROR NO. 15:  Part of a course.

14             THE COURT:  Okay.

15             JUROR NO. 15:  Business law.

16             THE COURT:  Business law.  And do you think

17   that, assuming you recall anything you learned in that

18   course, do you think you could set that aside and follow my

19   instructions as to the law in this case?

20             JUROR NO. 15:  Yes.

21             THE COURT:  Let's see if the lawyers have any

22   followup questions.

23             Anything from counsel?

24             MR. FASTOW:  I'm sorry.  What number?

25             THE COURT:  I'm sorry.  Juror 15.  I'm supposed

Juror No. 15 - voir dire

1   to identify the jurors when they come in and I forgot to do

2   that.

3            Anything else?

4            MR. FASTOW:  How long did you spend studying

5   antitrust law?

6            JUROR NO. 15:  It might have been over a week, a

7   little over a week.

8            MR. FASTOW:  Have fun?

9            JUROR NO. 15:  It was okay.

10           MR. FASTOW:  Do you remember in particular, a

11   recollection of particular rules, doctrines, and so forth

12   from that?

13           JUROR NO. 15:  Some.  The Clayton Act.  I think

14   there was like Sherman ... Antitrust ... Doctrine.  Not a

15   whole lot.

16           MR. RUYAK:  Pretty good.  Pretty good.

17           THE COURT:  We'll give you an A.

18           MR. RUYAK:  That's pretty good, one week.

19           MR. FASTOW:  I take it, there's nothing really

20   further that you remember from antitrust besides sort of the

21   names of laws and so are forth?

22           JUROR NO. 15:  Discussion of monopolies.

23           MR. FASTOW:  Okay.

24           THE COURT:  Anything from defendant's counsel?

25           MR. RUYAK:  I don't think so.

Juror No. 17 - voir dire

1              THE COURT:  Thank you very much.

2              JUROR NO. 15:  You're welcome.

3              (Prospective juror exits juryroom.)

4              *    *    *

5              (Prospective juror enters juryroom.)

6              THE COURT:  Hi.  How are you?  Take a seat next

7     to me.

8              JUROR NO. 17:  Sure.  Thank you.

9              THE COURT:  And you should be Juror 17?

10             JUROR NO. 17:  Yes, ma'am.

11             THE COURT:  And you answered one question and

12    that was one of our last questions.  Can you explain that

13    for us?

14             JUROR NO. 17:  Actually, there are two issues,

15    your Honor.

16             THE COURT:  Okay.

17             JUROR NO. 17:  The first of which is, I think at

18    one point, you asked earlier than this last question if I

19    had ever been a defendant in a civil suit?

20             THE COURT:  Right.

21             JUROR NO. 17:  And I have.

22             THE COURT:  Okay.

23             JUROR NO. 17:  I was a defendant.  I spent

24    30 years in the insurance business and I was a defendant in

25    a suit where HUD was alleging some wrongful actions by

Juror No. 17 - voir dire

1    several agents and I was one of them.  So I didn't respond

2    positively to that, and part of the reason for that is --

3                    THE COURT:  Take your time, sir.

4                    JUROR NO. 17:  I'm not focused.  My best friend

5    was killed last night.

6                    THE COURT:  Oh, heavens.  All right.

7                    JUROR NO. 17:  In an automobile accident.  I'm

8    not all here today.

9                    THE COURT:  All right.

10                   JUROR NO. 17:  I didn't expect that, attending a

11   funeral.

12                   THE COURT:  Probably next week some time?

13                   JUROR NO. 17:  Yes.

14                   THE COURT:  All right.

15                   JUROR NO. 17:  Yes, ma'am.  I apologize.

16                   THE COURT:  That's all right.  Let's see if

17   there are any questions for you by the lawyers.

18                   Anything, counsel?

19                   MR. FASTOW:  No.

20                   MR. RUYAK:  No, your Honor.

21                   THE COURT:  Thank you very much.

22                   MR. RUYAK:  Thank you.

23                   (Prospective juror exits juryroom.)

24                   MR. RUYAK:  He's also coming all the way from

25   Rehoboth.  That's a trek.

Juror No. 18 - voir dire

1             (Prospective juror enters juryroom.)

2             THE COURT:  Hi.  How are you?

3             JUROR NO. 18:  How are you?

4             THE COURT:  Have a seat next to me, if you

5     would.

6             And you are Juror 18?

7             JUROR NO. 18:  That's correct.

8             THE COURT:  And you answered our question about

9     working for a company that buys or leases large trucks?

10            JUROR NO. 18:  That I'm unsure of.  I work for

11    Wilmington Trust and I know we're in the direct, indirect

12    automobile financing, so we finance autos, RV's, school

13    buses, and I'm not sure what exactly brands or products.

14            THE COURT:  Okay.  Now, are you directly

15    involved in that aspect of the business?

16            JUROR NO. 18:  I am a credit strategies analyst.

17    So I would be involved with developing the policy, you know,

18    what, who to approve for loans for that.

19            THE COURT:  Now, are these both individuals in

20    businesses who are applying for --

21            JUROR NO. 18:  For credit?  Yes.  So it could be

22    individuals or businesses applying for credit.  And I work

23    on the policies, you know, gauging, like, what risk factors

24    for the loans and setting up general policies overall.

25            THE COURT:  And have you -- in assessing the

Juror No. 18 - voir dire

```
 1   risk factors, do you look at the vehicles and their

 2   manufacturers and all of that?  Do you get into that level

 3   of detail?

 4              JUROR NO. 18:  The applications, on the

 5   applications, and there are large amounts of data, and I

 6   mean I'm sure we capture everything, but to say we make

 7   decisions based on which brand of vehicle you're financing,

 8   that's not something to my knowledge.

 9              THE COURT:  Is there anything about your job and

10   your experience that would make it difficult for you to be

11   an impartial juror in this case?

12              JUROR NO. 18:  No, not that I'm aware of.

13              THE COURT:  Let's see if the lawyers have any

14   followup questions.

15              Anything, Mr. Fastow?

16              MR. FASTOW:  Does your job bring you into

17   contact with information about particular truck

18   manufacturers or truck component manufacturers?

19              JUROR NO. 18:  No, not to -- I'm just -- I just

20   deal with things on an aggregate level.  Of course, you

21   know, in my job, I will be privy to all the application data

22   and we just set general policy.  Not the specific

23   manufacturers.

24              MR. FASTOW:  And the policy does not distinguish

25   among particular types of manufacturers or types of trucks?
```

Juror No. 18 - voir dire

```
 1              JUROR NO. 18:  No.  I think we do have different

 2   criteria based on whether you're financing a marine, a boat,

 3   an RV, or an automobile, different, like, LTVs,

 4   loan-to-value ratios, credit scores and so forth.

 5              But as particular brand, not that I'm aware of.

 6              MR. FASTOW:  Not as to particular, for example,

 7   types of trucks versus other types of trucks?

 8              JUROR NO. 18:  No, not to my knowledge.

 9              THE COURT:  Anything from defendant?

10              MR. RUYAK:  I take it basically what you are

11   doing is looking at the creditworthiness of a purchase of a

12   vehicle?

13              JUROR NO. 18:  Current.  Right.

14              MR. RUYAK:  Rather than the manufacturer or the

15   seller?

16              JUROR NO. 18:  Right.  That's not to say -- I

17   mean, let me be clear.  Wilmington Trust does do what they

18   call floor plan financing.

19              MR. RUYAK:  Okay.

20              JUROR NO. 18:  So they will finance, you know,

21   for, you know, a dealer in the area, and provide the

22   financing for all of the vehicles on the floor.

23              MR. RUYAK:  Are you aware of any of the dealers

24   that sell large trucks, like 18 wheelers, and stuff like

25   that?
```

Juror No. 19 - voir dire

1          JUROR NO. 18:  No, not to my knowledge.

2          MR. RUYAK:  Okay.

3          JUROR NO. 18:  We have so many dealers.  All I

4     know is the common automobile dealers.

5          THE COURT:  Anything else?

6          MR. FASTOW:  Are you involved in the floor

7     planning part of the business?

8          JUROR NO. 18:  I have not been.  I've just

9     recently started it about three months ago.  But it's not to

10    say in the future, I won't be.  But not to this date.

11         THE COURT:  All right.  Thank you very much.

12    Appreciate your time.

13         JUROR NO. 18:  Thank you.

14         (Prospective juror exits juryroom.)

15              *    *    *

16         (Prospective juror enters juryroom.)

17         THE COURT:  Hi.  How are you?

18         JUROR NO. 19:  Good morning.

19         THE COURT:  If you could have a seat next to me.

20         JUROR NO. 19:  Okay.

21         THE COURT:  You are Juror 19?

22         JUROR NO. 19:  Yes.

23         THE COURT:  And you answered two of our

24    questions, which were, do you work for a company that buys

25    or leases large trucks or for a company that maintains or

Juror No. 19 - voir dire

1  performs maintenance on large trucks?  Could you explain

2  your answer?

3              JUROR NO. 19:  I work for the United States

4  Postal Service.

5              THE COURT:  Okay.

6              MR. RUYAK:  That's for sure.

7              THE COURT:  And how long have you worked for the

8  Postal Service?

9              JUROR NO. 19:  18 years.

10             THE COURT:  18?  And do you -- in your role as

11 an employee, do you have any responsibility for, or even

12 driving any of the trucks?  I mean, what is your interaction

13 with the trucks?

14             JUROR NO. 19:  No, I don't have any.  My role

15 is, I'm a program manager, but we have a completely

16 different procurement department.

17             THE COURT:  Okay.

18             JUROR NO. 19:  That purchases and leases the

19 vehicles.

20             THE COURT:  So you don't have any specific

21 knowledge about that?

22             JUROR NO. 19:  No, I don't.

23             THE COURT:  Is there anything about your role as

24 an employee of a company that does lease a lot of trucks, is

25 there anything about your role, your experience that would

Juror No. 20 - voir dire

1   make it difficult for you to sit as an impartial juror in

2   this case?

3                 JUROR NO. 19:  No.

4                 THE COURT:  Let's see if the lawyers have any

5   followup questions for you.

6                 JUROR NO. 19:  Okay.

7                 THE COURT:  Mr. Fastow?

8                 MR. FASTOW:  No.

9                 MR. RUYAK:  I don't have any.

10                THE COURT:  Thank you very much.

11                MR. RUYAK:  Thank you.

12                (Prospective juror exits juryroom.)

13                *    *    *

14                (Prospective juror enters juryroom.)

15                THE COURT:  Hi.  How are you?

16                JUROR NO. 20:  Hello.

17                THE COURT:  If you could have a seat next to me.

18   And you are Juror 20?

19                JUROR NO. 20:  Yes, ma'am.

20                THE COURT:  You answered one of our final

21   questions affirmatively.  Can you explain your response?

22                JUROR NO. 20:  It would be a hardship for me.  I

23   work a full-time job, and I just recently started a

24   part-time job three weeks ago.  I'm actually on a

25   probationary period.  I'm not paid for part-time, so that

Juror No. 21 - voir dire

1    would be a hardship for the income.  And I also have the

2    instance of, I have a first grader and a third grader that

3    get home at 4:00 o'clock off the bus.  Nobody would be there

4    to get them off the bus.

5              THE COURT:  All right.  Let's see if the lawyers

6    have any followup questions for you.

7              Anything from counsel for plaintiff?

8              MR. FASTOW:  No.

9              THE COURT:  Counsel for defendant?

10             MR. RUYAK:  No.

11             THE COURT:  All right.  Thank you very much.

12             JUROR NO. 20:  Okay.

13             THE COURT:  She's the one who wasn't even

14   supposed -- wasn't even here initially.  All right.  Good

15   for her for showing up.

16             (Prospective juror exits juryroom.)

17             *    *    *

18             (Prospective juror enters juryroom.)

19             Hi.  How are you?

20             JUROR NO. 21:  Hello.

21             THE COURT:  If you could have a seat next to me,

22   please.  And you are Juror 25?

23             JUROR NO. 21:  21.

24             THE COURT:  21.  Oh, okay.  I'm sorry.

25             JUROR NO. 21:  That's okay.

Juror No. 21 - voir dire

1          THE COURT:  I have the wrong number here.

2          You answered a couple of questions.  You also

3    answered one of our final questions affirmatively.  Can you

4    explain your response to that, one of the last questions,

5    about having concerns?

6          JUROR NO. 21:  Well, I teach at a small

7    Christian school, four-year old kindergarten class, and to

8    take -- the possibility of 16 days out of that class time is

9    just impossible.  The continuity of the class will just fall

10   apart.  We've only been in school -- today is the 11th day,

11   so I just don't feel that I have that time, in good

12   conscience, to give.

13         THE COURT:  All right.  Let me just briefly go

14   over, you also answered some of the initial questions about

15   the list of companies?

16         JUROR NO. 21:  Mm-hmm.

17         THE COURT:  Can you fell us what your responses

18   are?

19         JUROR NO. 21:  My father was employed by

20   Chrysler.  At the time, that was Chrysler.  My uncle was

21   employed there.  I just don't feel that they took care of my

22   father when he was ill and I just don't think that -- in

23   good conscience, I could say they were wrong.

24         THE COURT:  Okay.  All right.  More importantly,

25   though, as a teacher of this class of kindergarten,

1    four-year olds -- are they kindergarten or pre-K?

2              JUROR NO. 21:  It's a pre-K but it's an actual

3    class.

4              THE COURT:  Right.  Right.

5              JUROR NO. 21:  They get language, math.  We

6    learn to read.

7              THE COURT:  All right.  That it would be

8    difficult for you to take this time off and do them justice?

9              JUROR NO. 21:  Yes.

10             THE COURT:  All right.  Let's see if the lawyers

11   have any followup questions.

12             Anything from counsel?

13             MR. FASTOW:  No.

14             MR. RUYAK:  No, your Honor.

15             THE COURT:  All right.  Thank you very much.

16             JUROR NO. 21:  Thank you.  Just go back and sit

17   down?

18             THE COURT:  Yes.  We have to go through the

19   whole process.

20             JUROR NO. 21:  Okay.  That's fine.

21             (Prospective juror exits juryroom.)

22                  *     *     *

23             (Prospective juror enters juryroom.)

24             THE COURT:  All right.  She was the one who

25   didn't show up, actually.

Juror No. 25 - voir dire

1           Hi.  How are you?

2           JUROR NO. 25:  I'm good.  How are you?

3           THE COURT:  If you could have a seat next to me.

4   You're Juror 25?

5           JUROR NO. 25:  I am.

6           THE COURT:  And although you answered quite a

7   few questions, you also answered one of our last questions,

8   so let me start with that.

9           JUROR NO. 25:  Yes.  I am the sole provider for

10  three young children.  My husband ironically travels and he

11  covers the trucking industry for a fund that he manages

12  money for.

13          THE COURT:  All right.  So when you say you're

14  the sole provider, that means that -- are they younger

15  children and you have to be there when they go to school?

16          JUROR NO. 25:  Exactly.  I have a 5, an 8 an

17  11-year old, and I don't have family in the area.

18          THE COURT:  Okay.

19          JUROR NO. 25:  And he is scheduled to be in

20  Colorado next week.

21          THE COURT:  All right.  And just for purposes of

22  the record --

23          JUROR NO. 25:  Sure.

24          THE COURT:  -- when you say he covers the

25  trucking industry for an investment firm?

Juror No. 25 - voir dire

1            JUROR NO. 25:  He is an investment manager, and

2    one of his areas of expertise is the trucking industry.

3            THE COURT:  All right.

4            JUROR NO. 25:  He is invested in the industry

5    and also in parts market for that industry.

6            THE COURT:  All right.  Are these companies

7    familiar to you, then?

8            JUROR NO. 25:  I looked through the list.  I

9    don't know if he currently is invested in any of these, but

10    I know that over a period of time, he has been invested in.

11            THE COURT:  All right.  Let's see if the lawyers

12    have any followup questions.

13            Anything from counsel?

14            MR. FASTOW:  No, your Honor.

15            THE COURT:  Anything from counsel for defendant?

16            MR. RUYAK:  Any particular names on that lists

17    that you recall?

18            JUROR NO. 25:  There was no name that came to me

19    and I went, "aha."

20            THE COURT:  All right.  Thank you very much.

21    Appreciate it.

22            JUROR NO. 25:  Thank you.

23            (Prospective juror exits juryroom.)

24            *     *     *

25            (Prospective juror enters juryroom.)

Juror No. 28 - voir dire

1          THE COURT:  Hi.  How are you?

2          JUROR NO. 28:  Good.  How are you?

3          THE COURT:  If you could have a seat next to me.

4     And I believe you are Juror 28?

5          JUROR NO. 28:  Yes.

6          THE COURT:  Okay.  And you answered one of our

7     questions, and that had to do with a list of subject areas

8     and whether you have education, experience, training?

9          JUROR NO. 28:  I'm a social studies teacher,

10    civics.  We teach government antitrust.

11         THE COURT:  What grade is that that you are

12    teaching?

13         JUROR NO. 28:  High school students.

14         THE COURT:  We just heard what pre-K people were

15    -- I wish we hadn't gone that far.

16         JUROR NO. 28:  No, Ninth and Tenth Grade.

17         THE COURT:  So you are familiar with the --

18         JUROR NO. 28:  Yes.

19         THE COURT:  -- the laws, to some extent?

20         JUROR NO. 28:  To some extent.  Enough to teach

21    high school students.

22         THE COURT:  All right.  Do you think that you

23    could set aside what you teach, basically, and follow my

24    instructions as to the law as to these areas?

25         JUROR NO. 28:  Yes.

Juror No. 29 - voir dire

1          THE COURT:  Let me see if counsel have any

2    followup questions for you?  Anything?

3          MR. FASTOW:  No.

4          THE COURT:  Defendant's counsel?

5          MR. RUYAK:  No.

6          THE COURT:  Thank you very much.

7          JUROR NO. 28:  Thank you.

8          THE COURT:  If she teaches civics, this will be

9    a great experience for her.

10         (Prospective juror exits juryroom.)

11              *    *    *

12         (Prospective juror enters juryroom.)

13         THE COURT:  Have a seat next to me.  You're

14   Juror 29?

15         JUROR NO. 29:  That's right.

16         THE COURT:  You answered all of our first series

17   of questions.

18         JUROR NO. 29:  My late husband worked at

19   DaimlerChrysler, and I receive a monthly pension and medical

20   insurance through them.

21         THE COURT:  How long was he an employee?

22         JUROR NO. 29:  29 years.

23         THE COURT:  29 years.

24         I will let counsel follow up, because I'm not

25   sure what the relationship is with them.  So I will let

Juror No. 29 - voir dire

1   plaintiffs' counsel see if there's --

2              MR. FASTOW:  So you are --

3              JUROR NO. 29:  I'm Chrysler all the way.

4              MR. FASTOW:  Chrysler all the way?

5              JUROR NO. 29:  Yes.  Dodge.  I will never drive

6   anything other than what they make.

7              MR. FASTOW:  So if Chrysler or Daimler came up

8   in this case, you would be predisposed in favor of it?

9              JUROR NO. 29:  Yes.  I'm sorry.  Yes.  Yeah.

10  They've been very good to me.

11             THE COURT:  Good.

12             JUROR NO. 29:  And my husband passed away seven

13  years ago and I get medical and a monthly pension for the

14  rest of my life, as long as I don't get married.  I don't

15  have any intentions of doing that.

16             THE COURT:  Well, it's a good thing your husband

17  wasn't a federal judge, because, trust me, the government

18  does not take people as well as --

19             JUROR NO. 29:  Chrysler has been very good to

20  me.

21             THE COURT:  Any other questions from counsel?

22             MR. RUYAK:  No.

23             MR. FASTOW:  No.

24             THE COURT:  Thank you very much.

25             JUROR NO. 29:  Thank you.

Juror No. 30 - voir dire

1              (Prospective juror exits juryroom.)

2              *    *    *

3              (Prospective juror enters juryroom.)

4              THE COURT:  Hi.  How are you?  Why don't you

5     have a seat.  You win our prize today for answering the most

6     questions.

7              JUROR NO. 30:  Sorry.

8              THE COURT:  Are they all related?  If you tell

9     us one story, that will kind of --

10             JUROR NO. 30:  It's where I work.

11             THE COURT:  Where do you work?

12             JUROR NO. 30:  I work for a local trash hauler,

13    who deals with Harvey Mack.  It's Harvey Mack locally here

14    on a daily basis.  We work on the trucks in our own shop.  I

15    used to work for Harvey & Harvey, who is the owners of

16    Harvey Mack.

17             THE COURT:  Right.

18             JUROR NO. 30:  Before he sold out.

19             THE COURT:  How long have you been --

20             JUROR NO. 30:  In trash?

21             THE COURT:  Well, in trucks, why don't we say.

22    How long have you been in trucks?

23             JUROR NO. 30:  Almost 20 years.

24             THE COURT:  All right.

25             JUROR NO. 30:  Yes.

Juror No. 30 - voir dire

1            THE COURT:  I think I will let counsel ask the

2     followup questions, because they know better what the

3     relationships are.  So I will let you start, Mr. Fastow.

4            MR. FASTOW:  And you're particularly involved in

5     working on the trucks?

6            JUROR NO. 30:  No, I don't work on the trucks.

7     I see all the bills coming from the trucks, and the checks,

8     I have to cut the checks.  Also, we've purchased trucks from

9     Mack.  That's normally where I get -- where we get our

10    trucks is through them.

11           MR. FASTOW:  Through Mack?

12           JUROR NO. 30:  Mm-hmm.

13           MR. FASTOW:  And if there were expenses for

14    repairs and so forth, you would deal with the expense part

15    of that?

16           JUROR NO. 30:  Yes.

17           MR. FASTOW:  Do you deal with warranty issues

18    and so forth?

19           JUROR NO. 30:  The paperwork, yes.  Yes.  It

20    comes across my desk.  So, yes, I see those, too.

21           MR. FASTOW:  Okay.

22           THE COURT:  All right.  Anything from defendant?

23           MR. RUYAK:  Have you seen any paperwork in this

24    case?  As the judge said, we're talking about transmissions.

25    Have you seen paperwork and warranty and things related to

Juror No. 30 - voir dire

1    transmissions?

2              JUROR NO. 30:  Yes.  Not from any of these

3    companies that we deal with.

4              MR. RUYAK:  Do you remember any of names of the

5    manufacturers of the transmissions?

6              JUROR NO. 30:  No.

7              MR. RUYAK:  No?

8              JUROR NO. 30:  Sorry.

9              MR. RUYAK:  That's okay.

10             JUROR NO. 30:  No.

11             MR. RUYAK:  That's okay to say no.

12             That's all I have.

13             THE COURT:  And the question really is, I mean,

14   will the name Mack come up?

15             MR. RUYAK:  Yes your Honor.

16             MR. FASTOW:  Yes.

17             THE COURT:  And I guess the question is whether

18   you can set aside all this experience you have if Mack comes

19   up in the testimony and make your decision based on what you

20   see and hear in the courtroom and my instructions as to the

21   law and set aside whatever experience or --

22             JUROR NO. 30:  Yes.

23             THE COURT:  Do you have a very positive feeling

24   about Mack?  I mean, is that --

25             JUROR NO. 30:  Oh, sure.  I mean, I dealt with

Juror No. 32 - voir dire

1    them for almost 20 years.

2              THE COURT:  Okay.

3              JUROR NO. 30:  So, yeah.

4              THE COURT:  All right.  I will ask, again,

5    because I didn't ask very artfully, do you think you can be

6    an impartial juror in this case despite your experience?

7              JUROR NO. 30:  Yes.

8              THE COURT:  All right.  Anything else?

9              MR. FASTOW:  And do you think you could be

10   impartial with respect to any issues that relate to Mack?

11             JUROR NO. 30:  Yes.

12             THE COURT:  All right.  Thank you very much.

13             JUROR NO. 30:  You're welcome.

14             (Prospective juror exits juryroom.)

15             MS. SULLIVAN:  Your Honor, she obviously does

16   not place me, but I did work with her in a case.  We

17   represented Tri-State.

18             THE COURT:  Okay.  We'll talk about that when we

19   go over --

20             (Prospective juror enters juryroom.)

21             THE COURT:  Hi.  How are you?

22             JUROR NO. 32:  Hi.  I didn't know there were so

23   many people.

24             THE COURT:  Yes.  It's a little intimidating,

25   but you sit next to me.

Juror No. 32 - voir dire

1                    And I believe you're Juror 32?

2                    JUROR NO. 32:  That's correct.

3                    THE COURT:  And you answered our last question

4        affirmatively.

5                    JUROR NO. 32:  The second-to-the-last question.

6                    THE COURT:  Right.

7                    JUROR NO. 32:  Yes.  It's not me, personally,

8        but I have a son who is a type-one diabetic and it would

9        just be a hardship for me to sit here for 16 days knowing

10       that -- I mean, he's a little bit older, but it just would

11       be hard.  My husband works shift and --

12                   THE COURT:  So you're the primary?

13                   JUROR NO. 32:  Yes.

14                   THE COURT:  You're primarily responsible to make

15       sure he's doing what he's supposed to be doing?

16                   JUROR NO. 32:  When it's a bad day, the nurses

17       are on the phone with me a lot, so that, to me, would be

18       concerning because I feel like I might be distracted and not

19       be able to focus on what is happening.

20                   THE COURT:  All right.  Let's see if the lawyers

21       have any followup questions for you.

22                   Anything from counsel?

23                   MR. FASTOW:  I take it, your son is in school?

24                   JUROR NO. 32:  Yes.  Yes.

25                   MR. FASTOW:  How old is he?

57

Juror No. 33 - voir dire

1              JUROR NO. 32:  He's 16 now, but he still isn't

2     an independent driver, and there have been times in the past

3     where the nurse have called and aren't comfortable with him

4     just going on the bus, because his numbers are off

5     sometimes.

6              MR. FASTOW:  Okay.

7              THE COURT:  Anything from defendant's counsel?

8              MR. RUYAK:  No.

9              THE COURT:  Thank you very much.

10             JUROR NO. 32:  I just go?

11             THE COURT:  Yes.  We have to go through the

12    whole process.

13             JUROR NO. 32:  That's fine.  I just wanted to

14    make sure.

15             (Prospective juror exits juryroom.)

16                  *     *     *

17             (Prospective juror enters juryroom.)

18             THE COURT:  Hello.  If you could have a seat

19    next to me.

20             JUROR NO. 33:  Okay.

21             THE COURT:  And you are Juror 33?

22             JUROR NO. 33:  Yes.

23             THE COURT:  You answered a couple of our

24    questions affirmatively.  One was, had to do with the list

25    of subject areas.  Do you recall which subject area you had

58

Juror No. 33 - voir dire

1    some experience or education or training in?

2                    JUROR NO. 33:  I guess my husband and I own a

3    family run company, where we assist trucking companies in

4    complying with the federal regulations, so ours is service,

5    maintenance and repair of tractor-trailers, anything over

6    10,000 pounds.

7                    THE COURT:  There are other worlds out there.

8                    JUROR NO. 33:  We've been doing this for

9    52 years.

10                   MR. TASKIER:  Not you, personally?

11                   JUROR NO. 33:  Not me, personally, no.  My

12   father-in-law started the company 52 years ago.

13                   THE COURT:  You answered some of our first

14   questions affirmatively about having some familiarity with

15   these companies.  Can you explain that?

16                   JUROR NO. 33:  Well, with many of the different

17   trucking companies, they use our forms.  We are -- we -- how

18   can I word this?  We publish forms to help them stay

19   regulatorily compliant within the Federal Motor Carrier

20   Safety Administration as to what maintenance has to be done,

21   what is required to be done.

22                   THE COURT:  Okay.

23                   JUROR NO. 33:  And our forms are compliant.  We

24   also have a complete regulatory department that goes out and

25   assists the motor carriers and different companies on these

59

Juror No. 33 - voir dire

1    compliance issues.

2              THE COURT:  Okay.  And are there companies that

3    have been listed here that you deal with on a regular basis?

4              JUROR NO. 33:  It's the trucks that are bought

5    from these companies that we deal with on a regular basis.

6              THE COURT:  Okay.

7              JUROR NO. 33:  So, like, Kenworths and those of

8    the world, yes.

9              THE COURT:  And do you have any specific

10   experience or knowledge about the transmissions associated

11   with any of these trucks?  Truck transmissions are what's --

12             JUROR NO. 33:  Only in the sense, for the

13   regulatory compliance of what has to be maintenance on them

14   as well as electronic onboard recorders.

15             THE COURT:  Okay.  So that's certainly a big

16   ticket item?

17             JUROR NO. 33:  Right.  If you showed me a

18   transmission, I would have no idea what it was.

19             THE COURT:  Okay.  All right.  Let's see if the

20   lawyers have any followup questions for you.

21             From plaintiffs' counsel?

22             MR. FASTOW:  No, your Honor.

23             THE COURT:  Defendant's counsel?

24             MR. RUYAK:  In the course of that, have you

25   heard of the companies that supply transmissions, like Eaton

Juror No. 33 - voir dire

1    and Meritor the?  Do you remember those names?

2              JUROR NO. 33:  Only in the sense of the

3    electronic onboard devices to record hours of service.  But

4    only in that aspect.

5              THE COURT:  And is there anything about your

6    experience that would make it difficult for you to be an

7    impartial juror in this case?

8              JUROR NO. 33:  As far as it being antitrust, I

9    don't believe so.  You're not talking about a trucking

10   accident, where the regulations are concerned?

11             THE COURT:  No.

12             JUROR NO. 33:  It is going to hurt my company

13   for me to be away, if it's 16 -- you know, through October.

14             THE COURT:  You need to let us know that,

15   because we don't want you sitting in the jury box stressed

16   out because your family's business needs you, and you are

17   not paying attention.  So if that's a real concern of yours,

18   you need to let us know.

19             JUROR NO. 33:  That is going to be a concern.

20   We are family run.  There are 12 employees.  I manage six of

21   them, and without me there, my husband has to cover that

22   part of it.

23             THE COURT:  Okay.

24             JUROR NO. 33:  So there is one of the regulatory

25   people, one of the corporate officers I would be missing.

Juror No. 33 - voir dire

 1              THE COURT:  All right.

 2              JUROR NO. 33:  It would put a strain on the

 3    company.

 4              THE COURT:  All right.  Any follow-up from

 5    counsel at this point?

 6              MR. FASTOW:  Would you be able to deal with that

 7    at nights and evenings or weekends?

 8              JUROR NO. 33:  No, because our business operates

 9    from 8:00 to 5:00, so, at nighttime, it would be hard for me

10    to get back with a customer if they had a regulatory issue.

11              MR. FASTOW:  Are there other people who can do

12    that?

13              JUROR NO. 33:  They can.  It would be my

14    husband, and he would be pulled away from that as well.  We

15    would be stressed.  We run a very tight ship.  That's how we

16    stayed in business for 52 years.

17              THE COURT:  Well, congratulations on that.

18    That's wonderful.

19              All right.  Thank you very much.  Appreciate it.

20              THE WITNESS:  Yes.

21              (Prospective juror exits juryroom.)

22              *    *    *

23              (Prospective juror enters juryroom.)

24              THE COURT:  Hi.  How are you, sir?

25              JUROR NO. 36:  Just fine.

Juror No. 36 - voir dire

1          THE COURT:  I'm going to ask you to sit down

2     next to me.  You're Juror 36.

3          And you answered a few of our questions.  One

4     had to do with the live of companies and whether you had any

5     knowledge of them or relied financially on any of them.  Can

6     you let me know what your response was?

7          JUROR NO. 36:  Now, just by the list of

8     companies, it's not that I rely on any of them.  It's just

9     like with Freightliner and Peterbilt, I've just been

10    affiliated with their trucks.

11         THE COURT:  Okay.

12         JUROR NO. 36:  So that's the only reason I said

13    yes.

14         THE COURT:  Okay.  Now, when you say

15    "affiliated," does that mean you've driven them?

16         JUROR NO. 36:  Yes.

17         THE COURT:  Okay.  And how long have you -- did

18    you do that?  Have you done that?

19         JUROR NO. 36:  Still doing it.

20         THE COURT:  You are still doing it?

21         JUROR NO. 36:  Right.

22         THE COURT:  And how long have you driven a

23    truck?

24         JUROR NO. 36:  20 years.

25         THE COURT:  20 years.

Juror No. 36 - voir dire

1                    In the course of your driving trucks, do you get

2       involved with maintenance?  Do you know who makes the

3       transmissions in your trucks?

4                    JUROR NO. 36:  Yes.

5                    THE COURT:  Okay.

6                    JUROR NO. 36:  I don't fix them, but I know who

7       makes the transmissions.

8                    THE COURT:  All right.  Are you familiar the

9       with the parties involved in this case?

10                   JUROR NO. 36:  I'm familiar with Eaton.

11                   THE COURT:  Eaton.  Okay.  And have you had good

12      experiences, bad experiences?  Do you have an opinion about

13      their product?

14                   JUROR NO. 36:  Yes.

15                   THE COURT:  Can you tell us what it is?

16                   JUROR NO. 36:  Well, I'd say, comparing them as

17      opposed to the other transmissions that I've dealt with, I

18      prefer them.

19                   THE COURT:  Okay.  All right.  Now, you also

20      indicated that you had some expertise in the subject areas,

21      or some education and training, in --

22                   JUROR NO. 36:  Trucking industry.

23                   THE COURT:  -- the trucking industry.

24                   JUROR NO. 36:  Yes.

25                   THE COURT:  All right.  And, finally, you work

Juror No. 36 - voir dire

1    for a company that buys or leases large trucks?

2              JUROR NO. 36:  Right.

3              THE COURT:  Okay.  All right.  Now, do you think

4    that given your experience and your generally favorable

5    opinion of Eaton's products, do you think you could set that

6    aside and be an impartial juror in this case?

7              JUROR NO. 36:  I don't know.  I guess I would

8    have to hear the case.

9              THE COURT:  All right.

10             JUROR NO. 36:  Like I say, I deal with them and

11   deal with transmissions that weren't made by them.  I prefer

12   them.  So I mean that's just my honest opinion.

13             THE COURT:  Already.

14             JUROR NO. 36:  So I don't know what the case is

15   about.  I'm just saying how I feel toward Eaton.

16             THE COURT:  And when you say you prefer, that

17   means you've had fewer problems?

18             JUROR NO. 36:  Right.

19             THE COURT:  You think they are more reliable,

20   all that sort of thing as a driver?

21             JUROR NO. 36:  Yes.

22             THE COURT:  All right.  Let's see if the lawyers

23   have any followup questions for you.

24             JUROR NO. 36:  Okay.

25             MR. FASTOW:  Who is your employer?

Juror No. 36 - voir dire

1          JUROR NO. 36:  Right now, I'm driving for

2     Foodliner.

3          MR. FASTOW:  Do they have mostly Freightliner

4     trucks, Peterbilt?

5          JUROR NO. 36:  Yes.  Freightliners.

6          MR. FASTOW:  How long have you been driving a

7     Freightliner trucks?

8          JUROR NO. 36:  I just started with them at the

9     end of June.  Other than that, before that, I was mainly

10    driving for the last eight years, Peterbilts.

11         MR. FASTOW:  And do you have a good impression

12    of Freightliner?

13         JUROR NO. 36:  Actually, compared to Peterbilt,

14    I think Freightliners are kind of raggedy.

15         MR. FASTOW:  And you had experience with both?

16         JUROR NO. 36:  Excuse me?

17         MR. FASTOW:  You've had experiences with

18    Freightliner and Peterbilt?

19         JUROR NO. 36:  Yes.

20         MR. FASTOW:  What kind of transmissions have you

21    driven?

22         JUROR NO. 36:  Mostly Eaton Fuller, and, see,

23    this Freightliner that I'm driving now, I don't believe that

24    is an Eaton transmission, and then I really don't like the

25    transmission.  I can't tell you who makes it, but I don't

Juror No. 36 - voir dire

1    like it.

2              MR. FASTOW:  Is it a manual transmission?

3              JUROR NO. 36:  It's a Super 10.

4              THE COURT:  Okay.

5              JUROR NO. 36:  Which it's a clutch, but after

6    you take off, you basically are doing everything by a

7    button.

8              MR. FASTOW:  So three pedals?

9              MR. TASKIER:  It has a clutch.

10             JUROR NO. 36:  You need the clutch when you are

11   stopping and you need the clutch when you take off, but once

12   you take off, you go to the rest of your gears just by using

13   the button.  And when you get into tenth gear, it is like

14   the overdrive.

15             MR. FASTOW:  Right.

16             JUROR NO. 36:  And the overdrive in these

17   transmissions, it's just -- it justify doesn't work right to

18   me.  I've dealt with overdrive that I know that was made by

19   Eaton in the Peterbilts.  No overdrive is all that great,

20   but at least the one that I did deal with with Eaton, it was

21   -- I mean, I can appreciate it more now that I'm dealing

22   with this one here, so that's the best I can tell you right

23   now.

24             MR. FASTOW:  All right.

25             THE COURT:  Anything from defendant's counsel?

Juror No. 37 - voir dire

1            MR. RUYAK:  Have you driven some different kind

2    of trucks, like long-haul trucks and short-haul trucks?

3            JUROR NO. 36:  I've driven short-haul trucks,

4    like dump trucks.

5            MR. RUYAK:  Okay.

6            JUROR NO. 36:  But most of my trucks, most of my

7    experience is with 18-wheelers.

8            MR. RUYAK:  Okay.  Thank you.  That's all I

9    have.

10           THE COURT:  All right.  Thank you very much.

11   Appreciate it.

12           JUROR NO. 36:  Okay.

13           (Prospective juror exits juryroom.)

14               *    *    *

15           (Prospective juror enters juryroom.)

16           THE COURT:  Hi.  How are you, sir?  If you could

17   have a seat next to me.

18           JUROR NO. 37:  Okay.

19           THE COURT:  You're Juror 37?

20           JUROR NO. 37:  Yes.

21           THE COURT:  You answered our one question about

22   working for a company that buys or leases large trucks.  Can

23   you explain that?

24           JUROR NO. 37:  Yes, your Honor.  Yes.  I work

25   for the Hagemeyer Corporation.  They lease flatbed trucks,

Juror No. 37 - voir dire

1    tractor trailers and regular delivery trucks through the

2    Penske Corporation for customer deliveries throughout the

3    United States.

4            THE COURT:  And in your position with this

5    company, are you directly involved in that process?

6            JUROR NO. 37:  No, I'm not directly involved.  I

7    pay a portion of the monthly lease, but I mean I'm not

8    involved in leasing.

9            THE COURT:  Okay.

10           JUROR NO. 37:  That's not done at my level.

11           THE COURT:  Okay.  Can you tell us what you do?

12           JUROR NO. 37:  Yes, your Honor.  I'm the counter

13   sales manager for the Salisbury location.

14           THE COURT:  Oh, all right.  And so in terms of

15   the trucks that are leased, do you happen to know what kind

16   of transmissions they have, or if anyone has any problems

17   with the transmissions?

18           JUROR NO. 37:  They send them in for normal

19   service, regular, but I'm not aware of any problems that

20   they have.  They would take that up right with Penske.

21           THE COURT:  Is there anything about your

22   experience that would make it difficult for you to sit as an

23   impartial juror in this case, do you think?

24           JUROR NO. 37:  Not on this particular question,

25   your Honor, no.

Juror No. 37 - voir dire

1              THE COURT:  All right.  Let's see if the lawyers

2    have any followup questions.

3              MR. FASTOW:  Now, if I could just understand

4    what exactly is -- is it Hagemeyer?

5              JUROR NO. 37:  Yes.

6              MR. FASTOW:  What is its business?

7              JUROR NO. 37:  We're a wholesale electrical and

8    electronics products, like pipe conduit for the building

9    industry, that type of thing.

10             MR. FASTOW:  So when you say you are a counter

11   sales manager, what kind of customers do you deal with?

12             JUROR NO. 37:  We get what they call viamonic

13   electronic customers.  For example, K&L Microwave,

14   electrical contractors, big corporations, Perdue farms,

15   people like that, that purchase material from us, and we set

16   up deliveries.  They can come in and pick from us,

17   obviously, because we're a counter.  We also set up

18   deliveries for them.

19             MR. FASTOW:  So you are involved in the delivery

20   process?

21             JUROR NO. 37:  I am involved in the delivery

22   process, yes, sir.

23             MR. FASTOW:  Have there been any times when you

24   couldn't make deliveries or deliveries were late because of

25   problems with the trucks?

Juror No. 37 - voir dire

1           JUROR NO. 37:  There have been have been, but

2     they relay that information to us via e-mails from

3     Chambersburg, Pennsylvania, which is where the trucks are

4     routed.  They're sent from there down to locations and we

5     have trucks at our location that go out for local

6     deliveries, but the tractor trailers make a once-a-night

7     delivery to our location, to drop off, you know, replenish.

8     Stock or special customer orders that need to be delivered

9     that day.  And then the drivers of the three Penske trucks

10    that are stationed at our location come in about 4:30 in the

11    morning and they take the trucks out and they make their

12    deliveries.

13          MR. FASTOW:  Are you aware of any problems with

14    deliveries from transmission defects or problems?

15          JUROR NO. 37:  No, not from transmissions.  No,

16    I'm not.

17          MR. FASTOW:  I take it you are not really

18    involved in transmissions?

19          JUROR NO. 37:  No, no, I'm not involved in

20    transmissions.

21          THE COURT:  Anything from defendant's counsel?

22          MR. RUYAK:  No.

23          JUROR NO. 37:  Your Honor, the next-to-the-last

24    question I misunderstood and thought that that would just

25    pertain to physical --

Juror No. 39 - voir dire

1            THE COURT:  Do you have some concerns?

2            JUROR NO. 37:  Yeah, because there's only two

3    people at our counter location, and we have our mandatory

4    physical inventory that's coming up on September 25th.  You

5    know, a couple day trial or even two weeks, you know, but

6    when you indicated it would be 16 days, it would make a bit

7    of a hardship.  If you could just take that into

8    consideration, you know.  You know, if need be, we'll just

9    have to transfer somebody in from another location, but I've

10   been in charge of the inventory every year.

11           THE COURT:  All right.  We will take that into

12   account.  Thank you very much.

13           JUROR NO. 37:  Okay.  Thank you, your Honor.

14           (Prospective juror exits juryroom.)

15              *    *    *

16           (Prospective juror enters juryroom.)

17           THE COURT:  Hi.  How are you.

18           JUROR NO. 39:  Hi.

19           THE COURT:  If you could have a seat next to me.

20   I believe you are Juror 39?

21           JUROR NO. 39:  Yes.

22           THE COURT:  And you answered one question, and

23   that is about having served as a juror before?

24           JUROR NO. 39:  Yes.

25           THE COURT:  Can you tell us when and what court?

Juror No. 39 - voir dire

1              JUROR NO. 39:  It was about maybe 12 years ago.

2    And I lived in Washington, D.C.

3              THE COURT:  All right.  And it was a civil

4    lawsuit?

5              JUROR NO. 39:  It was.

6              THE COURT:  Can you tell us the nature of the

7    suit and whether the jury reached a verdict in that suit?

8              JUROR NO. 39:  It was, like, a slip and fall

9    kind of case.

10             THE COURT:  All right.

11             JUROR NO. 39:  Yes, the jury found for the

12   defendant.

13             THE COURT:  The defendant.  Is there anything

14   about that experience that would make it difficult for you

15   to sit as an impartial juror here in this case?

16             JUROR NO. 39:  No, I don't think so.

17             THE COURT:  All right.  Let's see if the lawyers

18   have any followup questions for you.  Anything from the

19   plaintiff?

20             MR. FASTOW:  No.

21             THE COURT:  Defendant's counsel?

22             MR. RUYAK:  No.

23             THE COURT:  Thank you very much.  Appreciate it.

24             (Prospective juror exits juryroom.)

25             *     *     *

Juror No. 42 - voir dire

1           (Prospective juror enters juryroom.)

2           THE COURT:  Hi.  How are you, sir?  If you could

3   have a seat next to me?

4           JUROR NO. 42:  Good morning, Judge.

5           THE COURT:  You look very dapper today.

6           JUROR NO. 42:  Thank you.

7           THE COURT:  I think you answered two of our

8   questions, but I will go to the last question about having

9   some concerns about serving as a juror here.

10          JUROR NO. 42:  Well, first of all, I'm a

11  teacher.  I teach Political Science and American History

12  and, of course, in the development of my training, I've

13  acquired a significant knowledge of monopolies, history of

14  robber barons, things of that sort.  So while I would strive

15  to be fair and objective, I don't know to what extent my

16  knowledge would influence my decision and so I thought it

17  was appropriate that I acknowledge that.

18          THE COURT:  All right.  You had another concern

19  about serving as a juror?  You answered our last question.

20          JUROR NO. 42:  Yeah.  I think there was

21  something about my education and training.

22          THE COURT:  Right.  Okay.

23          JUROR NO. 42:  I hold a Bachelor's degree in

24  Political Science, a Master's Degree in Public

25  Administration and 45 doctoral credits in Public Law.

Juror No. 42 - voir dire

1              THE COURT:  All right.  Now, do you think that

2    you would be able to -- I don't know that anyone can

3    entirely set aside their experience and education, but you

4    would be instructed to follow my instructions as to the law

5    whether you agree with them or not.  Do you think you could

6    do that, or do you think you might have some problems with

7    that?

8              JUROR NO. 42:  Well, I mean, to the best of my

9    ability, I would.  You know, strive to be objective, but,

10   again, in all honesty, given my insight, I can't say that I

11   could clearly separate even, you know, with all due respect

12   to the directions of you, your Honor, and the core.  I think

13   we're all influenced by our experiences and knowledge, to

14   some degree.  And so it would be my objective to do that,

15   but, again, I thought I needed to acknowledge that and leave

16   that to your decision.

17             THE COURT:  All right.  Do you have any other

18   concerns about serving as a juror here?

19             JUROR NO. 42:  Well, the only other thing is,

20   the school year is just starting, and, you know, that would

21   be a concern that I would be away from my students for a

22   while.

23             THE COURT:  Okay.  You teach on what level?

24   High school?  College?

25             JUROR NO. 42:  Yes, I teach high school.  I used

Juror No. 45 - voir dire

1    to teach some college course but I teach high school,

2    Political Science.

3                    THE COURT:  Okay.

4                    JUROR NO. 42:  Economics, American History.

5                    THE COURT:  All right.  Let's see if the lawyers

6    have any followup questions for you.

7                    Anything from plaintiffs' counsel?

8                    MR. FASTOW:  No.  Thank you, your Honor.

9                    THE COURT:  Defendant's counsel?

10                   MR. RUYAK:  No.  Thank you.

11                   THE COURT:  Thank you very much.  Appreciate it.

12                   (Prospective juror exits juryroom.)

13                   *    *    *

14                   (Prospective juror enters juryroom.)

15                   THE COURT:  Hi.  If you could have a seat next

16   to me.  I believe you are Juror 45?

17                   JUROR NO. 45:  Mm-hmm.

18                   THE COURT:  And you answered our last question

19   affirmatively?

20                   JUROR NO. 45:  Yes.

21                   THE COURT:  Can you explain?

22                   JUROR NO. 45:  I just can't take that much time

23   off of work at the present time.  I brought a letter from my

24   manager.  I work in tax, JP MorganChase and we have a filing

25   deadline of 9/15.

76

Juror No. 46 - voir dire

1                THE COURT:  Let me just pass this around to

2   counsel.

3                JUROR NO. 45:  Okay.

4                THE COURT:  And I take it, it would work a

5   hardship on your company and on you if you were asked to

6   serve for this trial?

7                JUROR NO. 45:  Right.

8                THE COURT:  Okay.

9                (Pause.)

10               JUROR NO. 45:  Also, my mother is not doing well

11  medically, so there would be a good chance that she could

12  pass away during the trial.

13               THE COURT:  All right.  Any followup questions?

14               MR. RUYAK:  No.

15               THE COURT:  Thank you very much.  Appreciate it.

16               JUROR NO. 45:  Thank you.

17               (Prospective juror exits juryroom.)

18               MR. FASTOW:  Your Honor, what was the number of

19  the prior person?

20               THE COURT:  That was 42.

21               MR. FASTOW:  42?  Thank you.

22               (Prospective juror enters juryroom.)

23               THE COURT:  Hi.  How are you?

24               JUROR NO. 46:  Good morning.

25               THE COURT:  If you could have a seat next to me.

Juror No. 46 - voir dire

1          And I believe you are Juror 46?

2          JUROR NO. 46:  Yes, ma'am.

3          THE COURT:  And you answered two of our

4   questions.  One had to do with the subject areas and the

5   other was about working for a company that buys or leases

6   large trucks?

7          JUROR NO. 46:  Yes.  And my affirmation was more

8   along the safe than sorry thing.  I'm a Divisional Director

9   with Krispy Kreme Donut Corporation.

10         THE COURT:  I miss them so much.

11         JUROR NO. 46:  Yes.  I'm working on that.

12         MR. RUYAK:  Look what we have here.  This is not

13  good.  (Dunkin Donuts coffee cups are indicated.)

14         JUROR NO. 46:  I know.  I had to take that with

15  a grain of salt.  But I basically work with approximately

16  eight different franchise groups and all of them, for the

17  most part, lease fleet trucks, mostly the non-commercial

18  type trucks, just for general donut deliveries.

19         I've got, like, a 10,000-foot working knowledge

20  of maintenance agreements with, whether leasing through

21  Penske or Rollins, or whomever.  More along the lines of the

22  terminology, things along that, and, again, it's more of a

23  safe than sorry type thing.

24         So I just want to mentioned the fact that I am

25  familiar with some leasing concepts and things along those

Juror No. 46 - voir dire

1    lines.

2              THE COURT:  Well, I'm going to have, because you

3    know more than I do, I'm going to have the lawyers ask the

4    followup questions.

5              MR. FASTOW:  What is your role?

6              JUROR NO. 46:  I basically act as liaison

7    between the franchisees and the corporate entity.  I get

8    paid by the company, but act as liaison between the

9    franchisees.  I assist them with store openings, working

10   through their franchise agreements, things they can't do,

11   maintaining standards, implementing new processes, new

12   products, inspections, things along those lines.  Sort of

13   the whole gamut.

14             MR. FASTOW:  Are you out in the field much?

15             JUROR NO. 46:  For the most part, yes.  I live

16   in Wilmington, Delaware and I cover everything from

17   Huntsville, Connecticut to Northern California, Oklahoma,

18   Texas, Southern Florida.  My closest place is Scranton,

19   Pennsylvania, but outside of that, for the most part, I get

20   on a plane every Monday or Tuesday and get back off a plane

21   every Thursday or Friday.

22             THE COURT:  So this trial might actually let you

23   stay put for a also bit?

24             JUROR NO. 46:  What it is, right now, most of

25   the stuff I've been doing of late, I've actually not been

Juror No. 46 - voir dire

1    traveling that much because we had new franchise agreements

2    come out.  There were a lot more phone conversations over

3    those things than actually visiting markets.

4              THE COURT:  All right.

5              MR. FASTOW:  Are you involved at all with the

6    delivery trucks?

7              JUROR NO. 46:  For the most part, no.  The

8    franchisees each make their own decisions as to what they

9    are going to do, whether they're going to buy, lease,

10   perform their own maintenance or get a separate maintenance

11   contract from an outside vendor.  I don't help them with the

12   decisions.  If they ask me to look at something, I will look

13   at it.

14             I may recommend, if they're getting ready to

15   come off of a lease, there's a franchisee out of Austin,

16   Texas that's basically gone to a non-commercial type truck,

17   and sort of came up with a delivery system that allows his

18   product to be transported using a smaller, non-commercial

19   truck, where he gets better gas mileage, better maintenance,

20   and he can, for the most part, turn the trucks over in three

21   years and get out of that whole lease process.

22             A lot of the guys can't do that.  They are just

23   not in a financial position to do so.

24             But, really, outside of that, nothing -- I don't

25   execute the leases.  I don't make sure they maintain their

80

Juror No. 46 - voir dire

1   services on the vehicles, things along those lines.

2            MR. FASTOW:  You are familiar with the way a

3   truck or a part of a truck might affect things like fuel

4   mileage and expense?

5            JUROR NO. 46:  Absolutely, and suggested

6   maintenance schedules and things along those lines.

7   Absolutely.

8            MR. FASTOW:  You spend a lot of time on that

9   issue?

10           JUROR NO. 46:  Not a whole heck of a lot.

11  Again, each of the franchisees are able to make, strike

12  their own deals.  I don't do anything with the company side.

13  I know the company maintains a larger fleet.  I couldn't

14  take a stab in the dark who it is through.  But, again, I

15  think they are all the smaller, non-C licensed type vehicles

16  versus -- we use Bakemark for distribution, everything west

17  of the Mississippi right now, and that's an independent

18  hauler.  And different haulers will transport goods from

19  Winston-Salem in the larger tractor-trailers up to

20  Connecticut, New York, South Florida, some other places.

21  But I think their contract is services.

22           MR. FASTOW:  Are you involved at all with

23  problems if any of those trucks have problems?  If they

24  break down or get stuck, whatever?

25           JUROR NO. 46:  None whatsoever.  That's handled

Juror No. 49 - voir dire

1    by the corporate company guys.

2                    MR. FASTOW:  All right.

3                    MR. RUYAK:  I have nothing else.

4                    THE COURT:  Thank you very much.  Appreciate it.

5                    MR. RUYAK:  Thank you.

6                    JUROR NO. 46:  Thanks.

7                    (Prospective juror exits juryroom.)

8                    *    *    *

9                    (Prospective juror enters juryroom.)

10                   THE COURT:  Hi.  How are you?

11                   JUROR NO. 49:  Good morning.

12                   THE COURT:  If you could have a seat by me.

13                   JUROR NO. 49:  All right.  Thank you.

14                   THE COURT:  And you are Juror 49?

15                   JUROR NO. 49:  Yes.

16                   THE COURT:  And you answered two of our

17   questions.  I'm going to ask you about your response to one

18   of the final questions about having concerns about sitting

19   as a juror.

20                   JUROR NO. 49:  Yes.  I just have a little bit of

21   a hearing problem.

22                   THE COURT:  All right.

23                   JUROR NO. 49:  So in there, I could hear you,

24   but just barely.  I mean --

25                   THE COURT:  I am soft-spoken.

Juror No. 49 - voir dire

1              JUROR NO. 49:  Yes.

2              THE COURT:  I'm always getting told that.

3              JUROR NO. 49:  Most conversations, I can hear.

4      I just thought I would bring that to your attention.

5              THE COURT:  All right.  I guess if you were

6      selected to serve, would you be sure that you raised your

7      hand if we needed to speak louder, either the attorneys, the

8      witnesses or me?

9              JUROR NO. 49:  Yes, I would do that.

10             THE COURT:  You are not shy?

11             JUROR NO. 49:  No, no, not really.

12             THE COURT:  We have to make sure about that.

13             You also answered the question about having

14     served as a juror before.  Can you tell us when that was?

15             JUROR NO. 49:  It was in this court, probably

16     15 -- 10 or 15 years ago.

17             THE COURT:  Okay.

18             JUROR NO. 49:  Under Judge McKelvie.

19             THE COURT:  All right.  Do you recall what kind

20     of case it was?

21             JUROR NO. 49:  It was a lawsuit, a civil case,

22     and it involved a person that got injured on a job that was

23     suing a company.

24             THE COURT:  All right.  And did the jury

25     deliberate and reach a verdict?

Juror No. 49 - voir dire

1                    JUROR NO. 49:  Yes.

2                    THE COURT:  Can you tell us what that verdict

3      was?

4                    JUROR NO. 49:  Yes.  We proved that there was no

5      negligence.

6                    THE COURT:  No negligence?

7                    JUROR NO. 49:  Yes.

8                    THE COURT:  Is there anything about that

9      experience that would make it difficult for you to sit as an

10     impartial juror in this case?

11                   JUROR NO. 49:  I don't think so.  I can't

12     imagine it.

13                   THE COURT:  All right.  Let's see if the lawyers

14     have any followup questions.

15                   MR. FASTOW:  No, your Honor.

16                   THE COURT:  Anything?

17                   MR. RUYAK:  No, I don't have anything.

18                   THE COURT:  Thank you very much.

19                   JUROR NO. 49:  Oh, that was easy enough.  Thank

20     you.

21                   (Prospective juror exits juryroom.)

22                   *    *    *

23                   (Prospective juror enters juryroom.)

24                   THE COURT:  Hi.  How are you?  If you could have

25     a seat.

Juror Nos. 51 and 53 - voir dire

1           MR. REID:  She works for Morris Nichols.

2           JUROR NO. 51:  Yes.  I'm, like, I work for Don.

3           THE COURT:  All right.  Any followup questions?

4           JUROR NO. 51:  That's probably it; right?

5           THE COURT:  That's it.

6           JUROR NO. 51:  Thanks.

7           THE COURT:  Thank you very much.

8           MR. FASTOW:  What number was that?

9           THE COURT:  That was 51.  I'm sorry.

10          (Prospective juror exits juryroom.)

11          *     *     *

12          (Prospective juror enters juryroom.)

13          THE COURT:  All right.  Have a seat, please.

14      You are Juror 53.

15          JUROR NO. 53:  Yes.

16          THE COURT:  And you answered two of our

17      questions.  One had to do with the companies, the list of

18      companies.  And let me go back.  Whether you, a family

19      member, or anyone close to you had any dealings with or

20      relied financially on any of the companies?

21          JUROR NO. 53:  Not financially, but I had an

22      invention to some of companies.  I saw Chrysler on this

23      list.  And they responded with some legal information, like

24      nondisclosure waivers, stuff like that.  And other than

25      that, they didn't show any interest in my invention.

Juror No. 53 - voir dire

1          THE COURT:  Your invention?

2          JUROR NO. 53:  That's all the relationship I had

3    at that point.

4          THE COURT:  I take it your invention had

5    something to do with the car industry, though?

6          JUROR NO. 53:  Definitely.  All of them.  It was

7    a kind of engine.  Not a transmission, but the invention

8    would eliminate a transmission.

9          THE COURT:  Oh, wow.  I will let the lawyers

10   follow up on that.  And, I take it, when you listed the

11   subject areas, that it was on the trucking industry or

12   maintenance that you had some experience and training?

13         JUROR NO. 53:  Yes.  For eight years, I was a

14   brake and clutch system designer and testing engineer, so

15   the axles, but not directly maintaining the transmission,

16   but I know very well what's going on there, different kinds

17   of designs in those systems.

18         THE COURT:  All right.

19         JUROR NO. 53:  I understand the maintenance, all

20   issues.

21         THE COURT:  With whom were you working?

22         JUROR NO. 53:  Oh, sorry.  I was -- this patent

23   I hold in India, not in U.S.

24         THE COURT:  All right.  Well, the lawyers know

25   more about this than I do, so I'm going to let them follow

Juror No. 53 - voir dire

1    up with you.

2              Anything from plaintiffs' counsel?

3              MR. FASTOW:  I take it you are familiar with

4    manual transmissions versus automatic transmissions?

5              JUROR NO. 53:  Yes.

6              MR. FASTOW:  And how they work and the

7    particulars?

8              JUROR NO. 53:  Yes.  In general, I know what's

9    going on there, because I'm handling and also I can --

10             MR. FASTOW:  Any relationship between the

11   transmission and other parts of the drive train --

12             JUROR NO. 53:  Yes.

13             MR. FASTOW:  -- relationship with the engine?

14             JUROR NO. 53:  Yes.

15             MR. FASTOW:  I take it, your invention you said

16   is designed to eliminate the need for a transmission?

17             JUROR NO. 53:  Yes.  I don't know if that

18   qualifies or disqualifies me here.  I just wanted to say

19   that.

20             MR. FASTOW:  And how long have you been involved

21   in or around transmissions?

22             JUROR NO. 53:  About eight years.  That was --

23   that career -- that part of my career ended in '89.  Sorry.

24   '89.

25             There's one more part.  Sorry.  I missed more

Juror No. 53 - voir dire

1    information here.

2              I was also manufacturing small automobile parts

3    and exporting to the U.S., and some others, and so I do have

4    the experience of manufacturing -- not -- smaller parts, not

5    directly connected with the transmission but, in general,

6    automotive parts.

7              MR. FASTOW:  And selling?  Who are your

8    customers you sold to?

9              JUROR NO. 53:  Here, I sold to Reidell

10   Associates, Incorporated (phonetic).  There was one company

11   in Germany.  There was a company called RCP in Canada.  I

12   can't remember the company name in Germany.

13             MR. FASTOW:  You were in the business of selling

14   automotive parts?

15             JUROR NO. 53:  Correct.

16             MR. FASTOW:  How long were you in that business

17   or are you still in that business?

18             JUROR NO. 53:  That was about four years.

19             MR. FASTOW:  Okay.

20             JUROR NO. 53:  They are all from India.  The

21   last couple of years, I was doing only pure marketing here,

22   not a citizen of U.S., but now I'm a citizen of U.S.

23             THE COURT:  And are you no longer involved in

24   that field?

25             JUROR NO. 53:  No, I do my own -- I'm not

Juror No. 53 - voir dire

1    commercially involved there.

2            THE COURT:  Okay.

3            JUROR NO. 53:  Right now, I'm trying to -- try

4    to patent all this stuff, but not dealing with any companies

5    at this point.

6            THE COURT:  All right.

7            MR. FASTOW:  But you are still involve in your

8    designs and inventions with respect to these kinds of

9    automotive components?

10           JUROR NO. 53:  Let me think.  Not currently.

11           MR. FASTOW:  How long ago were you?

12           JUROR NO. 53:  That was around 2001 was the last

13   one I did anything towards.

14           MR. FASTOW:  Okay.

15           MR. RUYAK:  Just one question.  When you were

16   working with the brakes and drivetrains and things,

17   clutches, was that for trucks or cars or both?

18           JUROR NO. 53:  For all kinds.

19           MR. RUYAK:  For all kinds?

20           JUROR NO. 53:  Including industrial rig.

21           THE COURT:  Anything else, counsel?

22           MR. FASTOW:  No.

23           THE COURT:  Thanks you very much.

24           JUROR NO. 53:  Thanks.

25           THE COURT:  Appreciate it.

Juror No. 54 - voir dire

1               (Prospective juror exits juryroom.)

2               *    *    *

3               (Prospective juror enters juryroom.)

4               Hi.  How are you, sir?

5               JUROR NO. 54:  Hello.

6               THE COURT:  If you could have a seat next to me.

7               And you are Juror 56?

8               JUROR NO. 54:  54.

9               THE COURT:  Oh, 54.  All right.  54.  Thank you.

10              And you answered one of our questions, and

11     that's whether you've worked for a company that buys or

12     leases trucks?

13              JUROR NO. 54:  DuPont.

14              THE COURT:  DuPont?

15              JUROR NO. 54:  Yes.

16              THE COURT:  And can you tell us what you did for

17     DuPont?

18              JUROR NO. 54:  I was a carpenter.

19              THE COURT:  Okay.  So although DuPont leased

20     trucks, did you have anything to do with trucks in your job?

21              JUROR NO. 54:  Well, I was -- I was cut back to

22     a lesser job, and I was in operations.  And when tank trucks

23     came in, I had to go up and open them up.

24              THE COURT:  All right.  And did you know -- I

25     mean, did you get familiar with the kinds of trucks or their

Juror No. 54 - voir dire

1   maintenance or --

2                 JUROR NO. 54:  No.

3                 THE COURT:  These were leased trucks then?

4                 JUROR NO. 54:  No.

5                 THE COURT:  Okay.  Let's see if the lawyers have

6   any followup questions for you.

7                 MR. FASTOW:  Sure.  What was the connection

8   between the tank trucks and being cut back?

9                 JUROR NO. 54:  Pardon me?

10                MR. FASTOW:  Is there a relationship between the

11  tank trucks, and you said you were cut back?

12                JUROR NO. 54:  No.

13                MR. FASTOW:  That was separate?

14                JUROR NO. 54:  Yes.  I was cut back, and I went

15  into operations, what they called operations.  And you had

16  to, like, mix different items, and when a tank truck came

17  in, it pulled in, and you had to go up and open it up and

18  hook it up.

19                MR. FASTOW:  What would be in the tank trucks?

20                JUROR NO. 54:  Different chemicals.  I don't

21  know what they were.

22                MR. FASTOW:  But that was your only role with

23  the trucks?

24                JUROR NO. 54:  Yes.

25                MR. FASTOW:  Okay.

Juror No. 56 - voir dire

1           THE COURT:  Anything from defendant's counsel?

2           MR. RUYAK:  No.

3           THE COURT:  All right.  Thank you very much.

4    Appreciate it.

5           JUROR NO. 54:  Thank you.  Thank you.

6           (Prospective juror exits juryroom.)

7           *    *    *

8           (Prospective juror enters juryroom.)

9           THE COURT:  Hi.  How are you?  If you could have

10   a seat next to me.

11          You're Juror 56?

12          JUROR NO. 56:  Yes.

13          THE COURT:  And you answered a few of our

14   questions.

15          JUROR NO. 56:  I did.

16          THE COURT:  Some of which -- well, let's start

17   with the last one.  You work for a company that buys or

18   leases large trucks?

19          JUROR NO. 56:  I work for Verizon in Delaware.

20   I'm not involved in the purchasing, but I do know that they

21   purchase large trucks.

22          THE COURT:  All right.  And the other question

23   was having worked for a company that has been allege to have

24   engaged in monopoly or --

25          JUROR NO. 56:  Verizon, yes.  When they were

92

Juror No. 56 - voir dire

1    Bell Atlantic.

2              THE COURT:  Oh, so that's going back a ways.

3    How long have you been employed there?

4              JUROR NO. 56:  12 years.

5              THE COURT:  12 years.

6              And did you have anything to do with the legal

7    aspects of those allegations, or you just knew they were --

8              JUROR NO. 56:  Absolutely not.  Just an

9    employee.

10             THE COURT:  You answered some of our first

11   questions about the companies, dealings with any of these

12   companies or the products of the companies.  Can you tell me

13   about that?

14             JUROR NO. 56:  The reason why I stood up, my

15   husband is a fleet manager for Waste Management and he

16   actually does work on large trucks and deals with -- I know

17   it's called Harvey Mack.  I'm not sure if that is the same

18   company, and some of the others mentioned, International,

19   Peterbilt.  So I'm familiar and I've actually picked up

20   parts at one of them for him.

21             THE COURT:  Okay.  In terms of your exposure to

22   the trucking industry through your husband, do you think

23   there's anything about that that would make it difficult for

24   you to sit as an impartial juror in this case?

25             JUROR NO. 56:  No, I don't think so.  I mean, my

Juror No. 56 - voir dire

1    knowledge is not much.

2                  THE COURT:  All right.

3                  JUROR NO. 56:  So I don't --

4                  THE COURT:  Well, let's see if the lawyers have

5    any followup questions.

6                  MR. FASTOW:  Okay.  What do you do at Verizon?

7                  JUROR NO. 56:  I am a consultant in the sales

8    and service office.  I deal with residential customers who

9    have concerns.

10                 MR. FASTOW:  Do you deal with complaints and so

11   forth?

12                 JUROR NO. 56:  Yes, yes.  I work at an

13   Escalation Desk there.

14                 MR. FASTOW:  What's an Escalation Desk?

15                 JUROR NO. 56:  Basically, if you are calling in

16   with a question or concern with mainly your bill, you will

17   ask for a supervisor.  While I'm not a supervisor, I act as

18   a supervisor in that capacity because of the knowledge.

19                 MR. FASTOW:  You're the person, when I say, can

20   I talk to someone else?

21                 THE COURT:  As the complaint escalates, it comes

22   to her.

23                 MR. FASTOW:  I've got it.

24                 JUROR NO. 56:  That's me.

25                 MR. FASTOW:  Great.  Thank you.

Juror No. 57 - voir dire

 1              THE COURT:  Anything from defense counsel?

 2              MR. RUYAK:  No.

 3              THE COURT:  Thank you very much.

 4              JUROR NO. 56:  Thank you for the doughnuts.

 5   That was very nice.

 6              THE COURT:  You're welcome.

 7              (Prospective juror exits juryroom.)

 8              *    *    *

 9              (Prospective juror enters juryroom.)

10              THE COURT:  Hi.  How are you, sir?  If you could

11   have a seat next to me.

12              And I believe you are Juror 57.

13              JUROR NO. 57:  Yes.  James.

14              THE COURT:  James.  Right.

15              And you answered two of our questions.  One had

16   to do with whether you had ever served as a juror before.

17              JUROR NO. 57:  Right.

18              THE COURT:  Can you tell us when that was?

19              JUROR NO. 57:  That was about ten years ago in

20   Kent County.

21              THE COURT:  Okay.

22              JUROR NO. 57:  It was a case with Delaware

23   Electric Co-Op.  And what it was, it was a civil case,

24   electrocutions.  Wife tried to, get restitution, you know,

25   for a family.

Juror No. 57 - voir dire

1                THE COURT:  Right.  And did the jury deliberate

2      in that case?

3                JUROR NO. 57:  Yes.

4                THE COURT:  Did you reach a verdict?

5                JUROR NO. 57:  Yes.

6                THE COURT:  Do you remember what it was?  Was it

7      for the wife?

8                JUROR NO. 57:  Yes.  Delaware Co-Op -- they

9      found Delaware Co-Op liable for like 75 percent their

10     liability and 25 percent of the plaintiffs.

11               THE COURT:  Is there anything about that

12     experience that would make it difficult for you to be an

13     impartial juror here?

14               JUROR NO. 57:  No, no.

15               THE COURT:  Okay.  You also answered one of our

16     first questions about the companies, whether you, a family

17     member, or a close friend ever worked for any of the

18     companies?

19               JUROR NO. 57:  Yes.  I had a cousin work for

20     DaimlerChrysler up in New York, the now defunct company.

21     Yeah.

22               THE COURT:  And I believe that plant

23     manufactured cars, not trucks, I believe?

24               JUROR NO. 57:  Yes, cars.  Yes.

25               THE COURT:  Already.  I'm not exactly sure how

Juror No. 60 - voir dire

1    this will come up.  I will let the lawyers ask about that.

2              MR. FASTOW:  I take it, you just answered that?

3    There's nothing involved that would affect your ability to

4    address this case?

5              JUROR NO. 57:  Right.

6              THE COURT:  Anything from defendant's counsel?

7              MR. RUYAK:  No, I don't think so.

8              THE COURT:  Thank you very much.

9              JUROR NO. 57:  You're welcome.

10             (Prospective juror exits juryroom.)

11             *    *    *

12             (Prospective juror enters juryroom.)

13             THE COURT:  I think the next juror should be

14   Juror 60.

15             THE COURT:  Hi.  How are you?

16             JUROR NO. 60:  Hi.

17             THE COURT:  Why don't you have a seat next to

18   me.

19             I think you answered a few questions, but you

20   answered one of our last two questions.  Let me ask you

21   about that first.

22             JUROR NO. 60:  It's not considered a disability,

23   but I have ulcerative colitis, and when I heard that the

24   trial could be up to 16 days, there's a lot of days during

25   the week where I will have to use the bathroom frequently

Juror No. 60 - voir dire

1    and sometimes with some relative urgency.

2                THE COURT:  Okay.

3                JUROR NO. 60:  So that made me a little nervous.

4                THE COURT:  All right.  Well, we try to take

5    breaks every hour-and-a-half, and we try to accommodate

6    jurors, but with a trial like this, where we are trying to

7    be efficient, if you think that that just isn't going to do

8    it for you --

9                JUROR NO. 60:  It's something that's a little

10   bit unpredictable to me.  Sometimes I have trouble in the

11   morning, and sometimes it's more in the afternoon.

12               THE COURT:  Okay.

13               JUROR NO. 60:  Kind of been flare-ups -- not

14   without a flare-up over the course of the last year.

15               THE COURT:  All right.

16               JUROR NO. 60:  I'm just not sure.

17               THE COURT:  Let me just quickly ask you about

18   some of the other questions.

19               JUROR NO. 60:  Okay.

20               THE COURT:  You served as a juror before?

21               JUROR NO. 60:  Mm-hmm.

22               THE COURT:  When was that?

23               JUROR NO. 60:  It was several years ago.  It was

24   an insurance type case.

25               THE COURT:  All right.  And did you have the

Juror No. 60 - voir dire

1   same physical problems then?

2          JUROR NO. 60:  Not at that point.

3          THE COURT:  Not at that point?

4          JUROR NO. 60:  No.

5          THE COURT:  Do you remember whether the jury

6   reached a verdict in that case and what it might have been?

7          JUROR NO. 60:  Yes.  It was not in favor of the

8   plaintiff.  It was in favor of the defendant.

9          THE COURT:  Okay.  Is there anything about that

10  experience that would make it difficult for you to be an

11  impartial juror here?

12         JUROR NO. 60:  I don't think so.

13         THE COURT:  Okay.  And you just answered one

14  other question, and that had to do with any of the

15  additional companies that were listed?

16         JUROR NO. 60:  Mm-hmm.

17         THE COURT:  Do you recall?

18         JUROR NO. 60:  So did you ask whether you had

19  friends and family that --

20         THE COURT:  Yes.

21         JUROR NO. 60:  I knew there was a question about

22  financial.

23         THE COURT:  Right.

24         JUROR NO. 60:  We've had family and we have

25  close family friends that work for Chrysler.  I didn't if

Juror No. 65 - voir dire

1   that would -- I figured that should be something I should

2   tell you.

3                THE COURT:  Thank you.

4                Any followup questions for this juror?

5                MR. FASTOW:  No.

6                MR. RUYAK:  No.  Thanks.

7                THE COURT:  Thank you very much.  Appreciate it.

8                JUROR NO. 60:  Just go back?

9                THE COURT:  Yes.

10               (Prospective juror exits juryroom.)

11               *    *    *

12               (Prospective juror enters juryroom.)

13               THE COURT:  Hi.  How are you?

14               JUROR NO. 65:  Hello.

15               THE COURT:  If you could have a seat next to me.

16   I believe you're Juror 65?

17               JUROR NO. 65:  Yes.

18               THE COURT:  You answered some of the first

19   questions about the companies that were listed.  Can you

20   explain your answers?

21               JUROR NO. 65:  I don't know if I was talking

22   about the right companies, though.  My father worked for

23   Chrysler.

24               THE COURT:  Okay.

25               JUROR NO. 65:  And he's retired from Chrysler.

Juror No. 66 - voir dire

1          THE COURT:  All right.  Did he work his entire

2     working life for Chrysler?

3          JUROR NO. 65:  Yes.

4          THE COURT:  All right.  I will let the lawyers

5     ask the followup questions, because I'm not sure how to --

6          MR. FASTOW:  Is there anything about that fact

7     that would stop you from being a fair juror in this case?

8          JUROR NO. 65:  I don't think so.

9          THE COURT:  Okay.  Anything from counsel?

10         MR. RUYAK:  No.  Thank you.

11         THE COURT:  Thank you very much.  Appreciate it.

12         JUROR NO. 65:  Thank you.

13         (Prospective juror exits juryroom.)

14         THE COURT:  We have a lot of Chrysler connections.

15         (Prospective juror enters juryroom.)

16         THE COURT:  Hi.  How are you?

17         JUROR NO. 66:  Fine.

18         THE COURT:  If you could have a seat next to me.

19         You're Juror 66?

20         JUROR NO. 66:  Yes.

21         THE COURT:  And you answered the questions that

22     we ask in the beginning about the companies.  And can you

23     explain your responses?

24         JUROR NO. 66:  Yes.  I worked for one of the

25     companies on the list.

Juror No. 66 - voir dire

1          THE COURT:  Okay.  Which company?

2          JUROR NO. 66:  DaimlerChrysler.

3          THE COURT:  Is that in the Newark plant when it

4   was there?

5          JUROR NO. 66:  Yes.

6          THE COURT:  How long did you work there?

7          JUROR NO. 66:  I worked 13.

8          THE COURT:  13 years?

9          JUROR NO. 66:  My husband was there also.  He

10  worked 37.

11         And I have many friends and some that are still

12  not -- I don't understand it, but I have a cousin that's out

13  now.  well, no, he's still there, somehow, in a bank job and

14  all.  And many friends, back and forth, some of them.  The

15  whole nine yards.

16         THE COURT:  I'm not sure exactly what role the

17  Chrysler name will play in this case, but do you think if

18  Chrysler does come up that you can set aside whatever

19  personal experiences you've had and be an objective juror in

20  this case?

21         JUROR NO. 66:  I don't think so, to be honest.

22  I mean, so much stuff that went on that I know.

23         THE COURT:  Right.

24         JUROR NO. 66:  And I would have to be truthful.

25         THE COURT:  All right.  Let's see if the lawyers

Juror No. 66 - voir dire

1    have any followup questions.

2              Anything?

3              MR. FASTOW:  In terms of what went on at

4    Chrysler that you know about, do you know anything about

5    truck transmissions?

6              JUROR NO. 66:  Truck transmissions?  No.

7              MR. FASTOW:  What part were you involved in?

8              JUROR NO. 66:  I was involved with the chassis

9    department, paint shop and body shop.

10             MR. FASTOW:  For cars?

11             JUROR NO. 66:  For cars.  The last truck was a

12   Durango.

13             MR. FASTOW:  And in terms of any of the other

14   people who have worked at Chrysler, any of them involved in

15   terms of heavy-duty trucks, or truck transmissions?

16             JUROR NO. 66:  Just one, but it's, like, a

17   distant friend.  Mm-hmm.

18             MR. FASTOW:  So when you said, putting aside

19   things you know about Chrysler, those things are really not

20   related to heavy-duty trucks or truck transmissions?

21             JUROR NO. 66:  No.

22             MR. FASTOW:  Okay.  Thank you.

23             MR. RUYAK:  Is your general view about Chrysler

24   positive or negative, or neither?

25             THE COURT:  Bittersweet?

Juror No. 66 - voir dire

1        JUROR NO. 66:  Yes.  Bittersweet, yeah.  It's

2    kind of rough for me to say negative and kind of rough for

3    me to say positive, because of the things that went down,

4    what has gone down now.

5        MR. RUYAK:  What about with Daimler, when

6    Daimler took over Chrysler?  Do you have any negative or

7    positive feelings with Daimler as a company?

8        JUROR NO. 66:  I didn't like the idea that

9    Chrysler was selling.  I mean, I was involved in that and I

10   didn't like that idea at all.  But who am I, you know, just

11   one voice.  And then it did go wrongfully the way we were

12   saying they shouldn't be buying.  You know, they shouldn't

13   be buying us out, and they did, and then things went

14   downhill for us from then on.

15       MR. RUYAK:  All right.  Are you or your husband

16   getting any benefits at all from Chrysler?

17       JUROR NO. 66:  We were, but we just lost a

18   couple benefits just July, and I was up for my appointment

19   for them when I got there.  They said I didn't have any

20   benefits.  And I don't know how much more I'm going to be

21   losing.  I mean, that was my eyes and my dental.  And so ...

22       THE COURT:  Anything else?

23       MR. RUYAK:  That's all I have.

24       THE COURT:  Thank you very much.  Appreciate it.

25       MR. RUYAK:  Thank you.

104

Juror No. 69 - voir dire

1                    (Prospective juror exits juryroom.)

2                    *    *    *

3                    (Prospective juror enters juryroom.)

4               THE COURT:  Hi.  How are you?

5               JUROR NO. 69:  Fine.  Thank you.

6               THE COURT:  I believe you are Juror 69.  And you

7    answered a couple of questions about the companies that had

8    been listed.  Can you explain?

9               JUROR NO. 69:  The first, where it said the

10   companies, that was not correct.

11              THE COURT:  Okay.

12              JUROR NO. 69:  It was the additional companies.

13              THE COURT:  Additional companies.  All right.

14              JUROR NO. 69:  Dana Corporation.

15              THE COURT:  Okay.

16              JUROR NO. 69:  My employer owned the building

17   that they leased, and my only connection was I collected

18   their rent, made sure their real estate taxes were paid, and

19   their insurance was paid.  That's it.

20              THE COURT:  Okay.  And did you have any negative

21   experiences with that company?

22              JUROR NO. 69:  None.

23              THE COURT:  All right.  So they did what they

24   were supposed to do?

25              JUROR NO. 69:  Exactly.

Juror No. 70 - voir dire

1           THE COURT:  Okay.  And do you think that there's

2    anything about your relationship with them that would make

3    it difficult for you to be an impartial juror in this case?

4           JUROR NO. 69:  I just dealt with clerical.

5           THE COURT:  Okay.  All right.  Let's see if the

6    lawyers have any followup questions.

7           MR. FASTOW:  No questions, your Honor.

8           MR. RUYAK:  Nothing.

9           THE COURT:  All right.  Thank you very much.

10          JUROR NO. 69:  Okay.

11          (Prospective juror exits juryroom.)

12              *     *     *

13          (Prospective juror enters juryroom.)

14          THE COURT:  Hi.  How are you, sir?

15          JUROR NO. 70:  Good morning.

16          THE COURT:  If you could have a seat next to me.

17    I believe you're Juror 70?

18          JUROR NO. 70:  Yes, ma'am.

19          THE COURT:  And you answered a couple of

20    questions about the companies that we've listed.  Could you

21    explain your answers?

22          JUROR NO. 70:  Well, I used to work for a

23    company called United Rentals, and we used to rent and

24    sell -- what we did was rent and sell equipment and some of

25    the equipment that we had, that we used, were on that list.

Juror No. 70 - voir dire

1          THE COURT:  And how long ago was that?

2          JUROR NO. 70:  I've been out of there for a

3    year and-a-half.  I was laid off.  I was laid off a year

4    and-a-half ago.

5          THE COURT:  And how long did you work there?

6          JUROR NO. 70:  Eight years.

7          THE COURT:  Eight years.  And of the equipment,

8    did you specifically deal and have knowledge about?  Did you

9    lease trucks?  Is that part of the equipment?

10         JUROR NO. 70:  We, you know, as a whole leased

11   vehicles and purchased vehicles from some of the vendors

12   that were on the list.

13         THE COURT:  Okay.  And I think I will let the

14   lawyers have the followup questions to finish up, because

15   I'm not sure I will ask the right ones.

16         Yes, sir?

17         MR. FASTOW:  Which companies were the ones you

18   noted?

19         JUROR NO. 70:  Well, we had a Kenworth vehicle,

20   and we leased three -- two tractor trailers and one rollback

21   from International.

22         MR. FASTOW:  You were involved in that leasing?

23         JUROR NO. 70:  I was the service manager, so it

24   was my -- it was my job to make sure that, you know, if

25   Kenworth needed parts, we bought parts from Kenworth.  Being

Juror No. 70 - voir dire

1  the three leased vehicles, just setting up the lease between

2  -- in this case, it was Ideal Lease of Baltimore and United

3  Rentals.

4          MR. FASTOW:  You were involved in keeping them

5  operational?

6          JUROR NO. 70:  Yes, sir.

7          MR. FASTOW:  That was all parts of the trucks?

8          JUROR NO. 70:  Pretty much, yeah.

9          MR. FASTOW:  Including transmissions?

10          JUROR NO. 70:  Yes.

11          MR. FASTOW:  Were there particular issues?

12          JUROR NO. 70:  No, no, no, because they were

13  all brand-new.  I mean, all the trucks that we got were

14  brand-new, and we didn't -- we didn't physically work on

15  them.  I mean, we just scheduled the work and sent them on

16  down.

17          MR. FASTOW:  To someone else's company?

18          JUROR NO. 70:  No.  To -- like, the Kenworth had

19  to be sent out one time because we did do a little bit of

20  tinkering with the Kenworth.  But with the Ideal, with the

21  Ideal Lease of Baltimore through International, we had

22  contracts with them, where a recorder, over so many years,

23  they went up and did their preventive maintenance on them.

24  If they broke down, I know it was nothing -- never had any

25  problems with transmissions.  It was more like blown fuses

Juror No. 70 - voir dire

1    for the air conditioner, the lights up on top don't work.

2    It was all stuff like that.

3            MR. FASTOW:  And did you get into this field

4    through having a mechanical or mechanical engineering kind

5    of background?

6            JUROR NO. 70:  No, sir.  My neighbor, he worked

7    there, said, "hey, I think you would be a good fit."

8            MR. FASTOW:  And do you have any particular

9    positive or negative attitudes towards Kenworth or

10   international?

11           JUROR NO. 70:  No.

12           MR. FASTOW:  That would affect your ability to

13   decide this case fairly, even if those companies came up?

14           JUROR NO. 70:  Yeah, yeah.  Yeah, because like I

15   said, we never really had any problems.  You know, we

16   purchased parts.  I mean, I was the parts manager and the

17   service manager there, so if the Kenworth broke down, people

18   would order parts on that.  If the Internationals broke

19   down, we just sent them down to get repaired.

20           MR. FASTOW:  Did you ever deal with any of Eaton

21   or Meritor Arvin?

22           JUROR NO. 70:  On some of our equipment that

23   United Rentals had, some of the high reach -- because I

24   worked in the aerial division, and we did a lot of business

25   with, like, Genie Industries, Skyjack, and some of those

Juror No. 70 - voir dire

1    companies used those parties in the manufacturing of those.

2    I mean, I've heard of Eaton.  I've heard of Dana.  Some of

3    the pumps and stuff that were in the machines just happened

4    to have those names on it, but that does not mean I really

5    know anything about them.

6              MR. FASTOW:  So you've heard about them?

7              JUROR NO. 70:  Yes.

8              MR. FASTOW:  You don't have particular attitudes

9    towards Eaton or Arvin?

10             JUROR NO. 70:  No.  No, sir.

11             THE COURT:  Anything?

12             MR. RUYAK:  When you say reach, you're talking

13   about cherry pickers and things you would rent out?

14             JUROR NO. 70:  Yes.  Boom lifts, scissor lifts,

15   forklifts, everything but basically cranes.

16             THE COURT:  Thank you very much.  Appreciate it.

17             JUROR NO. 70:  Thanks.

18             Thanks for the coffee this morning.

19             THE COURT:  Oh, you're welcome.

20             (Prospective juror exits juryroom.)

21             *    *    *

22             (Prospective juror enters juryroom.)

23             THE COURT:  Hi.  How are you?

24             JUROR NO. 76:  Hi.

25             THE COURT:  If you could have a seat next to me.

Juror No. 76 - voir dire

1               I think you are Juror 76?

2               JUROR NO. 76:  Mm-hmm.

3               THE COURT:  And you answered one of our last

4      questions affirmatively.  Can you explain that?

5               JUROR NO. 76:  I'm a diabetic, type-two

6      diabetic.  And Wednesday, the 16th, I have an appointment at

7      night with my physician.

8               THE COURT:  Okay.  So serving here on the jury

9      for this long a trial might be a hardship on you physically?

10              JUROR NO. 76:  Mm-hmm.

11              THE COURT:  Plus, you have this doctor's

12     appointment?

13              JUROR NO. 76:  Mm-hmm.

14              THE COURT:  Let's see if the lawyers have any

15     questions for you.

16              Anything?

17              MR. FASTOW:  No.

18              MR. RUYAK:  No.

19              THE COURT:  Thank you very much.  Appreciate it.

20              JUROR NO. 76:  Mm-hmm.

21              (Prospective juror exits juryroom.)

22              *    *    *

23              (Prospective juror enters juryroom.)

24              THE COURT:  Hi.  How are you?

25              JUROR NO. 78:  Good.  How are you?

Juror No. 78 - voir dire

1          THE COURT:  If you could have a seat next to me.

2    You should be Juror 78?

3          JUROR NO. 78:  Yes.

4          THE COURT:  And you answered one of our last

5    questions affirmatively.

6          JUROR NO. 78:  Yes.  I babysit for three

7    different families, so it's not like I have a real job to go

8    to, but they are depending on me to be there for them.

9          THE COURT:  All right.  And that includes --

10   that's during the day as well as in the evening?

11         JUROR NO. 78:  It's all during the day.

12         THE COURT:  Oh.  All during the day?

13         JUROR NO. 78:  They go to work.  I don't go to

14   work.  I babysit while they go to work.

15         THE COURT:  Oh, all right.  So not only do you

16   not get paid if you are not there, but they don't have

17   anyone to take care of --

18         JUROR NO. 78:  Right.  Right.

19         THE COURT:  Let's see if the lawyers have any

20   follow up.

21         Anything?

22         MR. FASTOW:  The families bring the children to

23   you?

24         JUROR NO. 78:  Yes.  It's my children.  It's my

25   children, my three children's children.  Five grandchildren.

Juror No. 79 - voir dire

1          THE COURT:  Oh, I see.  So you take care of

2     them?

3          JUROR NO. 78:  I do it for free, but they don't

4     have anybody else to take them to because I do it.

5          THE COURT:  Okay.  All right.

6          Anything from counsel?

7     MR. RUYAK:  No.

8          THE COURT:  All right.  Thank you very much.

9          JUROR NO. 78:  Mm-hmm.

10         THE COURT:  A good grandmother.

11    MR. RUYAK:  Yes.

12         (Prospective juror exits juryroom.)

13              *    *    *

14         (Prospective juror enters juryroom.)

15         THE COURT:  Hi.  How are you?  If you can have a

16    seat next to me.

17         JUROR NO. 79:  Sure.

18         THE COURT:  Juror 79?

19         JUROR NO. 79:  Yes.

20         THE COURT:  All right.  And you answered a

21    couple of our questions.  One had to do with the subject

22    areas, training, experience, education.  Can you tell us

23    which of the subject areas?

24         JUROR NO. 79:  Sure.  I work for a distribution

25    company that uses one of the carriers that was listed.

Juror No. 79 - voir dire

1          THE COURT:  Okay.  Which carrier was that?

2          JUROR NO. 79:  New England Motor Freight.

3          THE COURT:  Okay.  Since I don't know why

4     they're listed, I will let the lawyers follow up with that.

5          JUROR NO. 79:  Okay.

6          THE COURT:  Okay.

7          MR. FASTOW:  Do you have any involvement with

8     New England Motor Freight?

9          JUROR NO. 79:  Not personally, no.  I deal with

10    customers around the United States, and that's one of the

11    carriers that they sometimes use.

12         MR. FASTOW:  What do you do?

13         JUROR NO. 79:  I'm a customer service rep. so

14    they will go out for rates and sometimes New England Motor

15    Freight will come back with a better rate than the other

16    trucking companies.

17         MR. FASTOW:  Are you part of arranging the

18    price, the cost of delivering?

19         JUROR NO. 79:  I'm not part of it, no.  I have

20    an awareness of it but I don't actually contact New England

21    Motor Freight.  I just deal with the customers that may

22    choose New England Motor Freight or we may choose it for

23    them.

24         MR. FASTOW:  Do you deal with any problems in

25    case a truck breaks down?

Juror No. 79 - voir dire

1        JUROR NO. 79:  Sometimes.  Like if a delivery is

2    going to be late, I would have to contact the customer and

3    let them know that there's a delivery issue.

4        MR. FASTOW:  Are you involved in trying to find

5    out what happened in dealing with the customer in terms of

6    why it's late?

7        JUROR NO. 79:  Yes.  Yes.

8        MR. FASTOW:  Okay.

9        THE COURT:  All right?

10       MR. RUYAK:  That's all.  I don't have anything.

11       THE COURT:  Just the general question, do you

12   think that your job experience would make it difficult for

13   you to be an impartial juror in this case?

14       JUROR NO. 79:  I don't think so, no.

15       THE COURT:  Okay.  All right.  Thank you very

16   much.  Appreciate it.

17       JUROR NO. 79:  Thank you.

18       (Prospective juror exits juryroom.)

19       THE COURT:  There are always a few who have had

20   concerns since --

21       DEPUTY CLERK:  Sorry, Judge.

22       THE COURT:  How many?

23       DEPUTY CLERK:  We have six additional jurors.

24   Juror No. 7 has an additional concern.  He came back

25   earlier, but he has something else he wants to address with

Juror No. 7 - voir dire

1      your Honor.

2                THE COURT:  Okay.

3                DEPUTY CLERK:  Juror No. 14.

4                THE COURT:  Okay.

5                DEPUTY CLERK:  Juror No. 24.  Juror No. 38.

6      Juror No. 62.  And Juror No. 64.

7                (Prospective juror enters juryroom.)

8                THE COURT:  Okay.  Hi.  How are you?

9                JUROR NO. 7:  How are you?

10               THE COURT:  Juror No. 7?

11               JUROR NO. 7:  Yes.

12               THE COURT:  You had some additional concerns?

13               JUROR NO. 7:  Just concerns with the length of

14     trial regarding work.

15               THE COURT:  All right.  And can you justify

16     explain those?

17               JUROR NO. 7:  Sure.  I'm the Corporate Director

18     for HR.  We start benefits open enrollment on Monday for a

19     period of five days.  We just went into a new phase for

20     hiring process to bring in salespeople to grow the business.

21     It's all business related.

22               THE COURT:  All right.  And I take it that your

23     department isn't so large that they wouldn't -- I mean, do

24     you need to be there during these critical times?

25               JUROR NO. 7:  Yes, ma'am.  Particularly for the

Juror No. 14 - voir dire

1    hiring phase.  I'm the one that does all the interaction

2    with the contractors and does the initial interviews to

3    bring them in.

4              THE COURT:  All right.  Let me see if the

5    lawyers have any follow up on that.

6              MR. FASTOW:  No, your Honor.

7              MR. RUYAK:  No.  I'm fine.

8              THE COURT:  Okay.  Thank you very much.

9              JUROR NO. 7:  Thank you, ma'am.

10             (Prospective juror exits juryroom.)

11                  *    *    *

12             (Prospective juror enters juryroom.)

13             THE COURT:  Hi.  How are you?  If you could have

14   a seat next to me, please.

15             I like your colors that you have there.

16             JUROR NO. 14:  Thank you.

17             THE COURT:  You are Juror 14?

18             JUROR NO. 14:  I am.

19             THE COURT:  And you had some concerns about

20   sitting as a juror?

21             JUROR NO. 14:  I do.  I have a job interview on

22   Monday, at 11:30, in Georgetown, for J.P. Court 3.  And I

23   don't want to miss the interview.

24             THE COURT:  So you're interviewing to be

25   employed by the Court?

Juror No. 14 - voir dire

1          JUROR NO. 14:  Correct.

2          THE COURT:  Already.  Now, I take it, this is

3     important to you?

4          JUROR NO. 14:  It is.

5          THE COURT:  Let's see if the lawyers have any

6     followup questions.

7          MR. FASTOW:  No.

8          MR. RUYAK:  You are unemployed now?

9          JUROR NO. 14:  I am unemployed.  I was employed

10    by Connolly Bove as a real estate paralegal.  My family is

11    from the Georgetown area.  My mother has had cancer, and

12    I've been a primary caretaker for her, so I'm trying to

13    relocate back to Sussex County.

14          THE COURT:  Okay.

15          MR. RUYAK:  So it's very important?

16          JUROR NO. 14:  It's very important, yes.

17          THE COURT:  All right.  Thank you very much.

18          JUROR NO. 14:  Thank you.

19          (Prospective juror exits juryroom.)

20               *     *     *

21          (Prospective juror enters juryroom.)

22          THE COURT:  Hi.  How far are you?

23          JUROR NO. 14:  Hello.

24          THE COURT:  If you can have a seat next to me,

25    please.

Juror No. 24 - voir dire

1              And I think you are Juror 24?

2              JUROR NO. 24:  Yes.

3              THE COURT:  And you had some concerns that have

4       come to mind?

5              JUROR NO. 24:  Yes.  I am scheduled to be out of

6       town from the 25th to the 30th, so I didn't know how that

7       kind of affects anything.  I just figured I would throw it

8       out there.

9              THE COURT:  Well, we don't want to put anyone to

10      an undue hardship.  Is this business or a vacation, prepaid,

11      airline tickets?

12             JUROR NO. 24:  It's vacation.  It's prepaid.

13             THE COURT:  Okay.

14             JUROR NO. 24:  The wife and I.

15             THE COURT:  All right.  And aside from being an

16      inconvenience, I guess you need to let us know whether it's

17      more than a mere inconvenience, whether it would cost you

18      money, whether your wife would throw you out.  I mean, I

19      don't know.  Let us know something.

20             JUROR NO. 24:  No.  I mean, the airfare, and

21      there are tickets bought for things that we're doing.

22             THE COURT:  Nonrefundable type of thing?

23             JUROR NO. 24:  Yes.  I figured I would just tell

24      you now.

25             THE COURT:  Well, I'm glad, because it's late to

Juror No. 24 - voir dire

1    tell us once you're seated.

2                   JUROR NO. 24:  Right.  Right.

3                   THE COURT:  Anything from counsel?

4                   MR. FASTOW:  Yes.  So you have tickets that you

5    would lose money on?

6                   JUROR NO. 24:  Yes.  Football game.

7                   MR. FASTOW:  I take it, if you were sitting in

8    the jury, it might be distracting you if you couldn't do it?

9                   JUROR NO. 24:  I wouldn't say that.  I would not

10   let it affect me if I was in the jury.

11                  MR. FASTOW:  But you have these plans?

12                  JUROR NO. 24:  I would like to go, yes, but I

13   wouldn't let it affect anything, no.

14                  MR. FASTOW:  It would cost you if you couldn't

15   do it?

16                  JUROR NO. 24:  Financially, yes.

17                  MR. FASTOW:  Okay.

18                  THE COURT:  Anything else?

19                  MR. RUYAK:  No.

20                  THE COURT:  Thank you very much.

21                  JUROR NO. 24:  Thank you.

22                  (Prospective juror exits juryroom.)

23                  *    *    *

24                  (Prospective juror enters juryroom.)

25                  THE COURT:  Hi.  How are you, sir?

Juror No. 38 - voir dire

1              JUROR NO. 38:  Doing well.  Thanks.

2              THE COURT:  Is it still morning?  Good

3    afternoon.

4              JUROR NO. 38:  It's right on the cusp.

5              THE COURT:  I believe you're Juror 38?

6              JUROR NO. 38:  I am 38.

7              THE COURT:  You had some concerns?

8              JUROR NO. 38:  About the time commitment.

9    Through work, I'm scheduled the week of the 21st to attend a

10   semiannual sales/training meeting.  The following week, I'm

11   scheduled to be in a training class for the entire week

12   through work.  And on a personal note, the following week,

13   I'm scheduled to be in South Carolina.

14             THE COURT:  All right.  We certainly don't want

15   to inconvenience folks.  Can you just tell us how important

16   these things are so we can put that as a matter of record?

17             JUROR NO. 38:  Okay.  Okay.  The meeting, it's

18   an annual sales meeting.  We do a lot of training.  Fairly

19   important meeting.

20             The follow week's training probably can be

21   moved.  I could probably attend one in October or November.

22             THE COURT:  Okay.

23             JUROR NO. 38:  And the vacation is paid for.  I

24   would like to get down there, if I could.

25             THE COURT:  All right.  Any followup by counsel?

Juror No. 62 - voir dire

1                    MR. FASTOW:  Nothing.

2                    MR. RUYAK:  That's fine.

3                    THE COURT:  Thank you very much.  Appreciate it.

4                    JUROR NO. 38:  Okay.

5                    (Prospective juror exits juryroom.)

6                    THE COURT:  The next one is 62.

7                    (Prospective juror enters juryroom.)

8                    THE COURT:  Hi.  How are you?  If you could

9      have a seat next to me.

10                   Are you Juror 62?

11                   JUROR NO. 62:  Yes.

12                   THE COURT:  Could you tell us what concerns you

13     have?

14                   JUROR NO. 62:  I just don't feel I have four

15     weeks to devote to this at all, because right now I'm the

16     sole provider of my home for two families that I'm trying to

17     support everybody.  And I'm financially behind in everything

18     that I'm doing at this point.  And I need to work as much

19     overtime as I can at work, and I can't do it when I'm here.

20                   THE COURT:  Okay.  So it would be a pure

21     financial burden for you?

22                   JUROR NO. 62:  Yes.

23                   THE COURT:  All right.  Let's see if the lawyers

24     have any follow up.

25                   Anything from counsel?

Juror No. 64 - voir dire

1           MR. FASTOW:  No.

2           MR. RUYAK:  No.  That's fine.

3           THE COURT:  Thank you very much.

4           JUROR NO. 62:  Thank you.

5           (Prospective juror exits juryroom.)

6           *    *    *

7           (Prospective juror enters juryroom.)

8           THE COURT:  Hi.  How are you, sir?

9           JUROR NO. 64:  Okay.

10          THE COURT:  If you could have a seat next to me.

11          Are you Juror 64?

12          JUROR NO. 64:  Yes.

13          THE COURT:  And you had some concerns?

14          JUROR NO. 64:  Well, I was a juror in the -- on

15   a lawsuit case.

16          THE COURT:  Can you tell us what kind of lawsuit

17   and when it was?

18          JUROR NO. 64:  It was about 2000, about a radio

19   broadcasting tower.

20          THE COURT:  Okay.  Like a personal injury kind

21   of --

22          JUROR NO. 64:  The sale of it.

23          THE COURT:  Oh, the sale of it?

24          JUROR NO. 64:  Well, somebody backed out and

25   sold it to somebody else.

Juror No. 64 - voir dire

1          THE COURT:  Okay.  Did the jury reach a verdict

2     in the case?  And can you remember what it was?

3          JUROR NO. 64:  We did.  We awarded, like,

4     $100,000 to the people that they screwed out of the deal.

5          THE COURT:  So it sounds like the plaintiff

6     probably won the lawsuit?

7          JUROR NO. 64:  Yes.  Yes.

8          THE COURT:  Is there anything about that

9     experience that would make it difficult for you to sit as an

10    impartial juror here?

11         JUROR NO. 64:  No.

12         THE COURT:  Any other concerns?

13         JUROR NO. 64:  That was it.

14         THE COURT:  Let's see if there are any followup

15    questions.

16         MR. FASTOW:  No.

17         MR. RUYAK:  No.

18         THE COURT:  Thank you very much.

19         JUROR NO. 64:  Okay.

20         (Prospective juror exits juryroom.)

21         THE COURT:  Is that everybody?  Anyone else?

22         DEPUTY CLERK:  No, ma'am.

23         THE COURT:  Now, before we go through this, on

24    some occasions, I've gone out and said, this is your last

25    chance.  We don't want to seat you as a juror if you have

1    any concerns.  We vetted this pretty well.  Do you think

2    people --

3               DEPUTY CLERK:  I asked several times.  Would you

4    like for me to go out and ask one more time?

5               THE COURT:  Yes.  One more time.  I just want to

6    make sure.

7               DEPUTY CLERK:  Okay.

8               THE COURT:  Because, I mean, incredibly, I've

9    sworn in juries and I have someone say, oh, I forgot, I had

10   an appointment at the doctor's tomorrow.  And we don't have

11   so many extra people here that I am concerned about.

12              MR. HOLCOMB:  A lot of people are going on

13   vacation.  Not us.

14              THE COURT:  Yes.  We'll go through the excuses

15   for cause and then we'll take a short break before we go in

16   for the peremptory challenges.  We've all been at it for a

17   while.

18              DEPUTY CLERK:  I stressed it, Judge, and no one

19   said anything.

20              THE COURT:  All right.  Well, let me go through

21   the jurors that I think we could excuse for cause and,

22   again, because we've got plenty, I'm not being particularly

23   critical about it.

24              Juror 1, who is taking the medicine.  And is he

25   the one who didn't like lawyers?  I don't know.

1          MR. RUYAK:  Yes, he hated lawyers.

2          THE COURT:  Juror 1, yes.

3          Juror 3, who is the seasonal worker.

4          Juror 4, who was the angry woman with no

5     transportation.

6          Juror 7, who is the HR person who came back and

7     said he had some concerns about the length of the trial.

8          Juror 14, who has the job interview on Monday.

9          Juror 17.

10         MR. RUYAK:  His friend was killed last night.

11         THE COURT:  Yes, that's right.  He's the one who

12    broke down.  Okay.

13         Juror 20, who is trying to work full-time,

14    part-time.

15         MR. RUYAK:  Yes.

16         THE COURT:  Juror 21, who teaches the preschool

17    children.

18         Juror 24, who has the nonrefundable vacation,

19    who just came in.

20         Juror 25, who is the sole provider of care for

21    her children, and whose husband had some affiliation with

22    the trucking industry.  But it's basically she's got

23    children to take care of.

24         I had question marks next to 29 and 30, but I

25    didn't circle them, so unless someone wants them excused for

1    cause, I don't think they need to be.

2           MS. SULLIVAN:  Your Honor, on Juror No. 30, I

3    represented Tri-State Waste in Chancery Court and I dealt

4    with Genie.  I did not recognize her when she came in, but I

5    did deal with her directly in obtaining documents and

6    everything.  I just don't know whether you would want to

7    address it with her if she were to be seated and then, you

8    know, after looking at me for three weeks, go, "aha."

9           THE COURT:  Well, I, frankly, would rather

10   excuse her.  This process has been long enough and I don't

11   know that it makes sense to take any chances here.  So we

12   would excuse Juror 30, although she seemed delightful.

13          MR. RUYAK:  Yes.

14          THE COURT:  Juror 32, and I can't remember why.

15          MR. RUYAK:  She's the diabetic.

16          MR. FASTOW:  Her son was.

17          THE COURT:  Her son was the diabetic.

18          Juror 33 is the one who said it was a hardship

19   because it was a family business.

20          MR. FASTOW:  Yes.

21          THE COURT:  Juror 36 was the truck driver, who

22   preferred Eaton transmissions.  Well, kind of.

23          MR. RUYAK:  I don't know why that should be

24   cause.

25          MR. HOLCOMB:  He was actually wrong.  He's

1    currently driving an Eaton transmission and he doesn't know

2    it.

3            MR. RUYAK:  You could use one of your

4    peremptories.  I don't know why that would disqualify a guy.

5            MR. FASTOW:  He clearly stated a preference for

6    one of the parties' products.

7            THE COURT:  I'm going to excuse him.  However,

8    you can voice your objection to that for purposes of appeal.

9            Juror 37 said it was a hardship because he's one

10   of two people.  He does the inventory.

11           Juror 38, he's one of the ones who just came in.

12           MR. FASTOW:  Sales training and vacation to

13   South Carolina.

14           MR. RUYAK:  Training seemed to be an issue.

15           THE COURT:  Well, the first week was, the second

16   week wasn't, but then he's got this prepaid vacation in

17   South Carolina.  That's right.

18           Juror 42, I had a question mark next to.  He

19   didn't seem sure that he wasn't smarter than we were and

20   that he could set that aside.

21           MR. HOLCOMB:  We like smart people.

22           THE COURT:  What?

23           MR. HOLCOMB:  We like smart people.

24           THE COURT:  But they've got to listen to me,

25   whether they are smarter than I am or not.  You all have to

1    listen to me even though you all are smarter than I am.

2             All right.

3             MR. HOLCOMB:  We waffled a little bit.  He said

4    we're influenced by what we know.

5             THE COURT:  If there's a question, because we

6    can.  So that's 42.

7             MR. FASTOW:  You are?

8             THE COURT:  We are excusing him for cause.

9             Juror 45 was, she worked, she has a sick mother.

10   I don't know.  She had lots of --

11            MR. FASTOW:  The tax filing.

12            THE COURT:  That's right.  The tax filing.

13            MR. RUYAK:  A tax letter.

14            THE COURT:  That's right.  And she started to

15   tear up here.  So anyway, she was nervous about it all.

16            Juror 51, I had circled, but didn't write down

17   why.

18            MR. REID:  She is a Morris Nichols' employee.

19            THE COURT:  She is the one who waved and left.

20            Juror 53, I had a question mark next to.  I

21   don't know.  It was hard for me to tell whether -- I don't

22   know that he needs to be -- I just have a question mark next

23   to him.

24            Anyone?

25            MR. FASTOW:  I would think he should be excused.

1    He seemed to be pretty much into auto components, including

2    transmissions.  He seems to work on the interface between

3    that and other components, and he's an inventor or designer.

4    He seemed a little much into the innards of all of that.

5    Mechanical engineer?

6              THE COURT:  Well, having knowledge does not

7    automatically, but I guess if we're going to be consistent

8    about this, I guess we'll excuse him for cause.

9              Juror 60 has the physical issue that she was

10   concerned about.

11             Juror 62 was the sole provider of two families,

12   as I recall.

13             Juror 66 was the one who had bittersweet

14   feelings about Chrysler.  Now, I don't know how important

15   Chrysler is in this case.  I really don't.  So I don't know

16   whether --

17             MR. RUYAK:  It's really not.

18             MR. HOLCOMB:  She's okay.

19             MR. FASTOW:  Yes, she's okay.

20             THE COURT:  All right.

21             Juror 76 was the diabetic with the medical

22   appointment.

23             And, 78 was the babysitting grandmother.

24             MR. RUYAK:  Yes.

25             THE COURT:  Are there any additional excuses for

1    cause?  I will go over them once more.

2              MR. HOLCOMB:  We might have missed 14.

3              MR. FASTOW:  Yes.

4              MR. REID:  Yes.

5              THE COURT:  All right.  Let me go over those

6    numbers again, to make sure we're all on the same page.

7              Are we all set?

8              MR. FASTOW:  Sure.

9              THE COURT:  All right.  1, 3, 4, 7.

10             MR. FASTOW:  I'm sorry.  3?

11             THE COURT:  3.

12             MR. FASTOW:  Yes.

13             THE COURT:  4, 7, 14, 17, 20, 21, 24, 25, 30,

14   32, 33, 36, 37, 38, 42, 45, 51, 53, 60, 62, 76, and 78.

15             DEPUTY CLERK:  No 29?  Your Honor said she had a

16   question mark.

17             THE COURT:  I did have, but that was another

18   Chrysler person and I think we decided that it really -- I

19   think that's fine.

20             DEPUTY CLERK:  Okay.

21             THE COURT:  Yes.  All right.

22             Is there anything else we need to discuss on the

23   record?

24             MR. FASTOW:  No.

25             THE COURT:  All right.  Do you want to take

1    5-10 minutes to get ready to come out the front?  I will

2    leave you to have a cup of coffee, eat a doughnut, use the

3    bathrooms, and I will take 10 minutes.

4                 (Proceedings resume in the courtroom as

5    follows.)

6                 THE COURT:  All right.  I know it has been a

7    long morning for you all.  We appreciate your patience.

8    This is the last step where the lawyers get to exercise

9    their peremptory challenges.

10                You will see, we have a high-tech system in this

11   court.  You all have been assigned numbers.  Those who have

12   been excused for cause, their numbers will be taken out of

13   the batch.  The rest of your numbers will be put in a wooden

14   box and Larisha will scientifically shake it and pull

15   numbers out randomly and that will be the pool from which

16   the lawyers will exercise their peremptory challenges.

17                So, Larisha, are you all set?

18                DEPUTY CLERK:  I am, Judge.

19                THE COURT:  All right.  Here we go.

20                DEPUTY CLERK:  When I call your number, if you

21   would please take a seat in the first two rows on the

22   right-hand side.

23                Juror No. 13.

24                Juror No. 47.

25                Juror No. 29.

1                    Juror No. 9.

2                    Juror No. 12.

3                    Juror No. 67.

4                    Juror No. 57.

5                    Juror No. 8.

6                    Juror No. 49.

7                    Juror No. 19.

8                    Juror No. 59.

9                    Juror No. 63.

10                   Juror No. 23.

11                   Juror No. 75.

12                   Juror No. 79.

13                   Juror No. 34.

14                   (Long pause.)

15                   DEPUTY CLERK:  When I call your number, if you

16   will please come forward and take a seat in the seat I

17   designate in the jury box.

18                   Juror No. 13, if you would please take the first

19   seat in the first row.

20                   Juror No. 29, if you would please take the

21   second seat in the first.

22                   THE COURT:  And please watch your step.  There

23   are all sorts of wires and chairs, so walk carefully.

24                   DEPUTY CLERK:  Juror No. 67, if you would please

25   take the third seat in the first row.

```
 1              Juror No. 57, if you would please take the
 2   fourth seat in the first row.
 3              Juror No. 49, if you would please take the fifth
 4   seat in the first row.
 5              Juror No. 59, if you would please take the first
 6   seat in the second row.
 7              Juror No. 63, if you would please take the
 8   second seat in the second row.
 9              Juror No. 23, if you would please take the third
10   seat in the second row.
11              Juror No. 75, if you would please take the
12   fourth seat in the second row.
13              And Juror No. 79, if you would please take the
14   fifth seat in the second row.
15              THE COURT:  All right.  Are there any issues we
16   need to address before we excuse our jury panel?  Anything
17   from counsel?
18              MR. FASTOW:  No, your Honor, not from us.
19              THE COURT:  All right.  Members of the jury
20   panel, thank you so much for your time and attention, and
21   your participation in this most important part of our
22   justice system.  You are excused.  Thank you again.
23              Let's swear our jury.
24              (Jury sworn/affirmed.)
25              THE COURT:  All right.  You may be seated.
```

1            We are not going to start the trial today.  On

2     Monday morning, at 9:30, we'll start with opening statements

3     given by the parties.  Well, we'll start with some

4     preliminary instructions by me and then go into opening

5     statements by the parties.

6            What I would like you to do, though, is just

7     have you spend a minute or two finding out where the jury

8     room is, how to get in and out of our chambers.

9            This jury trial is timed.  That means each side

10    has been given a certain number of hours in which to present

11    their case.  That means that the trial will end when I say

12    it will end, and we will give you schedules on Monday so you

13    know exactly when to be here and when we'll have trial and

14    not.

15           That system can only work, of course, if you are

16    here promptly as well.

17           If any of you live downstate, we do provide

18    hotel accommodations, if you really need that.  You need to

19    talk to Larisha about that.

20           Even though you have not heard any evidence

21    about the case, I'm going to give you instructions that

22    you'll get every evening.  That is, during the evening r

23    recess and over the weekend, you are not to discuss the case

24    or speculate about it among yourselves or with anyone else.

25           You are not to read or listen to anything

1      touching on the case.  By that, I mean if there were a

2      television or radio or newspaper report about this case, you

3      are not to read about it.  You are to make your decision

4      only on the evidence you hear in the courtroom.

5              And, finally, you are not to go out and perform

6      any independent research about the trucking industry or

7      transmissions or anything else.  Your decision is supposed

8      to be based only on what the lawyers present here in the

9      courtroom.

10             I hope you have a safe trip home, a pleasant

11     weekend.  And we look forward to seeing you on Monday

12     morning at 9:30.

13             We do provide lunches here so that we will have

14     a break in the morning, a break in the afternoon, and we do

15     provide lunches over our half-hour luncheon break.  So you

16     don't need to worry about that.  You are welcome to bring

17     your own, if you choose to.

18             All right.  Larisha is going to take you back,

19     give you a quick tour.  We'll see you on Monday.  Thank you.

20             (The jury was excused.)

21             THE COURT:  All right.  You all may be seated.

22             I wanted to go over the preliminary instructions.

23     The question is whether we all want half an hour for lunch

24     before we finish up, or whether you want to go over the

25     preliminary instructions now.  I don't know how many other

1    issues there are besides the preliminary -- if there are a

2    lot of other issues, then there's no question, we should

3    take half an hour for lunch.

4          MR. FASTOW:  Your Honor, we just saw Eaton's

5    proposed revisions this morning.  Frankly, I think they're

6    quite controversial.

7          The only question I've have is whether there

8    are drafting ways that the parties could try to avoid the

9    controversy.  At this stage, I expect the ultimate stage of

10   jury instructions, we're going to really argue them.

11         THE COURT:  Right.

12         MR. FASTOW:  I don't know if it's possible to

13   work on the language and come to some agreement.  It may be

14   hard because, in part, they're trying to rewrite our claims,

15   but it may be that it's worth spending a few minutes, seeing

16   if there is an easier solution.

17         THE COURT:  Well, I guess the question is,

18   because I have not gotten the materials about the

19   "conspiracy", that I'm not confident that I would want that

20   word used in the preliminary instructions so that it's

21   something that's giving the Court's imprimatur right from

22   the get-go.

23         On the other hand, it's also not necessarily

24   routine for the defendant's position to be given as much

25   vetting as it is, because we're really talking about the

1    burden of proof and what the plaintiff has to prove.  So

2    there are probably ways to tone it down a little bit to give

3    the jury enough information without turning it into an

4    argument.

5         If you want to work on it, that's fine.

6    Otherwise, I will just do my own drafting.  I just looked at

7    it during jury selection as well, so I'm not real familiar

8    with it.  I've looked at it once.

9         Are there other issues besides this and all the

10   issues you've given me over the weekend that need to be

11   addressed?  Should we start this or should we all take half

12   an hour?

13        MR. FASTOW:  I guess one would be the allocation

14   of trial time.

15        THE COURT:  I haven't given you that.  I have

16   it.  It's in back, so I will give that to you.

17        MR. FASTOW:  So if we should take a half-hour?

18        THE COURT:  Yes.  Why don't we take half an

19   hour, and I will hand that out, and we'll start with the

20   instructions, preliminary instructions, and then anything

21   else we need to address.

22        So take some lunch.  I need to get out of my

23   computer, so you may leave as you wish.

24             (Luncheon recess taken.)

25                  *     *     *

```
 1                    (Afternoon session began at 1:28 p.m.)

 2               THE COURT:  Unless you've come to agreement, I

 3     have my own edits in mind.

 4               MR. FASTOW:  Your Honor, I think we have come to

 5     agreement.

 6               THE COURT:  Oh, okay.

 7               MR. FASTOW:  What we were going to propose, if

 8     it were, is just get back to our respective offices, we send

 9     them our comments we've agreed to and put it together and

10     send it to your Honor.

11               THE COURT:  Okay.  Wonderful.

12               MR. FASTOW:  Now, there is just one thing I'd

13     like to do in connection with your comment on "conspiracy".

14     We've managed to we think avoid that issue for now.

15               THE COURT:  Right.  That's all I was asking.

16               MR. FASTOW:  But there is one more case further

17     to the Bogosian case I wanted to mention to your Honor on

18     that point.

19               THE COURT:  All right.  Before we leave for this

20     afternoon, I just want to make sure that I know when things

21     are coming in so I can make sure I've got people here to

22     receive them.

23               All right.  Yes, sir?

24               MR. FASTOW:  This case is the In Re:  Flat Glass

25     Antitrust Litigation, which is 385 F3d 350.  And that's at
```

1    Pages 356 and 357.

2              THE COURT:  All right.

3              MR. FASTOW:  It's Third Circuit 2004.  And it

4    says, citing to a 1994 Third Circuit case, the Outward Pope

5    case, the Sherman Act speaks in terms of a "contract",

6    "combination", or "conspiracy", but courts have interpreted

7    this language to require "some form of concerted action".

8              THE COURT:  All right.  Thank you very much.

9              MR. FASTOW:  Just further on Bogosian.

10             My understanding, our filings, I understand a

11   couple things have been filed.

12             THE COURT:  We did get papers from Meritor and

13   so I guess we're just waiting for papers in response.

14             MR. RUYAK:  Yes, your Honor.  We'll have them

15   around 4:00 o'clock.  Is that okay?

16             THE COURT:  4:00 o'clock, yes.

17             MR. RUYAK:  I will make sure we have them before

18   4:00.  Only two minor issues.  One is we're working on the

19   Dr. DeRamus issue and I think we're close.  We have to go

20   back and just look at the portions.  What we're doing is we

21   are excising portions of his report so that we understand

22   what he's going to testify to.

23             There are parts that deal with damages we've

24   excised.  There are some that are a little more difficult,

25   but what we plan to do is try to agree on those things and

1   then let you know.  He's not going to be on the stand right

2   away anyway, so we'll do that.

3           And then the other thing we wanted to ask your

4   Honor, we noticed that you gave the plaintiffs a few more

5   hours than you gave us, and we were a little bit concern

6   about that because the nature of this case is that there are

7   so many pieces that they plan to bring in, we're still a bit

8   concerned about having less hours, particularly if we need

9   to do some cross-examination that's extensive.

10          Now, we have some solutions to that we're going

11  to propose to you, but we are a little worried about the

12  difference in hours.

13          THE COURT:  All right.  I understand that.  And

14  I guess based on the other total hours you gave me, I

15  thought that I gave each of you less than half of the total

16  amount of time that you had wanted.  But I understand this

17  is -- now, as I said, if you look at that big stack of

18  records that I've kept for all my trials --

19          MR. RUYAK:  Yes.

20          THE COURT:  It's only the rare case where folks

21  come up to actually using the time, but I will think about

22  it over the weekend and see if there's anything we can do

23  about it, or if you want to suggest something.

24          MR. RUYAK:  Your Honor, we are going to really

25  try to stay within those hours.  I guess we just hope that

1    if, during the course of trial, things kind of change --

2                    THE COURT:  Right.

3                    MR. RUYAK:  -- and we're faced, particularly

4    with Dr. DeRamus, we're going to give you some papers on

5    this, but some of his testimony is basically, your Honor,

6    being a fact witness in the case.  If you read his report,

7    he takes a myriad of documents, many of which will not be

8    put in evidence, quoting them, trying to tell a whole story

9    as a fact witness.

10                   Now, if that is the kind of testimony he's

11   allowed to give, which I assume he would not be, but if he

12   is, that's going to take a lot of cross-examination in front

13   of the jury.  And he draws factual conclusions, he draws

14   legal conclusions.  It's not pure economics.

15                   So I think what we'll do is try to point that

16   out to you and see how you rule on it.  But if that's what

17   comes in, then we're really concerned about the time, things

18   like that.

19                   But if we just go through trial, I think if you

20   can be a little bit flexible, if we get to the other end,

21   that would be fine.

22                   THE COURT:  All right.  I will certainly do

23   that.

24                   Have you all talked about and agreed to any -- I

25   mean, in terms of demonstratives and opening statements?

1           MR. FASTOW:  We haven't at this point, your

2      Honor.  We spoke yesterday about speaking about it, but we

3      have not gotten there yet, so maybe over the weekend.

4           THE COURT:  All right.  The bottom line is that

5      I don't have the time or the energy to resolve disputes

6      about demonstratives.  And you all understand that if you're

7      unreasonable with the opposing party, if there's any

8      objection raised, then, basically, it does not come in,

9      because this is opening.  And you are not supposed to be

10     proving your case through our opening statements.

11          So it behooves you to be reasonable with each

12     other because if the defendant objects to the plaintiff, the

13     plaintiff will undoubtedly object to the defendant, and you

14     will end up with no demonstratives at all.  So I just want

15     you to know that I'm not going to spend any time on it.  If

16     you can't agree, it does not come in.

17          MR. FASTOW:  Yes.  We see that in your civil

18     guidelines.

19          THE COURT:  You read them?  All right.  Thank

20     you very much.

21          MR. FASTOW:  Yes.

22          THE COURT:  Bring water because the water in the

23     building is not great and I have to pay for the water for my

24     staff and for me, so although we fill these, I don't know

25     that it's with the water that I buy.  It might be from the

1    water from the tap, so you might want to bring your own.

2                    Is there anything else that we need to address?

3                    MR. FASTOW:  Not that I can think of at the

4    moment, your Honor.

5                    MR. RUYAK:  I think we're all set up on the

6    equipment, so that should be fine.

7                    THE COURT:  All right.

8                    MR. RUYAK:  If not, we will try to get somebody

9    over here this afternoon, see if there are any loose ends on

10   that, but I think we have all the equipment pretty well set

11   up.

12                   THE COURT:  All right.  Good.

13                   Now, I do have some proceedings in the morning,

14   and I will try to have something -- if I need to talk to you

15   further before I make a decision on the issues that you're

16   presenting me, I will let you know.  I guess you should plan

17   to be here before 9:30, so that we can talk about any loose

18   ends.

19                   MR. FASTOW:  9:00 clock?

20                   THE COURT:  9:00 o'clock would be fine.  I'm

21   going to try to do the work and write something up over the

22   weekend, but with my luck, my computer will break and I

23   won't be able to do it.  So I just want to let you know, I

24   will be working on it and hope to have something final.

25                   Anything else?

```
 1                    MR. FASTOW:  Thank you.

 2                    MR. RUYAK:  I don't think so.  Thank you, your

 3      Honor.

 4                    THE COURT:  Have a good weekend.  Be safe out

 5      there.

 6                    I have to get out of my computer, so you may

 7      leave as you wish.

 8                    Thank you, Valerie and Brian.

 9                    (Proceedings adjourn at 1:35 p.m.)

10                         -  -  -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25