## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 06-623-SLR ) |
| EATON CORPORATION, | ) ) |
| Defendant. | ) ) ) |

## DEFENDANT EATON CORPORATION'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF ORDERS
## FOR IMMEDIATE INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)

OF COUNSEL:
Joseph A. Ostoyich
Erik T. Koons
William C. Lavery
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

Theodore B. Olson
Thomas G. Hungar
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. N.W.
Washington, DC  20036

Donald E. Reid (#1058)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 351-9219

*Attorneys for Defendant Eaton Corporation*

July 8, 2011

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>EATON CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 06-623-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT EATON CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR CERTIFICATION OF ORDERS
FOR IMMEDIATE INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)**

OF COUNSEL:
Joseph A. Ostoyich
Erik T. Koons
William C. Lavery
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

Theodore B. Olson
Thomas G. Hungar
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. N.W.
Washington, DC 20036

Donald E. Reid (#1058)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 351-9219

*Attorneys for Defendant Eaton Corporation*

**TABLE OF CONTENTS**

<u>Page</u>

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. PROCEDURAL HISTORY .......................................................................................... 3

III. ARGUMENT .............................................................................................................. 4

    A.   This Court's Orders Give Rise To Three Controlling Questions of Law. ...................... 5

    B.   There Is Substantial Ground For Difference Of Opinion As To Each Of The
        Three Controlling Questions Of Law. ........................................................................ 7

    1.   Whether an antitrust plaintiff challenging a competitor's terminable market-
        share discount agreements must satisfy a price-cost test in order to establish
        that the challenged conduct was anticompetitive. ...................................................... 7

    2.   Whether an antitrust plaintiff challenging a competitor's terminable market-
        share discount agreements must satisfy a price-cost test in order to establish
        antitrust injury. ........................................................................................................ 13

    3.   Whether an expert should be permitted to testify that a defendant's market-
        share discount agreements constituted exclusionary conduct that caused
        antitrust injury to the plaintiff where that expert did not perform an appropriate
        price-cost test establishing economic exclusion. ..................................................... 15

    C.   An Immediate Appeal Will Materially Advance The Ultimate Termination Of
        This Litigation. ....................................................................................................... 16

    D.   The Action Should Be Stayed Pending § 1292(b) Certification And Appeal. ............. 17

IV. CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP,*
    592 F.3d 991 (9th Cir. 2010) ................................................................................ 10, 11, 16

*Atl. Richfield Co. v. USA Petroleum Co* ..........................................................................,
    495 U.S. 328 (1990)................................................................................................ 2, 9, 13, 14

*Bradburn Parent Teacher Store, Inc. v. 3M,*
    No. CIV.A.02-7676, 2005 WL 1819969 (E.D. Pa. Aug. 2, 2005) .............................................. 7

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993)................................................................................................ 1, 8, 14

*Cascade Health Solutions v. PeaceHealth,*
    515 F.3d 883 (9th Cir. 2008) ................................................................................ 10

*Concord Boat Corp. v. Brunswick Corp.,*
    207 F.3d 1039 (8th Cir. 2000) .............................................................................. 10, 11, 14, 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993)................................................................................................ 16

*In re Broadstripe LLC,*
    No. 09-10006, 2009 WL 774401 (D. Del. Mar. 26, 2009) ...................................................... 5

*In re Chocolate Confectionary Antitrust Litig.,*
    607 F. Supp. 2d 701 (M.D. Pa. 2009)................................................................................ 5

*Katz v. Carte Blanche Corp.,*
    496 F.2d 747 (3d Cir. 1974) .................................................................................. passim

*LePage's Inc. v. 3M,*
    324 F.3d 141 (3d Cir. 2003) .................................................................................. 2, 8, 13, 14

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)................................................................................................ 1

*NicSand, Inc. v. 3M Co.,*
    507 F.3d 442 (6th Cir. 2007) ................................................................................ 9, 13

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.,*
    129 S. Ct. 1109 (2009)............................................................................................ 1, 9

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,*
    614 F.3d 57 (3d Cir. 2010) ........................................................................... 12, 15

*Se. Mo. Hosp. v. C.R. Bard Inc.,*
    No. 09-3325, 2011 WL 2201067 (8th Cir. June 8, 2011) ........................................ 12

*Ungar v. Dunkin' Donuts of Am., Inc.,*
    531 F.2d 1211 (3d Cir. 1976) ............................................................................. 6

*United States v. Dentsply International, Inc.,*
    399 F.3d 181 (3d Cir. 2005) ............................................................................. 12

*United States v. United Reg'l Health Care, Sys.,*
    No. 7:11-cv-00030 (N.D. Tex. filed Feb. 25, 2011) ...................................... 10, 11

*Virgin Atl. Airways v. British Airways PLC,*
    257 F.3d 256 (2d Cir. 2001) ........................................................................ 10, 14

*W. Parcel Express v. United Parcel Serv. of Am., Inc.,*
    190 F.3d 974 (9th Cir. 1999) ........................................................................... 12

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.,*
    549 U.S. 312 (2007) ..................................................................................... 9, 14

*White v. Nix,*
    43 F.3d 374 (8th Cir. 1994) .............................................................................. 7

## Statutes

28 U.S.C. § 1292(b) ................................................................................. 1, 4, 17

## Other Authorities

16 Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 3929 (2d ed. 1996) ......................................... 1

Phillip E. Areeda & Herbert Hovenkamp,
    *Antitrust Law* ¶ 768, at 149 (2d ed. 2002) ...................................................... 13

Phillip E. Areeda & Herbert Hovenkamp,
    *Antitrust Law* ¶¶ 749 & 749d, at 310 (3d ed. 2008) ......................................... 13

## Rules

Fed. R. App. Proc. 5(a)(3) ............................................................................... 1

# I.
## PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 1292(b), defendant Eaton Corporation ("Eaton") respectfully requests that this Court certify for interlocutory appeal the following two orders: (1) the order of October 20, 2009, entering judgment of liability against defendant Eaton Corporation, and (2) the order of March 10, 2011 ("JMOL Order"), denying Eaton's motion for judgment as a matter of law (collectively, the "Orders").[1]

A crucial issue underlying the Orders is the question whether Plaintiffs' claims are subject to what is known as the price-cost test, which examines whether the defendant's prices were above cost. *See, e.g., Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993). The price-cost test requires an antitrust plaintiff whose alleged injury is linked to the defendant's price reductions or discounts to prove both (1) that "the prices complained of are below an appropriate measure of [the defendant's] costs"; and (2) that the defendant had "a dangerous probability[] of recouping its investment in below-cost prices"—*e.g.*, by increasing its prices after driving the plaintiff from the market. *Id.* at 222–24. The rationale for applying the price-cost test is the recognition that "cutting prices in order to increase business often is the very essence of competition," so defendants who offer reduced or discounted prices should not be subjected to antitrust liability for the resulting injuries to competitors as long as their prices are above an appropriate measure of cost. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986); *see, e.g., Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 129 S. Ct. 1109

---

[1] Rule 5(a)(3) of the Federal Rules of Appellate Procedure permits the Court to amend the Orders to include the required certification at any time. Fed. R. App. Proc. 5(a)(3); *see* 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3929 (2d ed. 1996) ("Appellate Rule 5(a) explicitly provides that a district court order may be amended at any time to include the prescribed statement."); Advisory Comm. Note to 1967 Adoption of Rule 5(a) (clarifying that district court may certify "at any time").

(2009). As the Supreme Court has explained, "[l]ow prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340 (1990).

In reliance on the Third Circuit's decision in *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003) (en banc), the JMOL Order concluded that the price-cost test was not applicable here. (D.I. 259 at 17.) In *LePage's*, the Third Circuit had declined to apply the version of the price-cost test set forth in *Brooke Group* to the specific facts before it, which involved bundled discounts available only to customers who purchased a bundle of different products across multiple markets (most of which the plaintiff did not compete in). Decisions of the Supreme Court subsequent to *LePage's*, however, make clear that the price-cost test applies whenever an antitrust plaintiff's alleged injury is linked to the defendant's price reductions or discounts, thus raising a substantial question whether the Third Circuit will take a different course in light of those intervening precedents. Immediate appellate review of the Orders is therefore appropriate in the interests of judicial economy.

Specifically, Eaton requests certification to resolve, *inter alia*, the following questions:

1.  Whether an antitrust plaintiff challenging a competitor's terminable market-share discount agreements must satisfy a price-cost test in order to establish that the challenged conduct was anticompetitive.

2.  Whether an antitrust plaintiff challenging a competitor's terminable market-share discount agreements must satisfy a price-cost test in order to establish antitrust injury.

3.  Whether an expert should be permitted to testify that a defendant's terminable market-share discount agreements constituted exclusionary conduct that caused antitrust injury to the plaintiff where that expert did not perform an appropriate price-cost test establishing economic exclusion.

Each of these questions relates to whether the evidence presented by Plaintiffs was legally insufficient to support a jury finding of liability. Accordingly, the resolution of each

question controls—as a matter of law—whether the jury's verdict finding Eaton liable for antitrust violations should be allowed to stand. Moreover, substantial ground for difference of opinion exists with regard to these questions, as the JMOL Order's reliance on the Third Circuit's decision in *LePage's* contrasts directly with recent decisions by the Supreme Court, as well as the Second, Sixth, Eighth, and Ninth Circuits—a contrast that the Third Circuit is obviously in the best position to address. Finally, as this Court has previously recognized, an appeal from the jury's verdict will materially advance the ultimate termination of this litigation, providing finality to the question of Eaton's liability before the parties engage in potentially unnecessary, costly, and protracted further litigation.

Eaton also respectfully requests that, if certification is granted, the Court stay further proceedings in this case while Eaton petitions the Third Circuit to proceed with the interlocutory appeal and, should the Third Circuit grant the petition, until Eaton's appeal has been decided.

## II.
## PROCEDURAL HISTORY

Plaintiffs assert that Eaton violated Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act through market share-based rebate programs contained in long-term supply agreements ("LTAs") with heavy-duty truck manufacturers ("OEMs"). Plaintiffs did not, however, prove either that Eaton's prices were below its costs or that there is a dangerous probability that Eaton could recoup any below-cost discounts. On October 20, 2009, following a jury verdict, this Court entered judgment in favor of Plaintiffs and against Eaton on the issue of antitrust liability. (D.I. 226.) It was undisputed that: 1) the LTAs were non-exclusive; they allowed the OEMs to purchase transmissions from other suppliers such as Meritor, 2) the LTAs were terminable by the OEMs, and 3) at all relevant times, Eaton's transmission prices were lower than Mertior's. Because the Court had excluded the damages evidence of Plaintiffs'

3

expert, Dr. DeRamus, the jury did not address damages, and the Court denied Plaintiffs' request for a damages trial, stating that "I do not intend to address damages until liability has been finally resolved by the Third Circuit." Ex. 1 (October 20, 2009 Response to Email Request for Emergency Relief); *see also* Ex. 2 (Pretrial Conference Tr. 22:13-17, Sept. 10, 2009 ("once the liability phase is done, undoubtedly, whoever is on the losing side will appeal my original *Daubert* order, [that] will be among the issues appealed, and that will clarify, I'm sure, what the Third Circuit has to say about the order")); (*id.* at 13:5-12, 18:25-19:6).

Eaton filed a post-trial motion for judgment as a matter of law on liability, which the Court denied in its JMOL Order. (D.I. 259; D.I. 260.) The Court held that "[g]iven [Eaton's] use of rebates" to attract and keep OEM customers (D.I. 259 at 10), "there was sufficient evidence for the jury to find that the defendant had foreclosed the market to competition by tying discounts to market penetration goals" (*id.* at 9), and that such conduct constituted antitrust injury (*id.* at 8). The Court rejected Eaton's argument that it could not be liable for conditional discounting "so long as its prices were above its costs," relying on the Third Circuit's decision in *LePage's* to conclude that "this is not the law." (*Id.* at 17.) Subsequently, Eaton moved the Court to amend its JMOL Order to enter judgment awarding zero damages, but the Court denied that motion on June 9, 2011. (D.I. 268.) Because the Court has entered only a partial judgment resolving liability and has already denied Plaintiffs' motion for a damages trial, Eaton now seeks certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

## III.
## ARGUMENT

Section 1292(b) permits a district court to certify an order for immediate appellate review when the order involves "[1] a controlling question of law as to which [2] there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially

4

advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As discussed below, the Court's Orders meet these statutory requirements because they involve three controlling questions of law, as to each of which there is substantial ground for difference of opinion and the resolution of any of which would materially advance the termination of this litigation. Moreover, given the procedural history and posture of this case, the Orders clearly implicate the policies favoring interlocutory appeal such that this Court should grant certification.

## A.   This Court's Orders Give Rise To Three Controlling Questions of Law.

The Court's Orders entering liability and denying Eaton's motion for judgment as a matter of law implicate at least three "controlling questions[s] of law." 28 U.S.C. § 1292(b). In the Third Circuit, a "controlling question of law" is one that either: (1) if decided erroneously, would lead to reversal on appeal; or (2) is "serious to the conduct of the litigation either practically or legally." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir. 1974); *see also In re Broadstripe LLC*, No. 09-10006, 2009 WL 774401, at *2 (D. Del. Mar. 26, 2009). Each of the three questions listed above meets these criteria.

Here, the related questions of whether an antitrust plaintiff challenging a competitor's terminable market-share discount agreements must satisfy a price-cost test in order to establish (1) anticompetitive conduct and (2) antitrust injury, and speak to the requisite proof necessary to establish an antitrust claim. If either or both of those questions are properly answered in the affirmative (contrary to the conclusions expressed in the JMOL Order in reliance on *LePage's*), the Orders would be reversible on appeal. *See In re Chocolate Confectionary Antitrust Litig.,* 607 F. Supp. 2d 701, 705 (M.D. Pa. 2009) (finding a controlling issue of law where "[d]isposition of the motions would unquestionably change were [the] question answered [contrary to the district court's findings].") The Third Circuit has in fact noted that a court's application of legal standards in determining whether an antitrust violation exists constitutes a

5

controlling question of law for purposes of § 1292(b).  *See Ungar v. Dunkin' Donuts of Am., Inc.*, 531 F.2d 1211, 1214 (3d Cir. 1976) ("[W]e would find a controlling question here—that is, the propriety of our rejection of the individual coercion doctrine and the correctness of our resultant conclusions . . . as to the requisite proof to establish conduct constituting an illegal tie.").

Likewise, question (3)—whether an expert should be permitted to testify that a defendant's market-share discount agreements constituted exclusionary conduct that caused antitrust injury to the plaintiff when that expert did not perform an appropriate price-cost test establishing economic exclusion—relates directly to the question whether Plaintiffs presented sufficient proof of antitrust injury.  If the controlling legal standard is (as Eaton contends) that such testimony is not allowed in the absence of an economic test, the admission of (and jury's reliance on) Dr. DeRamus's highly prejudicial testimony regarding antitrust injury, causation, and exclusionary conduct would constitute reversible error.[2]

Thus, these three questions, if decided erroneously, would lead to reversal on appeal and are serious to the conduct and future course of this litigation, both in the legal and the practical sense.  *Katz*, 496 F.2d at 755.  Without adequate evidence of anticompetitive conduct or antitrust injury, the jury's finding of antitrust liability would be precluded as a matter of law.

---

[2]  After *Daubert* briefing and a hearing, the Court excluded Dr. DeRamus's damages opinion as inadmissible and "unreliable," (D.I. 144) stating that his report was "the longest, densest, most confusing report I've had to deal with in my 18 years on the bench" (Ex. 3, June 29, 2009 Hearing Tr. 29:6-9), and that Plaintiffs' expert was "just throwing everything that happened during this three years into the mix . . . and hoping antitrust theory floats to the top." (Ex. 4, Aug. 27, 2009 Hearing Tr. 21:19-22.)  The Court did not rule on the admissibility of Dr. DeRamus's liability opinion until its JMOL Order, when it concluded that the opinion "me[t] the standard for an expert opinion under Rule 702." (D.I. 259 at 17.)

Finally, the "key consideration" in determining what orders are properly reviewable under § 1292(b) is whether the Orders "truly implicate[] the policies favoring interlocutory appeal." *Katz*, 496 F.2d at 756. Such policies—namely "the avoidance of possibly wasted trial time and litigation expense"—are clearly implicated in the case at hand, where the parties have not even begun to prepare for a damages trial. *Id.* Accordingly, these questions present controlling questions of law.

## B.       There Is Substantial Ground For Difference Of Opinion As To Each Of The Three Controlling Questions Of Law.

There are "substantial ground[s] for differences of opinion" as to each of the controlling questions of law set forth above. "Substantial grounds for difference of opinion exist when there is genuine doubt or conflicting precedent as to the correct legal standard." *Bradburn Parent Teacher Store, Inc. v. 3M*, No. CIV.A.02-7676, 2005 WL 1819969, at *4 (E.D. Pa. Aug. 2, 2005). In other words, conflicting and contradictory opinions can provide substantial grounds for a difference of opinion. *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994). In this case, the JMOL Order's application of legal standards regarding sufficiency of proof for anticompetitive conduct and antitrust injury, as well the admission of Dr. DeRamus's expert testimony on these and related issues, stands in significant tension with the decisions of other courts.

### 1.       Whether an antitrust plaintiff challenging a competitor's terminable market-share discount agreements must satisfy a price-cost test in order to establish that the challenged conduct was anticompetitive.

The JMOL Order affirmed the jury's finding of anticompetitive conduct, noting "[t]he jury found that defendant had willfully acquired or maintained its monopoly power through [long-term market-share discount agreements] that amounted to de facto exclusive dealing contracts having the power to foreclose competition from the marketplace." (D.I. 259 at 20.) A substantial ground for difference of opinion exists as to whether such a finding, without

7

satisfaction of a price-cost test, is sufficient to establish that a competitor's terminable market-share discount agreements constitute anticompetitive conduct.

The JMOL Order rejected application of a price-cost test on the authority of the Third Circuit's decision in *LePage's*, which had itself declined to apply the *Brooke Group* version of the price-cost test to the bundled discount arrangements at issue there. The Third Circuit, however, has not had occasion to consider or clarify the scope and viability of its *LePage's* decision in light of subsequent Supreme Court precedents that cast considerable doubt on key aspects of that opinion. While this Court is of course bound to apply its understanding of *LePage's*, the Third Circuit is free to address and clarify the meaning and import of that decision, and to consider the extent to which recent Supreme Court decisions cast it in a new light. Accordingly, to the extent that tension exists between *LePage's* and other appellate decisions, there is unquestionably substantial ground for difference of opinion justifying certification of an interlocutory appeal.

There can be no doubt that such tension is present here. In *LePage's*, the Third Circuit offered three principal reasons for declining to apply the *Brooke Group* version of the price-cost test on the facts before it: First, the court stated that *Brooke Group* "was primarily concerned with the Robinson-Patman Act, not § 2 of the Sherman Act," *LePage's*, 324 F.3d at 151; second, the court did not believe that the *Brooke Group* price-cost test "is applicable to a monopolist with its unconstrained market power," *id.*; and third, the court suggested that *Brooke Group* was limited to cases involving "a predatory pricing claim," *id.*

Subsequent to the Third Circuit's decision in *LePage's*, however, the Supreme Court issued two additional decisions applying the price-cost test in a manner that directly undercuts each aspect of the Third Circuit's reasoning. In particular, those decisions make clear that the

8

price-cost test applies whenever an antitrust plaintiff claims injury linked to the defendant's price reductions or discounts, regardless of the particular antitrust theory, statute, or market structure at issue. *See Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007); *linkLine*, 129 S. Ct. at 1120. *Weyerhaeuser* held that the *Brooke Group* price-cost test applies under Section 2 of the Sherman Act in the context of a "predatory-bidding" claim when the defendant was a monopsonist (*i.e.*, the defendant was able to monopolize a particular market for supplies in its capacity as the dominant customer in that market). 549 U.S. at 325–26. And *linkLine* required the plaintiff to meet the price-cost test in a "price-squeeze" claim where the defendant was a monopolist. 129 S. Ct. at 1118. *Weyerhaeuser* and *linkLine* thus invalidate the *LePage's* court's conclusions that the *Brooke Group* price-cost test is limited to the Robinson Patman Act, does not apply to monopolists, and is limited to predatory pricing claims.

Accordingly, it is now clear that "low prices are *only* actionable under the Sherman Act when the prices are below cost," and that is true "*regardless of the type of antitrust claim involved.*" *linkLine*, 129 S. Ct. at 1123 (emphasis added); *Atl. Richfield*, 495 U.S. at 340 (emphasis added). As the Court explained in *linkLine*, the sweeping applicability of the price-cost test is necessary "[t]o avoid chilling aggressive price competition," and thus the Court has "carefully limited the circumstances under which plaintiffs can state a Sherman Act claim by alleging that prices are too low." 129 S. Ct. at 1120.

In keeping with the Supreme Court's consistent line of precedents, every other court of appeals to analyze conditional discounting practices, including market-share discounts, has applied some form of the price-cost test, irrespective of plaintiffs' attempts to avoid the test through artful pleading of a wide range of claims other than predatory pricing. *See, e.g., NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451–52, 457-58 (6th Cir. 2007) (en banc) (applying

9

price-cost test to "up front payments" conditioned on entering into exclusive-dealing agreements); *Virgin Atl. Airways v. British Airways PLC,* 257 F.3d 256, 261 (2d Cir. 2001) (applying the price-cost test to allegations of "'[b]ack-to-dollar-one' provisions [that] allow the discount or rebate to apply retroactively to all sales under the agreement once a [purchase] performance target is met"); *Concord Boat Corp. v. Brunswick Corp.,* 207 F.3d 1039, 1060-63 (8th Cir. 2000) (applying the price-cost test to market share discounts conditioned on market share). *See also Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991, 997 (9th Cir. 2010) ("something more than the discount itself is necessary to prove that [defendant's] market-share discount agreements forced customers to purchase its sensors rather than generics").

Furthermore, even if the traditional *Brooke Group* form of the price-cost test were not applicable here (and it is, under binding Supreme Court precedent), there would be substantial grounds for concluding that Plaintiffs would still be required to demonstrate that Eaton priced below cost under a discount-attribution test, pursuant to which the conditional portion of the discount is attributed to contestable sales. The U.S. Department of Justice has recently taken that very position in analyzing conditional discounts, arguing for the application of the discount-attribution version of the price-cost test to market-share discounts. *See* U.S. Department of Justice, Competitive Impact Statement at 14–15, *United States v. United Reg'l Health Care, Sys.,* No. 7:11-cv-00030 (N.D. Tex. filed Feb. 25, 2011), *available at* http://www.justice.gov/atr/cases/ f267600/267653.pdf ("Competitive Impact Statement") ("If [after attributing the full amount of the discount to the products markets the plaintiff competes in] the resulting prices are still above the defendant's incremental cost for providing those services, the discount is likely procompetitive."); *cf. Cascade Health Solutions v. PeaceHealth,*

10

515 F.3d 883, 911 (9th Cir. 2008) (holding that plaintiffs challenging bundled discounts conditioned on "sole preferred provider" status must prove below-cost pricing, measured by the "discount attribution rule").

The foregoing analysis is not changed by Plaintiffs' claim that Eaton's conditional market-share discount agreements, under which OEMs were free to purchase from Eaton's competitors whenever they offered a better price, constitute so-called de facto exclusive dealing. *See United Regional Health Care,* Competitive Impact Statement at 14 ("[d]iscounts tied to exclusivity can be procompetitive if they result from 'competition on the merits,' in which rival suppliers compete on price so that the most efficient firm will win additional consumers" and "a 'price-cost' test . . . helps distinguish between procompetitive and anticompetitive discounts"). As this Court has observed, "[e]ach of the LTAs contained a 'competitive' clause that allowed the OEM to purchase transmissions from another supplier if said supplier offered the OEM a lower price" and Eaton failed to meet it. (D.I. 259 at 4.) Moreover, "OEMs were free to 'walk away from [Eaton's] discounts at any time," (*id.* at 9) and Eaton did not obligate OEMs to refrain from purchasing from competitors. Under these circumstances, as long as the defendant is not pricing below cost, there can be no antitrust liability as a matter of law. *See, e.g., Allied Orthopedic,* 592 F.3d at 997 ("The market-share discount agreements at issue here did not foreclose [defendant's] customers from competition because 'a competing manufacturer need[ed] only offer a better product or a better deal to acquire their [business].'").

Indeed, the only basis for Plaintiffs' claim of quasi-exclusivity was the *attractiveness* of Eaton's discounts (*see* D.I. 259 at 10 (referring to "the use of rebates as a 'big hammer'")), but cutting prices cannot give rise to antitrust injury when the prices are not below cost. *See, e.g., Concord Boat,* 207 F.3d at 1060-63 (market share discounts in single product market that

11

allegedly placed customers in "golden handcuffs" were lawful where the discounts were above cost and customers "were free to walk away from [those] discounts at any time"); Competitive Impact Statement at 14; *see also Se. Mo. Hosp. v. C.R. Bard Inc.*, No. 09-3325, 2011 WL 2201067, at *3 (8th Cir. June 8, 2011) (rejecting claim that market share discounts constituted "exclusionary dealing" where customers were not required to purchase any market share from defendant but simply received price incentives based on market share).

Even truly exclusive contracts (which Eaton's were not) are permissible under the antitrust laws. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 83 (3d Cir. 2010) ("It is well established that competition among businesses to serve as an exclusive supplier should actually be encouraged."). But Eaton's contracts, which were terminable at will by the OEMs, did not constitute impermissible exclusive dealing as a matter of law. *See W. Parcel Express v. United Parcel Serv. of Am., Inc.*, 190 F.3d 974, 976 (9th Cir. 1999) ("[C]ontracts [that] do not preclude consumers from using other [suppliers] . . . are not exclusive dealing contracts that preclude competition in violation of the Sherman Antitrust Act.").[3]

Given the limited holding in *LePage's*, and the developments in the law since *LePage's*, there is at a minimum a substantial grounds for disagreement about whether Plaintiffs were required to prove the elements of the price-cost test as an element of their claim that Eaton's conditional market-share discount agreements were anticompetitive.[4]

---

[3] By contrast, *United States v. Dentsply International, Inc.*, 399 F.3d 181, 194 (3d Cir. 2005), involved true exclusive dealing. The price-cost test was not applicable there because the agreements with dealers were not incentivized by price discounts; rather, they were enforced by systematic threats of refusals to deal. No such refusal to deal was established here.

[4] The Third Circuit would have ample grounds for concluding that *LePage's* is not controlling on the facts of this case. *LePage's* involved bundled discounts available only to purchasers of multiple products entirely unrelated to transparent tape which plaintiff did not and could

12

2.    **Whether an antitrust plaintiff challenging a competitor's terminable market-share discount agreements must satisfy a price-cost test in order to establish antitrust injury.**

Although the price-cost test must be satisfied in order to prove that conditional market-share discounts are anticompetitive (*see* Section III.B.1 above), the price-cost test also applies in assessing whether a plaintiff has met its burden of proving antitrust injury. *See, e.g., NicSand*, 507 F.3d at 450–51 (holding that conditional market-share discounts cannot constitute antitrust injury unless they pass the *Brooke Group* price-cost test). As the *NicSand* court explained, even if the antitrust plaintiff has been injured in some sense—such as by going out of business— "antitrust standing and Article III standing are not one and the same." *Id.* at 449. Rather, the requirement that plaintiffs prove not just injury but "antitrust standing 'ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior." *Id.* (quoting *Atl. Richfield*, 495 U.S. at 344).

The Second and Eighth Circuits have also recognized that the price-cost test is an element of the antitrust injury analysis in cases involving market-share discounts. In *Virgin Atlantic*, the Second Circuit concluded that "[a]s long as low prices remain above predatory levels, they

---

not make, such as health care, home care, and retail auto products, whereas in this case there are not multiple product markets; the only "relevant market is the Class 8 heavy duty transmission market." (D.I. 259 at 21.) Moreover, *LePage's* did not address the question whether a modified version of the price-cost test, known as the discount-attribution test, should apply in the context of challenges to bundled discounts, because the defendant in *LePage's* failed to raise that issue. In fact, the *LePage's* court seemed to accept an analysis consistent with the rationale underlying the discount-attribution test, which looks to whether the challenged practice would exclude an equally efficient competitor. *LePage's* cited with approval the Areeda & Hovenkamp treatise, *see* 324 F. 3d at 155, which states (in the context of bundled discounts on multiple products) that "[d]epending on the number of products that are aggregated and the customer's relative purchases of each, even an equally efficient rival may find it impossible to compensate for lost discounts on products that it does not produce." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 768, at 149 (2d ed. 2002). In keeping with that understanding, the current version of that treatise endorses the use of the discount-attribution test in the context of bundled discounts. Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶¶ 749 & 749d, at 310, 328, 336-38 (3d ed. 2008).

13

neither threaten competition nor give rise to an antitrust injury." 257 F.3d at 269 (citing *Atl. Richfield*, 495 U.S. at 340). Similarly, in *Concord Boat* the Eighth Circuit held that the plaintiff could not establish antitrust injury without showing that the defendant's "discounts drove [its] price[s] below cost[s]." 207 F.3d at 1062–63.

Supreme Court precedents have also applied the price-cost test to assess whether the plaintiff has met its burden of establishing antitrust injury. In *Atlantic Richfield*, even though the plaintiff lost business as a result of the defendant's discounting agreements, the Court held that there was no antitrust injury because the discounted prices remained above the defendant's costs: "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they *cannot give rise to antitrust injury*." 495 U.S. at 339–40 (emphasis added). *Brooke Group* itself discussed the price-cost test in terms of "competitive *injury*." 509 U.S. at 222 (emphasis added). And *Weyerhaeuser* described the *Brooke Group* price-cost test as an "'essential component[] of real market *injury*.'" 549 U.S. at 320 (emphasis added) (quoting *Brooke Group*, 509 U.S. at 226). At the same time, the *LePage's* court analyzed and rejected the price-cost test in terms of anticompetitive conduct, not antitrust injury. *See* 324 F.3d at 151 (understanding the price-cost test as a rule "that a company's pricing *action* is legal if its prices are not below its costs" (emphasis added)). Thus, the Third Circuit would be free to clarify that *LePage's* does not justify a claim of antitrust injury in the circumstances of this case.

Although Plaintiffs here never attempted to prove the elements of the price-cost test, the JMOL Order concluded that Eaton, "by tying discounts to market penetration goals" (D.I. 259 at 9), had caused antitrust *injury* to Plaintiffs (*id.* at 8). It reached that conclusion even though, in light of the OEMs' undisputed freedom to walk away from their agreements with Eaton,

14

Plaintiffs always had the ability to compete for (and sometimes succeeded in obtaining) business from the OEMs. That conclusion also is debatable in light of appellate precedent. *See, e.g.,* *Race Tires Am., Inc.,* 614 F.3d at 84 ("In the end, [plaintiff] never suffered the kind of injury that gives rise to an antitrust claim. On the contrary, it has had the clear opportunity to compete and did compete, sometimes successfully, for the exclusive tire contracts.").

Given that *LePage's* did not address the price-cost test as applied to antitrust injury, and in light of the post-*LePage's* developments in the law including *NicSand, Race Tires, Weyerhaeuser,* and *linkLine,* there is a substantial ground for disagreement about whether an antitrust plaintiff challenging terminable market-share discount agreements must satisfy the price-cost test in order to establish antitrust injury.

**3.      Whether an expert should be permitted to testify that a defendant's market-share discount agreements constituted exclusionary conduct that caused antitrust injury to the plaintiff where that expert did not perform an appropriate price-cost test establishing economic exclusion.**

Finally, a substantial ground for difference of opinion exists as to the question whether an expert should be permitted to testify that a defendant's market share rebates constituted exclusionary conduct that caused antitrust injury, where that expert did not first analyze both elements of the price-cost test. Here, the Court's JMOL Order concluded that "DeRamus' [liability] testimony need not be automatically excluded" where he relied upon the "exclusionary nature of the LTAs to opine as to plaintiffs' antitrust injury," (D.I. 259 at 17) even though he performed no price-cost test, did not find that Eaton priced below cost, and indeed claimed that "Eaton was making a lot of money on those products . . . very, very high margins. *See* Ex. 5 (Trial Tr., 1911:4-12, 1912:3-8 Sept. 25, 2009 (DeRamus Test.)). Allowing Plaintiffs' expert to testify that Eaton's lower prices were somehow exclusionary and caused antitrust injury is contrary to the above-discussed case law under which an antitrust plaintiff challenging

15

conditional discounting practices must establish that the defendant engaged in below-cost pricing.

As noted above, conditional discounting may well be pro-competitive even though it makes it more difficult for competitors to compete successfully, and a price-cost test must therefore be used to distinguish pro-competitive from anticompetitive practices. Competitive Impact Statement at 14. Plaintiffs' expert performed no such analysis here, and thus, as a matter of law, his liability opinion would have been excluded under the holdings of other courts. *See Concord Boat*, 207 F.3d at 1057 ("[Plaintiffs' expert's] opinion should not have been admitted because it . . . did not separate lawful from unlawful conduct."); *see also Allied Orthopedic*, 592 F.3d at 997 (finding no evidence of market foreclosure where "[plaintiff's expert] never explained why price-sensitive hospitals would adhere to [defendant's] market-share agreements when they could purchase less expensive generic sensors instead.").

Accordingly, there is a substantial ground for difference of opinion over the question whether the jury could reasonably rely on the testimony of an "expert" who did not perform an accepted price-cost test to establish the existence of below-cost pricing and a dangerous probability of recoupment before opining regarding antitrust injury and exclusionary conduct and did not meet the minimum standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## C.     An Immediate Appeal Will Materially Advance The Ultimate Termination Of This Litigation.

The final factor for certification under § 1292(b) is whether the proposed appeal may materially advance the ultimate termination of the litigation. In this regard, "[t]he district court's opinion about settlement possibilities, about the potential length of a possibly avoidable trial, and similar matters" is crucial. *Katz*, 496 F.2d at 755. In fact, one motivation for the adoption of

16

§ 1292(b) was to avoid "a wasted protracted trial if it could early be determined that there might be no liability." *Id.* at 754.

This Court has already indicated that an appeal from the jury's verdict would materially advance the ultimate termination of this litigation, providing finality to the question of Eaton's liability before the parties engage in any further discovery and litigation regarding damages. *See* Ex. 2 (Pretrial Conference 13:5-12, Sept. 10, 2009 ("So my choice is, from a practical standpoint and my very, very limited resources, is to take this case to trial. In my world, the best way of doing this is to bifurcate, because that avoids the awkward procedural posture we're in. It gets the facts of record narrowed to at least what each side can present in 40 hours of trial. *And we've got some decision that can be appealed and some finality to this case.*") (emphasis added)). In fact, a successful appeal by Eaton would likely result in the termination of this lawsuit.

**D.     The Action Should Be Stayed Pending § 1292(b) Certification And Appeal.**

Section 1292(b) also provides that "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). Here, a stay of proceedings pending § 1292(b) certification and any subsequent appeal would be appropriate because a resolution of the interlocutory appeal in Eaton's favor would, as noted, likely end the litigation. As a result, it would be a waste of judicial and party resources to proceed with the claims while the appeal is pending.

17

## IV.
## CONCLUSION

Eaton respectfully requests that this Court certify the Orders for interlocutory appeal under 28 U.S.C. § 1292(b) and stay this litigation pending such certification and appellate review.

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Joseph A. Ostoyich
Erik T. Koons
William C. Lavery
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004

Theodore B. Olson
Thomas G. Hungar
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave. N.W.
Washington, DC  20036
Tel. (202) 955-8500

*/s/ Donald E. Reid*
Donald E. Reid (#1058)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 351-9219

*Attorneys for Defendant Eaton Corporation*

July 8, 2011

19

## CERTIFICATE OF SERVICE

I, Donald Reid, hereby certify that on the 8th day of July, 2011, a copy of

Defendant Eaton Corporation's Memorandum of Law in Support of its Motion for

Certification of Orders for Immediate Interlocutory Appeal was served by electronic filing

on all counsel of record.

/s/ Donald A. Reid
Donald A. Reid  (#1058)