IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-623-SLR |
| | ) | |
| EATON CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Karen V. Sullivan, Esquire of Drinker Biddle & Reath LLP, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: R. Bruce Holcomb, Esquire of Adams Holcomb LLP. Jennifer D. Hackett, Esquire, Paul R. Taskier, Esquire, Peter J. Kadzik, Esquire and Lauren H Barski, Esquire of Dickstein Shapiro LLP. Charles E. Luftig, Christopher H. Wood, Esquire, E. Michelle, Tupper, Ann-Marie Luciano, Esquire and Meredith Graham Robinson, Esquire.

Donald E. Reid, Esquire of Morris Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Andrew D. Lazerow, Esquire and Curtis J. LeGeyt, Esquire of Howrey LLP. Erik T. Koons, Esquire, William C. Lavery, Esquire and Joseph A. Ostoyich Esquire, of Baker Botts LLP. Theodore B. Olson, Esquire and Thomas G. Hungar, Esquire of Gibson Dunn.

**MEMORANDUM OPINION**

Dated: August ᛉ, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiffs ZF Meritor LLC ("ZFM") and Meritor Transmission Corporation ("Meritor") (collectively, "plaintiffs") filed this action against defendant Eaton Corporation ("defendant") on October 5, 2006, alleging violations of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1-2, and § 3 of the Clayton Act, 15 U.S.C. § 14.  (D.I. 1)  At all times relevant prior to trial, plaintiffs and defendant were rival manufacturers of Class 8 commercial truck transmissions.  Following a trial, defendant was found to have violated §§ 1 and 2 of the Sherman Antitrust Act and § 3 of the Clayton Act.  (D.I. 226) The issue of damages was not tried.  (*Id.*)  Currently before the court is plaintiffs' motion for reconsideration (D.I. 158) of the court's order (D.I. 145) excluding the damages opinion testimony of plaintiffs' expert, Dr. David W. DeRamus ("DeRamus").  For the reasons stated below, plaintiffs' motion is denied.

## II. BACKGROUND

The court incorporates by reference its *Daubert* opinion of August 20, 2009. (D.I. 144, 145)  In that opinion and its accompanying order, the court granted defendant's motion to exclude DeRamus' expert report on damages because it was based on faulty underlying data:  a single page from the "Revised Strategic Business Plan."  (D.I. 144 at 7)  However, the court found that the nature of defendant's conduct (in terms of antitrust injury) was adequately addressed by DeRamus and, therefore, the case was bifurcated, and trial on liability was conducted during the subsequent weeks. On October 8, 2009, the jury found that defendant had violated §§ 1 and 2 of the Sherman Antitrust Act, and § 3 of the Clayton Act.  (D.I. 217)  After trial, defendant renewed its motion for judgment as a matter of law (D.I. 245), which was denied by the

court on March 10, 2011.  (D.I. 259, 260)  Plaintiff's motion for reconsideration of the court's *Daubert* order was then administratively closed as moot.

As it turns out, the court was in error to not decide the merits of plaintiffs' motion for reconsideration, as the issue of damages must be resolved before a final judgment is entered, *see DL Resources, Inc. v. FirstEnergy Solutions, Corp.*, 506 F.3d 209, 213 (3d Cir. 2007) (citing *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976)), and trial on the issue of damages cannot go forward in the absence of expert testimony. Therefore, the court has "resurrected" the motion in order to substantively rule on plaintiffs' contentions that the court should reconsider its ruling to exclude Deramus' expert testimony under *Daubert*.

### III. LEGAL STANDARD

The purpose of a motion for reargument or reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Accordingly, a court should alter or amend its judgment only if the movant demonstrates at least one of the following:  (1) a change in the controlling law; (2) availability of new evidence not available when the court issued its order; or (3) a need to correct a clear error of law or fact or to prevent manifest injustice.  *See Id.; see also, Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998).

A motion for reargument is not properly premised on a request that a court rethink a decision already made.  *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).  Motions for reargument may not be used "to argue new facts or issues that inexcusably were not presented to the court in the matter

2

previously decided." *Brambles USA, Inc., v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990). Reargument, however, may be appropriate where "the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Id.* at 1241.

## IV. DISCUSSION

### A. Motion for Reconsideration

Plaintiff's motion for reconsideration is divided into two parts:  the first was filed before trial (D.I. 158), and the second is a modification of the first in light of developments at trial.  (D.I. 227)  Plaintiffs make several arguments in support of admitting DeRamus' expert report.  First, they argue that the report is admissible in its current form because the Strategic Business Plan on which it is based is reliable in view of the testimony of witnesses at trial.  (*Id.* at 5-7)  Next, plaintiffs argue that the report is admissible in its current form because the Strategic Business Plan itself was admitted at trial, and experts are allowed to rely on evidence that is admitted at trial in forming their opinions.  (*Id.* at 7-11)  Finally, plaintiffs argue that DeRamus should be allowed to modify his report to reflect reliance on different data (such as ZFM profits) because the court found only that the data he relied on was flawed, not his underlying methodology. (*Id.* at 11-14)

### 1. Reliability of the Strategic Business Plan in view of witness testimony

Plaintiffs argue that witness testimony established the reliability of the Strategic Business Plan and, therefore, DeRamus should be allowed to rely on it in his expert

3

report.  (D.I. 227 at 5-7)  However, there is nothing new in the witnesses' testimony that

provides the court with a reason to reverse its previous finding.  The witnesses'

testimony only states that the Strategic Business Plan was prepared at the behest of

Martello, and was revised several times.  (*Id.*)  It says nothing about the plan's

accuracy, or the reasonableness of its estimates.  Furthermore, the court was already

well aware of the circumstances surrounding the creation of the plan as DeRamus had

testified to its source during an evidentiary hearing, and wrote about it in his declaration.

(D.I. 158 at 3)

### 2. DeRamus' ability to rely on the Strategic Business Plan after it was admitted into evidence during trial.

Plaintiffs misinterpret the effect of the admission of the Strategic Business Plan

on DeRamus' ability to rely on it in his expert report.  While plaintiffs are generally

correct that experts are allowed to rely on admissible evidence, its admissibility does

not change its sufficiency or reliability under Rules 702 and 703 of the Federal Rules of

Evidence.  A court still has a duty to "conduct an independent evaluation in to the

reasonableness" of the expert's reliance on the evidence.  *In re Paoli RR Yard PCB*

*Litig.*, 35 F.3d 717, 748 (3d Cir. 1994).  The fact that the Strategic Business Plan was

part of plaintiffs' "story" does not mean, ipso facto, that it is the type of reliable evidence

upon which an expert can base millions of dollars' worth of damages.  Here, the court

found that the Strategic Business Plan was insufficient and unreliable and, therefore,

could not form the basis of DeRamus' opinion.  Admissibility did not change this

calculus.

### 3. Modification of DeRamus' report to rely on different underlying data

4

Plaintiffs' request to modify DeRamus' report to rely on different underlying data would be tantamount to reopening expert discovery. DeRamus would need to be deposed once again, and defendant would need to prepare another rebuttal expert report. The court would then be subject to another *Daubert* motion, and DeRamus' report could be found faulty once again. Furthermore, when the court gave plaintiffs leave to move for clarification as to what DeRamus could testify, leave was granted to show that DeRamus' report **already** contained an alternate damages calculation. (D.I. 161 at 3) Plaintiffs had a chance to espouse alternate damages calculations when they first prepared DeRamus' report and, instead, they chose to rely on data that generated wildly inflated numbers. At this stage of litigation, the court will not give plaintiffs another opportunity to modify their damages estimation.

### B. Permanent Injunction

While the plaintiffs are unable to prove monetary damages due to a lack of expert testimony, monetary damages are not the only form of relief that a court can grant in an antitrust action. In the case at bar, the jury found that defendant had engaged in conduct that violated §§ 1 and 2 of the Sherman Antitrust Act, as well as § 3 of the Clayton Act, that is, the use of Long Term Agreements ("LTAs") that contained discounts linked to market penetration targets. (D.I. 216, 259) Under both of these acts, the court has broad discretion to issue an injunction preventing defendant from engaging in such anticompetitive conduct.

### 1.  Standard of review

In determining whether to grant a request for a permanent injunction, the court

must consider whether:

(1) the moving party has shown actual success on the merits;
(2) the moving party will be irreparably injured by the denial of injunctive
relief;
(3) the granting of the permanent injunction will result in even greater harm
to the defendant; and
(4) the injunction would be in the public interest.

*Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 236-37 (3d Cir. 2003)*; Shields v.*

*Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

### 2.  Discussion

#### a.  Actual success on the merits

In the case at bar, actual success on the merits has already been shown.  As

discussed *supra*, defendant has been found liable for violating §§ 1 and 2 of the

Sherman Antitrust Act, as well as § 3 of the Clayton Act.  Therefore, this factor favors a

injunction.

#### b.  Irreparable harm

The irreparable harm factor can be more difficult to show in the antitrust context

as the antitrust laws "were enacted 'for the protection of competition not competitors.'"

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (citations

omitted).  Here, competition was effectively excluded from the marketplace, which

constitutes "antitrust injury, which is to say injury of the type the antitrust laws were

intended to prevent and that flows from that which makes defendant['s] acts unlawful."

*Id.* at 489.  *See also Xerox Corp v. Media Sciences Intern., Inc.*, 511 F. Supp. 2d 372,

6

383 (S.D.N.Y. 2007) (plaintiff adequately alleged an antitrust injury for defendant's alleged use of loyalty rebates to exclude plaintiff from the market.). Some courts have considered this to be irreparable harm. *See Christian Schmidt Brewing Co. v. G. Heileman Brewing Co. Inc.*, 600 F. Supp. 1326, 1331 (D.C. Mich. 1985). Therefore, this factor slightly favors an injunction.

### c. Injunction will not cause greater harm to defendant

Defendant's harm is, at most, minimal. The court's injunction only prohibits defendant from linking discounts to market penetration targets. It does not prohibit defendant from giving other forms of discounts such as volume discounts. Defendant will still be able to operate its business as usual with the caveat that it cannot exclude others from the market. Therefore, this factor favors an injunction.

### d. Public interest

Antitrust law is one of the few instances in civil actions where the public interest factor may have as much, if not more, weight as any other factor in the balancing test. The reason for this is simple. "A claim under the antitrust laws is not merely a private matter. The Sherman Act is designed to promote the national interest in a competitive economy; thus, the plaintiff asserting his rights under the Act has been likened to a private attorney-general who **protects the public's interest**. . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 655 (1985) (emphasis added) (citations omitted).

In the case at bar, the public has a substantial interest in strong competition in the truck transmission market. As originally written, the LTAs constituted de-facto exclusive dealing contracts which had the effect of excluding others from the market,

7

thus creating a situation where prices could be raised in the future and innovation could be stifled.  Therefore, this factor heavily favors an injunction.

### 3. Conclusion

Given the strong public interest in promoting competition, the minimal harm to defendant, and plaintiffs' showing of success on the merits, defendant is enjoined from linking discounts or other benefits to market penetration targets.

## V. CONCLUSION

For the reasons stated herein, plaintiffs' motion for reconsideration (D.I. 158) of the court's order excluding the damages opinion testimony of DeRamus is denied. Furthermore, defendant is enjoined from linking discounts to market penetration targets.[1]  An appropriate order shall issue.

---

[1]  While plaintiffs are no longer in business and are unable to directly benefit from an injunction, here, an injunction is appropriate because of the public's interest in robust competition and the possibility that plaintiffs may one day reenter the market.

8