UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION, ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 06-623-SLR |
| v. ) ) | **REDACTED PUBLIC VERSION** |
| EATON CORPORATION, ) ) ) | |
| Defendant. ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
REGARDING NATURE AND SCOPE OF TRIAL**

OF COUNSEL:
Joseph A. Ostoyich
Erik T. Koons
William C. Lavery
Evan A. Young
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700

Theodore B. Olson
Thomas G. Hungar
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 11101
(202) 955-8500

Original Filing Date: April 22, 2013
Redacted Filing Date: April 30, 2013

Donald E. Reid (#1058)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 351-9219

*Attorneys for Defendant Eaton Corporation*

## TABLE OF CONTENTS

ARGUMENT ............................................................................................................................1

CONCLUSION ......................................................................................................................14

## TABLE OF AUTHORITIES

Page No.

**CASES**

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) .................................................................................................... 10

*Bankers Trust Co. v. Bethlehem Steel Corp.*,
  761 F.2d 943 (3d Cir. 1985) .......................................................................................... 11

*Bigelow v. RKO Radio Pictures*,
  327 U.S. 251 (1946) ....................................................................................................... 3

*Bonjorno v. Kaiser Aluminum & Chem. Corp.*,
  752 F.2d 802 (3d Cir. 1984) ..................................................................................... 11, 12

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1999) ..................................................................................................... 10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ..................................................................................................... 2, 9

*Coleman Motor Co. v. Chrysler Corp.*,
  525 F.2d 1338 (3d Cir. 1975) ........................................................................................ 6

*Comcast Corp. v. Behrend*,
  No. 11-864, 569 U.S. ---, 2013 WL 1222646 (U.S. Mar. 27, 2013) ..................... 2-4, 6, 9, 12

*Gasoline Prods. Co. v. Champlin Ref. Co.*,
  283 U.S. 494 (1931) ..................................................................................................... 10

*Harden v. Allstate Ins. Co.*,
  No. 93-513, 1996 WL 190013 (D. Del. Apr. 16, 1996) ................................................ 10

*In re Lower Lake Erie Iron Ore Antitrust Litigation*,
  998 F.2d 1144 (3d Cir. 1993) ................................................................................. 11, 12

*MCI Commc'ns Corp. v. AT&T*,
  708 F.2d 1081 (7th Cir. 1983) ....................................................................................... 6

*Nat'l Ass'n of Review Appraisers & Mortgage Underwriter v. Appraisal Found.*,
  64 F.3d 1130 (8th Cir. 1995) ......................................................................................... 6

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009) ....................................................................................................... 9

*Pryer v. C.O. 3 Slavic,*
    251 F.3d 448 (3d Cir. 2001)..................................................................................................10

*U.S. Football League v. NFL,*
    842 F.2d 1335 (2d Cir. 1988)..................................................................................................6

*Vizzini v. Ford Motor Co.,*
    569 F.2d 754 (3d Cir. 1977)..................................................................................................10

*ZF Meritor LLC v. Eaton Corp.,*
    696 F.3d 254 (3d Cir. 2012)..................................................................................... 3-5, 9, 11

*ZFM Meritor LLC v. Eaton Corp.,*
    646 F. Supp. 2d 663 (D. Del. 2009)........................................................................................4

**STATUTES**

15 U.S.C. 15(a) .............................................................................................................................2

Clayton Act Section 4 ...................................................................................................................9

Sherman Act Sections 1 and 2 .......................................................................................................2

Eaton Corporation ("Eaton") respectfully submits that the Court should deny Plaintiffs' ("ZFM") short motion regarding the nature and scope of a damages trial. A damages trial is unnecessary and inappropriate for the reasons set out in Eaton's motion to exclude the opinion testimony of Dr. David W. DeRamus ("DeRamus"), and in its motion for judgment as a matter of law. D.I. 309 and 311. DeRamus's amended damages opinion is just as flawed and unreliable as his original opinion which this Court excluded in a decision affirmed by the Third Circuit. In addition, DeRamus's failure to disaggregate business losses caused by Eaton's lawful, lower prices and other competitive conduct (and by ZFM's own self-inflicted wounds) from damages attributable to what the Third Circuit identified as anticompetitive non-price conduct, renders his opinion too speculative to get to a jury. Furthermore, because ZFM's theory of liability presented to the jury at the first trial relied in part on conduct that falls within the Supreme Court's antitrust "safe harbor," as recognized by the Third Circuit (namely, Eaton's above-cost prices), and because the first jury did not identify which conduct it found to be anticompetitive or when that unknown conduct produced antitrust injury, a new damages-only jury would have no basis for knowing which conduct could serve as a proper basis for a damages award. Accordingly, any damages would be impermissibly speculative. ZFM's motion should thus be denied and judgment should be granted in Eaton's favor for the reasons set out below and in Eaton's pending motions.

## ARGUMENT

ZFM's five-page motion treats this matter as if it were a simple garden-variety tort case. But it is not. It is a complex antitrust case that requires more than a simple "explanation" of the liability verdict and an undefined description of "the context" in which the verdict was rendered. D.I. 307 at 4. Instead, the antitrust laws require proof linking the precise *anticompetitive* conduct at issue to plaintiffs' claimed *antitrust injury* and *damages*. That is because of the unique and

long-standing requirement—embodied in Supreme Court case law and the private damages statute itself—that plaintiffs can only recover for antitrust injury and damages that "flow[] from that which makes defendants' acts *unlawful*." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed. 701 (1977). *See also* 15 U.S.C. 15(a) (limiting damages to persons injured "by reason of" conduct "forbidden in the antitrust laws").

Just last month, the Supreme Court underscored the critical requirement that an antitrust plaintiff prove the link between the alleged anticompetitive conduct and its claimed antitrust injury and damages. In *Comcast Corp. v. Behrend*, No. 11-864, 569 U.S. ---, 133 S.Ct. 1426, -- L. Ed. 2d --, 2013 WL 1222646 (U.S. Mar. 27, 2013), the Court reversed a Third Circuit decision approving certification of an antitrust class action because the plaintiffs' expert failed to link his damages to the anticompetitive conduct at issue. Plaintiffs were customers of Comcast alleging that the company engaged in four types of conduct that violated Sherman Act Sections 1 and 2. But the district court held that only one type of conduct ("reduced overbuilder competition") was a legally sufficient basis for the proposed class action and it rejected the other three. The *Comcast* plaintiffs' expert, however, "did not isolate damages resulting from any one theory of antitrust impact" and, instead, "expressly admitted that the model calculated damages resulting from 'the alleged anticompetitive conduct as a whole' and did not attribute damages to any one particular theory of anticompetitive impact." *Comcast*, 569 U.S. at 6.

The Supreme Court reversed the Third Circuit because the expert's holistic approach was invalid as a matter of law. "There is no question his model failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised." *Id.* at 8. The Court noted that its conclusion stemmed from the "unremarkable premise" that at trial plaintiffs "would be entitled *only* to damages resulting from reduced overbuilder competition

2

since that [was] the only theory of antitrust impact accepted" by the district court. *Id.* at 7 (emphasis added). "It follows that a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class[.]" *Id.* At the class certification stage, as at trial, "any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'" *Id.* (quoting ABA Section of Antitrust Law, *Proving Antitrust Damages: Legal and Economic Issues*, 57, 62 (2d ed. 2010)). Otherwise, it is too speculative to get to a jury. *Id. See also Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946) ("the jury may not render a verdict based on speculation or guesswork").

That missing link between the purported anticompetitive conduct and ZFM's claimed damages is exactly the problem here. The Third Circuit, like the district court in *Comcast*, rejected ZFM's argument that all of Eaton's conduct violated the antitrust laws. Instead, it made clear that some of Eaton's conduct (its above-cost prices) fell within the Supreme Court's "safe harbor" for lawful pricing conduct. According to the Third Circuit, only some of Eaton's non-price conduct was anticompetitive and supported this Court's denial of Eaton's Rule 50 motion. *ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254, 278 (3d Cir. 2012).[1] Just like the expert in *Comcast*, however, DeRamus acknowledges he made no distinction among these categories of conduct and did not disaggregate damages caused by the non-price conduct identified by the Third Circuit from losses caused by Eaton's lawful, lower prices or other competitive conduct. In-

---

[1] Eaton's pending petition for certiorari challenges the Third Circuit's holding that some aspects of ZFM's liability theory involved non-price conduct that could serve as the basis for the verdict, but Eaton recognizes that the Third Circuit's decision is binding on this Court and accordingly employs the Third Circuit's terminology in its briefing in this Court.

3

stead, he repeatedly answered  D.I. 311, Ex. 3 (DeRamus Dep.) at App. 117.

DeRamus also fails to disaggregate and deduct the effects of plaintiffs' own problems, including the ▬ warranty problems he acknowledges affected their manual transmission sales for several years and caused the company to lose business. D.I. 311, Ex. 3 (DeRamus Dep.) at App. 28. ▬

▬ As a result, his opinion is impermissibly speculative, just like the expert's opinion in *Comcast*. Indeed, it fails the "'first step in a damages study'" because it does not connect the "'*harmful event* into an analysis of the economic impact *of that event*.'" *Comcast*, 569 U.S. at 11 (quoting Federal Judicial Center, *Reference Manual on Scientific Evidence* 432 (3d ed. 2011)).

These are not mere academic problems. They are deficiencies that make a sound and reliable damages estimate impossible, and give a jury no alternative except to engage in impermissible guesswork. Indeed, DeRamus's opinion simply ignores the rulings of both the Third Circuit and this Court. The Third Circuit affirmed this court's finding that "[a]t all times relevant to this case, Eaton's average prices were lower than ZFM's average prices, and on several occasions, ZFM declined to grant price concessions requested by OEMs." *ZF Meritor*, 696 F.3d at 266-67; *see also ZFM Meritor LLC v. Eaton Corp.*, 646 F. Supp. 2d 663, 666-67 (D. Del. 2009). The Third Circuit found that Eaton's lower prices were always above-cost and therefore within

4

the "safe harbor" protection created by the Supreme Court. *ZF Meritor*, 696 F. 3d at 277 ("Eaton never priced at a level below its costs" and "prices are unlikely to exclude equally efficient rivals unless they are below cost"), 275 ("generally, above-cost prices are not anticompetitive"), 278 ("the Supreme Court has created a safe harbor for above-cost discounting").

The trial record contains substantial evidence that Eaton's lawful, lower prices were more attractive to the OEMs than ZFM's prices, even without the rebates, and "may, in fact have been an inducement for the OEMs to enter into the LTAs," although they always "remained free to buy [transmissions] from any other HD transmission manufacturer." *ZF Meritor*, 696 F.3d at 267. Moreover, executives from all four OEMs testified that Eaton's prices and other contract terms were more attractive than ZFM's. VolvoMack's purchasing director testified that "[p]ricing was significantly better with Eaton [even] excluding rebates . . . It was purely dollars, dollars and cents." D.I. 238 at 2445:8-2446:1 (Lopes). PACCAR's vice president noted that Eaton offered "the highest value relationship to Paccar" with "total value" "more competitive than other offerings." D.I. 239 at 2908:24-2910:7, 2915:22-2916:7 (Lundahl). Freightliner notified Plaintiffs in October 2000 that Eaton's transmissions were "at a price significantly below ZFM's current prices to Freightliner," and that Eaton thus had "a significant competitive advantage over your products in price and technology." D.I. 311, Ex. 6 at App. 415-16. International's purchasing supervisor testified that he signed a new contract with Eaton in 2000 because "it made good business sense." D.I. 239 at 2873:8-18, 2875:22-24 (Barkus).

The record also contains evidence that Eaton engaged in a range of additional pro-competitive conduct beyond its lawful price cuts, including substantial investments to increase its transmission manufacturing capabilities and to lower its costs, significant investment to continue innovating new transmissions its customers wanted, and Six Sigma and other initiatives to

5

help the OEMs lower their supply chain costs. D.I. 238 at 2529:1-25:30:19 (Davis) ("It's all part of reducing our cost base. Some of it was in the manufacturing process itself, to go to higher technology processes, to reduce our cost"; "There was tremendous pressure . . . there's extreme pressure from all of our customer base, whether it's the fleet, the dealers or OEMs, to drive cost down"); D.I. 242 at 3596:4-9 (Sweetnam) ("the truck OEMs who were selling trucks, they were under intense pressure themselves. That intense pressure, they were pushing hard to get reductions in prices from their supply base because everybody was hurting. Everybody was losing money. They needed to cut cost."). Nonetheless, DeRamus attributes his damages figures to the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ conduct—despite the undisputed lawfulness of Eaton's pro-competitive actions and the Third Circuit's holding that Eaton's prices are not anticompetitive. DeRamus concedes he did not disaggregate their effects. D.I. 311, Ex. 3 at App. 117 ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

  *Comcast* and a host of other cases make it clear that antitrust plaintiffs cannot recover damages attributable to Eaton's lawful, lower prices or other pro-competitive conduct. *Comcast*, 569 U.S. at 10-11 (damages "caused by factors unrelated to an accepted theory of antitrust harm are not 'anticompetitive' in any sense"); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1353 (3d Cir. 1975) (reversing verdict because "[t]he damage figures advanced by plaintiff's expert may be substantially attributable to lawful competition"); *see also MCI Communications Corp. v. AT&T Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983) ("It is a requirement that an antitrust plaintiff must prove that his damages were caused by the *unlawful* acts of the defendant. This is the essence of 'antitrust injury' as set forth by the Supreme Court.") (internal citation omitted).

  Nor can an antitrust plaintiff recover for losses caused by its own self-inflicted wounds or

other factors unrelated to defendant's anticompetitive conduct. *E.g., Nat'l Ass'n of Review Appraisers & Mortg. Underwriters, Inc. v. Appraisal Found.*, 64 F.3d 1130, 1135 (8th Cir. 1995) (affirming summary judgment where "[a] number of highly publicized missteps and other considerations have contributed greatly to the Associations'" problems); *U.S. Football League v. NFL*, 842 F.2d 1335, 1378-79 (2d Cir. 1988) ("A plaintiff's proof of amount of damages thus must provide the jury with a reasonable basis upon which to estimate the amount of its losses caused by other factors, such as management problems, a general recession or lawful factors").

Here, the record contains substantial evidence that ZFM lost customers because it was ▬▬▬▬ with warranty problems—problems that were ▬▬▬▬ and lasted for several years, according to DeRamus. D.I. 311, Ex. 3 (DeRamus Dep.) at App. 28 ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. For example, ZFM told its board of directors that the company's transmissions were suffering excruciating warranty problems—at times, 80 repairs for every 100 manual transmissions and 350 repairs for every 100 FreedomLine models in the field. D.I. 230 at 588:20-23, 638:2-8 (Kline); Ex. 10 at App. 674. Those warranty problems continued throughout ZFM's life. In mid-2002, ZF AG served a $39 million damages claim against Meritor for "misrepresent[ing]" the "quality of the G Platform" manual transmissions and failing "to adequately design and test" them." D.I. 232 at 1053:13-1055:8, 1058:2-4, 1058:22-25 (Lutz); Ex. 18 at App. 693. In early 2003, the company reported that its manual "transmission failures continue to mount. It appears that many of our long-term customers have experienced enough and will change specs in FY03." D.I. 309, Ex. 24 at App. 927. Shortly afterward, a "large, formerly loy[a]l transmission customer" announced that it would "not be buying our JV products due to G Platform performance issues." *Id.* The problems persisted right up until ZFM's dissolution later that year. "Customer satisfaction continues

to erode as a result of single rail top cover issues." D.I. 309, Ex. 23 at App. 924. But DeRamus does not disaggregate any damages attributable to ZFM's quantifiable real-world warranty troubles. D.I. 311, Ex. 3 (DeRamus Dep.) at App. 117. ███████████████████████████
███████████████████████████████████████████████████████████████ *Id.*
This Court has already noted that "it did not sound to me, in going through 150 pages, that Dr. [DeRamus] took into account much of anything negative in terms of plaintiffs' struggle to maintain its competitive edge in this market." D.I. 311, Ex. 2 (July 29, 2009 hearing) at App. 22.

The problem is exacerbated here because the verdict form does not identify what Eaton conduct was the basis for the jury's liability verdict. It is thus entirely unclear whether the jury improperly relied upon Eaton's lawful, lower prices (or its continued innovation, its cost-cutting efforts, or its expansion of its manufacturing capabilities) or whether it only relied upon non-price conduct and, if so, whether it relied on all of the specific non-price conduct referenced in the Third Circuit's decision, or instead only some of that conduct—or some other non-price conduct entirely. Finally, the verdict form does not identify *when* the type of conduct found unlawful by the jury, whatever it was, caused ZFM antitrust injury. Instead, the verdict form says only that ZFM incurred antitrust injury at some unidentified time "*since* March 28, 2002." D.I. 217 (emphasis added).

These are problems of ZFM's own creation. It did not ask for a special verdict form that set out the factual predicates for the jury's determination. In the words of this Court, ZFM decided instead to "just throw[] everything that happened during this three years into the mix . . . and hop[e] antitrust theory floats to the top." D.I. 311, Ex. 19 at App 700 (Aug. 27, 2009 hearing).[2] As a result, the critical fact-findings that would normally be established by a verdict (and

---

[2] Eaton submitted a proposed special verdict form that contained detailed fact findings, includ-

8

available to a second jury in attempting to assess a damages award) are now unknown. For example, did the first jury think all four contracts were unlawful or only one or two of them? Was the first contract (Paccar, July 2000) unlawful by itself or was it only unlawful when followed by the second (International, July 2000), third (Freightliner, October 2000), or fourth contracts (VolvoMack, October 2002)? Did the jury improperly believe that the up-front price reductions, lump sum rebates, and incremental share-based rebates were unlawful? Did the jury improperly believe that all of the non-price terms in all of the contracts were unlawful, including terms obligating Eaton to develop new transmissions and to provide engineering support? If not, which non-price terms in which contracts did the jury rely upon? Did the jury believe that all databook terms in all of the contracts were unlawful, or only some of them, and which ones? These are critical questions in light of the fact that the contracts' terms varied substantially (*e.g.*, only two included some databook exclusivity, while two others did not; only two allowed Eaton to terminate for failure to meet targets, while two others did not). Did the jury believe the OEMs engaged in certain acts that harmed ZFM and, if so, were those acts unilateral acts by the OEMs (and which OEM) or did they act because of an agreement with Eaton? We do not know the answers to any of these questions, and neither would a new damages-only jury, making it impossible for such a jury to avoid speculation and guesswork in returning a verdict.

The jury's failure to delineate *when* Eaton's conduct, whatever it was, caused ZFM's antitrust injury adds yet more complexity that also renders DeRamus's damages calculations impermissibly speculative. For example, the jury found no antitrust injury until some unidentified time *after* March 28, 2002—yet DeRamus ignored that and started his damages calculations *on*

---

ing separate findings related to the terms of each contract (D.I. 215), and it preserved its objections to ZFM's general verdict form. D.I. 243 at 3800, 3804 ("Everybody's objections are preserved.").

9

March 28, 2002.

Given the significant factual questions left unanswered by the verdict, it is not surprising that ZFM's motion offers no explanation at all for what a second jury might be told about the "context" of the first jury's findings. D.I. 307. The Court should reject such an approach as incompatible with *Comcast*, *Pueblo Bowl-O-Mat*, and a host of other cases, and with Clayton Act Section 4 itself. In *Comcast*, the Supreme Court held that plaintiff's damages model "must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." *Comcast*, 569 U.S. at 5. Here, that consistency is entirely missing. ZFM's liability case was premised on the argument that Eaton's conduct—all of it—was anticompetitive. Indeed, ZFM specifically argued, and DeRamus opined, that Eaton's prices excluded ZFM from the market. D.I. 235 at 1821:6-9, 1907:8-12 (DeRamus) (opining that the contracts "foreclosed [ZFM] from the OEMs," limited "the share of the market," and drove it out of business); D.I. 244 at 3819: 25-3820:2 (closing) (Eaton's "anticompetitive" prices drove the OEMs to "exclude" ZFM); 3831:23-3832:6, 3842:5-14, 3856:15-23, 3863:16-19 ("the OEMs were trying to hit those targets to get their money from Eaton.").

The Third Circuit disagreed, however, and made clear that Eaton's lower, above-cost prices fell within the Supreme Court's "safe harbor for above-cost discounting." *ZF Meritor*, 696 F.3d at 278. That is a safe harbor the Supreme Court has repeatedly reaffirmed. *E.g., Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 451, 129 S.Ct. 1109, 1120 (2009) ("To avoid chilling aggressive price competition, we have carefully limited the circumstances under which plaintiffs can state a Sherman Act claim by alleging that prices are too low"); *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223, 113 S.Ct. 2578, 125 L.Ed. 168 (1993) ("exclusionary effect of prices above a relevant measure of cost either reflects

the lower cost structure of the [defendant], and so represents competition on the merits, or is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate price-cutting"); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 340, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) ("Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition. Hence, they cannot give rise to antitrust injury"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986) ("cutting prices in order to increase business often is the very essence of competition").

The Third Circuit has consistently refused to permit partial re-trials on damages alone where "the issues of liability and damages were so intertwined as to make a fair trial on damages alone impossible...." *See Pryer v. C.O. 3 Slavic*, 251 F.3d 448, 450 (3d Cir. 2001). Indeed, this Court denied a partial re-trial because a "partial new trial is appropriate *only* where the issue to be retried is sufficiently 'distinct and separable from the others that a trial of it alone may be had without injustice.'" *Harden v. Allstate Ins. Co.*, No. 93-513, 1996 WL 190013 at *4 (D. Del. Apr. 16, 1996) (quoting *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)) (emphasis added) (Robinson, J.). But here, that is not possible: ZFM did not ask the jury to identify the factual bases for its verdict and, as a result, we do not know whether the verdict was improperly based on Eaton's lawful, lower prices or other pro-competitive efforts. Nor do we know whether the verdict was improperly based on non-price conduct beyond that identified by the Third Circuit, and indeed the verdict contains no fact-findings demonstrating it was limited to the non-price conduct identified by the Third Circuit. Because a second jury would have to guess at what conduct the first jury considered anticompetitive and when the first jury thought that conduct caused antitrust injury, liability and damages are not "distinct and separable," and a

damages-only jury could not reach a verdict without "confus[ing] its responsibilities" with those of the first jury. *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 761 (3d Cir. 1977) (ordering a new trial on both liability and damages).

While it might have been theoretically possible for ZFM to answer those questions in a combined re-trial of liability and damages and to prove the links between specific types of non-price conduct identified by the Third Circuit, when that conduct caused ZFM antitrust injury, and what amount of damages resulted from that non-price conduct, that possibility is now lost because of DeRamus's decision to proffer damages based only on ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮. DeRamus's failure to disaggregate means he is unable to separate out and deduct losses caused by Eaton's lawful, lower prices and other competitive conduct (and by ZFM's own, self-inflicted wounds) from damages attributable to the non-price conduct found unlawful in the Third Circuit's opinion. Accordingly, a new trial is moot and ZFM's motion should be denied.

ZFM's cited cases do not change this analysis. For example, *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985), stands only for the general proposition that "the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." Here, the Third Circuit simply affirmed this Court's denial of judgment as a matter of law and remanded for this Court to consider whether DeRamus's alternate damages model passed muster under the Federal Rules of Evidence and *Daubert* and its progeny and whether any trial could proceed. *ZF Meritor*, 696 F.3d at 300-301. The Court did not rule on Eaton's alternative argument that any new trial would have to encompass both liability and damages (Eaton's Response/Reply Br. 12 n.2, 44 n.14), and it certainly did not mandate a damages-

only trial on remand. *Id.*[3]

Plaintiffs' citations to *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144 (3d Cir. 1993), and *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 813 (3d Cir. 1984), are also misplaced. Neither case concerned the situation here where (1) the verdict does not set out the factual predicates for the liability and antitrust injury finding, (2) a significant portion of the defendant's conduct that was challenged in the liability trial was upheld as pro-competitive on appeal, and (3) the plaintiffs' damages expert utterly fails to disaggregate the effects of the lawful conduct from damages attributable to the purported anticompetitive non-price conduct. Instead, in both cases, the plaintiffs properly limited their claimed damages to defendant's precise *anticompetitive* conduct. *E.g., Lower Lake Erie*, 998 F.2d at 1183 (the first jury "found that Wills had suffered damage to its property by the conspiracy" and the second jury was "limited to determining the amount of damages Wills incurred from acts taken in furtherance of the conspiracy"); *Bonjorno*, 752 F.2d at 813 (antitrust injury and damages were "of an indivisible nature" because "the liability jury properly found causation from *only* those acts which could evince the defendants' willful acquisition or maintenance of a monopoly") (emphasis added).

Here, that is not possible. The Third Circuit upheld Eaton's lower prices as pro-competitive pursuant to the Supreme Court's "safe harbor," and there is no way of determining whether the lawful prices or some non-price conduct (and, if the latter, which type(s) of non-price conduct) formed the basis for the first jury's liability finding and when, after March 28, 2002, it caused antitrust injury. Even if it were possible to make those determinations, however, ZFM is unable to provide the necessary proof linking that specific non-price conduct and anti-

---

[3] Because the Third Circuit remanded for this Court to decide whether there should be any new trial at all, Eaton's alternative argument regarding the scope of any such trial was not ripe for decision, and accordingly was left to be resolved by this Court on remand if the need arose. Of course, now that DeRamus has failed to disaggregate, the issue is moot.

13

trust injury to any quantification of damages from it. *Comcast* underscores precisely why this case should now be dismissed. ZFM has failed to link Eaton's non-price conduct, whatever it was and whenever it caused ZFM antitrust injury, with its claimed damages—which DeRamus instead attributes to the "totality" of Eaton's "aggregate" conduct, including its lawful, lower prices.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Donald E. Reid (Bar No. 1058)
1201 N. Market Street
P.O. Box 1347
Wilmington, DC 19899-1347
(302) 351-9219
DReid@MNAT.com

Joseph A. Ostoyich
Erik T. Koons
William C. Lavery
Evan A. Young
BAKER BOTTS LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
(202) 639-7700

Theodore B. Olson
Thomas G. Hungar
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 11101
(202) 955-8500

*Attorneys for Defendant
Eaton Corporation*

April 30, 2013