IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION,<br><br>         Plaintiffs,<br><br>    v.<br><br>EATON CORPORATION,<br><br>         Defendant. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 06-623-SLR<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

At Wilmington this 20th day of December, 2013, having reviewed defendant's motion for judgment as a matter of law, its motion to exclude opinion testimony of Dr. David W. DeRamus, and the papers filed in connection therewith, I issue my decision based on the following reasoning:

1. **Background.** The procedural history of this case is related in the decision of the United States Court of Appeals for the Third Circuit in *ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012). Of relevance to the pending motion, the Third Circuit concluded:

> First, we hold that Plaintiffs' claims are not subject to the price-cost test, and instead must be analyzed as *de facto* exclusive dealing claims under the rule of reason. Second, we conclude that Plaintiffs presented sufficient evidence to support the jury's finding that Eaton engaged in anticompetitive conduct and that Plaintiffs suffered antitrust injury as a result. Third, we find no error in the District Court's decision to admit DeRamus's testimony on the issue of liability. Fourth, we hold that the District Court properly exercised its discretion in excluding DeRamus' damages testimony based on his expert report, but **we conclude that the**

> **District Court abused its discretion by preventing DeRamus from submitting alternate damages calculations based on data already included in his initial report.** Finally, we hold that Plaintiffs lack standing to pursue injunctive relief, and therefore, we will vacate the injunction issued by the District Court. **We will remand to the District Court for further proceedings consistent with this opinion.**

*Id.* at 303 (emphasis added). Defendant filed its motions rather than proceed to trial on the issue of damages.

2. **Motion for judgment as a matter of law.** Defendant justifies its course of action based on the rationale that DeRamus' amended damages report "fails to separate out damages that resulted from Eaton's lawful, above cost prices from the non-price conduct identified by the Third Circuit as anticompetitive." (D.I. 311 at 9) Defendant goes on to argue that DeRamus' opinion "that Eaton's prices were 'not separable' from Eaton's non-price conduct . . . is flatly inconsistent with the Third Circuit's ruling which expressly differentiated between Eaton's price and non-price conduct." (*Id.*)

3. I disagree with defendant's characterization of the Third Circuit's opinion. Rather than "expressly differentiating between Eaton's price and non-price conduct," the Third Circuit merely rejected defendant's price-cost test, explaining that

> here, Plaintiffs do not allege that price itself functioned as the exclusionary tool. As such, we conclude that the price-cost test is not adequate to judge the legality of Eaton's conduct. Although prices are unlikely to exclude equally efficient rivals unless they are below-cost, exclusive dealing arrangements can exclude equally efficient (or potentially equally efficient) rivals, and thereby harm competition, irrespective of below-cost pricing. . . . Where, as here, a dominant supplier enters into *de facto* exclusive dealing arrangements with every customer in the market, other firms may be driven out not because they cannot compete on a price basis, but because they are never given an opportunity to compete, despite their ability to offer products with significant customer demand.

696 F.3d at 281 (citations omitted). As noted by the Third Circuit, "[a]lthough the Supreme Court has created a safe harbor for above-cost discounting, it has not established a *per se* rule of non-liability under the antitrust laws for **all** contractual practices that involve above-cost pricing." *Id.* at 278.

4. Contrary to defendant's contention, then, the Third Circuit by its decision did not mandate that plaintiffs "disaggregate business losses attributable to [defendant's] lawful lower prices." (D.I. 311 at 1) The Third Circuit simply recognized that, under the rule of reason, defendant's lower pricing was not "the clear driving force" behind defendant's anticompetitive conduct, but one of many factors to consider in the context of antitrust injury and damages. Defendant's motion for judgment as a matter of law is denied.

5. **Motion to exclude the expert opinion of Dr. DeRamus.** Once again I am being asked to consider whether the expert opinion of plaintiffs' expert should be excluded pursuant to Fed.R.Civ.P. 702 which, as described by the Third Circuit,

> imposes an obligation upon a district court to ensure that expert testimony is not only relevant, but reliable. . . . As we have made clear, "the reliability analysis [required by *Daubert*] applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." . . .

696 F.3d at 291 (citations omitted). Therefore, "[w]here proffered expert testimony's 'factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* at 294 (citations omitted).

6. Plaintiffs contest defendant's objections to Dr. DeRamus' opinion, and argue that such objections are procedurally barred by the doctrines of law of the case and/or waiver. I disagree. As noted by defendant, I made clear during the pretrial proceedings that the original DeRamus expert report was so poorly crafted that I only had the time and resources to review the most glaring of its problems prior to trial. As a general proposition, I did not find the methodologies utilized by Dr. DeRamus to be the issue under Rule 702 but, rather, that the assumptions and facts manipulated under such methodologies were not grounded in reality. (See, e.g., D.I. 309, appendix vol. 1, exs. 1 and 2) Moreover, the Third Circuit in its decision specifically declared that it was expressing "no opinion as to the reliability or admissibility of DeRamus' alternate damages calculations. That is a matter left to the District Court on remand." 696 F.3d at 300 n.28.

7. By the same token, however, I reject defendant's argument that the DeRamus opinion is fatally flawed because it fails to "disaggregate the losses attributable to Eaton's lawful, lower prices or other competitive efforts . . . from those attributable to Eaton's non-price conduct." (D.I. 309 at 27-28) As explained above, the Third Circuit found that pricing was not the driving force behind the anticompetitive effects of defendant's conduct, but was a factor among many that should be reviewed in a rule of reason analysis. As further recognized by the Third Circuit in *LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2002),

> [i]n *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 812 (3d Cir. 1984), this court stated that "[i]n constructing a hypothetical world free of the defendants' exclusionary activities, the plaintiffs are given some latitude in calculating damages, so long as their theory is not wholly speculative." *Id.* Once a jury has found that the unlawful activity caused the antitrust injury,

4

> the damages may be determined without strict proof of what act caused the injury, as long as the damages are not based on speculation or guesswork *Id.* at 813. The *Bonjorno* court noted that it would be extremely difficult, if not impossible, to segregate and attribute a fixed amount of damages to any one act as the theory was not that any one act in itself was unlawful, but that all the acts taken together showed a § 2 violation. *Id.*

*Id.* at 166. Consistent with the facts of record and the rule of reason analysis applied to those facts by the Third Circuit, I likewise find disaggregation unnecessary, if not impossible.

8. With respect to the remaining criticisms of Dr. DeRamus' amended expert report,[1] defendant contends that DeRamus improperly projects years of lost profits after the dissolution of plaintiff ZF Meritor LLC, and compounds such damages by then adding on a lost enterprise value. Defendant also argues that Dr. DeRamus' econometric model is unreliable because its variables "are not tethered to the record." (D.I. 309 at 19)

9. The United States Supreme Court has noted that "[t]rial and appellate courts alike must . . . observe the practical limits of the burden of proof which may be demanded of a treble-damage plaintiff who seeks recovery for injuries from a partial or total exclusion from a market; damages issues in these cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969). Nevertheless, damages may not be determined by "mere speculation or guess," *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931), but must be grounded at a minimum on assumptions that rest on "adequate bases." *Terrell v. Household Goods*

---

[1]The report is found at D.I. 309, appendix volume 1, ex. 5.

*Carriers' Bureau*, 494 F.2d 16, 24 (5th Cir. 1974).

10. In this regard, there is a wide ranging view among courts as to what constitutes an "adequate base." Defendant cites to *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000), for the proposition that,

> [i]n recent years the Supreme Court has put renewed emphasis on the importance of the "fit" of an expert's opinion to the data or facts in the case: . . . "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytic gap between the data and the opinion proffered."

*Id.* at 1055 (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). In concluding that the evidence presented by plaintiffs was insufficient to demonstrate antitrust injury, causation and damage, the court in *Concord Boat Corp. v. Brunswick Corp.* stated that the opinion of plaintiffs' expert "should not have been admitted because it did not incorporate all aspects of the economic reality of the stern drive engine market and because it did not separate lawful from unlawful conduct." 207 F.3d at 1057.[2]

11. I recognize that the decision in *Farmington Dowel Products Co. v. Forster Manufacturing Co.*, 421 F.2d 61 (1st Cir. 1970), is on all fours with the facts at bar. In that case, the court rejected plaintiff's method of calculating damages, which method

> would have required an estimate of profits for a period of some ten years during which the company neither existed nor made profits, plus an estimate of the 'going concern' value in 1968 of a company which had ceased being a going concern over ten years before, which estimate would have involved a further estimate of profits for a more remote future period.

---

[2]A careful reading of the decision reveals, however, that the focus of the court's opinion was "the expert's method of analysis related to antitrust liability," not damages. *Id.* at 1056.

> While we recognize, as did the district court, that the private antitrust litigant is not required to prove the amount of damages with any certainty . . . - the method urged by [plaintiff], at least as applied to this case, relies too heavily on speculation and conjecture, particularly concerning the determination of 'going concern' value so long after the company ceased to be a going concern.

*Id.* at 81 (citations omitted).

12. In contrast to the above analysis is that found in *Terrell v. Household Goods Carriers' Bureau*, with the court providing the following explanation for its decision on damages:

> To deny recovery to a businessman who has struggled to establish a business in the face of wrongful conduct by a competitor simply because he never managed to escape from the quicksand of red ink to the dry land of profitable enterprise would make a mockery of the private antitrust remedy. . . .
>
> Particularly is the calculation of damages difficult when the future profits of an enterprise as young as [plaintiff's] must be determined, since there is no reliable track record to look back on. But uncertainty cannot end the efforts of the federal courts to redress the harm caused proprietors by violations of the freedom of the marketplace. The wrongdoer must bear the risk of the uncertainty in measuring the harm he causes.

494 F.2d at 23, n.12. In that case, the court concluded that, because the expert's estimates rested on facts that, although in dispute, could support the assumptions upon which the estimates were based, the expert testimony was properly admitted by the trial court.[3]

13. In reviewing Dr. DeRamus' amended report in the context of a finding of antitrust injury, I decline to exclude such evidence, as his approach generally has

---

[3] The court also noted that the factual disputes between the parties were presented to the jury and defendant had had ample opportunity to discredit plaintiffs' expert and his reasoning.

7

support in the law and in the record. In the first instance, defendant overstates its argument regarding the time frames for damages selected by Dr. DeRamus. There can be no dispute that a plaintiff injured by anticompetitive practices may recover lost profits while in business, and "going concern" value as of the date the business terminated, with the going concern value representing "the value which the business would have had at that time but for [the defendant's] illegal actions." *Farmington*, 421 F.2d at 81. Plaintiffs assert that Meritor Transmission continued in the market into 2007 and that, based on case law,[4] plaintiffs should be able to extend the time frame for lost profits until a date at or near trial (February 2009), with a going concern value calculated from that date.

14. Despite defendant's protestation to the contrary, the case law relied on by defendant does not directly refute this approach. The court in *Farmington* acknowledged that the method urged by plaintiff, "as applied to this case," "relie[d] too heavily on speculation and conjecture, particularly concerning the determination of 'going concern' value so long [ten years] after the company ceased to be a going concern." 421 F.2d at 81. Likewise, the issue in *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 559 F. Supp. 922, 936-37 (E.D. Pa. 1983), was whether the continued operation of plaintiff's business beyond the damage period barred recovery for future loss of profits as a going concern. Finally, although the "going concern" value in *Eiberg v. Sony Corp.*, 622 F.2d 1068, 1081 n.25 (2d Cir. 1980), was calculated as of the date the business ceased operations, the court was not asked to address the scenario

---

[4]*See Southern Pines Chrysler-Plymouth, Inc. v. Chrysler Corp.*, 826 F.2d 1360, 1363-64 (4th Cir. 1987).

8

presented instantly. I conclude from the above that Dr. DeRamus' calculations, based on his time frame, are not invalid as a matter of law.

15. With respect to the remainder of defendant's objections, I acknowledge that Dr. DeRamus did not factor into his econometric model all the potentially relevant variables that defendant identifies, and bases his projections as much on defendant's success in the market as plaintiffs' lack luster track record before dissolution. Nevertheless, consistent with the "generous principle[s]" that apply to the calculation of damages by antitrust plaintiffs, especially those whose businesses were new when they suffered antitrust injury, I conclude that the remaining objections can be vetted through discovery and are fodder for cross-examination at trial. In sum, defendant's motion to exclude the opinion testimony of Dr. DeRamus is denied.

16. An appropriate order shall issue.

_____
United States District Judge