# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>EATON CORPORATION, )<br>)<br>Defendant. )<br>) | C.A. No. 06-623-SLR |

**DEFENDANT EATON CORPORATION'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, MOTION *IN LIMINE* TO EXCLUDE ARGUMENT AND
EVIDENCE OF A PORTION OF PLAINTIFFS' ALLEGED DAMAGES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Donald E. Reid (#1058)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 351-9219
dreid@mnat.com
*Attorneys for Defendant*
*Eaton Corporation*

OF COUNSEL:

Alfred C. Pfeiffer, Jr.
Sarah M. Ray
Andrew M. Gass
LATHAM & WATKINS LLP
505 Montgomery St.
San Francisco, CA 94107

Dan K. Webb
Robert F. Ruyak
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

Joseph A. Ostoyich
BAKER BOTTS LLP
The Warner
1299 Pennsylvania Ave., NW
Washington, D.C. 20004-2400

April 22, 2014

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE NATURE AND STATE OF THE PROCEEDINGS ............................. 1

SUMMARY OF ARGUMENT .................................................................................................. 1

RELIEF REQUESTED ............................................................................................................. 3

STATEMENT OF FACTS ......................................................................................................... 3

ARGUMENT .............................................................................................................................. 4

I.  PLAINTIFFS' DAMAGES CALCULATION UNLAWFULLY INCLUDES
    BOTH FUTURE LOST PROFITS AND LOST ENTERPRISE VALUE ........................ 5

II. MERITOR TRANSMISSION CORP. HAS NO DAMAGES CLAIM ............................ 9

CONCLUSION ......................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albrecht v. Herald Co.*,
   452 F.2d 124 (8th Cir. 1971) ................................................................6

*Coastal Fuels of Puerto Rico v. Caribbean Petroleum Corp.*,
   175 F.3d 18 (1st Cir. 1999) ................................................ 1, 2, 5, 7, 8

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000) ................................................................5

*Farmington Dowel Prods. v. Forster Mfg. Co.*
   421 F.2d 61 (1st Cir. 1969) ................................................................8

*Heatransfer Corp. v. Volkswagenwerk, A.G.*,
   553 F.2d 964 (5th Cir. 1977) ................................................................8

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
   465 F.Supp.2d 312 (D. Del. 2006) ........................................................5

*LBL Skysystems (USA), Inc. v. APG-Am., Inc.*,
   319 F.Supp.2d 515 (E.D. Pa. 2004) ......................................................5

*Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*,
   791 F.2d 1356 (9th Cir. 1986) ............................................................6

*P.C. Data Centers of Pa., Inc. v. Fed. Express Corp.*,
   113 F.Supp.2d 709 (M.D. Pa. 2000) ....................................................5

*Southern Pines Chrysler-Plymouth, Inc. v. Chrysler Corp.*,
   826 F.2d 1360 (4th Cir. 1987) ............................................................8

*ZF Meritor LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012) ................................................................1

**Other Authorities**

American Bar Association, *Antitrust Law Developments (Seventh)* (2012) ..............................6, 7

P. Areeda & P. Hovenkamp, *Fundamentals of Antitrust Law* (2012) ......................................6, 8

P. Areeda & D. Turner, *Antitrust Law* (1978) ..........................................................6

**Rules and Statutes**

Federal Rule of Evidence 402..........................................................................5

Federal Rule of Evidence 403........................................................................................................5

Federal Rule of Evidence 702........................................................................................................5

Federal Rule of Civil Procedure 56................................................................................................5

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Defendant Eaton Corporation ("Eaton") files this Motion pursuant to the Court's April 15, 2014 Order "permit[ting] defendant to file a motion to ensure that plaintiffs' damages model is consistent with the law." *See* Docket No. 356.[1]  A comprehensive description of this case and its procedural history appears in *ZF Meritor LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012). The litigation is currently back before the District Court on remand from the Third Circuit, with a "damages phase" jury trial scheduled to begin on June 23, 2014.  *See* March 7, 2014 Order, Docket No. 351.

## SUMMARY OF ARGUMENT

1.      Plaintiffs' damages calculation is inconsistent with the law because it improperly combines two forms of claimed harm that are mutually exclusive under prevailing law.  For the period after their joint venture ("ZF Meritor" or the "JV") indisputably went out of business in 2003, plaintiffs may claim *either* future lost profits that ZF Meritor would have earned, *or* the enterprise value of the JV—"but not both."  *See Coastal Fuels of Puerto Rico v. Caribbean Petroleum Corp.*, 175 F.3d 18, 27 (1st Cir. 1999).  If the law were otherwise, plaintiffs could always artificially (and opportunistically) inflate their damages, as plaintiffs have done here. Indeed, their damages model does *exactly* what the law forbids: it projects (a) lost profits for six years after the JV left the market, and (b) compensation for the JV's "but for" value as a "going concern" after those six years elapsed.  Precedent unambiguously precludes this approach.

---

[1]      The Court's order allows Eaton to file only a ten-page brief.  In light of that limitation, Eaton does not understand the order to require Eaton to repeat all past objections to plaintiffs' damages model to preserve such objections for any appeal.

2.      The fact that the "going concern" valuation is dated 2009 rather than 2003 makes the problem worse, not better.  For one thing, as courts have held, the appraisal thus becomes inherently speculative as a matter of law, because it assesses the "but for" market worth of a company based on six years of imagined and hypothetical growth, rather than the "but for" market worth of the company at the time of its exit from the market.  And as a practical matter, bumping out the "going concern" valuation date only *augments* one of the two mutually exclusive forms of relief plaintiffs have sought.  It would be bad enough for plaintiffs to assert both a "going concern" claim and a "future lost profits" claim as of 2003, when the JV folded. But plaintiffs' asserting both a "future lost profits" claim and a claim for the "but for" value of the JV as of *2009* only serves to inflate the value of the JV compared with what it would have been in 2003.  In other words, the ostensible "work-around" plaintiffs have offered to circumvent the well-settled rule—that only one of these two forms of relief is available—simply has the effect of making one of the two claims *bigger*, even as plaintiffs continue to pursue the other one as well.

3.      Courts have condemned precisely the tactic plaintiffs pursue here, on precisely these grounds.  *Coastal Fuels*, for example, confronted a damages analysis structured identically to what plaintiffs now propose, and reversed the trial court's decision to allow it.  *See* 175 F.3d at 26.  The panel concluded that as a matter of law, "lost profits were limited to the period [plaintiff] was actually in business and going-concern value should have been calculated as of the date [plaintiff] went out of business"; plaintiffs could not pick a valuation date several years later, on top of a period of post-dissolution projected lost profits.  *See id*.  That is exactly what plaintiffs are trying to do in this case.  If *Coastal Fuels* is right, then plaintiffs here are wrong.

4.     In the past, plaintiffs have attempted to deflect attention from the glaring doctrinal flaws in their post-2003 damages case by pointing to the fact that Meritor Transmission Corp.—the other plaintiff here beside the JV—entered the market after the JV exited.  It is indeed true that from 2004 to 2007, Meritor Transmission Corp. served as a reseller of transmissions manufactured by the JV's other parent company, non-party ZF Freidrichschafen AG ("ZF AG"). Plaintiffs, however, have failed to offer any damages model that even purports to measure the performance of Meritor's separate business in the "but for" world.  Nor could they do so.  The existing JV damages analysis precludes any Meritor damages; plaintiffs' theory is that the JV itself would have thrived in the but-for world, in which case Meritor would not have entered the market as an independent reseller at all.  Meritor Transmission Corp. is substantially irrelevant to plaintiffs' damages model, and plaintiffs therefore cannot use it as a means of artificially inflating the damages they do allege.

## RELIEF REQUESTED

Eaton thus seeks an order of partial summary adjudication, or in the alternative, evidentiary preclusion, such that (1) plaintiffs may not present their damages claim seeking both lost profits past 2003 and any "going concern" value; and (2) plaintiffs, having adduced no evidence of or claim for damages to Meritor Transmission Corp., may offer none at trial.

## STATEMENT OF FACTS

All of the operative facts here are undisputed.  Plaintiff Meritor Transmission Corp. and non-plaintiff ZF AG launched the ZF Meritor joint venture in 1999.  *See* Appendix ("App.") Ex. A at 10 (App_0015).  The JV exited the market in late 2003.  *See* Pl.'s Answering Br. in Opp. to Def.'s Mot. to Exclude Opinion of Dr. David. W. DeRamus, Docket No. 318, at 19.  Shortly thereafter, in early 2004, Meritor Transmission Corp. began importing from ZF AG and reselling

in the U.S. transmissions originally developed by the JV. *Id.* Meritor Transmission Corp. itself went out of business no later than 2007. *See id.* at 3.

Plaintiffs' expert, Dr. David DeRamus, calculates two different components of damages, which he adds together. First, he uses a "lost profits" method to calculate both *historical* damages plaintiffs claim they suffered while the JV was in business, and *forward-looking* damages plaintiffs claim they would have sustained, for six years into the future after the JV went out of business in 2003. *See* App. Ex. B at 30-34 (App_0227-31). The value of the historical lost profits—covering the period from April 2002 through 2003—in DeRamus's various calculations is relatively small: it ranges from a high of around $42 million to a low that is below $0 (because in one permutation of his analysis, plaintiffs would have had to incur additional costs greater than lost profits in order to satisfy the projected increase in demand in the "but for" world). *See id.* at 32 (App_0229) (Table 3, sum of lower left two cells), 33 (App_0230) (Table 5, sum of left two cells in middle row). DeRamus's forward-looking lost profits, *i.e.*, those projected out from the JV's actual exit in 2003, are much bigger. They range from a high of around $337 million to a low of around $145 million. *See id.* at 32 (App_0229) (Table 3, difference of lower right cell and lower left two cells), 33 (App_0230) (Table 5, middle row right cell).

On top of those historical and forward-looking lost profits, DeRamus also adds a second component, a "going concern" value for the JV that he labels "lost enterprise value." That value is bigger yet and, he says, ranges from a minimum of $244 million to around $416 million. *See id.* at 35 (App_0232) (Tables 7(a)-(c), right column). He purports to conduct the valuation based on the but-for market value of the enterprise in 2009. *See id.* at 24 (App_0221).

## ARGUMENT

As a matter of law, for the period after the JV exited the market in 2003, plaintiffs cannot claim *both* projected lost profits *and* lost enterprise value.  Eaton respectfully seeks a summary adjudication order declaring (1) that the post-2003 portion of plaintiffs' damages case flouts the well-established legal principles governing damages in antitrust cases, and that as a result, plaintiffs may pursue only the damages they have asserted for the period until the JV dissolved and (2) that Meritor Transmission Corp. may not pursue a claim for damages, since plaintiffs never presented one.  *See* Fed. R. Civ. Proc. 56; *Inline Connection Corp. v. AOL Time Warner, Inc.*, 465 F.Supp.2d 312, 315 (D. Del. 2006) ("Summary judgment is proper if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.") (quotation marks omitted); *P.C. Data Centers of Pa., Inc. v. Fed. Express Corp.*, 113 F.Supp.2d 709, 722 (M.D. Pa. 2000) (granting defendant partial summary judgment on a portion of plaintiff's damages claim); *LBL Skysystems (USA), Inc. v. APG-Am., Inc.*, 319 F.Supp.2d 515, 525 (E.D. Pa. 2004) (same).  In the alternative, Eaton respectfully seeks an order precluding plaintiffs from offering any expert testimony or other evidence at trial regarding damages in the post-2003 period or any financial losses or other damages allegedly suffered by Meritor alone. *See* Fed. R. Evid. 402, 403, 702; *Elcock v. Kmart Corp.*, 233 F.3d 734, 754-55 (3d Cir. 2000) (excluding damages evidence related to faulty calculation regarding projected future earnings).

## I.     PLAINTIFFS' DAMAGES CALCULATION UNLAWFULLY INCLUDES BOTH FUTURE LOST PROFITS AND LOST ENTERPRISE VALUE

In an antitrust case, "[w]here the plaintiff has been forced out of business ... it is awarded its going-concern value or its projected future lost profits, *but not both*."  *Coastal Fuels*, 175 F.3d at 27 (emphasis added).  Circuit courts have repeatedly mandated this rule.  *See, e.g.*, *Los*

*Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1374 (9th Cir. 1986) ("[A] plaintiff's damages consist of either its lost profits caused by the antitrust violation or the value of the business that it is deprived of by the defendant's illegal conduct.  One injured by an antitrust violation may not recover both measures of relief ....  *To award both future profits and the value of the business ... would constitute a double recovery*.") (emphasis added); *Albrecht v. Herald Co.*, 452 F.2d 124, 129-30 (8th Cir. 1971) (collecting cases "which allow the plaintiff to recover the going-concern value of his business, but not future profits in addition"). And all of the leading antitrust law treatises endorse the doctrine.  As the American Bar Association's ("ABA's") leading treatise, *Antitrust Law Developments*, explains:

> The going concern value generally should be calculated on the date the plaintiff goes out of business unless economic justifications, such as temporary market instability, require a different date to be used.  Because going concern value is the present value of lost future profits, a plaintiff may not recover both[.]

ABA, 1-9 *Antitrust Law Developments* (Seventh) 9C; *see also* P. Areeda & D. Turner, *Antitrust Law* (1978) at 234; P. Areeda & P. Hovenkamp, *Fundamentals of Antitrust Law* ("*Fundamentals of Antitrust*") § 3.06b ("Of course, both future profits and going concern value may not be granted in a given case, for that would be double counting.").  Plaintiffs in this case have asserted "both future profits and going concern value."  *Fundamentals of Antitrust* § 306.b; App. Ex. B. at 30-31 (App_0227-28).  These two remedies "may not be granted" together.  *Id.*

There is no exception to this rule for a damages calculation structured like plaintiffs' here, which *first* asserts a "future profits" claim for six years following the business's exit from the market, and *then* asserts a "going concern" claim as of that later date, six years out.  In

practice, doing so serves only to make the "going concern" claim *bigger*.[2]  If it were possible to

sidestep the rule against claiming both future lost profits and lost enterprise value just by

strategically delaying the lost enterprise value calculation and thereby asserting *greater* damages,

plaintiffs would routinely deploy this gambit and the rule against recovering both would be a

dead letter.  *Cf.* ABA, *Antitrust Law Developments* at 9C ("The going concern value generally

should be calculated on the date the plaintiff goes out of business[.]") (collecting cases).

That is why, when plaintiffs have attempted this precise maneuver in the past, courts have

quashed it.  *Coastal Fuels* is squarely on-point.  Plaintiff Coastal Fuels of Puerto Rico won a

variety of antitrust claims before a jury, the case went up on appeal, and the First Circuit

remanded for a new trial on damages.  *Coastal Fuels*, 175 F.3d at 20.  On remand, "[t]he trial

court essentially set three damages periods: (a) damages until Coastal went out of business in

1993; (b) damages from 1993 until the time of the 1998 trial; and (c) Coastal's going-concern

value as of the 1998 trial."  *Id.* at 26.  Plaintiffs won a substantial award, defendants appealed

again, and the First Circuit reversed, holding: "We find that the court erred [because cognizable]

lost profits were limited to the period Coastal was actually in business and going-concern value

should have been calculated as of the date Coastal went out of business."  *Id.*  In other words,

category (a) was fine, but categories (b) and (c) were mutually exclusive; plaintiff could not

pursue both.  *Id.* at 27.  And any enterprise value calculation, like the value of any asserted future

lost profits, had to be calculated as of the time the company actually went out of business, to

---

[2]     In the present litigation, this is so because plaintiffs' enterprise valuation model "start[s] with current earnings, and then multipl[ies] these earnings by an appropriate valuation multiple."  App. Ex. B at 25 (App_0222).  In plain English, the 2009 enterprise value they assert is the product of years of projected market share gains they have predicted from 2003 to 2009, when, according to DeRamus's model, the JV's share of North American HD transmission sales would have grown from (an already fanciful) 18.6% of the market to a high of 29.9%.  *See* App. Ex. B at 32 (App_0229), Table 2.

reflect "what a willing buyer would have paid" *then*, rather than later.  *Id.* at 30.  Delaying the "going concern" valuation by five years from the date the company actually folded was, *inter alia*, "*excessively speculative.*"  *Id.* at 27 (emphasis added).

The parallels to the present litigation are inescapable.  Plaintiffs have attempted to do *exactly* what the trial court in *Coastal Fuels* allowed, which the Court of Appeals subsequently found to be reversible error.  The same thing happened in *Farmington Dowel Prods. v. Forster Mfg. Co.* 421 F.2d 61, 81 (1st Cir. 1969) (rejecting damages theory that "would have required an estimate of profits for a period of some ten years during which the company neither existed nor made profits plus an estimate of the 'going concern' value in 1968 of a company which had ceased being a going concern over ten years before").  The law forbids a plaintiff from tacking on a lost enterprise valuation at the end of a long stream of future lost profits, based on expansive predictions of market share gains, and claiming both forms of relief.  *See Heatransfer Corp. v. Volkswagenwerk, A.G.*, 553 F.2d 964, 986 n.20 (5th Cir. 1977) ("Lost capital value is to be determined at the date that a business ceases to do business.").[3]

---

[3]      Courts and treatise authors discussing these issues occasionally cite *Southern Pines Chrysler-Plymouth, Inc. v. Chrysler Corp.*, 826 F.2d 1360, 1363-64 (4th Cir. 1987), as a conflicting precedent.  *See, e.g., Coastal Fuels*, 175 F.3d at 27 (citing *Chrysler-Plymouth* with a "*but see*" signal); *Fundamentals of Antitrust* § 306.b (asserting that *Chrysler-Plymouth* "incorrectly award[ed] damages for both the going concern value of the business ... and lost profits for ... subsequent years").  To the extent of any conflict, the approach embraced in *Coastal Fuels* and *Farmington Dowel* and endorsed by all of the treatises is plainly the sensible one.  But in reality, even *Chrysler-Plymouth* does not permit the ploy plaintiffs attempt here.  On the unique facts of that case, the court simply allowed a less-than-two-year delay in the calculation of enterprise value, on top of lost profits during that time reflecting "meager results" for the affected businesses, where the overall damages theory was "quite conservative," under causes of action that were not antitrust claims.  Whether or not the *Chrysler-Plymouth* approach might be justified in such circumstances, those circumstances look nothing like the facts here.

## II.   MERITOR TRANSMISSION CORP. HAS NO DAMAGES CLAIM

Plaintiffs try to create confusion about their impermissibly duplicative, inflated, and speculative damages calculation by alluding to the fact that, after the JV went out of business, Meritor Transmission Corp. for a while acted as a reseller of transmissions made by ZF AG. That, however, cannot help plaintiffs evade the rule against claiming both future lost profits and going concern value. ZFM and Meritor Transmission Corp. are indisputably separate legal entities. Plaintiffs have never submitted any damages analysis that analyzes the "but for" lost profits of Meritor Transmission Corp. in the reseller business (let alone any claimed lost enterprise value of Meritor Transmission Corp.). Plaintiffs' only damages model assesses the "but for" performance of the JV. Meritor's own independent market activity is substantially irrelevant to that model and the flaws it contains. To avoid any jury confusion, Eaton respectfully asks the Court to preclude any claim for damages allegedly sustained by Meritor and any testimony regarding such damages.

Out of an abundance of caution, we note here some of the reasons why plaintiffs' existing damages model can only be measuring harm to the JV, not harm to Meritor Transmission Corp. First, the JV's own strategic business plan was the "keystone" of DeRamus's original damages report. *See* Memorandum Opinion, Aug. 20, 2009 (Docket No. 144) at 6. If plaintiffs now claimed that the amended report somehow measures the "but for" performance of a fundamentally different plaintiff, they would be conceding that they have exceeded the scope of continued litigation permitted under the terms of the Third Circuit's remand. *See* 696 F.3d at 300 n.28. Second, purely as a logical matter, plaintiffs' "lost enterprise" claim necessarily addresses just the JV, and not the JV in combination with some other "enterprise"; it would be incoherent to suggest that this portion of DeRamus's model measures the "value" of some

amalgamation of two legally and factually distinct businesses.  Third, the projected costs and margins in plaintiffs' profit margin calculations are those of a manufacturer, not a reseller.  *See, e.g.*, App. Ex. A at 144 (App_0149) (table including "manufacturing cost").

More fundamentally, the entire premise of plaintiffs' damages theory is that but for Eaton's conduct, the JV would have thrived.  Yet if that were true, Meritor Transmission Corp. would never have entered the market as a transmission reseller at all.  Conversely, with Meritor Transmission Corp. in the market as a reseller, the JV's sales—and by extension its lost profits and enterprise value as calculated by Dr. DeRamus—would necessarily have been lower.  That likely explains why plaintiffs never offered any lost profits analysis based on Meritor's reseller financial data, or any assessment of the "enterprise value" of Meritor Transmission Corp. at the time it stopped reselling transmissions in 2007.  Had they tried to claim such damages for both Meritor and the JV, that attempt would necessarily have rested on the false supposition that both would have been in the market at the same time—which would have presented another clear double-counting problem.

Because plaintiffs do not and cannot seek any damages on behalf of Meritor Transmission Corp., its reseller experience is substantially irrelevant to both the damages analysis they have actually offered and the legal challenges to that analysis presented in this brief.  Eaton thus respectfully seeks summary judgment and/or an order excluding testimony regarding harm to Meritor Transmission Corp.

## CONCLUSION

For the foregoing reasons, Eaton respectfully seeks an order barring plaintiffs from pursuing post-2003 damages and the other relief sought herein.

April 22, 2014                                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                                  */s/ Donald E. Reid*
                                                  Donald E. Reid (#1058)
                                                  1201 N. Market Street
                                                  P.O. Box 1347
                                                  Wilmington, DE 19801
                                                  (302) 351-9261
                                                  dreid@mnat.com
                                                       *Attorneys for Defendant*
                                                       *Eaton Corporation*

## CERTIFICATE OF SERVICE

I, Donald E. Reid, hereby certify that on the 22nd day of April, 2014, a copy of

Defendant Eaton Corporation's Memorandum of Points and Authorities in Support of Motion for

Partial Summary Judgment or, in the Alternative, Motion in Limine to Exclude Argument and

Evidence of a Portion of Plaintiffs' Alleged Damages was served by electronic filing on the

following counsel of record:

Joseph C. Schoell, Esquire
Drinker Biddle & Reath LLP
1100 North Market Street
Suite 1000
Wilmington, DE 19801

Jennifer Hackett
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, DC  20006

*/s/ Donald E. Reid*
Donald E. Reid (#1058)