IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ZF MERITOR LLC and MERITOR )
TRANSMISSION CORPORATION, )
)
)
Plaintiffs, )    C.A. No. 06-623-SLR
)
v. )
)
EATON CORPORATION, )
)
Defendant. )
)

**DEFENDANT EATON CORPORATION'S REPLY
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OR,
IN THE ALTERNATIVE, MOTION *IN LIMINE* TO EXCLUDE ARGUMENT AND
EVIDENCE OF A PORTION OF PLAINTIFFS' ALLEGED DAMAGES**

MORRIS, NICHOLS, ARSHT & TUNNEL LLP
Donald E. Reid (#1058)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 351-9219
dreid@mnat.com
*Attorneys for Defendant
Eaton Corporation*

OF COUNSEL:

Alfred C. Pfeiffer, Jr.                Dan K. Webb
Sarah M. Ray                           Robert F. Ruyak
Andrew M. Gass                         WINSTON & STRAWN LLP
LATHAM & WATKINS LLP                   35 W. Wacker Drive
505 Montgomery St.                     Chicago, IL 60601-9703
San Francisco, CA 94107

                                       Joseph A. Ostoyich
                                       BAKER BOTTS LLP
                                       The Warner
                                       1299 Pennsylvania Ave., NW
                                       Washington, D.C. 20004-2400

May 8, 2014

# TABLE OF CONTENTS

|   |   | Page(s) |
|---|---|---|
| INTRODUCTION | | 1 |
| I. | POST-EXIT LOST PROFITS AND "GOING CONCERN" VALUE ARE MUTUALLY EXCLUSIVE REMEDIES AS A MATTER OF LAW | 2 |
| II. | PLAINTIFFS' DAMAGES CASE MEASURES ALLEGED LOST PROFITS AND LOST ENTERPRISE VALUE OF THEIR JOINT VENTURE ALONE | 4 |
| CONCLUSION | | 5 |

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Bonjorno v. Kaiser Aluminum & Chemical Corp.*,
    752 F.2d 802 (3d Cir. 1984) ................................................................................. 3

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*,
    175 F.3d 18 (1st Cir. 1999) .......................................................................... 1, 2, 3, 4

*Farmington Dowel Prods. v. Forster Mfg. Co.*,
    421 F.2d 61 (1st Cir. 1969) ............................................................................. 1, 3, 4

*Southern Pines Chrysler-Plymouth, Inc. v. Chrysler Corp.*,
    826 F.2d 1360 (4th Cir. 1987) .............................................................................. 3, 4

**OTHER AUTHORITIES**

Areeda & Hovenkamp, *Fundamentals of Antitrust* (2012) § 3.06b, n. 64 ..................... 3

# INTRODUCTION

Both parties agree that plaintiffs' joint venture ("JV") exited the market in 2003. Given that undisputed fact, the law allowed plaintiffs to seek either future lost profits the JV allegedly would have earned, *or* the "but-for" "going concern" value of the JV calculated as of 2003. They cannot claim future lost profits from 2003 to 2009, and then on top of that also claim a "going concern" value appraised as of 2009, tied to the market share plaintiffs speculate their business *would have* earned for six years after the JV actually ended. On every past occasion when a plaintiff has pursued this tactic, using a similarly structured damages model, the court has ruled that it is unlawful because it massively and speculatively inflates asserted damages beyond any reasonable measure. Eaton merely seeks application of that established legal principle.

Neither of plaintiffs' two principal opposing arguments actually addresses Eaton's point. First, they repeatedly assert that "a plaintiff injured by anticompetitive practices may recover lost profits *while in business*, and 'going concern' value as of the date the business terminated." Opp. at 2, 7. But that is a straw man; everyone agrees with it. Here, the dispute concerns what happens *after* the JV exited the market. At that point, as a matter of law, the two forms of relief—future lost profits and enterprise value—are mutually exclusive. *See Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 175 F.3d 18, 27 (1st Cir. 1999) ("Where plaintiff has been forced out of business ... it is awarded its going-concern value or its projected lost profits, but not both."); *Farmington Dowel Prods. v. Forster Mfg. Co.*, 421 F.2d 61, 81 (1st Cir. 1969). Plaintiffs have no answer to *Coastal Fuels*—indeed, plaintiffs cannot cite a single case where a court allowed a party to estimate a company's going concern value many years after that company indisputably exited the market.

Second, plaintiffs obfuscate. They suggest that because Meritor Transmission Corp., rather than the JV, separately sold or "marketed" transmissions for three years after the JV exited, their

1

damages case is somehow inoculated against the *Coastal Fuels* doctrine. *See* Opp. at 3-6. Eaton's Motion, however, challenges plaintiffs' *damages analysis*. The only relevant market exit date is thus the date of exit *by the entity that is the subject of plaintiffs' damages analysis*. Plaintiffs never contest that conceptual point (nor could they). Instead, they try to ignore that Dr. DeRamus's reports do in fact (and as a logical matter must) estimate damages to the JV alone, not damages to Meritor Transmission Corp.

These are not issues for cross examination; they present pure questions of law. And if the Court agrees that plaintiffs' damages model measures purported harm only to the JV, then plaintiffs offer no reason to deny this Motion: (1) there can then be no dispute that the only *relevant* entity exited the market in 2003 (not 2007); (2) *Coastal Fuels* governs this issue; and (3) a significant portion of plaintiffs' damages case is unlawful. So everything here turns on plaintiffs' bizarre contention that their damages model somehow addresses the "lost enterprise value" of two different enterprises simultaneously, when the central logical premise of their analysis is that only one—the JV—would have existed in the "but for" world.

Granting Eaton's Motion would not end this case. There is no dispute that plaintiffs' asserted lost profits before the JV's exit – a portion of plaintiffs' damages worth tens of millions of dollars – is consistent with the legal doctrine at issue. Opening Br. at 4. But even an order precluding plaintiffs from pursuing the "lost enterprise value" portion of their post-exit damages would eliminate $243 to $415 million of speculative, legally impermissible asserted damages.

## I. POST-EXIT LOST PROFITS AND "GOING CONCERN" VALUE ARE MUTUALLY EXCLUSIVE REMEDIES AS A MATTER OF LAW

The linchpin of plaintiffs' position—that it may bump out a "going concern" valuation by six years from market exit, in an attempt to claim both that form of relief and lost profits over the intervening time—fails as a matter of law.

That theory is the same one that the *Coastal Fuels* court considered and rejected. There, "[a]n antitrust plaintiff" sought to "recover both lost profits and lost enterprise value," asserting non-overlapping time periods for the two forms of relief. *See* 175 F.3d at 26. The trial court erred by allowing the plaintiff to do so. *Id.* at 30. Antitrust plaintiffs are, the panel held, "confined ... to the lost profits up until the date [they] went out of business plus the going-concern value on that date. It follows that lost profits beyond [that date] cannot be awarded separately. ... [A plaintiff] may not recover both going-concern value and lost profits after that date." *Id.* This is black-letter law. *See also Farmington Dowel*, 421 F.2d at 81.

To avoid this clear rule, plaintiffs try to cast *Coastal Fuels* and *Farmington Dowel* as merely analyzing the degree of "speculativeness" a damages model presents. But even if "speculativeness" were the test, plaintiffs' model surely fails. It purports to measure the "going concern" value of an enterprise at a time when it had not existed for more than half a decade and based on data from a separate company that would not even have existed in plaintiffs' "but for" world. That is far worse than what plaintiffs in *Coastal Fuels* attempted, where the court ruled that even a few-years gap was precluded as a matter of law. *See* 175 F.3d at 26.

Unable to distinguish *Coastal Fuels*, plaintiffs suggest that this Court should ignore it and follow *Southern Pines Chrysler-Plymouth, Inc. v. Chrysler Corp.*, 826 F.2d 1360, 1361 (4th Cir. 1987), instead. Opp. at 10. But *Chrysler-Plymouth* is not even an antitrust case, and thus has no relevance to the intricate and long-established body of law governing damages calculations in Sherman Act disputes where the plaintiff exited the market before trial. *See* 826 F.2d at 1363; *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 752 F.2d 802, 813 (3d Cir. 1984).[1] Furthermore,

---

[1] *Chrysler-Plymouth* has also been expressly condemned, as far as we know, by every commentator and treatise to have addressed it. *See, e.g.*, Areeda & Hovenkamp, *Fundamentals of Antitrust* (2012) § 3.06b, n. 64 (characterizing *Chrysler-Plymouth* as "incorrectly awarding damages for

the going concern value there was calculated less than two years after the business entered liquidation proceedings. *Id.* at 1362. And it addressed a "conservative" damages approach that was "favorable to Chrysler," the defendant; it looked nothing like the $800 million boondoggle sought here—for a company that never actually turned a profit. *See id.* at 1364. In short, plaintiffs' damage model fails even under *Chrysler-Plymouth* and is irreconcilable with the only cases directly on point: namely, *Coastal Fuels* and *Farmington Dowel*.

## II. PLAINTIFFS' DAMAGES CASE MEASURES ALLEGED LOST PROFITS AND LOST ENTERPRISE VALUE OF THEIR JOINT VENTURE ALONE

Plaintiffs spend pages arguing an irrelevant fact that Eaton does not dispute for the purpose of this motion: namely that Meritor Transmission Corp. participated in the market from 2004 to 2007. *See* Opp. at 3-6. The relevant question is not whether that happened. It is what effect that has on plaintiffs' damages analysis challenged here. And the answer is none. Plaintiffs' alleged damages purport to measure how well their JV (ZF Meritor) would have performed but for Eaton's conduct. The entire premise of their damages theory is that ZF Meritor would have remained in business and done *exceptionally* well. In that "but for" world—a world in which ZF Meritor earned a nearly 30% market share (up from a real-world high in the low teens)—plaintiff Meritor Transmission Corp. would not have entered the market at all. No part of plaintiffs' damages model purports to analyze how well Meritor Transmission Corp. would have done but for Eaton's conduct because, according to plaintiffs' theory, but for Eaton's conduct, Meritor Transmission Corp. would have sold *zero* transmissions after 2003.

---

both the going concern value of the business ... and lost profits"). Nine cases have cited it, none followed it for the proposition plaintiffs invoke here, and one—*Coastal Fuels*—considered and rejected it. *See* 175 F.3d at 27.

4

Plaintiffs do not dispute this logic. Instead, they engage in misdirection, asserting that Dr. DeRamus used "both ZF Meritor and Meritor Transmission data" in making his lost profits and lost enterprise value calculations. Opp. at 4. For example, plaintiffs cite to Appendix page 0214, in which Dr. DeRamus reports that his model used the profit margin that Meritor historically made over a period in the late '90s. Opp. at 4. This is true but irrelevant. Whatever *inputs* Dr. DeRamus inserted into his calculations, the *output* he purports to measure is, and must as a logical matter be, harm to the JV alone, as the only entity operating in the but-for world.

Plaintiffs also play a linguistic game in which they assert that their damages analysis used a defined term, "ZFM," to refer to the combination of the JV and Meritor Transmission Corp., and thus actually measured harm to *both* companies. Opp. at 3. This is wrong. Dr. DeRamus's original report claimed to calculate damages to "ZF Meritor," the JV, not "ZFM," the defined term. *See* App_0148-0152. And the Third Circuit's remand did not permit him to change the subject of his analysis. Regardless, even if plaintiff were right, the result is the same: their damages analysis, both conceptually and numerically, measures only the JV's "but for" performance. *See, e.g.*, App_0128 (using *the JV's* strategic business plan "to estimate [lost] incremental revenue"). Plaintiffs cannot explain how, logically, their "lost enterprise" calculation somehow measures harm to multiple enterprises, when their theory is that only the joint venture would have existed in the but-for world.

Because Meritor Transmission Corp.'s performance from 2004-2007 is irrelevant to plaintiffs' damages claim, the relevant "market exit" date for the purpose of this Motion is the year the JV exited: 2003.

**CONCLUSION**

Eaton respectfully seeks the relief described in the opening brief.

5

MORRIS, NICHOLS, ARSHT & TUNNEL LLP

/s/ *Donald E. Reid*
Donald E. Reid (#1058)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 351-9261
dreid@mnat.com
   *Attorneys for Defendant*
   *Eaton Corporation*

May 8, 2014