IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZF MERITOR LLC and MERITOR TRANSMISSION CORPORATION, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civ. No. 06-623-SLR<br>) |
| EATON CORPORATION, | )<br>) |
| Defendant. | )<br>) |

**MEMORANDUM**

At Wilmington this 5th day of June, 2014, having reviewed defendant Eaton Corporation's ("Eaton") motion for summary judgment, the papers submitted in connection therewith, and the arguments of counsel; the court issues its decision consistent with the reasoning that follows:

1. **Background.** This case has a long history, virtually none of which will be repeated here. Suffice it to say that plaintiffs ultimately prevailed in proving that they suffered anitrust injury at the hands of Eaton,[1] and the trial on damages is scheduled to commence on June 23, 2014. The pending motion for summary judgment is the latest skirmish between the parties relating to the viability of plaintiffs' damages calculations. More specifically, the parties dispute whether it is appropriate for plaintiffs' expert to have considered damages from the cumulative perspective of an "overall anticipated

---

[1]See *ZF Meritor LLC and Meritor Transmission Corporation v. Eaton Corporation*, 696 F.3d 254 (3d Cir. 2012) (hereafter, "*ZFM v. Eaton*").

business," as opposed to having calculated damages for each plaintiff based on its individualized injuries. The court has jurisdiction to resolve this dispute pursuant to 28 U.S.C. § 1331.

2. **Legal standard.** As noted by the Third Circuit on appeal, "in the antitrust context, a damages award not only benefits the plaintiff, it also fosters competition and furthers the interests of the public by imposing a severe penalty (treble damages) for violation of the antitrust laws." *ZFM v. Eaton*, 696 F.3d at 300. In calculating such an award for a plaintiff who seeks recovery for injuries from a partial or total exclusion from a market, courts have recognized that "damage issues in these cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969). Nevertheless, damages may not be determined by "mere speculation or guess," *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931), but must be grounded at a minimum on assumptions that rest on "adequate bases." *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 24 (5th Cir. 1974).

3. In this regard, the parties are in agreement with

> [t]he principle that an antitrust plaintiff may recover both actual lost profits and diminution in the value of its business . . . . Where plaintiff has been forced out of business, however, it is awarded its going-concern value or its projected future lost profits, but not both.

*Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 175 F.3d 18, 27 (1st Cir. 1999) (citation omitted). The court in *Coastal Fuels* concluded that the better damages model for a company no longer in business was a calculation of the business'

going-concern value "evaluated as of the time plaintiff goes out of business and actual lost profits awarded only up to that date . . . ." *Id.* at 28.

4. **Discussion.** In the case at bar, it is apparent that plaintiffs' damages expert, Dr. DeRamus, calculated damages on a cumulative basis for the plaintiffs, as noted by the Third Circuit in its opinion:

> To determine the damages suffered by Plaintiffs as a result of Eaton's anticompetitive conduct, DeRamus conducted a two-part analysis. He computed Plaintiffs' lost profits for the period between 2000 and 2009, as well as the lost enterprise value of Plaintiffs' HD transmissions business. To calculate Plaintiffs' lost profits, DeRamus first estimated the incremental revenues that Plaintiffs would have earned "but for" Eaton's anticompetitive conduct, and then subtracted from that figure the incremental cost that Plaintiffs would have had to incur to achieve such incremental sales.

*ZFM v. Eaton,* 696 F.3d at 291-92. Even Eaton addressed the facts in terms of the collective business enterprise: "Meritor competed in the market for heavy-duty transmissions from 1989-2007; between 1999 and 2003, Meritor's participation was through the ZFM joint venture." (*See* appellate citation in D.I. 371 at 2) Likewise, in his supplemental expert report, DeRamus identified his damages model in terms of "ZFM," that is, the collective nomenclature for ZF Meritor LLC and Meritor Transmission Corporation. (D.I. 359, ex. B at 1-2)

5. I agree with Eaton that the case cited by plaintiffs during oral argument, *Inter Med. Supplies Ltd. v. EBI Medical Sys., Inc.,* 975 F. Supp. 681 (D.N.J. 1997), *aff'd* 181 F/3d 446 (3d Cir. 1999), is not compelling authority for the unusual facts at bar,[2] given that the plaintiffs in that case were "wholly-owned, vertically-aligned subsidiaries that

---

[2]Indeed, no case law directly on point has been identified by the parties.

participated in the same market at the same time and thus shared the same lost sales at the same time." (D.I. 368) In contrast, the joint venture agreement ("the Agreement") which aligned the plaintiffs at bar specifically provided that the joint venture plaintiff - ZF Meritor LLC - "shall not be deemed to be an Affiliate of any other Party or any of such other Party's Affiliates." (Agreement, Article I, ¶ 1.4) The Agreement also provided that ZF Meritor LLC was to enjoy market exclusivity (vis a vis the joint venture members) of those certain transmission products which were the subject of the Agreement. (Agreement, Article XIII, ¶ 13.1) In the event of the dissolution of ZF Meritor LLC, however, plaintiff Meritor Transmission Corporation was to have "the first right to elect to acquire, and/or elect [to] have distributed in kind to it, all or any part of the assets and business of [ZF Meritor LLC] that were contributed by" Meritor Transmission Corporation, among other affilated companies. (Agreement, Article XII, ¶ 12.2(h))

6. I am left to make my decision, then, on a record that has consistently treated the two plaintiffs' injuries and resulting damages as cumulative, with no specific objection to that aspect of the record until this last motion practice initiated by Eaton. I note that plaintiffs' approach is consistent with the observation by the Third Circuit in *Inter Medical Supplies, Ltd. v. EBI Medical System, Inc.* 181 F.3d 446, 462 (3d Cir. 1999), that "[d]amages ordinarily flow from conduct, not from legal theories." As in the *Inter Medical Supplies* case, all of plaintiffs' claims at bar arose from the same set of facts surrounding Eaton's anticompetitive conduct.[3]

---

[3]Again, the Third Circuit in its opinion on appeal described the continuum of facts as follows:

4

7. **Conclusion.** Although I recognize the general applicability of Eaton's legal arguments that require each antitrust plaintiff to prove individualized injury and damages, nevertheless, the record as described above in the context of the more lenient damages standards for antitrust plaintiffs leads me to conclude that plaintiffs have the better arguments. I conclude, therefore, that Eaton's motion for summary judgment shall be denied. An order shall issue.

_____
United States District Judge

---

By 2003, ZF Meritor determined that it was limited by the LTAs [long-term agreements] to no more than 8% of the market, far less than the 30% that it had projected at the beginning of the joint venture. ZF Meritor officials concluded that the company could not remain viable with a market share below 10% and therefore decided to dissolve the joint venture. After ZF Meritor's departure, Meritor remained a supplier of HD Transmissions and became a sales agent for ZF AG to ensure continued customer access to the FreedomLine. However, Meritor's market share dropped to 4% by the end of fiscal year 2005, and Meritor exited the business in January 2007.

696 F.3d at 267.