**ZF Meritor LLC and Meritor Transmission Corporation v. Eaton Corporation**

**Civ. No. 06-623-SLR**

## FINAL JURY INSTRUCTIONS

As a reminder, I will refer to both plaintiffs, Meritor and ZF Meritor, as "Plaintiffs."

The defendant is Eaton Corporation (which I will refer to as "Eaton" or "defendant").[1]

---

[1] Plaintiffs' proposed instruction; Eaton does not agree with this reminder.

# 1.  INTRODUCTION[2]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  As you will recall, before the trial I gave you some preliminary instructions on the law to identify for you the types of factual and legal issues that you should consider.

Some of these instructions are very similar to the preliminary instructions.  These instructions are more complete and should guide you in your deliberation.  I will start by explaining your duties and the general rules that apply in every civil case.  I will explain some rules that you must use in evaluating particular testimony and evidence.  I will explain the law you will apply in this case.  Last, I will explain the rules that you must follow during your deliberations in the jury room.  Please listen carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form which will list the interrogatories, or questions, that you must answer to decide this case.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214), at 1 (modified).

---

[2] Plaintiffs and Eaton agree on this instruction.

## 2.  JURORS' DUTIES[3]

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burdens of proof, [the amount of damages to award to Plaintiffs] [Eaton would like to replace the bracketed clause with "which party should prevail on the issues presented."]  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 2.

---

[3] Plaintiffs and Eaton agree on this instruction with the exception of the bracketed language above.

## 3.  THE LIABILITY PHASE JURY'S FINDINGS[4]

The trial of this case has been split into two parts, with a different jury for each part.  This is the second part – the damages phase.  After the first trial (the liability phase), the first jury decided in favor of both Plaintiffs.  It found that the relevant market was heavy duty truck transmissions in North America, and that Eaton had monopoly power in that market.  It further found that Eaton broke three antitrust laws, and that each of Eaton's violations of law caused both Plaintiffs antitrust injuries. Specifically, the first jury found that:

-- Eaton willfully acquired or maintained monopoly power in the relevant market by engaging in anticompetitive acts or practices, in violation of Section 2 of the Sherman Act. Anticompetitive acts are acts, other than competition on the merits, which have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market.  The first jury also found that:

-- A contract(s), combination, or conspiracy existed between Eaton and the OEMs that unreasonably restrained trade or foreclosed competition in a substantial portion of the relevant market, in violation of Section 1 of the Sherman Act; and that

-- Eaton's contracts with the OEMs constituted de facto exclusive dealing contracts, and Eaton entered into a sufficient number of such contracts so as to substantially lessen competition or tend to create a monopoly in the heavy duty truck transmissions market in North America, in violation of Section 3 of the Clayton Act.

The first jury also found that, with respect to each of these violations of law, the competitive harms associated with Eaton's unlawful conduct outweighed any competitive benefits

---

[4] Plaintiffs' proposed instruction; Eaton's position is that this does not need to be repeated in the final instructions because it is included in the preliminary instructions.  Eaton's proposed alternative instructions are on the following pages as 3a.

articulated by Eaton.  And that jury found that each of Eaton's violations caused Plaintiffs to suffer antitrust injuries to its business or property at any time since March 28, 2002.

These findings are conclusive.  They are binding on this jury.  You are not to reconsider them.  The verdict form from the liability phase trial, as well as the instructions I gave that jury for completing that form, are part of the record in the damages phase trial.  They will be available to you during your deliberations.  Your job as the damages phase jury is to enforce the antitrust laws, in light of the verdict from the liability phase, the evidence and the instructions on calculating damages I provide you.

Source:  *ZF Meritor LLC et al v. Eaton*, Plaintiffs' Proposed Preliminary Jury Instructions – Damages Phase (D.I. 380, Ex. A at 2-3); Liability Phase Jury Verdict Form, (D.I. 217); Final Jury Instructions from Liability Trial (D.I. 214) at 36.

### 3a   THE LIABILITY PHASE JURY'S FINDINGS[5]

This is a civil case.  It is brought under the civil antitrust laws of the United States.[6]  The purpose of the antitrust laws is to preserve free and unfettered competition in the marketplace. The antitrust laws protect competition, not individual competitors, and rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.[7]   Competitors, those who sell products for example,  are encouraged to compete vigorously to gain market share and take sales away from their competitors on the basis of such things as price, quality, product features, customer service and other factors that influence the decision of a customer to buy a product or service.

The civil antitrust laws being applied here are intended to protect competition by setting certain boundaries on competitive activities and defining certain actions that may harm, rather than promote competition.  The antitrust laws prohibit certain activities that may foreclose or limit the ability of competitors to compete openly in the market for customers and sales to those customers.  I will be referring to such activities as "anticompetitive" activities.

Among such anticompetitive activities are agreements between suppliers and customers that result in a substantial foreclosure of the ability of other suppliers to compete for the business of such customers.  Supply contracts are not, in and of themselves, anticompetitive.  They can be evidence of vigorous competition.   They become anticompetitive if they have the effect of foreclosing or unreasonably limiting competition.

This trial, for which you have been chosen to serve as jurors, is the second trial in this case, which I will refer to as the "damages trial."   Damages are the quantification of any monetary loss that may have resulted from Eaton's anticompetitive conduct.  By referring to this as the "damages trial," I am not implying that you must find damages for Plaintiffs

The issue of damages was ***not*** a subject of the liability trial.  The liability trial jury did not hear evidence, consider or decide whether Plaintiffs were entitled to damages as a result of Eaton's anticompetitive conduct.  Nor did they consider or decide when Plaintiffs began to suffer any damages nor the dollar amount of any such damages.

---

[5] This instruction is proposed by Eaton and opposed by Plaintiffs.

[6] *See* Preliminary Jury Instructions from Liability Trial at 2.

[7] *See* Final Instructions from Liability Trial at 16.

The verdict form from the liability trial is part of the record in this trial.  It will be available to you during your deliberations.  The decisions of the liability trial jury, as expressed by the verdict in that part of the case, are conclusive and you may not reconsider them.  For purposes of performing your duties you must accept those decisions as correct.  The liability jury found that the plaintiffs suffered antitrust injury as a result of Eaton's anticompetitive conduct.  That finding does not mean that the liability jury found monetary damages, nor should you consider the liability jury's injury finding as proof of damages or as requiring you to find monetary damages.  Antitrust injury and monetary damages are different concepts under the law.  Antitrust injury is injury to competition.   The liability jury's finding that plaintiffs were foreclosed from competing in a substantial part of the HD transmission market is the antitrust injury.  Damages, on the other hand,  are any monetary or financial losses that plaintiffs may have actually incurred as a direct result of  foreclosure from competition found by the liability jury.

Therefore,, whether Plaintiffs suffered any damages directly attributable to Eaton's anticompetitive conduct and, if so, the amount of any such damages is the subject of this trial.  It lies solely with you, as jurors, to decide these questions, based upon the evidence presented to you and the instructions of law that I will now give you.

### 3b – THE PARTIES[8]

I will now review for you the parties in this action.  Plaintiffs are Meritor Transmission Corporation and ZF Meritor LLC.  During the relevant time period, Meritor Transmission Corporation (which I will call "Meritor") was a subsidiary of ArvinMeritor, Inc., a manufacturer of transmissions, axles, brakes, drive shafts, and other truck components.   Prior to 1999, Meritor made certain manual transmissions.  In mid-1999, Meritor formed a joint venture with ZF Friedrichshafen AG (which I will call "ZF AG"), a German manufacturer of transmissions and other truck components.  The joint venture was called ZF Meritor LLC (which I will call the "joint venture" or "ZFM").  Meritor and ZF AG were each 50% shareholders of the joint venture.  Meritor transferred its transmission business to the joint venture and ceased selling transmissions  once  ZFM  was formed.

The joint venture made and sold certain manual transmissions and assembled automated mechanical transmissions it purchased from ZF AG and imported from Germany.   The joint venture operationally dissolved at the end of 2003.   After the joint venture dissolved, Meritor resumed the manufacture of certain manual transmissions and acted as the sales agent for ZF AG's automated mechanical transmissions.    In 2006, Meritor stopped making manual transmissions, although it continued to market ZF AG's automated mechanical transmission, the FreedomLine.

At times, I will refer to Meritor and the joint venture collectively as "plaintiffs."  But you should understand that they are distinct and separate companies.

The defendant is Eaton Corporation (which I will refer to as "defendant" or "Eaton"). Defendant began manufacturing heavy duty truck manual transmissions in North America in 1958.  From 1958 until the late 1980s, defendant was the only manufacturer of Class 8 manual

---

[8] This is Eaton's proposed  instruction and not agreed to by Plaintiffs.  Plaintiffs believe that the background is unnecessary.

transmissions in North America.

*Source:*  Final Instructions from Liability Trial at 3-4.

## 4.   BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE[9]

In order to recover an amount of damages, Plaintiffs must prove that Eaton's unlawful actions caused Plaintiffs to suffer a decline in profits and/or values.  Defendant Eaton bears the risk of any uncertainty created by its antitrust violations.  You are entitled to make a just and reasonable estimate of Plaintiffs' damages based on relevant data.  If Plaintiffs provide a rational basis upon which lost profits and/or values can be calculated, they have sustained their burden of proof.  [At that point, it is Eaton's burden to prove that some or all of Plaintiffs' damages are attributable to causes other than Eaton's illegal conduct and therefore that damages should be less and by how much.][10]

This is a civil case.  Each side's burden of proof is governed by a standard called a preponderance of the evidence.  That means that the side with the burden of proof has to produce evidence which, when considered in light of all of the facts, leads you to believe that what that side asserts is more likely true than not.  To put it differently, if you were to put the evidence of both sides on opposite sides of a scale, the evidence supporting the position of the side with the burden of proof would have to make the scales tip somewhat on its side.

Those of you who are familiar with criminal cases will have heard the term proof beyond a reasonable doubt. That burden does not apply in a civil case and you should therefore put it out of your mind in considering whether or not a party has met its burden of proof.

Source:  *ZF Meritor LLC et al v. Eaton*, Liability Phase Final Jury Instructions (D.I. 214), at 7 (modified); *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 572-573 (1990);  *J. Truett Payne Co., Inc. v.*

---

[9] Plaintiffs' proposed instruction.  Eaton's proposed instruction on burden of proof follows at 4a.

[10] Eaton objects to the following bracketed language above: "At that point, it is Eaton's burden to prove that some or all of Plaintiffs' damages are attributable to causes other than Eaton's illegal conduct and therefore that damages should be less and by how much."

*Chrysler Motors Corp.*, 451 U.S. 557, 565-67 (1981); *Zenith Radio Corp., v. Hazeltine Research, Inc.*, 395 U.S. 100, 123-125 (1969); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946); *W. Geophysical Co. of Am., Inc. v. Bolt Assocs., Inc.*, 584 F.2d 1164, 1174 (2d Cir. 1978).

## 4a.  BURDEN OF PROOF[11]

In private antitrust actions, the burden is placed upon the plaintiff to show that the damage claimed was in fact caused by the unlawful acts of the defendant and did not result from some other factor, such as management problems, a recession in the economy or lawful competition by the defendant.[7]   The Plaintiffs in this case, Meritor and ZFM, each individually, at all times during this trial, have the burden of proving that any damages they incurred were a direct result of the conduct the liability trial jury found to be anticompetitive.   To the extent that you find that any money was lost because of general conditions in the industry or other factors not attributable to Defendant's unlawful conduct, you should not include any such sums in your calculation of damages.[8]   Plaintiffs' burden here—on the issue of what caused the damages they are asserting—is to prove their claims by what is called a preponderance of the evidence.[9]   That means that they have to produce evidence which, when considered in light of all the facts, leads you to believe that what they claim is more likely than not true.[10]

Plaintiffs also have the burden of proof to provide you with a reasonable estimate of their damages.[11]   You are not permitted to simply guess or speculate or pull figures out of the air.[12] You have to have a rationale, and a reasonable basis for concluding that any damages figure you award is a reasonable estimate, and a fair estimate, of any loss sustained by the Plaintiffs.[13][12]

---

[7] *See R.S.E. v. Pennsy Supply, Inc.*, 523 F.Supp. 954, 965 (M.D. Pa. 1981).
[8] *See In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1176 (3d Cir. 1993).

---

[11] Eaton's proposed instruction on burden of proof.

[12] Plaintiffs will consider this last paragraph for inclusion in the instructions.

[9] *See* Preliminary Jury Instructions from Liability Trial p. 2, edited slightly.
[10] *Id.*
[11] *See Lower Lake Erie*, 998 F.2d at 1176.
[12] *Id.*
[13] *Id.*

## 5.  EVIDENCE DEFINED[13]

At the beginning of this case, I instructed you that you must accept as conclusive the facts that were decided by the liability phase jury.

In addition, I instructed you to give careful attention to the testimony and other evidence presented during the trial.  You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath (including any deposition or liability phase trial testimony that has been played or read to you), the exhibits that I allowed into evidence, any facts that the parties agreed to by stipulation and as I have instructed you.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence, although they may refer to evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my questions are evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify evidence.

During the trial, I may not have let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

[13] Plaintiffs and Eaton agree on this instruction.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214), at 8 (modified).

## 6.  CONSIDERATION OF EVIDENCE[14]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 9.

---

[14] Plaintiffs and Eaton agree on this instruction.

## 7.   CREDIBILITY OF WITNESSES[15]

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief.  Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial.  It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an

---

[15] Plaintiffs and Eaton agree on this instruction.

innocent lapse of memory or an intentional falsehood, and that may depend upon whether it
concerns an important fact or an unimportant detail.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 11-12.

## 8.   EXPERT WITNESSES[16]

You have heard testimony from Plaintiffs' expert, Dr. David DeRamus and from Eaton's expert, Dr. David Sibley, regarding the amount of damages to which Plaintiffs claim they are entitled and proper amount of damages.  These witnesses are permitted to give their opinion on topics about which they have special knowledge, skill, experience and training.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of each expert witness and decide whether to rely upon his or her testimony.  [Eaton's proposed addition – If you find that any of the pertinent underlying assumptions made by either one of these experts in preparing or responding to damages reports are not reasonable, or if you find that one of these expert's conclusions depend on a comparison of things which have not proven to be comparable, then you should consider this in determining the weight – if any – you will give to these assumptions and the effect they have on Plaintiffs' damages claims.]

[Plaintiffs' proposed addition -- You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.]

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 14.

---

[16] Plaintiffs and Eaton agree in general on this instruction.  Differences are in brackets.

## 9.  PRIOR RECORDED TESTIMONY[17]

During the trial, certain testimony was presented to you through prior recorded transcripts of testimony that were read into evidence or played electronically.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, prior recorded testimony made in a deposition or other prior recorded testimony is made under oath and is considered evidence that may be used to prove particular facts.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 15.

---

[17] Plaintiffs and Eaton agree on this instruction.

## 10. ANTITRUST DAMAGES – PURPOSE[18]

The first jury found that Eaton violated the antitrust laws by:  (1) willfully acquiring or maintaining monopoly power in the North American heavy duty truck transmission market by engaging in anticompetitive acts or practices; (2) entering into contracts with the OEMs and engaging in other conduct that unreasonably restrained trade or foreclosed competition in a substantial portion of the North American heavy duty truck transmission market; and (3) entering into a sufficient number of de facto exclusive dealing contracts so as to substantially lessen competition or tend to create a monopoly in the heavy duty truck transmissions market in North America.   The law provides that Plaintiffs should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that the first jury found to be unlawful.  [Eaton's proposed addition – You may not, however, award damages for injuries or losses caused by conduct not submitted to the first jury or caused by factors other than Eaton's conduct.][19]

The purpose of awarding damages in an antitrust case is to put injured Plaintiffs as near as possible in the position in which they would have been if the antitrust violations had not occurred.  The law does not permit you to award damages to punish a wrongdoer – what we sometimes refer to as punitive damages – or to deter Eaton from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation.  You are also not permitted to award to Plaintiffs an amount for attorneys' fees or the cost of maintaining this lawsuit.  Antitrust damages are compensatory only.  In other words, they are designed to compensate Plaintiffs for the particular injuries they suffered as a result of the violations of the law.

---

[18] Plaintiffs and Eaton agree on this instruction except where as noted.

[19] Eaton's proposed addition here is included in Plaintiffs' next proposed instruction – Calculation. The parties will work to modify these instructions further as the trial develops.

Source:  ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases, 2005 Edition*, at F-12 (2005) (modified); ABA Model Antitrust Damages Instruction 2A:  Antitrust Damages – Bifurcated Trial (2005).

## 11. ANTITRUST DAMAGES -- CALCULATION[20]

The first jury found that Eaton broke three antitrust laws, and that each of Eaton's violations of law caused Plaintiffs injuries.   Plaintiffs are entitled to recover for all damages to their business or property that were a direct result or likely consequence of the conduct that the first jury found to be unlawful.  You may not, however, award damages for injuries or losses caused by conduct not submitted to the first jury, or damages for injuries or losses [that have been proven by Eaton][21] to have been caused by factors other than Eaton's unlawful conduct.

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inference, and instead can only be reached through guesswork or speculation, then you may not award damages.

A defendant's violations of the antitrust laws often creates a situation in which it is hard to determine the precise amount of damages suffered by the plaintiff.  Plaintiffs' right to be fairly compensated should not be affected by any difficulty you may have in determining the precise amount of the recovery so long as there is a reasonable basis in the evidence for your award.  You are permitted to make reasonable estimates in calculating damages.  In antitrust law, Plaintiffs are given some latitude in calculating damages, so long as their theory is not wholly speculative.

Since Plaintiffs have established the existence of injury proximately caused by Eaton's antitrust violations, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs should not be denied a right to be fairly compensated just because the amount of damages cannot be determined

---

[20] Plaintiffs' proposed instruction – parts of this instruction are found in Eaton's proposed instructions.  The parties will work to come up with a proposal that merges the different instructions.

[21] Eaton objects to the following bracketed language above: damages for injuries or losses ["**that have been proven by Eaton"**] to have been caused by factors other than Eaton's unlawful conduct.

with absolute mathematical certainty.  Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim.

The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.  If you find that Plaintiffs have provided a reasonable basis for determining an amount of damages, then you may award an amount of damages based on a just and reasonable estimate supported by the evidence.

Source:  ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases, 2005 Edition*, at F-14 – F-16 (2005) (modified); *Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 752 F.2d 802, 813 (3d Cir. 1985); *Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 572-573 (1990); *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 565-67 (1981); *Zenith Radio Corp., v. Hazeltine Research, Inc.*, 395 U.S. 100, 123-125 (1969); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946).

## 11a – SPECULATION NOT PERMITTED[22]

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damage suffered by the Plaintiffs.  If Plaintiffs establish with reasonable probability the existence of an injury proximately caused by Eaton's antitrust violation, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, Plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.   The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.   If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then your verdict must be for defendant.  If you find that Plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

Source:  ABA Model Antitrust Damages Jury Instruction 3: Speculation Not Permitted (2005)

---

[22] This is Eaton's proposed instruction.  Plaintiffs do not agree with this instruction.

## 11b      CAUSATION

Plaintiffs are only entitled to recover damages that were the direct and proximate result of the unlawful acts of defendant.   Plaintiffs are not entitled to recover for damages that resulted from other causes.

Plaintiffs claim that ZFM suffered lost profits damages because ZFM lost sales and profits as a result of Eaton's antitrust violation.   In the normal course of competitive business activity, competitors will lose sales to each other, and to third parties, for various causes that have nothing to do with the antitrust law violations; and businesses can be unprofitable for causes that have nothing to do with violations of the antitrust laws.   Plaintiffs may not recover for lost sales if ZFM lost those sales because of the superior business acumen or salesmanship of a competitor, because a competitor offered a superior product, or because of lawful competition from Eaton or other competitors.   Plaintiffs also may not recover if ZFM lost profits as a result of causes that had nothing to do with Eaton's   unlawful conduct, such as legal competitive activities, changes in market conditions, changes in demand, changes in product technology, poor business decisions   or   mismanagement   by   Plaintiffs,   the   failure   to   respond   to   fair   and   rigorous competition, or other factors.

Plaintiffs bear the burden of showing that their lost profit damages were caused by Eaton's alleged antitrust violation – as opposed to any other factors, such as those that I just described to you.  If  you  find  that  Plaintiffs'  alleged  lost  profit  damages  were  caused  by  factors  other than  Eaton's  alleged antitrust violation, then you must return a verdict for Eaton.   If you find that Plaintiffs' alleged lost profit damages were caused in part by Eaton's antitrust violation and in part by other factors, then you may award damages only for that portion of Plaintiffs' alleged damages that were caused by Eaton's antitrust violation.   Plaintiffs bear the burden of proving damages with reasonable certainty, including apportioning damages between lawful and

unlawful causes.   If you find that there is no reasonable basis to apportion Plaintiffs' alleged damages between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.   If you find that Plaintiffs have proven with reasonable certainty the amount of damage caused by Eaton's antitrust violation then you must return a verdict for the Plaintiffs.

Source:  ABA Model Antitrust Instructions Damages Jury Instruction 4: Causation and Disaggregation (2005)

# 12. DAMAGES -- LOST PROFITS[23]

Plaintiffs claim that they lost profits as a result of Eaton's antitrust violations. Lost profits are the amount of profits that Plaintiffs lost as a result of Eaton's antitrust violations. To calculate lost profits, you must calculate net profit: the amount by which Plaintiffs' gross revenue would have exceeded all of the costs and expenses that would have been necessary to produce those revenues. [If you find that Plaintiffs' gross revenue would not have exceeded its costs, you still may award damages if you find that they would have lost less revenue in the absence of Eaton's antitrust violations.][24]

Plaintiffs have proposed to calculate the net profits they would have earned if there had been no antitrust violations by showing evidence of the market share they would have had in the absence of Eaton's antitrust violations. If you find that Plaintiffs have shown reliable evidence of what their market share would have been in the absence of the antitrust violations, then you may calculate Plaintiffs' lost profits by considering market share, evidence of the size of the market, and evidence relating to the profit margin Plaintiffs would have secured on such sales. You may also find that Plaintiffs have not shown reasonable evidence of the profit margin it would have incurred in the absence of the antitrust violation. If you find that the evidence of Plaintiffs' market share and/or profit margins is not reasonable, and that lost profits may only be calculated using speculation or guesswork, you may not award an amount of damages for lost profits based on market share or profit margins.

---

[23] Plaintiffs' proposal – Eaton's proposal follows as 12a and 12b.

[24] Eaton objects to the following bracketed language above: "[If you find that Plaintiffs' gross revenue would not have exceeded its costs, you still may award damages if you find that they would have lost less revenue in the absence of Eaton's antitrust violations.]"

Source:  ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases, 2005 Edition*, at F-27 - F-30 (2005) (modified).

## 12a.  DAMAGES FOR COMPETITORS – LOST PROFITS

Plaintiffs claim that they were harmed because they lost profits as a result of Eaton's anticompetitive conduct during the time period that the anticompetitive activity was in place and had a monetary effect on plaintiffs.  I will refer to this period of time as the "damages period".  To determine the amount of  lost profits, if any, you may, under the law, calculate and award only lost "net profit":  Net profits is defined as the amount by which Plaintiffs' lost gross revenues would have exceeded all of the costs and expenses that would have been necessary to produce those lost revenues.  Your damages award, if any, must be limited to such lost net profits.

Plaintiffs have elected  to calculate and prove the net profits ZFM would have earned if there had been no anticompetitive conduct during the damages period by providing evidence that ZFM's  market share of the sales of HD transmissions would have been greater in the absence of the antitrust violation.  If you find that Plaintiffs have shown reliable evidence of what the market share would have been in the absence of the antitrust violation, then you may calculate ZFM's lost net profits by considering market share, evidence of the size of the market, and evidence relating to the net profit margin ZFM would have secured on such sales.

You may find, however, that Plaintiffs have not shown reasonable evidence of what its market share would have been in the absence of the antitrust violation, such as if ZFM's market share were impacted by lawful competition, changes in market conditions, changes in demand, changes in product technology, poor business decisions or mismanagement by Plaintiffs, the failure to respond to fair and rigorous competition, or other factors.  You may also find that the Plaintiffs have not shown reasonable evidence of the profit margin ZFM would have incurred in  the absence of the antitrust violation.  If you find that the evidence of ZFM's market share and/or profit margins is not reasonable, and that lost profits may only be calculated using speculation or guesswork, you may not award damages for lost profits based on market share or profit margins.

Plaintiffs have also proposed to calculate the net profits ZFM would have earned if there had  been  no  anticompetitive  activity  during  the  damages  period  by  showing  evidence  of

plaintiffs' financial performance in a period before the anticompetitive activity began.  If you find that the earlier period is a reliable guide to estimate what ZFM's actual net profits would have been later, in the absence of the antitrust violation, then you may calculate ZFM's lost

---

[16] *See* ABA Model Antitrust Damages Jury Instruction 8: Damages for Competitors – Lost Profits (2005).

profits by comparing (a) ZFM's actual net profits in the earlier period with (b) ZFM's actual net profits or loss thereafter.  You may find, however, that ZFM's profits in the prior period are not representative of what its profits would have been during the period in which the antitrust violation occurred, such as if ZFM's profits were impacted by changed market conditions, changes in demand, poor business decisions or mismanagement, increased competition, changing product technology, legal competition, or other factors.  If you find that the prior period is not representative of the later period, and that lost net profits in the later period may only be calculated using speculation of guesswork, you may not award damages for lost net profits based on plaintiffs' financial performance in the prior period.

### 12b.   DAMAGES FOR COMPETITORS – FUTURE LOST PROFITS[25]

Plaintiffs claim that they were harmed because, had it not been for Eaton's alleged antitrust violation, ZFM would have earned profits for [X] years into the future.  If you find by a preponderance of the evidence that Plaintiffs have proven that they lost future profits,  you may calculate the future profits, if any, that Plaintiffs lost as a result of Eaton's antitrust violation.  If you find that the fact of the future losses is speculative or their amount is unproven, then you may not award damages for lost future profits.

 To calculate lost future profits, you must make a reasonable estimate of (1) the amount of profits, if any, that ZFM would have earned in future years, and (2) the length of time for which it would have earned those profits.   In making this calculation, you must not engage in guesswork or speculation.   In making this determination, you must consider the various uncertainties that could affect the future success of ZFM's business, such as general market or economic conditions, lawful competition ZFM would face in the future, ZFM's management of the business, changes in technology or other business conditions, and other factors affecting ZFM's future performance. If there is not evidence from which you can make a reasonable estimate of lost future profits, or if the uncertainties are such that speculation or guess work is required, you may not award damages for lost future profits.

In calculating lost future profits, you must calculate net profit:  the amount by which ZFM's gross revenues would exceed all of the costs and expenses that would be necessary to produce these revenues.  You may calculate net profit by using the following measures:

Plaintiffs have elected  to calculate and prove the net profits ZFM would have earned if there had been no anticompetitive conduct during the damages period by providing evidence that ZFM's  market share of the sales of HD transmissions would have been greater in the absence of

---

[25] This is Eaton's proposal.  Plaintiffs do not agree with this proposal.

the antitrust violation.  If you find that Plaintiffs have shown reliable evidence of what ZFM's market share would have been in the absence of the antitrust violation, then you may calculate ZFM's future lost profits by considering market share, evidence of the size of the market, and evidence relating to the profit margin ZFM would have secured on such sales. You may find, however, that Plaintiffs have not shown reasonable evidence of what ZFM's market share would have been in the absence of the antitrust violation, such as if ZFM's market share would be impacted by changed economic conditions, mismanagement, increased competition, changing technology, or other factors.  You may also find that Plaintiffs have not shown reasonable evidence of the profit margin ZFM would have incurred in the absence of the alleged antitrust violation.  If you find that the evidence of ZFM's market share and/or profit margins is not reasonable, and that future lost profits may only be calculated using speculation or guesswork, you may not award damages for future lost profits based on market share or profit margins.

Plaintiffs have elected to calculate and prove the net future profits ZFM would have earned if there had been no anticompetitive activity during the damages period by showing evidence of plaintiffs' financial performance in a period before the anticompetitive activity began.  If you find that the earlier period is a reliable guide to estimate what ZFM's actual net profits would have been later, in the absence of the antitrust violation, then you may calculate ZFM's future lost profits by comparing (a) ZFM's actual net profits in the earlier period with (b) your estimate of ZFM's future net profits (or loss).  You may find, however, that ZFM's profits in the prior period are not representative of what its profits would be in the future, such as if ZFM would be impacted by changed market conditions, changes in demand, poor business decisions or mismanagement, increased competition, changing product technology, legal competitive activities, or other factors. If you find that the prior period is not representative of the future period, and that future lost profits

may only be calculated using speculation or guesswork, you may not award damages for future lost profits based on the prior period.

Any award of damages for future lost profits, must be discounted or reduced to its present value, using a discount rate of interest that you find reasonable.  This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today – this is known as the time value of money.

Source:  ABA Model Antitrust Damages Jury Instructions 9:  Damages for Competitors – Future Lost Profits

### 13. DAMAGES – LOST ENTERPRISE VALUE OR GOING CONCERN

Plaintiffs claim that, had it not been for Eaton's antitrust violations, the "enterprise value" or "going concern" value of their business would have been higher than it actually was.   The most important element of enterprise value or going concern is the expectation of future profitable operations.   You may consider the anticipated future profits of a business as a factor in determining the loss of the enterprise value or going concern value of that business.

[**Eaton proposes to add**:  If you award damages for lost going concern or enterprise value, you must discount the amount to its present value, using a discounted rate of interest that you find reasonable.  This is because the right to receive a certain sum of money at a future date is worth less than the same amount of money in hand today - this is known as the time value of money.  For example, if you had a choice to receive $1,000 today or a year from now, you would be better off receiving the money today and earning interest on it for a year - you would then have something more than $1,000 in a year from now.  Similarly, if you had a right to $1,000 a year from now and you asked for the money today, the person owing you the money a year from now could properly give you a lower amount, reflecting the value that could be earned on that money over the next year.  This lower amount is known as an amount discounted to present value.]

Source ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases, 2005 Edition*, at F-39 - F-40 (2005) (modified); ABA Model Antitrust Damages Jury Instruction 10. Damages for Competitors – Going Concern Value or Goodwill.

## 14. DAMAGES MULTIPLE VIOLATIONS[26]

The first jury found in favor of Plaintiffs on multiple violations of law.  If you find that Plaintiffs are entitled to an amount of damages, you are to consider the question of damages together for all violations.  You should consider them to be overlapping and not award damages more than once.

---

[26] Plaintiffs and Eaton agree on this proposed instruction.

## 15. DAMAGES – MULTIPLE PLAINTIFFS[27]

The first jury found in favor of both Plaintiff ZF Meritor and Plaintiff Meritor. If you find that Plaintiffs are entitled to an amount of damages, you are to consider the question of damages together for both plaintiffs.  You should consider them overlapping and are not to award damages more than once.

---

[27] This is Plaintiffs' proposal.  Eaton does not agree with this proposed instruction.  Eaton's proposal is attached as 15a.

## 15a. – MULTIPLE PLAINTIFFS[28]

In awarding damages, if any, you will be asked what sum of money would fairly and reasonably compensate each plaintiff for any injury sustained by that plaintiff.  Once a particular plaintiff establishes that it is entitled to recover damages, the law permits that plaintiff to recover only for those injuries it has sustained.  Therefore, if you find that both of the plaintiffs are entitled to recover damages, caution should be exercised to be sure that each plaintiff is awarded only damages for injuries it sustained.

**1.**   Source:  ABA Model Antitrust Damages Jury Instruction 15:  Multiple Plaintiffs (2005)

---

[28] This is Eaton's proposed instruction.  Plaintiffs do not agree to this proposed instruction.

## 16. DAMAGES – CONCLUSIVENESS OF THE FIRST JURY VERDICT[29]

As I told you at the beginning of the day, the findings of antitrust violation and injuries [Eaton proposes "antitrust injury"] in favor of Plaintiffs and against Eaton are conclusive and you are not to reconsider them.  This means that you are not to consider whether or not Eaton violated the law or whether or not Plaintiffs suffered any injuries [Eaton proposes "antitrust injury"] as a result of Eaton's violations.  Your job is to decide what amount of damages, [Eaton proposes "if any,"] should be awarded to Plaintiffs as a result of those violations and injuries.

Plaintiffs are entitled to recover for all damages to their business or property at some time since March 28, 2002 that were a direct result or likely consequence of the conduct the first jury found to be unlawful.  You may not, however, award damages for injuries or losses Eaton has proven were not caused by Eaton's unlawful conduct.

Source:  *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144 (3d Cir. 1993); *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 813 (3d Cir. 1984).

---

[29] Plaintiffs and Eaton agree on this instruction, except as to bracketed phrases.

# 17.    MITIGATION[30]

Plaintiffs may not recover damages for any of their lost profit damages that they could have avoided through the exercise of reasonable care and prudence.  Plaintiffs are not entitled to increase any damages through inaction.  The law requires an injured party to take all reasonable steps it can to avoid further damages and thereby reduce its loss.   If Plaintiffs failed to take reasonable steps available to them, and the failure to take those steps results in greater harm to Plaintiffs than they would have suffered had they taken those steps, then Plaintiffs may not recover any damages that it could have avoided.

Eaton has the burden of proof on this issue.  Eaton must prove by a preponderance of the evidence that Plaintiffs acted unreasonably in failing to take specific steps to minimize or limit the losses being greater than they would have been had they take such steps, and the amount by which Plaintiffs' loss would have been reduced had Plaintiffs taken those steps.

In determining whether Plaintiffs failed to take reasonable measures to limit the damages, you must remember that the law does not require Plaintiffs to have taken every conceivable step that might have reduced the damages.   The evidence must show that Plaintiffs failed to take commercially reasonable measures that were open to them.  Commercially reasonable measures mean those measures that prudent businessperson in the Plaintiffs' position would likely have adopted, given the circumstances as they appeared at that time.  Plaintiffs should be given a wide latitude in deciding how to handle the situation, so long as what Plaintiffs did was not unreasonable in light of the existing circumstances.

Source:  Model Antitrust Damages Jury Instruction 14: Mitigation (2005).

---

[30] This is Eaton's proposed instruction.  Plaintiffs do not agree to this instruction.

## 18.    TREBLE DAMAGES[31]

You may have heard or read that in antitrust cases such as this, damages are trebled, or multiplied by three.  You are not to try to do this yourself.  It is the job of the Court.  In calculating damages, if any, you are only to try to determine actual or single damages.


Source:  ABA Model Antitrust Damages Jury Instruction 17: Trebling of Damages (2005)

---

[31] This is Eaton's proposed instruction.  Plaintiffs do not agree to this instruction.

## DELIBERATION AND VERDICT

## INTRODUCTION[32]

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 5-3, or 3-5, or whatever your vote happens to be.  That should stay secret until you are finished.

Source: *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 53.

---

[32] Plaintiffs and Eaton agree on this instruction.

## 1.   UNANIMOUS VERDICT[33]

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are judges — judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you [explain verdict form once finalized].  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict in the courtroom to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

---

[33] Plaintiffs and Eaton agree on this instruction.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 54.

## 2.   DUTY TO DELIBERATE[34]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.   In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.   Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.   Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.   But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that — your own vote.   It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.   Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.   So you should all feel free to speak your minds.   Listen carefully to what the other jurors have to say, and then decide for yourself.   We generally end our business day at 4:30 p.m.   If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations on the next business day.   You will need to respond in writing to that question.

---

[34] Plaintiffs and Eaton agree on this instruction.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may talk about the case only while you are in the jury room and everyone on the jury is present.

So if you do go home this evening, keep that instruction in mind.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 12:30 and 1:30, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 55-56.

### 3.   COURT HAS NO OPINION[35]

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

Source:  *ZF Meritor LLC et al v. Eaton*, Final Jury Instructions (D.I. 214) at 57.

---

[35] Plaintiffs and Eaton agree on this instruction.